# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

DR. FARID HAFEZ,

        Plaintiff,

  v.

DR. LORENZO VIDINO, *et al.*,

        Defendants.

No. 1:24-cv-00873 (ABJ)

**DEFENDANTS ALP SERVICES SA, DILIGENCE SARL,
MARIO BRERO, MURIEL CAVIN, AND LIONEL BADAL'S
MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS**

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................................ 1

BACKGROUND ................................................................................................................. 3

STANDARD OF REVIEW ................................................................................................. 6

ARGUMENT ...................................................................................................................... 8

I.    THIS COURT LACKS PERSONAL JURISDICTION OVER THE EUROPEAN
      DEFENDANTS. ....................................................................................................... 8

      A.    Plaintiff Cannot Establish General Jurisdiction over the European
            Defendants. .................................................................................................... 8

      B.    Plaintiff Cannot Establish Specific Jurisdiction over the European
            Defendants. .................................................................................................. 10

II.   PLAINTIFF FAILS TO STATE A CLAIM .......................................................... 13

      A.    Plaintiff Pleads Nothing More than Conclusory Allegations, Thereby
            Failing to Meet Rule 8 of the Federal Rules of Civil Procedure. ................ 13

      B.    Plaintiff Fails to Specifically Plead, Thereby Failing to Meet Rule 9 of the
            Federal Rules of Civil Procedure. ............................................................... 13

      C.    Plaintiff's First, Second, Third, Fourth, and Fifth Claims Under the RICO
            Act Should Be Dismissed. ........................................................................... 14

            1.    Plaintiff Fails to Plausibly Plead an Underlying RICO Claim (His
                  First Claim). ....................................................................................... 14

                  a.    Plaintiff Fails to Plausibly Plead a Predicate Act. ...................... 14

                        (1)    Plaintiff's Conclusory Statements Are Insufficient
                               Under Rule 8. ................................................................... 14

                        (2)    Plaintiff Fails to Specifically Plead, as Required
                               Under Rule 9. ................................................................... 17

                        (3)    Plaintiff's Defamation Allegations Are Not
                               Predicate Acts of Wire Fraud or Bank Fraud .................. 18

                  b.    Plaintiff Fails to Plead an Enterprise. ......................................... 20

            2.    Plaintiff's Remaining RICO Claims (His Second, Third, Fourth,
                  and Fifth Claims) Should Be Dismissed Because Plaintiff Fails to
                  Plausibly Plead an Underlying RICO Claim. ......................................... 23

            3.    Plaintiff Fails to Plausibly Plead a Conspiracy ...................................... 23

i

**TABLE OF CONTENTS**

(continued)

|  |  | 4. | Plaintiff Fails to Plead Damages to His Business or Property.................. 25 |
|  |  | 5. | 18 U.S.C. §§ 1961(4)-(5) Are Not Causes of Action............................. 26 |
|  |  | 6. | Plaintiff Fails to Plead Domestic Damages. ............................. 27 |
|  |  | 7. | Plaintiff Fails to Plead Proximate Cause. ................................. 30 |
|  | D. | Plaintiff's Common Law Fraud Claim Should Be Dismissed ........................... 32 |
|  | E. | Plaintiff's Unfair or Deceptive Trade Practices Claim Should Be Dismissed ............................................................................................ 34 |
|  | F. | Plaintiff's Tortious Interference with Existing and Prospective Business Relations Claims Should Be Dismissed................................. 36 |
|  | G. | Plaintiff's Prima Facie Tort Claim Should Be Dismissed ................................. 37 |
| III. | PLAINTIFF'S CLASS ACTION ALLEGATIONS SHOULD BE DISMISSED OR STRICKEN ............................................................................................ 38 |
| CONCLUSION .......................................................................................................... 40 |

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Abram v. United States*,
    No. 23-cv-02678 (RC), 2023 WL 8891002 (D.D.C. Dec. 26, 2023) .....................................16

*Adler v. Vision Lab Telecomms., Inc.*,
    393 F. Supp. 2d 35 (D.D.C. 2005).................................................................................................34

*Aktieselskabet AF 21. November 2001 v. Fame Jeans Inc.*,
    525 F.3d 8 (D.C. Cir. 2008)..........................................................................................................33

*Al-Kazemi v. Gen. Acceptance Inv. Corp.*,
    633 F. Supp. 540 (D.D.C. 1986)...................................................................................................25

*Anza v. Ideal Steel Supply Corp.*,
    547 U.S. 451 (2006)......................................................................................................................29

*Art Metal-U.S.A., Inc. v. United States*,
    577 F. Supp. 182 (D.D.C 1983) ...................................................................................................37

*Artis v. Yellen*,
    307 F.R.D. 13 (D.D.C. 2014)........................................................................................................38

*Asahi Metal Indus. Co. v. Superior Ct. of Cal.*,
    480 U.S. 102 (1987)......................................................................................................................10

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009).................................................................................................................7, 15

*Aston v. Johnson & Johnson*,
    248 F. Supp. 3d 43 (D.D.C. 2017)................................................................................................25

*Bates v. Nw. Human Servs., Inc.*,
    466 F. Supp. 2d 69 (D.D.C. 2006) ...........................................................................................17, 20

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007).................................................................................................................7, 15

*Bernhardt v. Islamic Republic of Iran*,
    47 F.4th 856 (D.C. Cir. 2022).......................................................................................................10

*Betz v. Aidnest*,
    No. 1:18-cv-00292, 2018 WL 5307375 (D.D.C. Oct. 26, 2018)...................................................12

*Bible Way Church of Our Lord Jesus Christ World Wide, Inc. v. Showell*,
    578 F. Supp. 2d 164 (D.D.C. 2008) ............................................................................................12

i

*Bowie v. Maddox*,
    642 F.3d 1122 (D.C. Cir. 2011) .................................................................................................24

*Boyle v. United States*,
    556 U.S. 938 (2009) ..................................................................................................................22

*Brown v. Sim*,
    No. Civ.A. 03-2655, 2005 WL 3276190 (D.D.C. Sept. 30, 2005) ...........................................23

*Browning v. Clinton*,
    292 F. 3d 235 (D.C. Cir. 2002) ..................................................................................................7

*Burnett v. Al Baraka Inv. and Dev. Corp.*,
    274 F. Supp. 2d 86 (D.D.C. 2003) ...........................................................................................26

*Cedric Kushner Promotions, Ltd. v. King*,
    533 U.S. 158 (2001) ..................................................................................................................20

*Center for Immigration Studies v. Cohen*,
    410 F. Supp. 3d 183 (D.D.C. 2019) ...........................................................................18, 19, 22

*Clay v. Blue Hackle N. Am., LLC*,
    907 F. Supp. 2d 85 (D.D.C. 2012) .............................................................................................6

*Coleman through Bunn v. District of Columbia*,
    306 F.R.D. 68 (D.D.C. 2015) ....................................................................................................38

*Comm. for a Free Namibia v. South West Africa People's Org.*,
    554 F. Supp. 722 (D.D.C. 1982) ...............................................................................................16

*Confederate Mem'l Ass'n v. Hines*,
    995 F.2d 295 (D.C. Cir. 1993) ..................................................................................................20

*Corrinet v. Burke*,
    946 F. Supp. 2d 155 (D.D.C. 2013) ...........................................................................................9

*Cote v. Tennant*,
    No. 609-CV-1273, NAM/GHL, 2010 WL 1930572 (N.D.N.Y. May 10, 2010) ....................26

*Daimler AG v. Bauman*,
    571 U.S. 117 (2014) ....................................................................................................................8

*Danielsen v. Burnside-Ott Aviation Training Ctr., Inc.*,
    941 F.2d 1220 (D.C. Cir. 1991) ................................................................................................23

*DBW Partners, LLC v. Market Sec., LLC*,
    No. 22-1333, 2024 WL 3741414 (D.D.C. Aug. 10, 2024) ........................................................9

*Dimondstein v. Stidman*,
   Civil Action No. 19-2474 (TJK), 2019 WL 6117527 (D.D.C. Nov. 18, 2019) .................29

*Doe I v. State of Israel*,
   400 F. Supp. 2d 86 (D.D.C. 2005) ........................................................................11

*E. Sav. Bank, FSB v. Papageorge*,
   31 F. Supp. 3d 1 (D.D.C. 2014) ...........................................................................23

*Fink v. Nat'l Sav. & Tr. Co.*,
   772 F.2d 951 (D.C. Cir. 1985) .............................................................................13

*Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*,
   592 U.S. 351 (2021) ...............................................................................................8

*Glycobiosciences, Inc. v. Innocutis Holdings, LLC*,
   189 F. Supp. 3d 61 (D.D.C. 2016) .......................................................................35

*GTE New Media Servs. Inc. v. BellSouth Corp.*,
   199 F.3d 1343 (D.C. Cir. 2000) ...........................................................................11

*H.J. Inc. v. Nw. Bell Tel. Co.*,
   492 U.S. 229 (1989) .............................................................................................14

*Hamrick v. United States*,
   775 F. Supp. 2d 140 (D.D.C. 2011) ..................................................................7, 17

*Han. Fin. Supervisory Serv.*, No. 18-141 (EGS/GMH),
   2022 WL 2438513 (D.D.C. Jul. 5, 2022)..............................................................37

*Hemi Grp., LLC v. City of New York*,
   559 U.S. 1 (2010) .................................................................................................29

*Holmes v. Sec. Inv. Prot. Corp.*,
   503 U.S. 258 (1992)..............................................................................................29

*Hourani v. Mirtchev*,
   943 F. Supp. 2d 159 (D.D.C. 2013) ..................................................................7, 17

*Hoyte v. District of Columbia*,
   325 F.R.D. 485 (D.D.C. 2017)..............................................................................37

*Ihebereme v. Capital One, N.A.*,
   730 F. Supp. 2d 40 (D.D.C. 2010) .......................................................................34

*In re Ellipso, Inc.*,
   No. 09-00148, 2011 WL 482726 (Bankr. D.D.C. Feb. 7, 2011) ............................24

*Int'l Shoe Co. v. Washington,*
  326 U.S. 310 (1945) ............................................................................................7

*J. McIntyre Mach., Ltd. v. Nicastro,*
  564 U.S. 873 (2011) ...........................................................................................10

*Kelly v. Palmer, Reifler & Assocs., P.A.,*
  681 F. Supp. 2d 1356 (S.D. Fla. 2010) ...............................................................21

*Kimberlin v. Nat'l Bloggers Club,*
  No. 13-cv-3059, 2015 WL 1242763 (D. Md. Mar. 17, 2015) ..............................19

*Kimm v. Lee,*
  No. 04-cv-5724, 2005 WL 89386 (S.D.N.Y. Jan. 13, 2005) ...............................19

*Klayman v. Obama,*
  125 F. Supp. 3d 67 (D.D.C. 2015) ......................................................................25

*Kowal v. MCI Commc'ns Corp.,*
  16 F.3d 1271 (D.C. Cir. 1994) ........................................................................7, 15

*Lewis v. Mutond,*
  568 F. Supp. 3d 47 (D.D.C. 2021) ......................................................................12

*Marks v. City of Seattle,*
  No. C03-1701, 2003 WL 23024522 (W.D. Wash. Oct. 16, 2003) .......................19

*Martinez v. JPMorgan Chase Bank, N.A.,*
  178 F. Supp. 3d 184 (S.D.N.Y. 2016) ............................................................14, 22

*McFarlane v. Esquire Magazine,*
  74 F.3d 1296 (D.C. Cir. 1996) ............................................................................11

*McMullen v. Synchrony Bank,*
  164 F. Supp. 3d 77 (D.D.C. 2016) ......................................................................32

*Media General, Inc. v. Tomlin,*
  532 F.3d 854 (D.C. Cir. 2008) ............................................................................31

*Meng v. Schwartz,*
  116 F. Supp. 2d 92 (D.D.C. 2000) ......................................................................14

*Miley v. Hard Rock Hotel & Casino Punta Cana,*
  No. 19-3381 (CKK), 2022 WL 296199 (D.D.C. Feb. 1, 2022) ...........................10

*Modern Mgmt. Co. v. Wilson,*
  997 A.2d 37 (D.C. 2010) ....................................................................................34

*Moore v. Napolitano*,
  269 F.R.D. 21 (D.D.C. 2010) .................................................................... 37

*Mwani v. bin Laden*,
  417 F.3d 1 (D.C. Cir. 2005) .................................................................... 10

*Nada v. United Arab Emirates*,
  No. 1:24-cv-00206-ABJ (D.D.C.) .............................................................. 6

*Nyambal v. Alliedbarton Sec. Servs., LLC*,
  153 F. Supp. 3d 309 (D.D.C. 2016) ........................................................ 36

*Precision Contr. Sols., LP v. ANGI Homeservices, Inc.*,
  415 F. Supp. 3d 113 (D.D.C. 2019) ........................................................ 36

*Prunte v. Universal Music Grp.*,
  484 F. Supp. 2d 32 (D.D.C. 2007) .......................................................... 16

*Pyramid Secs. Ltd. v. IB Resolution, Inc.*,
  924 F.2d 1114 (D.C. Cir. 1991) .............................................................. 14

*Ray v. Spirit Airlines, Inc.*,
  836 F.3d 1340 (11th Cir. 2016) .............................................................. 22

*Ritchie v. Sempra Energy*,
  No. 10-cv-1513, 2013 WL 12171757 (S.D. Cal. Oct. 15, 2013) ................ 19

*RJR Nabisco, Inc. v. Eur. Cmty.*,
  579 U.S. 325 (2016) ......................................................................... 26, 29

*Rodriguez v. Lab. Corp. of America Holdings*,
  13 F. Supp. 3d 121 (D.D.C. 2014) .......................................................... 33

*RSM Prod. Corp. v. Freshfields Bruckhaus Deringer U.S. LLP*,
  682 F.3d 1043 (D.C. Cir. 2012) .............................................................. 23

*Sabre Int'l Sec. v. Torres Advanced Enter. Solutions*,
  857 F. Supp. 2d 97 (D.D.C. 2012) ..................................................... 35, 36

*Safex Found., Inc. v. SafeLaunch Ventures Ltd.*,
  694 F. Supp. 3d 1 (D.D.C. 2023) ............................................................ 10

*Salvador v. Allstate Property and Casualty Ins. Co.*,
  2020 WL 7042843 (D.D.C. 2020) ........................................................... 38

*Samuel v. Wells Fargo & Co.*,
  No. CV 17-2539 (CKK), 2018 WL 4705807 (D.D.C. Oct. 1, 2018) ............ 36

*Second Amendment Found. v. U.S. Conf. of Mayors*,
    274 F.3d 521 (D.C. Cir. 2001) ........................................................................6, 32

*Sharpe v. Am. Acad. of Actuaries*,
    285 F. Supp. 3d 285 (D.D.C. 2018) ..................................................................36

*Shatsky v. Palestine Liberation Org.*,
    955 F.3d 1016 (D.C. Cir. 2020) ..........................................................................9

*Shvartser v. Lekser*,
    292 F. Supp. 3d 459 (D.D.C. 2018) ..................................................................33

*Si v. Laogai Research Found.*,
    71 F. Supp. 3d 73 (D.D.C. 2014) ......................................................................24

*Sinclair v. TubeSockTedD*,
    596 F. Supp. 2d 128 (D.D.C. 2009) ..................................................................11

*Slaby v. Fairbridge*,
    3 F. Supp. 2d 22 (D.D.C. 1998) ........................................................................34

*Soudavar v. Islamic Republic of Iran*,
    67 F. App'x 618 (D.C. Cir. 2003) ......................................................................29

*Stromberg v. Marriott Intern., Inc.*,
    474 F. Supp. 2d 57 (D.D.C. 2007) ......................................................................1

*Thomas v. U.S. Gov't*,
    No. 19-2260 (UNA), 2019 WL 13522498 (D.D.C. Sep. 18, 2019) ....................13

*Tsipouras v. W & M Properties, Inc.*,
    9 F. Supp. 2d 365 (S.D.N.Y. 1998) ..................................................................26

*U.S. Dominion, Inc. v. MyPillow, Inc.*,
    No. 1:21-cv-0445 (CJN), 2022 WL 1597420 (D.D.C. May 19, 2022) ....20, 21, 22, 24

*U.S. ex rel. Williams v. Martin-Baker Aircraft Co.*,
    389 F.3d 1251 (D.C. Cir. 2004) ........................................................................13

*United States v. Crisci*,
    273 F.3d 235 (2d Cir. 2001) ..............................................................................15

*United States v. Philip Morris USA, Inc.*,
    449 F. Supp. 2d 1 (D.D.C. 2006) ......................................................................24

*United States v. Turkette*,
    452 U.S. 576 (1981) ..........................................................................................20

*W. Assocs. Ltd. P'ship, ex rel. Ave. Assocs. Ltd. P'ship v. Mkt. Square Assocs.*,
    235 F.3d 629 (D.C. Cir. 2001) ........................................................................14, 17

*Walters v. McMahen*,
    795 F. Supp. 2d 350 (D. Md. 2011) ...................................................................24

*Williams v. Wells Fargo*,
    No. 23-cv-00514, 2023 WL 8600508 (D.D.C. Nov. 9, 2023) ............................7, 17

*Wilson v. On the Rise Enters., LLC*,
    305 F. Supp. 3d 5 (D.D.C. 2018) .......................................................................32

*Yegiazaryan v. Smagin*,
    599 U.S. 533 (2023).....................................................................................27, 29

*Yellow Bus Lines, Inc. v. Drivers, Chauffeurs & Helpers Loc. Union 639*,
    883 F.2d 132 (D.C. Cir. 1989) .......................................................................20, 25

*Ziglar v. Abbasi*,
    582 U.S. 120 (2017)..........................................................................................23

**STATUTES**

18 U.S.C § 2(a)-(b) ...............................................................................................16

18 U.S.C. § 1343 ..................................................................................................14

18 U.S.C. § 1344 .............................................................................................14, 15

18 U.S.C. § 1346 ..................................................................................................16

18 U.S.C. § 1956 .............................................................................................15, 16

18 U.S.C. § 1961(1) ..............................................................................................15

18 U.S.C. § 1961(1), (5) ........................................................................................14

18 U.S.C. § 1961(4) ..............................................................................................26

18 U.S.C. §§ 1961(4)-(5) .......................................................................................26

18 U.S.C. § 1962 ...........................................................................................22, 25, 26

18 U.S.C. § 1962(c) .........................................................................................14, 23

18 U.S.C. § 1962(d) ..............................................................................................23

18 U.S.C. § 1964(c) .......................................................................................23, 25, 26

18 U.S.C. § 2314 ..................................................................................................16

18 U.S.C. § 2315 ..................................................................................................16

18 U.S.C. § 2703 ..................................................................................................15

D.C. Code § 28-3901(a)(2) ..................................................................................34

D.C. Code § 28-3904 .....................................................................................34, 35

**RULES**

D.C. Local Rule 23.1(b) ......................................................................................38

Fed. R. Civ. Proc. 4(k)(1)(C) .............................................................................10

Fed. R. Civ. Proc. 8 ...................................................................................... *passim*

Fed. R. Civ. Proc. 9 ...................................................................................... *passim*

Fed. R. Civ. Proc. 9(b) ...................................................................................16, 32

Fed. R. Civ. Proc. 12(b)(2) and (6) ......................................................................1

Fed. R. Civ. Proc. 23 ...........................................................................................37

**LEGISLATIVE MATERIALS**

*Hearing Before the Subcomm. on National Security of the H. Comm. on Oversight and Accountability*, 115th Cong., Serial No. 115-90 (Jul. 11, 2018) ...............................................2

**OTHER AUTHORITIES**

Vidino, Lorenzo, *The Muslim Brotherhood in Austria*, https://extremism.gwu.edu/sites/g/files/ zaxdzs5746/files/MB%20in%20Austria-%20Print.pd ........................................................................................................4

Defendants ALP Services S.A. ("Alp Services"), Diligence SARL ("Diligence"), Mario Brero, Muriel Cavin, and Lionel Badal, (collectively, the "European Defendants") respectfully request that this Court dismiss with prejudice Plaintiff's Amended Complaint pursuant to Federal Rules of Civil Procedure 12(b)(2) and (6), for the reasons stated in this Memorandum of Law.

## INTRODUCTION[1]

This lawsuit is a defamation claim—and a weak one at best—camouflaged as a class action under the Racketeer Influenced and Corrupt Organization Act ("RICO") and various state laws. Plaintiff, Dr. Farid Hafez, attempts to shoehorn his defamation allegations into federal and state laws that have no application in a matter between foreign parties, for events that occurred outside the United States. This effort to force defamation allegations regarding extraterritorial conduct into inapplicable federal and state laws fails on multiple grounds.

*First*, there is no personal jurisdiction over the European Defendants, all of whom are based in Switzerland or Luxembourg. Contrary to Plaintiff's conclusory assertion, none of the European Defendants reside in the United States, have a home or office in the United States, or conduct business in the United States. Nor does the Amended Complaint allege adequately that the European Defendants have the requisite minimal contacts with the United States to establish personal jurisdiction. No court in this District—in fact, no court in the United States—has a legitimate interest in adjudicating claims about events that took place in Europe and the United Arab Emirates ("the UAE"), especially when these allegations relate to the UAE's foreign policy

---

[1] The European Defendants do not, at this time, move to dismiss the Amended Complaint on *forum non conveniens* grounds. If this Court does not dismiss the Amended Complaint against the European Defendants for lack of personal jurisdiction or failure to state a claim, the European Defendants reserve the right to move at the appropriate time to dismiss any remaining allegations on *forum non conveniens* grounds. *See Stromberg v. Marriott Intern., Inc.*, 474 F. Supp. 2d 57, 60 (D.D.C. 2007).

1

efforts to combat the financing of the Muslim Brotherhood—an entity the UAE has designated as a terrorist organization.[2]  Even taking at face value Plaintiff's inherently implausible allegations that the European Defendants colluded with the UAE—a country where Islam is the official religion—to target him because of his scholarship on Islamophobia, the Amended Complaint contains no allegations that the European Defendants engaged in any conduct in the United States or purposefully directed conduct at the United States.

*Second*, the Amended Complaint fails to meet the pleading standards of Federal Rules of Civil Procedure 8 and 9.  The Amended Complaint vaguely alleges that the European Defendants made publications linking certain individuals to the Muslim Brotherhood.  But the Amended Complaint does not detail what specific allegedly false statements were made about Plaintiff, either directly by the European Defendants or by others at their direction.

*Third*, the Amended Complaint fails to state a claim for racketeering under RICO.  The European Defendants' alleged conduct does not constitute a "pattern of racketeering activity."  Nor does the alleged "enterprise" pose an open-ended threat of future harm, as the alleged scheme is portrayed as already complete.  The RICO conspiracy claim also fails due to the intracorporate conspiracy doctrine, under which an entity cannot conspire with its alleged subsidiary or agent.

*Fourth*, Plaintiff's state law claims should be dismissed, as the Amended Complaint does not provide sufficient facts to support any of these causes of action.

---

[2] *See, e.g.*, *The Muslim Brotherhood's Global Threat: Hearing Before the Subcomm. on National Security of the H. Comm. on Oversight and Accountability*, 115th Cong., Serial No. 115-90, at 1, 3 (Jul. 11, 2018) ("The Muslim Brotherhood is a militant Islamist organization with affiliates in over 70 countries., including groups designated as terrorist organizations by the U.S. … Countries including Egypt, Saudi Arabia, and the United Arab Emirates have all designated the Brotherhood as a terrorist organization.")

## BACKGROUND

Plaintiff Dr. Farid Hafez is an Austrian political scientist, who held various academic positions in Austria and the United States.  *See* Am. Compl. ¶¶ 15; 90.

Defendants Alp Services and Diligence are Swiss investigative firms founded and operated by Defendants Brero and Cavin.  Am. Compl. ¶¶ 18; 25.  They are incorporated under the laws of Switzerland and have their principal offices in Geneva.  Am. Compl. ¶¶ 18; 25.  Both Brero and Cavin are domiciled in Switzerland.  Am. Compl. ¶¶ 19-20.  Brero is an Italian citizen, Am. Compl. ¶ 19, and Cavin is a Swiss citizen, Am. Compl. ¶ 20.  Defendant Badal, a former senior Alp Services' employee; is a resident of Luxembourg and holds Luxembourgian citizenship.  Am. Compl. ¶ 21.

Plaintiff alleges that while he was still living in Austria, Alp Services approached the UAE in 2017 with a "Global Action Plan" proposal to run a public relations campaign aimed at exposing efforts by Qatar and its networks, including the Muslim Brotherhood, to "direct [a] global media and political campaign against the UAE."  Am. Compl. ¶ 73 (internal quotation marks omitted). Alp Services "proposed making 'advanced cartographies of [the] targets' secret influence networks in Europe and the US,'" and "conducting 'investigations to obtain damaging negative material on [the] key targets.'"  Am. Compl. ¶ 74.  Once Alp Services "identified key targets and obtained 'negative intelligence about them,' it would 'launch highly aggressive online negative campaigns.'"  Am. Compl. ¶ 75.  Plaintiff alleges that Brero sent Alp Services' proposal to UAE officials by email on August 7, 2017, and then traveled to Abu Dhabi for in-person meetings on August 7-9, 2017.  Am. Compl. ¶ 76.  The Amended Complaint does not allege that either Alp Services' August 7, 2017 proposal—or any other representations Alp Services or Brero made in an effort to secure work from the UAE ever mentioned Plaintiff.

Instead, Plaintiff alleges that, with the assistance of the European Defendants, Defendant Lorenzo Vidino made public false statements linking Plaintiff, as well as at least 50 others, to the Muslim Brotherhood.   Am Compl. ¶¶ 3-4; 46-47; 57.   Plaintiff claims that the European Defendants were involved in crafting these statements as part of the UAE's larger endeavor to discredit its regional rival, Qatar.  Am. Compl. ¶ 8.

This case focuses on events that occurred while Plaintiff still resided in Austria.   Am. Compl. ¶ 56.  As alleged, in August of 2017, Dr. Vidino authored a report titled "The Muslim Brothers in Austria," which allegedly associated Plaintiff and others with the Muslim Brotherhood. Am. Compl.  ¶¶ 56-57.  The Amended Complaint provides a link to the 2017 Article.  Am. Compl. ¶ 56 n. 16.  The 2017 Article, which is over fifty pages long, references Plaintiff only twice.[3]  The Amended Complaint does not state that this 2017 report was prepared with the aid of the European Defendants.  Instead, it alleges that this report was made as "retaliation" for a 2016 book chapter written by Plaintiff, where Plaintiff criticized Dr. Vidino for associating an organization called the Austrian Muslim Youth Organization with the Muslim Brotherhood.  Am. Compl. ¶ 58.  Plaintiff alleges that as a result of the 2017 report and Dr. Vidino's subsequent testimony before Austrian state prosecutors, Plaintiff was targeted in "the largest peacetime raid ever conducted by Austrian authorities." Am Compl. ¶¶ 56-57.  Plaintiff alleges that this raid, which took place on December 9, 2020, had an immediate effect on his reputation and business opportunities in Austria.  Am. Compl.  ¶ 59.

The Amended Complaint references a January 2018 agreement between Dr. Vidino and Alp Services, but does not allege that this agreement mentioned Plaintiff.   Am. Compl. ¶ 81.

---

[3] Vidino, Lorenzo, *The Muslim Brotherhood in Austria*, https://extremism.gwu.edu/sites/g/files/ zaxdzs5746/files/MB%20in%20Austria-%20Print.pdf.

4

Plaintiff also alleges that Alp Services provided a report to the UAE in February 2018, but again, there is no allegation that Plaintiff was mentioned in this report.  Am. Compl. ¶ 83.

Plaintiff nevertheless alleges that in the spring of 2018, the European Defendants launched an "offensive viral communication" campaign against him.  Am. Compl. ¶ 85.  As part of this effort, they allegedly fabricated pages on Wikipedia and manipulated results on U.S.-based search engines like Google, Yahoo!, and Bing to spread negative information across English-speaking media.  Am. Compl. ¶ 85.  Plaintiff does not allege that any of these allegedly fabricated pages referenced him.  Plaintiff further alleges that Alp Services planned to publish 45 articles about pre-selected targets in English on the San Francisco-based blogging platform, Medium.  Am. Compl. ¶ 87.  This communication strategy allegedly extended to media outlets in both the United Kingdom and the United States.  Am. Compl. ¶ 87.

On April 30, 2018, Alp Services allegedly drafted a to-do list that included a request for Dr. Vidino to prepare an "overview of key MB individuals/organisations/companies in the USA," along with any "interesting elements/rumors" to demonstrate their ability to acquire new, concrete information within the U.S.  Am. Compl. ¶ 88.

On August 6, 2018, Alp Services allegedly produced another report for the UAE, titled "Summary Report – Impact Assessment."  In this report, Alp Services allegedly claimed to have used social media and search engine optimization techniques to increase the visibility of its publications.  Am. Compl. ¶ 90.  There are no allegations, however, that any of these articles mentioned Plaintiff.

Plaintiff alleges that, as a result of this public campaign, "various financial institutions and business partners ended their existing relationships … and others refused to start new business dealings with the targets."  Am. Compl. ¶ 95.  The Amended Complaint does not specify who

these unnamed "financial institutions and business partners" were, what "existing relationships" or "new business dealings" were abrogated, or what (if anything) that had to do with Plaintiff.

Plaintiff contends that the public relations campaign was first revealed in April 2021 when anonymous hackers "infiltrated Alp [Services]'s servers," and obtained Alp Services' internal documents.  Am. Compl. ¶¶ 96-98.  The Swiss authorities then obtained those documents and shared them with Hazim Nada, who Plaintiff alleges is "another victim of this conspiracy."  Am. Compl. ¶¶ 96; 99.  Nada is a plaintiff in a parallel lawsuit pending before this Court.  *See Nada v. United Arab Emirates*, No. 1:24-cv-00206-ABJ (D.D.C.).

Plaintiff alleges that Alp Services prepared a confidential action plan for the UAE for 2020-2025 that would continue media attacks to influence decision makers, including politicians, compliance databases, 70 banks, and the public.  Am. Compl. ¶ 101.  The Amended Complaint does not allege that this 2020-2025 action plan referenced Plaintiff.

In March 2024, Plaintiff initiated this lawsuit.  ECF No. 1.  Plaintiff then filed an Amended Complaint in April 2024.  ECF No. 5.

## STANDARD OF REVIEW

"The plaintiffs bear the burden of establishing personal jurisdiction over the defendants." *Clay v. Blue Hackle N. Am., LLC*, 907 F. Supp. 2d 85, 87 (D.D.C. 2012).  "To meet this burden, plaintiffs 'must allege specific acts connecting [the] defendant with the forum' and 'cannot rely on conclusory allegations.'"  *Id.* (quoting *Second Amendment Found. v. U.S. Conf. of Mayors*, 274 F.3d 521, 524 (D.C. Cir. 2001)) (alterations in original) (additional citations omitted).  A court cannot assert jurisdiction over a foreign defendant unless the defendant has established "minimum contacts" with the forum state, ensuring that the proceeding with the lawsuit does not violate

"traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).

A court must also dismiss a complaint that fails to state a claim upon which relief can be granted. *Browning v. Clinton*, 292 F. 3d 235, 242 (D.C. Cir. 2002). Dismissal may be based on the lack of a cognizable legal theory or on plaintiff's failure to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In assessing a complaint's legal sufficiency, a court need not accept as true allegations that are "no more than [legal] conclusions" or the "formulaic recitation of the elements" of a cause of action, *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009) (internal quotation marks and citation omitted), or that do not "raise a right to relief above the speculative level," *Twombly*, 550 U.S. at 555. A court also "need not accept inferences drawn by plaintiffs if such inferences are unsupported by the facts set out in the complaint." *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994). "Nor must the court accept legal conclusions cast in the form of factual allegations." *Id.*

Where plaintiff "has already filed an amended complaint," "dismissal with prejudice is proper." *Williams v. Wells Fargo*, No. 23-cv-00514, 2023 WL 8600508, at *2 (D.D.C. Nov. 9. 2023); *see also Hourani v. Mirtchev*, 943 F. Supp. 2d 159, 172 (D.D.C. 2013) (dismissing with prejudice an amended complaint because "[p]laintiffs have already had two bites at the proverbial apple"), *aff'd*, 796 F.3d 1 (D.C. Cir. 2015); *Hamrick v. United States*, 775 F. Supp. 2d 140, 142 (D.D.C. 2011) (granting dismissal with prejudice where "plaintiff's amended complaint merely 'recycles' the allegations set forth in his first complaint").

**ARGUMENT**

**I.    THIS COURT LACKS PERSONAL JURISDICTION OVER THE EUROPEAN DEFENDANTS.**

Personal jurisdiction over nonresident defendants, such as the European Defendants, can be established through either general or specific jurisdiction.  General jurisdiction applies when a defendant's contacts with the forum state are so continuous and systematic that they are essentially "at home" in that state.  *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. 351, 358-59 (2021).  Specific jurisdiction, on the other hand, arises when the defendant's contacts with the forum are directly related to the plaintiff's claims.  *Id.*

In this case, the Amended Complaint fails to provide sufficient factual allegations to establish either general or specific jurisdiction over the European Defendants.  There are no claims that these European Defendants have continuous and substantial ties to the U.S. that would support general jurisdiction, nor does the Amended Complaint allege specific actions that the European Defendants purposefully directed at the United States, as required for specific jurisdiction.

**A.    Plaintiff Cannot Establish General Jurisdiction over the European Defendants.**

Plaintiff does not argue that this Court has general jurisdiction over the European Defendants, and rightly so.  None of the European Defendants reside in the United States, and they lack sufficient contacts with the United States to justify assertion of general jurisdiction.

Alp Services and Diligence are both corporations.  *See* Am. Compl. ¶¶ 18, 25.  The Supreme Court has held that—except in "an exceptional case"—general personal jurisdiction over a corporation is only appropriate where the corporation is "at home," meaning either its place of incorporation or its principal place of business.  *Daimler AG v. Bauman*, 571 U.S. 117, 139 n.19 (2014).  The Amended Complaint correctly acknowledges that Alp Services and Diligence are incorporated under the laws of Switzerland and have their principal place of business in Geneva.

Am. Compl. ¶¶ 18, 25; *see also* Declaration of Mario Brero in Support of ALP Servs. and Diligence SARL's Mot. to Dismiss ("Brero Declaration") ¶ 2.  The Amended Complaint also ***incorrectly*** alleges that "Defendants are individuals or companies who conduct business in the District of Columbia and defrauded Plaintiff," and that "Defendants maintained an office to conduct business in the District of Columbia including maintaining accounts therein."  Am. Compl. ¶¶ 142-43. These broad allegations lack specificity, failing to identify which Defendants maintain such offices.  To the extent that these allegations refer to Alp Services or Diligence, they are false. Neither corporation has an office in the U.S., let alone in the District of Columbia.  *See* Brero Declaration ¶ 3.  As a result, there is no basis for general personal jurisdiction over Alp Services or Diligence. *See, e.g.*, *Shatsky v. Palestine Liberation Org.*, 955 F.3d 1016, 1024 (D.C. Cir. 2020) ("a court may exercise general jurisdiction over a nonresident corporation only if the corporation is 'essentially at home in the forum'") (quoting *Daimler AG*, 571 U.S. at 138-39.[4]

Regarding the individual European Defendants, the Amended Complaint does not allege that Brero, Cavin, or Badal are U.S. citizens, reside in the United States, own property, pay taxes, or maintain a business in the United States.  *See* Am. Compl. ¶¶ 19-21.  Therefore, they are not subject to the Court's general jurisdiction either.  *See, e.g., Corrinet v. Burke*, 946 F. Supp. 2d 155, 158-59 (D.D.C. 2013) (general jurisdiction does not apply where the defendants do not reside, own property, or maintain business in the jurisdiction).

---

[4] "[W]hen evaluating jurisdiction over a claim, 'the district court my consider materials outside of the pleadings.'"  *DBW Partners, LLC v. Market Sec., LLC*, No. 22-1333, 2024 WL 3741414, at *9 (D.D.C. Aug. 10, 2024) (considering declarations in dismissing plaintiff's claims based on lack of personal jurisdiction) (quoting *Jerome Stevens Pharms., Inc. v. FDA*, 402 F.3d 1249, 1253 (D.C. Cir. 2005)).

**B.    Plaintiff Cannot Establish Specific Jurisdiction over the European Defendants.**

"A plaintiff seeking to establish specific jurisdiction over a non-resident defendant must demonstrate that specific jurisdiction comports with the forum's long arm statute and does not violate due process." *Miley v. Hard Rock Hotel & Casino Punta Cana*, No. 19-3381 (CKK), 2022 WL 296199, at *3 (D.D.C. Feb. 1, 2022).   "The plaintiff must show that the foreign defendant has purposefully directed his activities at residents of the forum, and that the alleged injuries arise out of or relate to those activities. *Bernhardt v. Islamic Republic of Iran*, 47 F.4th 856, 864 (D.C. Cir. 2022) (internal quotation marks and citations omitted). "This test ensures that a district court exercises specific personal jurisdiction only over those foreign defendants who had fair warning that a particular activity may subject them to U.S. jurisdiction." *Id.* (internal quotation marks and citations omitted).   "Whether the exercise of jurisdiction is 'consistent with the Constitution' for purposes of Rule 4(k)(2) depends on whether a defendant has sufficient contacts with the United States as a whole to justify the exercise of personal jurisdiction under the Due Process Clause of the Fifth Amendment." *Mwani v. bin Laden*, 417 F.3d 1, 11 (D.C. Cir. 2005) (citations omitted). "The unique burdens placed upon one who must defend oneself in a foreign legal system should have significant weight in assessing the reasonableness of stretching the long arm of personal jurisdiction over national borders." *Asahi Metal Indus. Co. v. Superior Ct. of Cal*., 480 U.S. 102, 114 (1987).

The Amended Complaint attempts to connect the European Defendants to the United States by vaguely alleging that they used "instrumentalities of interstate commerce," such as mail or wire services.   Am. Compl. ¶¶ 32-36.   That is insufficient to show that the European Defendants "engaged in conduct purposefully directed" at the United States—a showing necessary to subject them to this Court's jurisdiction. *J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873, 886 (2011)

(plurality op.); *see also Safex Found., Inc. v. SafeLaunch Ventures Ltd.*, 694 F. Supp. 3d 1, 10 (D.D.C. 2023).  The only specific allegation Plaintiff makes attempting to tie the European Defendants to the United States is that they "fabricat[ed] negative pages" on U.S.-based company websites, and "manipulat[ed] results on U.S.-based search engines" to "emphasize[] publication of negative information in 'English-speaking media.'"[5]  Am. Compl. ¶ 85.  Plaintiff, however, does not allege that these actions related to him, and so these alleged contacts with the United States cannot serve as a jurisdictional basis over the claims asserted in this case.

The ability of U.S. residents to access online publications from the United States, or discover the writings through U.S. search engines, does not mean the publications' authors—much less the European Defendants, whose precise role in these activities Plaintiff do not specify— purposefully directed activities at the United States.  *See, e.g.*, *McFarlane v. Esquire Magazine*, 74 F.3d 1296, 1300 (D.C. Cir. 1996) ("writing an article for a publication that is circulated throughout the nation, including the District, hardly constitutes doing or soliciting business, or engaging in a persistent course of conduct, within the District"); *GTE New Media Servs. Inc. v. BellSouth Corp.*, 199 F.3d 1343, 1349 (D.C. Cir. 2000) ("personal jurisdiction surely cannot be based solely on the ability of District residents to access the defendants' websites, for this does not by itself show any persistent course of conduct by the defendants in the District").  The mere fact that "statements posted on the Internet can be downloaded and viewed in the District of Columbia is insufficient to establish personal jurisdiction."  *Sinclair v. TubeSockTedD*, 596 F. Supp. 2d 128, 133 (D.D.C. 2009).  Simply having a "website accessible by computers" or residents in the District

---

[5] The Amended Complaint also alleges that Brero used to run a business exporting "exporting computers and semiconductor manufacturing equipment from the United States to Europe."  Am. Compl. ¶ 65.  But that alleged business is not the subject of this case, and there are no allegations to suggest Brero is still involved in that business.

of Columbia, does not amount to purposeful availment; it is merely an unavoidable byproduct of "modern internet technology." *Doe I v. State of Israel*, 400 F. Supp. 2d 86, 121 (D.D.C. 2005).

Indeed, "maint[aining] a website that is merely accessible by District of Columbia residents is insufficient to establish the minimum contacts necessary to establish personal jurisdiction over an out-of-state defendant." *Betz v. Aidnest*, No. 1:18-cv-00292 (KBJ/GMH), 2018 WL 5307375, at *7 (D.D.C. Oct. 26, 2018). The Internet, including its search engines, its websites, and any blogs located on it, are widely accessible all over the world. The Internet's broad platform does not mean that those who contribute content to it are purposefully directing their conduct at the United States, such that they could reasonably expect to be subject to litigation there. *See, e.g.*, *Bible Way Church of Our Lord Jesus Christ World Wide, Inc. v. Showell*, 578 F. Supp. 2d 164, 171 (D.D.C. 2008) ("for a website to constitute a persistent course of conduct within the District of Columbia, it must meet a certain level of interactivity [with users in the District of Columbia]").

Plaintiff's own allegations demonstrate that the alleged actions and harms occurred in Europe—not in the United States. Plaintiff alleges that "[a]s a direct result of Defendants' actions and statements, including the false statements and insinuations, Plaintiff had to leave Austria and take up permanent residence in the United States and cannot easily travel for fear of further retribution, including denial of reentry into the U.S." Am. Compl. ¶ 188. Plaintiff thereby alleges Defendants took actions in Europe that led Plaintiff to find refuge in the United States. These allegations undercut the notion that the European Defendants directed activities *at* the United States. Not only was Plaintiff was in Austria during the time of the alleged events, but he went to the United States to escape the effects of the European Defendants' alleged "retribution." *See, e.g.*, *Lewis v. Mutond*, 568 F. Supp. 3d 47, 53 (D.D.C. 2021) ("The Court cannot infer that

[defendants] purposefully directed their conduct at the United States when [plaintiff]'s allegations point their intent squarely at [a foreign country].").

## II.      PLAINTIFF FAILS TO STATE A CLAIM

Even if this Court were to assume it has personal jurisdiction over the European Defendants to adjudicate Plaintiff's claims, those claims still fail as a matter of law.  Plaintiff's allegations of racketeering, along with the related state law claims, are legally insufficient, lack factual support, and are inherently implausible.

### A.      Plaintiff Pleads Nothing More than Conclusory Allegations, Thereby Failing to Meet Rule 8 of the Federal Rules of Civil Procedure.

Plaintiff pleads every single one of his causes of action in a conclusory fashion at best.  But "[a] complaint 'that contains only vague and conclusory' assertions simply fails to satisfy the pleading requirements of Rule 8(a)."  *Thomas v. U.S. Gov't*, No. 19-2260 (UNA), 2019 WL 13522498, at *1 (D.D.C. Sep. 18, 2019) (Jackson, J.) (quoting *Hilska v. Jones*, 217 F.R.D. 16, 21 (D.D.C. 2003)).  As detailed below, the Amended Complaint lacks adequate factual allegations as to (1) the actual actions of Defendants against Plaintiff, and (2) any agreement between Dr. Vidino and the other Defendants.

### B.      Plaintiff Fails to Specifically Plead, Thereby Failing to Meet Rule 9 of the Federal Rules of Civil Procedure.

Several of Plaintiff's claims sound in fraud.  *See*, *e.g.*, Am. Compl., ¶¶ 112-54.  When pleading such claims, Plaintiff must meet the heightened pleading standard outlined in Rule 9 of the Federal Rules of Civil Procedure.  Rule 9 requires that Plaintiff provide "fair notice of [his] claims and grounds therefore, so that [Defendants] can frame their answers and defenses."  *Fink v. Nat'l Sav. & Tr. Co.*, 772 F.2d 951, 963 (D.C. Cir. 1985).  This means "stat[ing] the time, place and content of the false misrepresentations, the fact misrepresented and what was retained or given

up as a consequence of the fraud." *U.S. ex rel. Williams v. Martin-Baker Aircraft Co.*, 389 F.3d 1251, 1256 (D.C. Cir. 2004) (internal quotation marks and citations omitted).  In the absence of such particularity, the claims sounding in fraud are insufficiently pled and should be dismissed for failing to meet the requirements of Rule 9.  As detailed below, Plaintiff does not point to a single specific false statement.

## C. Plaintiff's First, Second, Third, Fourth, and Fifth Claims Under the RICO Act Should Be Dismissed.

### 1. *Plaintiff Fails to Plausibly Plead an Underlying RICO Claim (His First Claim).*

Plaintiff alleges that the European Defendants, among others, violated 18 U.S.C. § 1962(c) by "concoct[ing] the false narrative that Dr. Hafez was closely tied to the Muslim Brotherhood and involved in terrorist activities."  Am. Compl., ¶ 117.  A claim under 18 U.S.C. § 1962(c) requires: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity."  *W. Assocs. Ltd. P'ship, ex rel. Ave. Assocs. Ltd. P'ship v. Mkt. Square Assocs.*, 235 F.3d 629, 633 (D.C. Cir. 2001) (citing *Pyramid Secs. Ltd. v. IB Resolution, Inc.*, 924 F.2d 1114, 1117 (D.C. Cir. 1991)).

### a. Plaintiff Fails to Plausibly Plead a Predicate Act.

Plaintiff must allege at least two predicate acts of racketeering activity.  *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 239 (1989); *Meng v. Schwartz*, 116 F. Supp. 2d 92, 95 (D.D.C. 2000); 18 U.S.C. § 1961(1), (5).  Here, Plaintiff bases his RICO claims on wire fraud and bank fraud as predicate acts.  Am. Compl. ¶ 115.

### (1) Plaintiff's Conclusory Statements Are Insufficient Under Rule 8.

Beyond making broad and conclusory allegations that Defendants committed *wire* fraud and *bank* fraud, Plaintiff pleads no specific facts demonstrating how the allegedly "false narrative"

was disseminated using wires and to banks.  *See* 18 U.S.C. § 1343 (defining wire fraud); *id.* § 1344 (defining bank fraud).  Instead, Plaintiff merely asserts that Defendants "made use of interstate wires to commission and publish online disseminating false statements" and is silent altogether as to Defendants' interaction with banks as related to Plaintiff.  Am. Compl. ¶ 117.  That is insufficient even under Rule 8.  *See Twombly*, 550 U.S. at 555 ("[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."); *Iqbal*, 556 U.S. at 678; *see also Kowal*, 16 F.3d at 1276 ("[T]he court need not … accept legal conclusions cast in the form of factual allegations.").

Plaintiff's conclusory pleading is unsurprising, particularly with respect to his bank fraud claims as predicate acts under RICO, as the necessary facts to support such claims are nonexistent. To successfully plead bank fraud as a predicate act, Plaintiff must allege that Defendants either defrauded a bank or obtained property under the custody or control of that bank through a false or fraudulent pretense, representation, or promise.  18 U.S.C. § 1344; *see also In re Search Multiple Email Accounts Pursuant to 18 U.S.C. § 2703 for Investigation of Violation of 18 U.S.C. § 1956*, 585 F. Supp. 3d 1, 14 (D.D.C. 2021).  Plaintiff, however, does not claim that Defendants obtained any money (or other property) from the banks they allegedly defrauded; that Defendants deceived the banks into releasing any property (to Defendants or anyone else); or that Defendants intended to harm the banks.  *See United States v. Crisci*, 273 F.3d 235, 239–40 (2d Cir. 2001).  In other words, Plaintiff fails to plead even a single interaction between Defendants and a bank related to the instant dispute.

Plaintiff seeks to buttress his meager allegations by listing nine pages worth of potential predicate acts.  *See* Am. Compl. ¶ 103 (listing cases and statutes for "an action for [the] Racketeer

Influenced and Corrupt Organizations Act of 1970"); Am. Compl. ¶ 126 (listing various forms of "racketeering activity" across four pages); Am. Compl. ¶ 132 (identical to paragraph 126). But certain of the listed bases do not even qualify under RICO. *Compare* 18 U.S.C. § 1961(1) (defining "racketeering activity"), *with* Am. Compl. ¶ 126 (listing "Federal Intangible Personal Property Right Deprivation: Title 18 U.S.C.A. § 1346"; "Federal Principal and Aider and Abettor Liability: Title 18 U.S.C.A. §2(a)-(b)"; "Federal Principal and Aider and Abettor Liability re: Aiding and Abetting a Conspiracy: Title 18 U.S.C.A. §2(a)-(b)"; "Federal Principal and Aider and Abettor Liability re: Conspiracy to Commit Aiding and Abetting: Title 18 U.S.C.A. §2(a)-(b)"—none of which are included in the RICO statute's definition of racketeering activity). Other listed bases are nonsensical and completely divorced from the alleged facts of this case. *See*, *e.g.*, Am. Compl. ¶ 126 (listing "Federal Intangible Personal Property Right Deprivation: Title 18 U.S.C.A. §1346"; "Federal Money Laundering: Title 18 U.S.C. §1956"; "Federal Interstate Transportation of Property Obtained by Fraud, False Pretense, and Conversion: Title 18 U.S.C.A. §2314"; "Federal Interstate Receipt of Transported Property Obtained by Fraud, False Pretense, and Conversion: Title 18 U.S.C.A. §2315").

For the foregoing reason, Plaintiff's RICO claims should be dismissed.[6]

---

[6] Plaintiff makes vague assertions that that the Defendants engaged in tax evasion under title 26 of the United States Code Section 7201 and violated the Foreign Agents Registration Act. Am. Compl. ¶¶ 14, 49. Plaintiff does not bring a cause of action for either of these claims. Nor could he. "[T]ax evasion is a federal crime against the United States and does not provide a private cause of action." *Abram v. United States*, No. 23-cv-02678 (RC), 2023 WL 8891002, at *3 (D.D.C. Dec. 26, 2023) (citation omitted); *Comm. for a Free Namibia v. South West Africa People's Org.*, 554 F. Supp. 722, 725 (D.D.C. 1982) ("FARA specifically provides for enforcement of its provisions and assigns that task to the Department of Justice").

### (2)    Plaintiff Fails to Specifically Plead, as Required Under Rule 9.

Where, as here, a complaint alleges fraud, Plaintiff must satisfy the heightened pleading standard under Rule 9.  Fed. R. Civ. Proc. 9(b).  *Prunte v. Universal Music Grp.*, 484 F. Supp. 2d 32, 42 (D.D.C. 2007) ("This heightened pleading standard [of Rule 9] is applicable to civil RICO claims") (citing *Danielsen v. Burnside-Ott Aviation Training Ctr., Inc.*, 941 F.2d 1220, 1229 (D.C. Cir. 1991)).   Rule 9 requires Plaintiff to give "'fair notice of [his] claims and grounds therefore, so that [Defendants] can frame their answers and defenses.'"  *Bates v. Nw. Human Servs., Inc.*, 466 F. Supp. 2d 69, 88-89 (D.D.C. 2006) (quoting *Fink*, 772 F.2d at 963).  That means "'stat[ing] the time, place and content of the false misrepresentations, the fact misrepresented[,] and what was retained or given up as a consequence of the fraud.'"  *Id.* at 89 citing *U.S. ex rel. Williams*, 389 F.3d 1251, 1256 (D.C. Cir. 2004)); *see also W. Associates Ltd. P'ship ex rel. Ave. Associates Ltd. P'ship*, 235 F.3d at 637 ("RICO claims premised on mail or wire fraud must be particularly scrutinized because of the relative ease with which a plaintiff may mold a RICO pattern from allegations that, upon closer scrutiny, do not support it.").

Plaintiff fails to specifically plead either alleged predicate act, as the Amended Complaint lacks a single specific and false statement attributed to Defendants.  Instead, Plaintiff merely alleges that Defendants were responsible for some nebulous narrative connecting him to the Muslim Brotherhood through the publishing of some misleading articles.  Am. Compl. ¶¶ 5, 114.[7] Noticeably absent is information about the problematic articles, such as when, where, and how they were published, or even the European Defendants' involvement as it relates to them.  This

---

[7] That Plaintiff still is unable to meet this heightened pleading standard even after amending his complaint evidences the fact that Plaintiff has no case.  *See Williams*, 2023 WL 8600508, at *2 ("[D]ismissal with prejudice is proper" where plaintiff "has already filed an amended complaint."); *Hourani*, 943 F. Supp. 2d at 172 (same); *Hamrick*, 775 F. Supp.2d at 142 (same).

deficiency fails to provide "fair notice of [his] claims and grounds therefore, so that [Defendants] can frame their answers and defenses." *Bates*, 466 F. Supp. 2d at 88-89 (internal quotation marks and citation omitted).

In a footnote, Plaintiff refers to a report titled "The Muslim Brotherhood in Austria," authored by Dr. Vidino, as a key source of all the allegedly false statements about him, *see* Am. Compl. ¶ 56 n.16, but he does not quote even a single passage from the report. Plaintiff's reasons for de-emphasizing the report are obvious. The report is dated August 2017. But the Amended Complaint alleges that the European Defendants did not retain Dr. Vidino until January 2018. Am. Compl. ¶ 81. Thus, Plaintiff cannot rely on the report as a basis for his RICO claim.[8] Indeed, it is not even clear based on Plaintiff's allegations if the European Defendants had been retained by the UAE in August 2017. Am. Compl. ¶ 73 (alleging European Defendants were only making proposals to the UAE in August 2017).

Accordingly, Plaintiff fails to adequately plead any predicate acts to support his RICO claims, let alone two. Therefore, Plaintiff's RICO claims should be dismissed.

### (3)   Plaintiff's Defamation Allegations Are Not Predicate Acts of Wire Fraud or Bank Fraud.

Plaintiff attempts to cast allegations sounding in defamation as predicate acts of wire fraud and bank fraud. *See* Am. Compl. ¶ 115 (citing 18 U.S.C. §§ 1343, 1344). But this Court has already held that "the law is clear" that "defamation is not a predicate act under RICO." *Center*

---

[8] Nor can Plaintiff rely on the reports and/or statements referenced in footnote 24 of the Amended Complaint to cure this deficiency. *See* Am. Compl. ¶ 90 n.24. As Plaintiff's own pleading evidences, the two reports ("Mapping of the Muslim Brotherhood in Germany" and "MB in Austria") are internal and have not been shared with anyone other than the European Defendants. And the statement "in a publication called *Foreign Policy*" that allegedly "referred to Dr. Hafez as belonging to a group of 'known Islamist actors and supporters'" lacks the specificity needed under Rule 9 to put the European Defendants on notice as to the extent, if any, of their alleged involvement. *Id.*

*for Immigration Studies v. Cohen*, 410 F. Supp. 3d 183, 191 (D.D.C. 2019), *aff'd*, 806 F. App'x 7 (D.C. Cir. 2020).  Nor can a plaintiff plead around this rule by "shoehorn[ing] a defamation claim into the RICO framework."  *Id.*  For instance, in *Center for Immigration Studies*, a plaintiff alleged that the defendant committed wire fraud by falsely labeling the plaintiff a "hate group" and disseminating that designation over the internet.  *Id.* at 190, 194.  In dismissing the plaintiff's RICO claim, this Court observed that the plaintiff had "clearly tried to shoehorn a defamation claim into the RICO framework," and ruled that "a plaintiff 'complaining about a defamatory statement cannot end-run the requirements for a defamation claim' by pleading it as a RICO violation."  *Id.* at 191 (quoting *Teltschik v. Williams & Jensen, PLLC*, 748 F.3d 1285, 1288 (D.C. Cir. 2014)).  Other courts have also rejected such pleadings as legally insufficient.  *See*, *e.g.*, *Kimberlin v. Nat'l Bloggers Club*, No. 13-cv-3059, 2015 WL 1242763, at *1, *9 (D. Md. Mar. 17, 2015) (dismissing RICO claim based on allegations that defendant "provided false information to media outlets, politicians, and law enforcement officials" because claim "reflect[ed] more of an attempt to spin an alleged scheme to harm his reputation than . . . a viable RICO claim"); *Ritchie v. Sempra Energy*, No. 10-cv-1513, 2013 WL 12171757, at *4 (S.D. Cal. Oct. 15, 2013) (dismissing RICO claim based on allegations of smear campaign (via website and press releases) designed to injure company's goodwill and lower its stock prices because they did constitute predicate offense under RICO); *Kimm v. Lee*, No. 04-cv-5724, 2005 WL 89386, at *4 (S.D.N.Y. Jan. 13, 2005) (dismissing RICO claim arising out of alleged smear campaign because it was nothing more than "thinly clothed defamation claims"); *Marks v. City of Seattle*, No. C03-1701, 2003 WL 23024522, at *2, 6 (W.D. Wash. Oct. 16, 2003) (dismissing RICO claim based on allegations that defendant aired broadcast false statements about plaintiff because "defamation or

false light" were not predicate acts or "false statements in the sense of fraudulent misrepresentation").

The allegations underlying Plaintiff's RICO claim are nothing more than attempts to reframe a defamation claim within a RICO framework, as Plaintiff concedes in various parts of the Amended Complaint.  Thus, Plaintiff alleges in the Amended Complaint:  "Vidino is like a fox . . . . 'They have some kind of a relationship to people who are related to the Muslim Brotherhood,' so ***you cannot sue him for libel*** because he does not actually say you are a member of the Muslim Brotherhood!"  Am. Compl. ¶ 38 (emphasis added).  The failure to meet the required elements of a RICO claim, combined with the underlying nature of the allegations as akin to defamation, requires the dismissal of Plaintiff's RICO claim.

### b.    Plaintiff Fails to Plead an Enterprise.

To meet the "enterprise" element of a RICO claim, Plaintiff must show: (1) an ongoing organization; (2) the various associates of which function as a continuing unit; and (3) the organization has an existence wholly *separate and apart* from the alleged pattern of racketeering activity.  *United States v. Turkette*, 452 U.S. 576, 583 (1981).  With respect to the third element, the pleaded RICO enterprise must be distinct from the defendant person/entity alleged to have violated the RICO Act.  *Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 158 (2001) ("[O]ne must allege and prove the existence of two distinct entities: (1) a 'person'; and (2) an 'enterprise' that is not simply the same 'person' referred to by a different name."); *Confederate Mem'l Ass'n v. Hines*, 995 F.2d 295, 300 (D.C. Cir. 1993) ("[T]he same entity cannot be [named as] the RICO enterprise and [as] a RICO defendant.") (citation omitted); *Yellow Bus Lines, Inc. v. Drivers, Chauffeurs & Helpers Loc. Union 639*, 883 F.2d 132, 139 (D.C. Cir. 1989), *on reh'g in part*, 913 F.2d 948 (D.C. Cir. 1990) (designation of one entity "as both the 'enterprise' and the

defendant 'person' does not comport with statutory language or design"); *Bates*, 466 F. Supp. 2d at 80.

As a matter of law, a corporate defendant and its agents acting within the scope of their roles cannot constitute a RICO enterprise because a corporate principal "'necessarily acts through its agents.'" *U.S. Dominion, Inc. v. MyPillow, Inc.*, No. 1:21-cv-0445 (CJN), 2022 WL 1597420, at *5 (D.D.C. May 19, 2022) (quoting *Ray v. Spirit Airlines, Inc.*, 836 F.3d 1340, 1357 (11th Cir. 2016)).  Thus, in *U.S. Dominion, Inc.*, Dominion, its public relations firm Hamilton Place, and its attorneys at Clare Locke did not constitute a RICO enterprise for launching and sustaining a "vast and never-ending public relations campaign" against the defendants.  2022 WL 1597420, at *5-6. As Dominion's agents, Hamilton and Clare Locke at all times acted at the direction of and for the benefit of Dominion, and within the scope of their agency. *Id.*  Thus, they could not be independent "persons" associating with an enterprise because they were part of Dominion. *See id.* at *5 (defining "enterprise").  Put differently, Dominion could not associate with itself as part of an enterprise, and it was not sufficiently "separate and apart" from the alleged enterprise. *Id.* ("[I]f a corporate defendant were to face RICO liability 'for participating in an enterprise comprised only of its agents,' then RICO liability 'will attach to any act of corporate wrong-doing and the statute's distinctness requirement' between the 'person' and the 'enterprise' would be 'rendered meaningless.'") (quoting *U1it4less, Inc. v. Fedex Corp.*, 871 F.3d 199, 205–06 (2d Cir. 2017)); *see also Kelly v. Palmer, Reifler & Assocs., P.A.*, 681 F. Supp. 2d 1356, 1382–83 (S.D. Fla. 2010) (finding no RICO enterprise between lawyers and clients because lawyers "were agents of the . . . clients who provided legal and other services").

Here, Plaintiff has essentially conflated the UAE with the alleged enterprise, claiming that they are one and the same.  The alleged enterprise consists solely of the UAE and its associated

Defendants, who are described as acting under the direction of and for the benefit of the UAE—as alleged agents. For example, the Amended Complaint mentions the UAE and certain of its representatives as "Relevant Non-Parties." Am. Compl. ¶¶ 1, 28-30. Moreover, it claims that while Alp Services' client was nominally an Emirati enterprise called Ariaf, "the hacked documents make clear that the UAE's top leadership was in charge." Am. Compl. ¶ 77. The complaint further describes the UAE's alleged unlawful enterprise, reinforcing the idea that the UAE is the core entity involved. Am. Compl. ¶ 78. Under Plaintiff's theory, the other Defendants are not genuine members of the alleged enterprise; rather, they are merely acting as agents of the UAE. This characterization reduces the alleged enterprise to just the UAE, yet a governmental entity cannot operate as a RICO enterprise and simultaneously be considered a part of that same enterprise any more than a corporate entity can. *See Ray*, 836 F.3d at 1357 ("[A] corporate defendant acting through its officers, agents, and employees is simply a corporation. Labeling it as an enterprise as well would only amount to referring to the corporate 'person' by a different name."). An association-in-fact enterprise must consist of a *group of persons* associated together for a common purpose of engaging in a course of conduct. *Boyle v. United States*, 556 U.S. 938, 946 (2009)(citing *Turkette*, 452 U.S. at 583).

Thus, similar to the scenario in *Dominion*, where the alleged enterprise was merely a rebranding of the primary entity, the alleged enterprise in this case simply reflects the UAE under a different guise. Furthermore, the European Defendants cannot be classified as members of the enterprise solely by virtue of the services they provided as hired contractors. *See Martinez v. JPMorgan Chase Bank, N.A.*, 178 F. Supp. 3d 184, 191 (S.D.N.Y. 2016) (dismissing claim where complaint "merely state[d] that JPM Chase provided banking services to BNP Paribas or Cuban

entities, which is insufficient to constitute a RICO enterprise"). The European Defendants cannot be considered a part of an enterprise for simply providing the contracted-for services.

For the foregoing reason, Plaintiff's RICO claims should be dismissed.

> ### 2.  *Plaintiff's Remaining RICO Claims (His Second, Third, Fourth, and Fifth Claims) Should Be Dismissed Because Plaintiff Fails to Plausibly Plead an Underlying RICO Claim.*

For the reasons stated above, Plaintiff fails to plausibly plead a substantive RICO violation under 18 U.S.C. § 1962. *See* Sec. II.C.1, *supra*. Consequently, Plaintiff's remaining RICO claims, which rely on a plausibly pleaded underlying RICO claim, must fail. *See Ctr. for Immigr. Studs.*, 410 F. Supp. 3d at 194 ("Because the Court finds that plaintiff failed to allege a substantive RICO violation under Section 1962(c), it has failed to plead a conspiracy to violate RICO under Section 1962(d)."); *E. Sav. Bank, FSB v. Papageorge*, 31 F. Supp. 3d 1, 15 (D.D.C. 2014) ("Since the plaintiff has failed to plead a RICO violation under 18 U.S.C. § 1962(a)–(c), its claim under § 1962(d) must fail, because there was no violation in which the defendant could have conspired."), *aff'd*, 629 F. App'x 1 (D.C. Cir. 2015); *Danielsen v. Burnside-Ott Av. Training Ctr.*, 941 F.2d 1220, 1229 (D.C. Cir. 1991) ("The civil remedy created by § 1964(c) authorizes recovery only for injury 'by reason of' the RICO violation.").

> ### 3.  *Plaintiff Fails to Plausibly Plead a Conspiracy.*

Plaintiff alleges that the European Defendants violated 18 U.S.C. § 1962(d). "To state a § 1962(d) conspiracy, the complaint must allege that (1) two or more people agreed to commit a subsection (c) offense, and (2) a defendant agreed to further that endeavor." *RSM Prod. Corp. v. Freshfields Bruckhaus Deringer U.S. LLP*, 682 F.3d 1043, 1048 (D.C. Cir. 2012) (citing *Salinas v. United States*, 522 U.S. 52, 65 (1997)).

Similar to how principals and their agents acting in the scope of their agency cannot form a RICO enterprise (*see supra* Sec. II.C.1.b), under the Intracorporate Conspiracy Doctrine, a

principal and/or agents acting within the scope of their agency cannot constitute a RICO conspiracy. *See Brown v. Sim*, No. Civ.A. 03-2655, 2005 WL 3276190, at *3 (D.D.C. Sept. 30, 2005). This is because "[t]o state a § 1962(d) conspiracy, the complaint must allege that . . . two or more people agreed." *RSM Prod.*, 682 F.3d at 1048. But an agent acting on behalf of a principal is not an independent entity but merely an extension of the principal. *See Ziglar v. Abbasi*, 582 U.S. 120, 153 (2017). "[I]t then follows that there has not been an agreement between two or more separate people" because the principal cannot enter into an agreement with itself. *Id.*

The D.C. Circuit has not yet expressly applied the intracorporate conspiracy doctrine to RICO conspiracy claims, but it has extended the doctrine to other claims. *See Bowie v. Maddox,* 642 F.3d 1122, 1130 (D.C. Cir. 2011) (collecting cases in which courts applied the doctrine to conspiracy to interfere with civil rights claims, 42 U.S.C. § 1985); *see also In re Ellipso, Inc.*, No. 09-00148, 2011 WL 482726, at *22 (Bankr. D.D.C. Feb. 7, 2011) (observing, in addressing a common law conspiracy theory, that "under the intracorporate conspiracy doctrine, [debtor] could not be found to having conspired with its attorneys to commit a RICO violation"); *Si v. Laogai Research Found.*, 71 F. Supp. 3d 73, 98 (D.D.C. 2014) (applying doctrine to conspiracy in False Claims Act context); *Dominion*, 2022 WL 1597420, at *5-6 (principal and agents cannot constitute a RICO enterprise following a substantially similar rationale).[9] And other

---

[9] *United States v. Philip Morris USA, Inc.*, 449 F. Supp. 2d 1 (D.D.C. 2006), is inapposite. *Phillip Morris* involved Phillip Morris USA, Inc. and its parent company Altria Group. *Id.* at 906 n.77. Altria was held liable for conspiring with Phillip Morris to commit RICO. *Id.* The court, concerned that the corporate structure between the parent and subsidiary companies was being utilized for RICO purposes, held that the intracorporate conspiracy doctrine did not protect either a parent or a subsidiary against a RICO conspiracy claim. *Id.* But here, as pleaded in the Amended Complaint, Defendants are merely the UAE's agents, engaged for an independent project. *See* Am. Compl. ¶ 24. Unlike in a parent and subsidiary corporate setting, there is no formal and longstanding structural relationship between the UAE and European Defendants.

federal courts have applied the doctrine to bar RICO conspiracy claims.[10]

Under the doctrine, as a matter of law, the European Defendants could not have entered into an agreement to commit RICO because, assuming (though not conceding) the truth of Plaintiff's allegations, they are agents of the UAE. *See* Am. Compl. ¶ 24. Thus, they could not have entered into agreements with themselves when they allegedly acted in the scope of their agency. Nor did they enter into agreements with the UAE when they allegedly acted in the same scope. Even assuming the truth of Plaintiff's improbable allegations, Plaintiff fails to allege an agreement to adequately plead his RICO conspiracy claim.

For this additional reason, Plaintiff's Second Claim for RICO conspiracy should be dismissed.

### 4. *Plaintiff Fails to Plead Damages to His Business or Property.*

Plaintiff asserts that under 18 U.S.C. § 1964(c), he is entitled as a private individual to damages resulting from Defendants' alleged RICO actions. Am. Comp., ¶¶ 126-27. But he does not plead the requisite injuries. Section 1964(c) expressly refers to (and therefore limits damages) to harm inflicted on a plaintiff's "business or property." 18 U.S.C. § 1964(c) ("Any person injured in his business or property by reason of a violation of section 1962 of this chapter may sue . . . ."); *see also Yellow Bus Lines*, 913 at 950 ("To make out a claim for relief a civil RICO claimant must prove (1) a violation of the substantive RICO statute, 18 U.S.C. § 1962, and (2) an injury to the plaintiff's business or property by reason of a violation of section 1962.") (internal quotation marks

---

[10] *See, e.g.*, *Walters v. McMahen*, 795 F. Supp. 2d 350, 351, 358–59 (D. Md. 2011) (applying doctrine to RICO conspiracy claim, noting that "the Fourth Circuit has consistently found that the intracorporate conspiracy doctrine can be broadly applied to conspiracy cases, including civil RICO claims"), *aff'd*, 684 F.3d 435 (4th Cir. 2012); United States v. Gwinn, No. 5:06–cv–00267, 2008 WL 867927, *22-23 (S.D.W. Va. Mar. 31 2008).

omitted); *Al-Kazemi v. Gen. Acceptance Inv. Corp.*, 633 F. Supp. 540, 542 (D.D.C. 1986) ("Under the applicable provision of the RICO statute, plaintiff can recover treble damages if he can demonstrate a violation of 18 U.S.C. § 1962 that caused him to suffer *injury to his business or property*.") (citing 18 U.S.C. § 1964(c)) (emphasis added, additional citation omitted).

Here, by contrast, the Amended Complaint is silent as to Plaintiff's business and property, let alone injuries to them. And the purported injuries to Plaintiff's reputation and career do not fall within Section 1964(c) because they are ultimately personal injuries or derived therefrom. Indeed, "courts in this District . . . have consistently rejected the argument that pecuniary losses derivative of personal injuries are injuries to 'business or property' cognizable under RICO." *Aston v. Johnson & Johnson*, 248 F. Supp. 3d 43, 50 (D.D.C. 2017); *see also Klayman v. Obama*, 125 F. Supp. 3d 67, 88 (D.D.C. 2015) (harm to law practice derived from reputational damage did not qualify as injury under 18 U.S.C. § 1964(c)); *Burnett v. Al Baraka Inv. and Dev. Corp.,* 274 F. Supp. 2d 86, 102 (D.D.C. 2003) ("[E]ven pecuniary losses that are derivative of personal injuries are not 'business or property' injuries under RICO."); *Tsipouras v. W & M Properties, Inc.,* 9 F. Supp. 2d 365, 368 (S.D.N.Y.1998) ("[M]ere injury to character, business reputation, and/or the intentional infliction of emotional distress are not actionable under civil RICO.").

For this additional reason, Plaintiff's Third Claim for damages brought as a private individual should be dismissed.

### 5.    *18 U.S.C. §§ 1961(4)-(5) Are Not Causes of Action.*

Plaintiff asserts that Defendants violated 18 U.S.C. §§ 1961(4)-(5). Am. Compl., ¶¶ 128-137. But these statutory sections are merely definitions of elements constituting a RICO claim under 18 U.S.C. § 1962. 18 U.S.C. § 1961(4) (defining "enterprise"); *id.* § 1961(5) (defining "pattern of racketeering activity"). *See id.* (section titled "Definitions"). They are not causes of

action.  *See Cote v. Tennant*, No. 609-CV-1273 NAM/GHL, 2010 WL 1930572, at *3 (N.D.N.Y. May 10, 2010) (referring to definitions set forth in 18 U.S.C. §1961(4) and (5) in context of RICO claim under 18 U.S.C. § 1962).  In any event, Plaintiff fails to plausibly plead RICO.  *See* Sec. II.C.1, *supra*.

Consequently, for this additional reason, Plaintiff's Fourth and Fifth Claims should be dismissed.

### 6.    *Plaintiff Fails to Plead Domestic Damages.*

To bring a RICO claim, Plaintiff must also "allege and prove a *domestic* injury to business or property" because RICO "does not allow recovery for foreign injuries."  *RJR Nabisco, Inc. v. Eur. Cmty.*, 579 U.S. 325, 354 (2016) (emphasis added); *id.* at 327 ("[W]e conclude that § 1964(c) does not overcome the presumption against extraterritoriality.  A private RICO plaintiff therefore must allege and prove a *domestic* injury to its business or property.").  Whether Plaintiff has met this requirement "is a context-specific inquiry that turns largely on the particular facts alleged in a complaint."  *Yegiazaryan v. Smagin*, 599 U.S. 533, 543 (2023).  "Specifically, courts should look to the circumstances surrounding the alleged injury to assess whether it arose in the United States." *Id.* at 543–44.  Thus, Plaintiff must show that "the nature of the alleged injury, the racketeering activity that directly caused it, and the injurious aims and effects of that activity" "sufficiently ground the injury in the United States."  *Id.* at 544-45.  What matters is not the injury "in isolation," but the injury "as the product of racketeering activity."  *Id.* at 545.  To that end, courts consider where "[m]uch of the alleged racketeering activity that caused the injury occurred" and where the "injurious effects of the racketeering activity [were] largely manifested."  *Id.*

Plaintiff's own allegations indicate that the relevant racketeering activities are predominantly European.  Specifically, the issues stem from an August 2017 report sponsored by

Austrian intelligence and the University of Vienna, titled "The Muslim Brotherhood in Austria."[11] Am. Compl. ¶ 56 n.16. Plaintiff then alleges that in September 2017, the Austrian Ministry of Interior relied on that report in issuing a press release warning of the radicalization of Muslims in Europe and mentioning Plaintiff therein. Am. Compl. ¶ 59. From there, Plaintiff alleges lost professional opportunities in the form of academic speaking engagements. *Id.* But Plaintiff declines to elaborate on where those opportunities were. That is because they are likely to have been opportunities not in the United States but in Europe, given that according to his Amended Complaint, Plaintiff at the time was primarily a "Senior Researcher at the University of Salzburg [in Austria] *from 2014 to 2021* [during the relevant period here]." Am. Compl. ¶ 15 (emphasis added).

Under Plaintiff's theory, the European connections abound: The European Defendants, who Plaintiff describes as a "*Swiss*, private detective agency," allegedly retained Defendant Vidino to provide "[i]nteresting leads/rumours . . . regarding the subject of investigation [of] organisations/individuals/funding *in Europe*" and a "[l]ist of alleged members of the first-tier organisations *in European countries*,"[12] and Defendant Vidino "subsequently provided testimony in January 2020 . . . to the Austrian intelligence services." Am. Compl. ¶¶ 40, 56, 81 (emphasis added). And of course, all the alleged activity in Europe culminated in the November 9, 2020

---

[11] As detailed above (*see* Sec. II.C.2), Defendant Vidino drafted and published this report well before his alleged involvement with the European Defendants, as according to Plaintiff's Amended Complaint, the European Defendants did not retain Defendant Vidino until January 24, 2018. *Compare* Am. Compl. ¶ 56 n.17, *with* Am. Compl. ¶ 81.

[12] That Defendant Vidino may have been domiciled in the United States is irrelevant. Under Plaintiff's theory of the case, Defendant Vidino communicated with, and provided research for, the European Defendants directly and the UAE indirectly—*i.e.* actors outside the United States. Am. Compl. ¶¶ 27-30.

"Operation Luxor" raid carried out by *Austrian* police against Plaintiff and others, *in Austria*.  Am. Compl. ¶ 56.

In stark contrast, save for conclusory statements insufficient under even Rule 8, Plaintiff alleges no facts connecting the alleged racketeering activity to the United States.  *See* Am. Compl. ¶ 11 (alleging that one of the European Defendants' objectives was to "inform selected journalists about our targets, their leadership role within the MB *in Europe* and connections with Al Qaeda") (emphasis added); Am. Compl. ¶ 12 (alleging that the European Defendants proposed to "seriously damage, if not destroy, the reputation and viability of key MB *European* groups") (emphasis added); Am. Compl. ¶ 39 (referring to a German publication titled, "Abu Dhabi Secrets—How United Arab Emirates Seeks to Leverage Its Influence *in Europe*") (emphasis added).

Even if Plaintiff could adequately allege a connection to the United States, his U.S. residency does not somehow turn the RICO Act into a tool for policing conduct outside the United States.  *See Yegiazaryan*, 599 U.S. at 544 (rejecting "bright-line rule" that "makes the location of the plaintiff's residence determinative"); *Soudavar v. Islamic Republic of Iran*, 67 F. App'x 618, 619 (D.C. Cir. 2003) ("[A] mere financial loss by a resident of the United States does not constitute a direct effect *in the United States*" in context of the Foreign Sovereign Immunities Act) (emphasis added); *see also Dimondstein v. Stidman*, Civil Action No. 19-2474 (TJK), 2019 WL 6117527 at *2 n.3 (D.D.C. Nov. 18, 2019) ("This Circuit has repeatedly rejected the argument that a defamatory act occurs in the District of Columbia merely because a plaintiff suffers injury here.") (citing *Forras v. Rauf*, 812 F.3d 1102, 1106-08 (D.C. Cir. 2016)), *vacated and remanded on other grounds*, 986 F.3d 870 (D.C. Cir. 2021).

In sum, Plaintiff's scant allegations come nowhere close to asserting a domestic injury. *See RJR Nabisco*, 579 U.S. at 354.  For the foregoing reason, Plaintiff's RICO claims should be dismissed.

### 7.    *Plaintiff Fails to Plead Proximate Cause.*

To state a RICO claim, Plaintiff must show that the RICO predicate offenses were the "proximate cause" of his injury.  *Holmes v. Sec. Inv. Prot. Corp.*, 503 U.S. 258, 268 (1992); *Hemi Grp., LLC v. City of New York*, 559 U.S. 1, 8-9 (2010).  Proximate cause under RICO requires a "direct relation between the injury asserted and the injurious conduct alleged."  *Holmes*, 503 U.S. at 268.  "A link that is too remote, purely contingent, or indirect[t] is insufficient."  *Hemi Grp.*, 559 U.S. at 9 (internal quotation marks and citation omitted).  The Supreme Court has emphasized that RICO proximate cause differs from the proximate-cause standard applied in other contexts because RICO proximate cause requires more than mere foreseeability.  *Id.* at 12; *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 458 (2006).  For instance, the court in *Solomon v. Dechert LLP* held that a plaintiff failed to demonstrate RICO proximate causation when he alleged that the defendant hacked his emails and disseminated their contents to his employer and the press, which then led to termination of his employment.  No. 22-cv-3137 (JEB), 2023 WL 6065025, at *10 (D.D.C. Sept. 18, 2023).  The court explained, "a RICO predicate that merely facilitates an injurious act taken by a third party who acts out of her own interests and in her own judgment does not proximately cause the injury."  *Id.* at *11.  The court concluded that, because the press and the plaintiff's employer independently decided whether to publish the emails and to fire him, respectively, the defendants' dissemination of the hacked emails was not "decisive" and thus not the proximate cause of the plaintiff's injuries.  *Id.*

As in *Solomon*, Plaintiff fails to allege proximate cause under RICO.  Plaintiff alleges that European Defendants commissioned false articles and blog posts (presumably about Plaintiff, though the Amended Complaint does not expressly state), thereby leading to the publication of "false and misleading statements to the press, on Wikipedia and elsewhere online, and to the world's top financial risk compliance monitors."  Am. Compl. ¶¶ 2, 5, 10, 71-72, 78.  Plaintiff alleges that as a consequence of European Defendants' actions, he lost standing in the academic community, job and speaking opportunities, and ultimately income; he also alleges that as a consequence of these losses, he suffered psychological distress.  Am. Compl. ¶ 52.  But merely commissioning articles and blog posts to be posted online are not enough to show that Defendants' conduct caused Plaintiff to lose speaking engagements and job opportunities, which require intervening actions by numerous third parties.  Considering, based on the allegations in the Amended Complaint, that Plaintiff through long-standing relationships held (and still holds) positions at several academic institutions and previously had been engaged to speak at certain academic events (Am. Compl. ¶¶ 15, 52, 59), it is implausible that those third-party institutions and event organizers did not exercise independent judgment in deciding to sever their relationships with Plaintiff.  And Plaintiff does not (because he cannot seriously) suggest that the Austrian law enforcement and intelligence authorities failed to independently investigate and exercise their own judgment before raiding targets suspected of having ties to the Muslim Brotherhood, including Plaintiff.  Plaintiff concedes as much.  Am. Compl. ¶ 56 (the raid targeted seventy individuals, but of the twenty people allegedly mentioned by Defendant Vidino to Austrian authorities—of whom Plaintiff is not even alleged to be one—only ten were raided).  Put differently, these are precisely the sorts of allegations that the *Solomon* court held failed to allege proximate cause.  *See* 2023 WL 6065025, at *3-4, *10-11.

As for allegations that he suffered psychological distress, the Amended Complaint makes clear that this purported harm resulted not directly from the actions of European Defendants, but derivatively following effects on Plaintiff's reputation, as Plaintiff concedes he was unaware of Defendants' alleged actions until at least March 2023. *See* Am. Compl. ¶ 102. Plaintiff otherwise fails to plead any allegations in how the supposed discovery caused psychological distress or reputational damage.

For the foregoing reason, Plaintiff's RICO claims should be dismissed.

### D.  Plaintiff's Common Law Fraud Claim Should Be Dismissed

Plaintiff's common law fraud claim fails for three primary reasons. To establish a common law fraud claim under District of Columbia law, Plaintiff must demonstrate that the European Defendants knowingly misrepresented or omitted a material fact with the intent to induce reliance, and that Plaintiff reasonably relied to his detriment. *See Media General, Inc. v. Tomlin*, 532 F.3d 854, 858 (D.C. Cir. 2008).

First, Plaintiff has not alleged with sufficient specificity that the European Defendants made any material misstatements. A common law fraud claim is governed by the heightened pleading standards imposed by Fed. R. Civ. P. 9 (b). *Wilson v. On the Rise Enters., LLC*, 305 F. Supp. 3d 5, 18 (D.D.C. 2018). To satisfy this pleading standard in a fraud claim, Plaintiff must identify with particularity the "time . . . of the false misrepresentations," "who precisely was involved in the fraudulent activity," the "fact misrepresented," and the "facts that exemplify the purportedly fraudulent scheme." *McMullen v. Synchrony Bank*, 164 F. Supp. 3d 77, 95 (D.D.C. 2016) (quoting *United States ex rel. Williams v. Martin-Baker Aircraft Co., Ltd.*, 389 F.3d 1251, 1256–59 (D.C. Cir. 2004)).

Plaintiff's allegations do not come close to meeting the rigorous pleading standard. *First*, Plaintiff identifies only one alleged misrepresentation, stating that all Defendants inaccurately suggested that he "was associated with the Muslim Brotherhood or by implication some agent of the Muslim Brotherhood rather than a voice against Islamophobia and in favor of religious tolerance." Am. Compl. ¶ 147. There are no specific allegations about the content of the facts misrepresented, nor are the European Defendants specifically named as making statements that connect the Plaintiff to the Muslim Brotherhood. Additionally, the Amended Complaint lacks specifics regarding the time and location of the alleged false misrepresentations, as well as any details that would clarify the purported fraudulent scheme. The vague and conclusory nature of these statements renders it impossible for the European Defendants to defend against the allegations, necessitating dismissal of this claim.

*Second*, even assuming that Plaintiff has adequately alleged that the European Defendant made material misstatements (which he has not), this claim still fails due to a fundamental misunderstanding of common law fraud. In the District of Columbia, common law fraud requires that a plaintiff act in reliance upon the alleged misrepresentation to plaintiff's detriment. *See Shvartser v. Lekser*, 292 F. Supp. 3d 459, 463 (D.D.C. 2018) ("A claim for common law fraud . . . requires, among other things, an allegation that the plaintiff acted in reliance upon the alleged misrepresentation.") (quoting *Alicke v. MCI Commc'n Corp.*, 111 F.3d 909, 912 (D.C. Cir. 2017)); *Rodriguez v. Lab. Corp. of America Holdings*, 13 F. Supp. 3d 121, 129 (D.D.C. 2014) (same). Plaintiff does not allege that he took any action in reliance on statements made by the European Defendants. Instead, he alleges that third parties such as the Austrian authorities and various members of academia relied on these statements. *See* Am. Compl. ¶ 59. However, the "Court of Appeals has rejected the argument that a third party's reliance satisfies the reliance element of

common-law fraud." *Rodriguez* 13 F. Supp.3d at 129; *see also Aktieselskabet AF 21. November 2001 v. Fame Jeans Inc.*, 525 F.3d 8, 23 (D.C. Cir. 2008) (affirming dismissal of common law fraud because "[r]ather than suggesting its own reliance, [plaintiff] says the POT relied on [defendant's] alleged misrepresentation").   Therefore, Plaintiff cannot meet the element of reliance.

*Third*, Plaintiff has failed to allege any facts that would allow the Court to infer that the European Defendants knew or believed that any statements associating him with the Muslim Brotherhood were inaccurate or intended to deceive anyone regarding his association.   *See Rodriguez*, 13 F. Supp. 3d at 129.   For all these reasons, Plaintiff's common law fraud claim fails as a matter of law.

**E.      Plaintiff's Unfair or Deceptive Trade Practices Claim Should Be Dismissed**

Plaintiff's allegation that Defendants engaged in unlawful trade practices under the District of Columbia Consumer Protection Procedures Act ("CPPA") fails because the CPPA is inapplicable to him.   The CPPA regulates "transactions between a *consumer* and a merchant." *Ihebereme v. Capital One, N.A.*, 730 F. Supp. 2d 40, 51 (D.D.C. 2010) (emphasis added); *see also* D.C. Code § 28-3904; *Modern Mgmt. Co. v. Wilson*, 997 A.2d 37, 63 (D.C. 2010) ("The purpose of the CPPA is to protect consumers from a broad spectrum of unscrupulous practices by merchants.").

Plaintiff, however, is not a "consumer" within the meaning of the CPPA.   Subsection 28-3901(a)(2) of the CPPA defines "consumer" as "a person who. . . does or would purchase, lease (as lessee), or receive consumer goods or services, . . .or [a person who] provide[s] the economic demand for a trade practice." D.C. Code § 28-3901(a)(2).   Plaintiff has not alleged in his Amended Complaint that he qualifies as a consumer.   Moreover, he cannot make such an allegation because

34

his claims "do not arise from the purchase, lease or receipt of consumer goods or services." *Slaby v. Fairbridge*, 3 F. Supp. 2d 22, 27 (D.D.C. 1998).  Nor has Plaintiff alleged that the European Defendants are merchants as defined in the CPPA.

Regarding the European Defendants, Plaintiff provides only boilerplate language claiming that their "acts and practices" constitute "deceptive and misleading practices."  Am. Compl. ¶ 154. This is insufficient.  Since Plaintiff has not and cannot allege that he "purchased, leased or received consumer goods or services from [the European Defendants], he "fails to establish any consumer-merchant relationship to bring [his claims] within the scope of the [CPPA]."  *Slaby*, 3 F. Supp. 2d at 27; *see also Adler v. Vision Lab Telecomms., Inc.*, 393 F. Supp. 2d 35, 40 (D.D.C. 2005) (declining to apply CPPA where plaintiffs had not purchased, leased, or received services from defendants).

Even if Plaintiff were considered a consumer, his claim would still fail.  Plaintiff has not alleged that he relied on any purported misrepresentation or false statement.  *Supra* at II.D.  Instead, any potential false statement was allegedly made to third parties.  Under the CPPA, it is unlawful for a "person," among other things, to "misrepresent . . . a material fact which has a tendency to mislead" or to "fail to state a material fact if such failure tends to mislead."  D.C. Code § 28-3904. This prohibition applies "whether or not any consumer is in fact misled, deceived or damaged thereby."  *Id.*  These representations, however, must be made to Plaintiff and cannot be made to third parties.  *See Glycobiosciences, Inc. v. Innocutis Holdings, LLC*, 189 F. Supp. 3d 61, 72 (D.D.C. 2016) ("Because [Defendant's] unlawful trade practice allegations pertain solely to misrepresentations made to third parties…it fails to state a claim under the CPPA.").  Therefore, even assuming Plaintiff had a consumer-merchant relationship with the European Defendants (which he did not), his claim would still be without merit.

**F.      Plaintiff's Tortious Interference with Existing and Prospective Business Relations Claims Should Be Dismissed**

Plaintiff alleges that Defendants tortiously interfered with existing and prospective business relations.  *See* Am. Compl. ¶ 165-180.  Plaintiff, however, has not provided sufficient specificity regarding any conduct by the European Defendants that supports these theories of liability.  To prevail under tortious interference with existing or prospective business relationship, Plaintiff must plead and demonstrate: (1) the existence of a valid contractual or other business relationship; (2) the defendant's knowledge of the relationship; (3) intentional interference with that relationship by the defendant; and (4) resulting damages.  *Sabre Int'l Sec. v. Torres Advanced Enter. Solutions,* 857 F. Supp. 2d 97, 103 (D.D.C. 2012).

Plaintiff broadly asserts that he "had a business relationship with the University of Salzburg," that Defendants "knew that Plaintiff had a business relationship with the University of Salzburg," and made false allegations about his ties to the Muslim Brotherhood with the intent to destroy his career.  Am. Compl. ¶¶ 166-69.  However, these conclusory allegations merely echo the elements of the claim without providing any factual basis to support the assertion that the European Defendants intentionally interfered with any business relationship.

Moreover, Plaintiff fails to specify the contracts he had with the University of Salzburg or any other entity.  *See Sharpe v. Am. Acad. of Actuaries*, 285 F. Supp. 3d 285, 292 (D.D.C. 2018) (requiring the plaintiff to "plead the specific contracts or expectancies that the Plaintiff claims were interfered with"); *Samuel v. Wells Fargo & Co.*, No. CV 17-2539 (CKK), 2018 WL 4705807, at *3 (D.D.C. Oct. 1, 2018) ("Plaintiff failed to plead the existence of a valid business relationship or expectancy, which requires the probability of a specific future contractual or economic relationship."); *Nyambal v. Alliedbarton Sec. Servs., LLC*, 153 F. Supp. 3d 309, 316 (D.D.C. 2016) ("[T]ortious interference claims are routinely dismissed where the plaintiff fails to

name specific contractual relationships that the defendant allegedly interfered with, or to identify any facts related to future contracts compromised by the alleged interferer."). There are no allegations in the Amended Complaint that the European Defendants ever mentioned Plaintiff in any communications. Furthermore, there are no facts suggesting that investigative firms in Switzerland, allegedly directed by the UAE to discredit its regional rival Qatar, would have any motive to interfere with a business relationship between an Austrian political science professor and a university. As such, Plaintiff's "generic allegations about the existing and prospective business relations" are insufficient to plausibly plead tortious interference in the District. *Precision Contr. Sols., LP v. ANGI Homeservices, Inc.*, 415 F. Supp. 3d 113, 122 (D.D.C. 2019)).

Here, Plaintiff has failed to allege facts to support his tortious interference with existing or prospective business relations claim against the European Defendants. Therefore, this claim should be dismissed. *See Sabre*, 857 F. Supp. 2d at 103 (finding that a "claimant must allege far more than a 'general intent to interfere or knowledge that the conduct will injure [its] business dealings'") (quoting *Sheppard v. Dickstein,* 59 F. Supp. 2d 27, 34 (D.D.C. 1999)).

### G.      Plaintiff's Prima Facie Tort Claim Should Be Dismissed

Plaintiff's prima facie tort claim must be dismissed because "the District of Columbia does not recognize a cause of action for *prima facie* tort." *Han. Fin. Supervisory Serv.*, No. 18-141 (EGS/GMH), 2022 WL 2438513, at *5 n. 4 (D.D.C. Jul. 5, 2022) (*citing Taylor v. District of Columbia*, 957 A.2d 45, 50 (D.C. 2008)); *see also Art Metal-U.S.A., Inc. v. United States,* 577 F. Supp. 182, 184 (D.D.C 1983) ("District of Columbia courts have not embraced a form of generic tort like the *prima facie* tort . . . .").

III.   **PLAINTIFF'S CLASS ACTION ALLEGATIONS SHOULD BE DISMISSED OR STRICKEN**

Plaintiff claims to represent himself and all others similarly situated in this action.  *See* Am. Compl. ¶¶ 155-161.  However, the class action allegations are severely lacking, offering only boilerplate recitation of the elements of Federal Rule of Civil Procedure 23.  To establish a class action, Rule 23 requires Plaintiff to satisfy four criteria:  (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.  "Failure to adequately demonstrate any of the four is fatal to class certification."  *Moore v. Napolitano*, 269 F.R.D. 21, 27 (D.D.C. 2010).  "Additionally, some courts have imposed an 'implied' fifth requirement that the class be adequately defined and clearly ascertainable—the purpose of which is to 'require[ ] plaintiffs to be able to establish that the general outlines of the membership of the class are determinable at the outset of litigation.'" ! *Hoyte v. District of Columbia*, 325 F.R.D. 485, 489 (D.D.C. 2017) (quoting *Thorpe v. District of Columbia*, 303 F.R.D. 120, 139 (D.D.C.2014)).

Plaintiff's class action allegations are "fatally deficient because individualized issues will necessarily predominate."  *Salvador v. Allstate Property and Casualty Ins. Co.*, 2020 WL 7042843, at *5 (D.D.C. 2020).[13]  The proposed class includes "all those who were damaged by Defendants

---

[13] Plaintiff likely cannot satisfy the numerosity requirement either.  "A class that encompasses fewer than 20 members will likely not be certified absent other indications of impracticability of joinder."  *Coleman through Bunn v. District of Columbia*, 306 F.R.D. 68, 76 (D.D.C. 2015) (quoting Newberg on Class Actions § 3:11 (5th ed. 2014)).  Plaintiff alleged that there are "hundreds or thousands of members in the proposed Class" but his class is limited to individuals that allegedly were damaged by "Defendants promulgation of and dissemination of the UAE funded enemies list."  Compl. ¶¶156-157.  Plaintiff alleges that the Defendants accused "at least 50 other persons and institutions of illicit or improper ties with the Muslim Brotherhood."

promulgation of and dissemination of the UAE funded enemies list."  Am. Compl. ¶ 56.  "This necessarily requires individualized inquiries into whether each putative class member was actually injured, defendants' liability, and appropriate damages.  The prevalence of these individualized issues defeats class certification."  *Id.* at *5; *see also Artis v. Yellen*, 307 F.R.D. 13, 24 (D.D.C. 2014) (holding that class could not exist where "membership in the class [was] contingent on an individualized merits determination").  Therefore, the Court should strike or dismiss the class allegations due to their insufficiency.[14]  *See* D.C. Local Rule 23.1(b) ("A defendant may move at any time to strike the class allegations or to dismiss the complaint.").

---

Compl. ¶ 47.  But it is unlikely that these individuals have ties to the United States and could therefore bring forth claims here.

[14] The European Defendants reserve the right to make a more robust argument regarding Plaintiff's class action claims at the class certification stage, if any of Plaintiff's claims survive.   !

## CONCLUSION

For the foregoing reasons, the Amended Complaint should be dismissed with prejudice against the European Defendants.


Dated:  October 18, 2024

By:     */s/ Igor V. Timofeyev*
Igor V. Timofeyev (D.C. Bar No. 998291)
PAUL HASTINGS LLP
2050 M Street NW
Washington, D.C. 20036
Telephone: (202) 551-1700
igortimofeyev@paulhastings.com

Adam Fee (*pro hac vice*)
PAUL HASTINGS LLP
1999 Avenue of The Stars, 27th Floor
Los Angeles, California 90067
Telephone: (310) 620-5700
adamfee@paulhastings.com

D. Scott Carlton (*pro hac vice*)
PAUL HASTINGS LLP
515 South Flower Street, 25th Floor
Los Angeles, California 90071
Telephone: (212) 683-6000
scottcarlton@paulhastings.com

*Attorneys for Defendants ALP Services SA, Diligence SARL, Mario Brero, Lionel Badal, and Muriel Cavin*