**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

-------------------------------------------------------------------X
:
FARID HAFEZ, individually and on behalf of :
all others similarly situated, :
: Civil Action No.: 1:24-cv-00873-AHA
Plaintiff, :
: **ORAL ARGUMENT REQUESTED**
*v.* :
:
LORENZO VIDINO, individually and in his :
respective corporate capacities, GEORGE :
WASHINGTON UNIVERSITY, PROGRAM :
FOR EXTREMISM AT THE GEORGE :
WASHINGTON UNIVERSITY, ALP :
SERVICES SA, DILIGENCE SARL, MARIO :
BRERO, MURIEL CAVIN, LIONEL BADAL, :
ARIAF STUDIES AND RESEARCH LLC, and :
DOES 1 through 25, :
:
Defendants. :
-------------------------------------------------------------------X

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS**
**GEORGE WASHINGTON UNIVERSITY AND THE PROGRAM**
**FOR EXTREMISM AT THE GEORGE WASHINGTON UNIVERSITY'S**
**MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**

AIDALA, BERTUNA & KAMINS, P.C.

David M. Schwartz, Esq. (DC #208813)
Arthur L. Aidala, Esq.
(*Pro Hac Vice Admission Forthcoming*)
Imran H. Ansari, Esq.
(*Pro Hac Vice Admission Forthcoming*)
546 Fifth Avenue, 6th Floor
New York, New York 10036
(212) 486-0011
david@davidschwartzesq.com
aidalaesq@aidalalaw.com
iansari@aidalalaw.com

*Attorneys for Plaintiff Farid Hafez*

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................... ii

PRELIMINARY STATEMENT ............................................................................................. 1

LEGAL STANDARD ............................................................................................................ 1

ARGUMENT ......................................................................................................................... 3

   I.   DR. HAFEZ FULLY INCORPORATES HIS ARGUMENTS IN OPPOSITION TO THE OTHER DEFENDANTS' MOTIONS TO DISMISS ....................................................... 3

   II.   IN ADDITION TO GWU AND POE'S INDEPENDENT LIABILITY, VIDINO'S CONDUCT IS ATTRIBUTABLE TO GWU AND POE UNDER THE DOCTRINE OF VICARIOUS LIABILITY ................................................................................................. 4

   III.   THE FAC COMPLIES WITH RULE 8 ..................................................................... 11

   IV.   THE FAC STATES A RICO CLAIM AGAINST GWU AND THE POE ................. 13
      A.   DR. HAFEZ HAS STANDING TO BRING A CIVIL RICO SUIT ........................... 13
        i.  The FAC Sufficiently Alleges Domestic Injury to Business Or Property ................... 14
        ii. The FAC Plausibly Alleges Proximate Causation ..................................................... 17
      B.   GWU AND THE POE AGREED TO COMMIT OR FURTHER RICO OFFENSES AND ARE PART OF THE RICO CONSPIRACY ..................................................... 20
      C.   THE FAC PLAUSIBLY ALLEGES RICO PREDICATE OFFENSES COMMITTED BY GWU AND POE ......................................................................................... 23

   V.   DR. HAFEZ'S STATE LAW CLAIMS ARE TIMELY AND MERITORIOUS ............ 27
      A.   THE COMMON LAW FRAUD CLAIM IS PROPER ................................................. 27
      B.   THE UNFAIR TRADE PRACTICES/CPPA CLAIM IS PROPER ........................... 31
      C.   THE TORTIOUS-INTERFERENCE CLAIM IS PROPER ........................................ 33
      D.   THE PRIMA FACIE TORT CLAIM IS PROPER ...................................................... 36
      E.   THE STATE LAW CLAIMS ARE TIMELY .............................................................. 37
        i.  Alternatively Equitable Tolling Should Apply ............................................................ 38

   VI.   THE POE IS A LEGAL ENTITY CAPABLE OF BEING SUED ............................... 40

CONCLUSION……………………………………………………………………………… 42

# TABLE OF AUTHORITIES

**CASES**                                                                    **PAGE(S)**

*ABB Daimler-Benz Transport. (N. Amer.), Inc. v. Nat'l RR Passenger Corp.*
   14 F. Supp. 2d 75 (D.D.C. 1998) ............................................................. 30

*Abhe & Svoboda, Inc. v. Chao,*
   508 F.3d 1052 (D.C. Cir. 2007) ............................................................... 3

*Acosta v. Islamic Republic of Iran,*
   574 F. Supp. 2d 15 (D.D.C. 2008) ............................................................ 4

*Aktieselskabet AF 21 November 2001 v Fame Jeans Inc.,*
   525 F3d 8 (2008) ................................................................................... 12

*Alqahtani v George Washington Univ.,*
   1996 US Dist LEXIS 4213 [Mar. 29, 1996, Civ. No. 95-803 (TFH)] ................. 2, 5

*American Soc. of Mechanical Engineers v. Hydrolevel Corp.,*
   456 U.S. 556 (1982) ................................................................................ 8

*Apex Oil Co. v. United States,*
   530 F.2d 1291 (8th Cir. 1976) .................................................................. 8

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009) ................................................................................ 1

*Bailey v. Greenberg,*
   516 A.2d 934 (D.C. 1986) ....................................................................... 39

*Banneker Ventures, LLC v Graham,*
   798 F3d 1119 (2015) ........................................................................... 33, 34

*Bates v. Nw. Human Servs., Inc.,*
   466 F. Supp. 2d 69 (D.D.C. 2006) ......................................................... 24, 28

*Bell Atl. Corp. v. Twombly,*
   550 U.S. 544 (2007) ............................................................................. 2, 12

*Bennett Enters., Inc. v. Domino's Pizza, Inc.,*
   45 F.3d 493 (D.C. Cir. 1995) .................................................................. 33

*Berger v. Iron Workers Reinforced Rodmen Local 201,*
   269 U.S. App. D.C. 67, 843 F.2d 1395 (D.C. Cir. 1988) ................................ 5

*Berry Petroleum Co. v. Adams & Peck,*
   518 F.2d 402 (2d Cir. 1975) ................................................................... 39

*Brady v. Dairy Fresh Products Co.,*
   974 F.2d 1149 (9th Cir. 1992) ................................................................ 10

*Bridge v. Phoenix Bond & Indem. Co.*,
   553 U.S. 639 (2008) ........................................................................................ 15, 18

*Bussineau v. President & Directors of Georgetown Coll.*,
   518 A.2d 423 (D.C. 1986) ...................................................................................... 37

*Carpenter v. United States*,
   484 U.S. 19 (1987) ................................................................................................. 24

*Carr v. Brown*,
   395 A.2d 79 (D.C. 1978) ........................................................................................ 33

*Certain Underwriters at Lloyd's London v. Great Socialist People's Libyan Arab Jamahiriya*,
   811 F Supp 2d 53 (DDC 2011) ................................................................................ 4

*Citizens Bank of Clearwater v. Hunt*,
   927 F.2d 707 (2d Cir. 1991) .................................................................................... 30

*Companhia Brasileira Carbureto de Calcio-CBCC v. Applied Industrial Materials Corp.*,
   887 F. Supp. 2d 9 (D.D.C. 2012) ............................................................................ 19

*Conley v. Gibson*,
   355 U.S. 41 (1957) ................................................................................................. 2, 3

*Conwood Co. v. U.S. Tobacco Co.*,
   290 F.3d 768 (6th Cir. 2002) ............................................................................... 24-25

*Cook v. Avien, Inc.*,
   573 F.2d 685 (1st Cir. 1978) ................................................................................... 39

*Cross v Price Waterhouse & Co.*,
   1983 US Dist LEXIS 17895 (Apr. 7, 1983, No. 80-410) ......................................... 38

*D'Ambrosio v. Colonnade Council of Unit Owners*,
   717 A.2d 356 (D.C. 1998). ...................................................................................... 28

*Davis v. Mutual Life Ins. Co. of New York*,
   6 F.3d 367 (6th Cir. 1993) ....................................................................................... 10

*Diamond v Davis*,
   680 A2d 364 (DC 1996) .......................................................................................... 37

*Doe v. Exxon Mobil Corp.*,
   573 F. Supp. 2d 16 (D.D.C. 2008) .......................................................................... 39

*Dura Pharms., Inc. v. Broudo*,
   544 U.S. 336 (2005) ................................................................................................. 3

*Ehrenhaft v. Malcolm Price, Inc.*,
   483 A.2d 1192 (D.C. 1984) ..................................................................................... 37

*Exxon Mobil Corp. v. Corporacion CIMEX, S.A.*,
  111 F.4th 12 (D.C. Cir. 2024) ................................................................. 18

*E.M. v. Shady Grove Reprod. Sci. Ctr. P.C.*,
  496 F. Supp. 3d 338 (D.D.C. 2020) .......................................................... 32

*Feld Ent., Inc. v. Am. Soc'y for the Prevention of Cruelty to Animals*,
  873 F. Supp. 2d 288 (D.D.C. 2012) .......................................................... 25

*Fink v. Nat'l Sav. & Trust Co. v. Am. Soc'y for the Prevention of Cruelty to Animals*,
  772 F.2d 951 (D.C. Cir. 1985) ................................................................. 28

*Firestone v. Firestone*,
  76 F.3d 1205 (D.C. Cir. 1996) ................................................................. 39

*Fitzgerald v. Seamans*,
  553 F.2d 220 (D.C.Cir. 1978) ................................................................. 38

*Fleming v United States*,
  224 A3d 213 (DC 2020) ......................................................................... 17

*Fuji Photo Film U.S.A., Inc. v. McNulty*,
  640 F. Supp. 2d 300 (S.D.N.Y. 2009) ...................................................... 21

*Fullwood v. IDS Fin. Corp.*,
  1989 US Dist LEXIS 12010 (Oct. 5, 1989, Civil Action No. 88-3279-OG) ........... 8

*Gagan v. Am. Cablevision, Inc.*,
  77 F.3d 951 (7th Cir. 1996) ................................................................... 21

*Giles v. Shell Oil Corp.*,
  487 A.2d 610 (D.C. 1985) ....................................................................... 9

*Hechinger v. Johnson*,
  761 A.2d 15 (D.C. Sup. Ct. 2000) ........................................................... 11

*Hemi Group, LLC v. City of New York*,
  559 U.S. 1 (2010) ................................................................................. 19

*Hill v. Opus Corp.*,
  841 F. Supp. 2d 1070 (C.D. Cal. 2011) .................................................... 27

*Hughes v Abell*,
  867 F Supp 2d 76 (DDC 2012) ................................................................ 28

*In re Avandia Mktg., Sales Pracs. & Prod. Liab. Litig.*,
  804 F.3d 633 (3d Cir. 2015) ................................................................... 18

*In re Korean Airlines Disaster of September 1*,
  704 F. Supp. 1135 (D.D.C. 1988) ............................................................ 30

*In re Search of Multiple Email Accts. Pursuant to 18 U.S.C. §2703*
    585 F. Supp. 3d 1 (D.D.C. 2022) .......................................... 27

*Insurance Management of Washington v. Eno & Howard Plumbing Corp.*
    348 A.2d 310 (D.C. App. 1975) ........................................... 9

*Jacques Krijn En Zoon v. Schrijver,*
    151 F. Supp. 955 (S.D.N.Y. 1957) ........................................ 40

*Jordan v. Medley,*
    711 F.2d 211 (1983) ..................................................... 11

*Jericho Baptist Church Ministries, Inc. (D.C.) v. Jericho Baptist Church Ministries, Inc. (Md.),*
    223 F. Supp. 3d 1 (D.D.C. 2016) ......................................... 24

*Kiwanuka v Bakilana,*
    844 F Supp 2d 107 (DDC 2012) ............................................ 39

*Klein v. Bower,*
    421 F.2d 338 (D.C. Cir. 1970) ........................................... 39

*Lefkowitz v. McGraw-Hill Glob. Educ. Holdings, LLC,*
    23 F. Supp. 3d 344 (S.D.N.Y. 2014) ................................. 11-12, 12

*Lively v. Flexible Packaging Ass'n*
    also. , 830 A.2d 874 (D.C. Cir. 2003) ............................... 37, 38

*Lujan v. Defs. of Wildlife,*
    504 U.S. 555 (1992) ..................................................... 14

*McBryde v. Amoco Oil Co.,*
    404 A.2d 200 (D.C. 1979) ................................................ 11

*McEvoy Travel Bureau, Inc. v. Heritage Travel, Inc.,*
    904 F.2d 786 [1st Cir. 1990] ............................................ 26

*Mobile Satellite Communs., Inc. v Intelsat USA Sales Corp.,*
    646 F Supp 2d 124 (DDC 2009) ............................................ 11

*Moonblatt v District of Columbia,*
    572 F Supp 2d 15 (DDC 2008) ........................................ 3, 38, 40

*Nakhid v Am. Univ.,*
    2020 US Dist LEXIS 49608 (DDC Mar. 23, 2020, No. 19-cv-03268 (APM)) ...... 3

*Narce v Mervilus,*
    2023 US Dist LEXIS 193795 (DDC Oct. 30, 2023, Civil Action No. 23-200 (BAH)) ...... 2, 22

*Nat'l R.R. Passenger Corp. v. Morgan,*
    536 U.S. 101 (2002) ..................................................... 37

*Neder v. United States*,
  527 U.S. 1 (1999) ................................................................ 26

*New York Central & Hudson R.R. v. United States*,
  212 U.S. 481 (1909) ........................................................ 4, 10

*Oxbow Carbon & Mins. LLC v. Union Pac. R.R. Co.*,
  81 F. Supp. 3d 1 (D.D.C. 2015) ......................................... 1, 2

*Pulaski Constr. Co. v. Air Frame Hangars, Inc.*,
  950 A.2d 868 (N.J. 2008) ....................................................... 36

*Qureshi v Am. Univ.*,
  2023 US Dist LEXIS 38041 [DDC Mar. 7, 2023, No. 20-cv-1141 (CRC)] ................... 31, 32

*Regency Communs., Inc. v Cleartel Communs., Inc.*,
  160 F Supp 2d 36 (DDC 2001) ........................................ 26, 31

*R.R. Co. v. Hanning*,
  82 U.S. 649 (1872) ................................................................ 5

*Robinson v. Dep't of Homeland Sec. Off. of Inspector Gen.*,
  71 F.4th 51 (D.C. Cir. 2023) ............................................... 39

*RSM Production Corp. v. Freshfields Bruckhaus Deringer U.S. LLP*
  682 F.3d 1043 (D.C. Cir. 2012) ....................................... 22, 23

*Salinas v. United States*,
  522 U.S. 52 (1997) .......................................................... 22, 20

*National Organization of Women v. Scheidler*,
  510 U.S. 249 (1994) ............................................................. 14

*Sedima, S.P.R.L. v. Imrex Co.*,
  473 U.S. 479 (1985) ............................................................. 13

*Shaw v. United States*,
  580 U.S. 63 (2016) .......................................................... 26, 27

*Simmons v Abruzzo*,
  49 F3d 83 (2d Cir 1995) ....................................................... 42

*Stokes v Cross*,
  327 F3d 1210 (2003) ............................................................. 3

*Sturdza v. United Arab Emirates*,
  281 F.3d 1287 (D.C. Cir. 2002), ........................................... 33

*Sundberg v. TTR Realty, LLC*,
  109 A.3d 1123 (D.C. 2015) ................................................... 29

*Swierkiewicz v. Sorema N.A.*,
    534 U.S. 506 (2002) ............................................................. 2, 36

*Taylor v Dist. of Columbia Water & Sewer Auth.*,
    957 A2d 45 (DC 2008) ......................................................... 2, 36

*United States v. Bank of New England, N.A.*,
    821 F.2d 844 (1st Cir. 1987) .................................................. 13

*United States v Philip Morris USA, Inc.*,
    2006 US Dist LEXIS 118375 ............................. 4, 5, 10, 7, 8, 20,21, 22

*United States v Philip Morris, Inc.*,
    304 F Supp 2d 60 (DDC 2004) .............................................. 24

*United States v. Philip Morris USA, Inc.*,
    337 F Supp 2d (D.D.C. 1998) ............................................... 30

*United States v. Rastelli*,
    870 F.2d 822 (2d Cir. 1989) .................................................. 26

*United States v Sutton*,
    2022 US Dist LEXIS 216313 (DDC Nov. 30, 2022, No. 21-0598 (PLF) ........ 17, 18

*United States v. Alston*,
    609 F.2d 531 (D.C. Cir. 1979) ............................................... 30

*United States v. Brito*,
    136 F.3d 397 (5th Cir. 1998) ................................................. 21

*United States v. Coyle*,
    63 F.3d 1239 (3rd Cir. 1995) ................................................ 30

*United States v. Crisci*,
    273 F.3d 235 (2d Cir. 2001) .................................................. 26

*United States v. Elliott*,
    571 F.2d 880 (5th Cir. 1978) ................................................. 21

*United States v. Lemire*,
    720 F.2d 1327 (D.C. Cir. 1983) ........................................... 23-24

*United States v. Munoz*,
    233 F.3d 1117 (9th Cir. 2000) ............................................... 30

*United States v. Philip Morris Inc.*,
    130 F. Supp. 2d 96 (D.D.C. 2001) ......................................... 20

*United States v. Porat*,
    76 F.4th 213 (3d Cir. 2023) ............................................... 24, 25

*United States v. Prows*,
   118 F.3d 686 (10th Cir. 1997) ............................................................ 30

*United States v. Reid*,
   533 F.2d 1255 (D.C. Cir. 1976) .......................................................... 30

*United States v. Ring*,
   628 F. Supp. 2d 195 (D.D.C. 2009) ................................................. 25-26

*United States v. Sawyer*,
   85 F.3d 713 (1st Cir. 1996) ................................................................ 30

*United States v. Stewart,*
   872 F.2d 957 (10th Cir. 1989) ............................................................ 26

*U.S. ex rel. Williams v. Martin-Baker Aircraft Co. v. Stewart,*
   389 F.3d 1251, 1256 (D.C. Cir. 2004) ............................................... 35

*McWilliams Ballard, inc. v. Broadway Mgmt. Co.*,
   2009 U.S. Dist. LEXIS 58020 ........................................................... 11

*Virginia Acad. of Clinical Psychologists v. Group Hospitalization & Med. Servs., Inc.,*
   878 A.2d 1226 (D.C. 2005) ................................................................ 28

*Ward v. District of Columbia Dep't of Youth Rehab. Servs.*,
   768 F. Supp. 2d 117 (D.D.C. 2011) ..................................................... 3

*Washington Post v. Robinson*,
   935 F.2d 282 (D.C. Cir. 1991) ............................................................. 7

*Weinberg v. Johnson*,
   518 A.2d 985 (D.C. 1986) .................................................................. 11

*William J. Davis, Inc. v. Young*,
   412 A.2d 1187 (D.C. 1980) ................................................................ 39

*Wilson v. Good Humor*,
   757 F.2d 1293 (D.C. Cir. 1985) ........................................................... 9

*Wiwa v. Royal Dutch Petroleum Co., Nos. 96 Civ. 8386, 01 Civ. 1909, 02 Civ. 7618,*
   2009 WL 464946 (S.D.N.Y. Feb. 25, 2009) ....................................... 40

*Yegiazaryan v. Smagin*,
   599 U.S. 533 (2023) .......................................................................... 15

*Youming Jin v. Ministry of State Sec.*,
   335 F. Supp. 2d 72 (D.D.C. 2004) ..................................................... 21

## STATUTES AND OTHER SOURCES                                    PAGE(S)

18 U.S.C. §1344 ................................................................................................ 26

18 U.S.C. §1961 ................................................................................................ 23

18 U.S.C. §1962 ........................................................................................... 13, 20

18 U.S.C. §2703 ................................................................................................ 27

D.C. Code §28-3901 ......................................................................................... 31

D.C. Code §28-3904 .................................................................................... 31, 32

D.C. Code §12-301 ........................................................................................... 39

Federal Rule of Civil Procedure 8 ................................................ 1, 2, 3, 11, 12, 13

Federal Rule of Civil Procedure 9 ...................................... 1, 2, 3, 11, 12, 13, 28, 40

Federal Rules of Civil Procedure 12 ........................................................... 2, 3, 40

Federal Rules of Civil Procedure 17 .......................................................... 40, 41

Restatement (Second) of Agency §236 ............................................................ 5

Restatement (Second) of Agency §262 ............................................................ 8

Restatement (Second) of Torts §766 ........................................................ 33, 34

Restatement (Second) of Torts §870 ……………………………………………...36

## PRELIMINARY STATEMENT

Plaintiff, Farid Hafez ("Dr. Hafez" or "Plaintiff") respectfully submits this Memorandum of Law in Support of Plaintiff's Opposition to the George Washington University ("GWU") and the Program on Extremism at GWU's ("POE") (collectively, the "moving Defendants") Motion to Dismiss (ECF Doc. No. 30). This Court should deny GWU and its POE's Motion to Dismiss in its entirety. Dr. Hafez's RICO claims are sufficiently pleaded, as Plaintiff's First Amended Complaint (ECF Doc. No. 5) ("FAC") provides detailed allegations that plausibly establish GWU and its POE's involvement in a pattern of racketeering activity and demonstrate their knowing participation in a RICO conspiracy aimed at harming Dr. Hafez. Additionally, Dr. Hafez's state law claims are timely filed and supported by well-pleaded factual allegations that state a plausible basis for relief.

## FACTUAL BACKGROUND

For an accurate factual background, the Court is respectfully referred to Plaintiff's FAC, Plaintiff's Declaration accompanying this Memorandum ("Pl. Decl."), Aaron Rock-Singer's Declaration accompanying this Memorandum, David Schwartz's Declaration accompanying this Memorandum, and all the exhibits and appendixes annexed thereto, as well as the references to said documents included herein.

## LEGAL STANDARD

To overcome a Federal Rule of Civil Procedure ("Fed. R. Civ. P." or "Rule") 12 motion to dismiss, a plaintiff need only "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "'[D]etailed factual allegations' are not necessary." *Oxbow Carbon & Mins. LLC v. Union Pac. R.R. Co.*, 81 F. Supp. 3d 1, 8 (D.D.C. 2015) (internal quotations omitted). The facts alleged need only be "enough

1

to raise a right to relief above the speculative level." *Id.* "Under Rule 12, a claim should not be dismissed 'unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Alqahtani v George Washington Univ.*, 1996 US Dist LEXIS 4213, at *5-6 [Mar. 29, 1996, Civ. No. 95-803 (TFH) (quoting *Conley v. Gibson,* 355 U.S. 41, 45-46 [1957]). Courts "must consider the whole complaint, accepting all factual allegations in the complaint as true, 'even if doubtful in fact,' and construing all reasonable inferences in the plaintiff's favor." *Narce v Mervilus*, 2023 US Dist LEXIS 193795, at *9 [DDC Oct. 30, 2023, Civil Action No. 23-200 (BAH)]. "The plausibility standard is not akin to a 'probability requirement,'" (*Iqbal*, 556 U.S. at 678), and "a well-pleaded complaint may proceed even if it appears 'that a recovery is very remote and unlikely,'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007). Indeed, "[a] complaint survives a motion to dismiss even if there are two alternative explanations, one advanced by the defendant and the other advanced by the plaintiff, both of which are plausible." *Narce*, 2023 US Dist LEXIS 193795, at *8.

A motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) challenges the adequacy of a complaint on its face. Fed. R. Civ. P. 12(b)(6). A complaint must be sufficient "to give a defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555 (internal citations omitted). To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is "plausible on its face"" *Twombly*, 550 U.S. at 570. "'Dismissal for failure to state a claim upon which relief can be granted is proper Rule 12 (b)(6) . . . only where it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Taylor v Dist. of Columbia Water & Sewer Auth.*, 957 A2d 45, 49-50 (DC 2008) (quoting *McBryde v. Amoco Oil Co.*, 404 A.2d 200, 202 [D.C. 1979]). "Rule 8's liberal pleading standard requires only 'a short and

plain statement of the claim showing that the pleader is entitled to relief,', and courts are charged with construing the complaint 'so … as to do substantial justice.'" *Stokes v Cross*, 327 F3d 1210, 1215 [2003]) (quoting Fed. R. Civ. P. 8[a][2] and 8[f]). "The Rules 'do not require a claimant to set out in detail the facts upon which he bases his claim.'" Id. (quoting *Conley*, 355 U.S. at 47). "To satisfy the pleading standard of Federal Rule of Civil Procedure 8(a), a plaintiff asserting a claim of discrimination need only allege facts that 'give[ ] [the defendant] fair notice of the basis for [the plaintiff's] claims.'" *Nakhid v Am. Univ.*, 2020 US Dist LEXIS 49608, at *1 [DDC Mar. 23, 2020, No. 19-cv-03268 (APM)]) (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 [2002]). The notice pleading rules are not meant to impose a great burden on a plaintiff. *Moonblatt v District of Columbia*, 572 F Supp 2d 15, 19 (DDC 2008) (citing *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 347 [2005]; *Swierkiewicz*, 534 U.S. at 512-13).

In deciding a motion under Rule 12(b)(6), a court may consider the facts alleged in the complaint, documents attached as exhibits or incorporated by reference in the complaint, or documents upon which the plaintiff's complaint necessarily relies even if the document is produced not by the plaintiff in the complaint. *See*, *Ward v. District of Columbia Dep't of Youth Rehab. Servs.*, 768 F. Supp. 2d 117, 119 (D.D.C. 2011). The court may also consider documents in the public record of which the court may take judicial notice. *Abhe & Svoboda, Inc. v. Chao*, 508 F.3d 1052, 1059 (D.C. Cir. 2007).

<u>**ARGUMENT**</u>

## I.    DR. HAFEZ FULLY INCORPORATES HIS ARGUMENTS IN OPPOSITION TO THE OTHER DEFENDANTS' MOTIONS TO DISMISS

First and foremost, Dr. Hafez herein incorporates and fully adopts the arguments set forth in the separate Opposition to Defendant Lorenzo Vidino's ("Vidino") Motion to Dismiss

Plaintiff's FAC (ECF Doc. No. 28) and the separate Opposition to Defendants Alp Services SA ("Alp"), Diligence SARL ("Diligence"), Mario Brero ("Brero"), Muriel Cavin ("Cavin"), Lionel Badal ("Badal") (collectively, the "European Defendants") Motion to Dismiss Plaintiff's FAC (ECF Doc. No. 29). The FAC alleges that Vidino is liable for his actions as part of the RICO enterprise formed with the other Defendants, as well as for state law claims, including common law fraud, unfair trade practices, tortious interference, and prima facie tort. Likewise, the other Defendants—including GWU and POE – are equally liable for both the RICO violations and the state law claims asserted in the FAC.

## II.    IN ADDITION TO GWU AND POE'S INDEPENDENT LIABILITY, VIDINO'S CONDUCT IS ATTRIBUTABLE TO GWU AND POE UNDER THE DOCTRINE OF VICARIOUS LIABILITY

In addition to their independent liability, GWU and POE are liable for the acts of their employee, director, and agent Vidino. Vicarious liability is a common law concept, wherein "[o]ne may be liable for the acts of another under theories of vicarious liability, such as conspiracy, aiding and abetting, and inducement." *Acosta v. Islamic Republic of Iran*, 574 F. Supp. 2d 15, 26 (D.D.C. 2008); *see also, Certain Underwriters at Lloyd's London v Great Socialist People's Libyan Arab Jamahiriya*, 811 F Supp 2d 53, 73 (DDC 2011). "Because a corporation can act only through its agents, it may be held liable for the acts of its officers, employees, and other agents in certain circumstances."  (*United States v Philip Morris USA, Inc.*, 2006 US Dist LEXIS 118375 [DDC Aug. 17, 2006, Civil Action No. 99-2496 (GK)]) (collecting cases); *see also*, New York Central & Hudson R.R. v. United States, 212 U.S. 481, 494 (1909) (holding that "a corporation is held responsible for acts not within the agent's corporate powers strictly construed, but which the agent has assumed to perform for the corporation when employing the corporate powers actually

authorized"); *R.R. Co. v. Hanning*, 82 U.S. 649, 657 (1872) (finding that "the principal is liable for the acts and negligence of the agent in the course of his employment, although he did not authorize or did not know of the acts complained of"). Specifically, under the theory of respondeat superior, a corporation may be held liable for the statements or wrongful acts of its agents or employees when they are acting within the scope of their authority or the course of their employment so long as the action is motivated, at least in part, to benefit the corporation. *See*, *Philip Morris USA, Inc.*, 2006 US Dist LEXIS 118375 (collecting cases); *see also*, Restatement (Second) of Agency § 236 (1958). A principal could also be held liable for the act of its agents if it authorizes, ratifies, or approves an agent's actions. *Alqahtani* 1996 US Dist LEXIS 4213, at *9-10 (citing *Berger v. Iron Workers Reinforced Rodmen Local 201,* 269 U.S. App. D.C. 67, 843 F.2d 1395, 1430 [D.C. Cir. 1988]). Furthermore, if a corporate agent exercises the authority conferred upon him and performs an act within the course of his employment, the corporation is liable even if the act was unlawful or was done contrary to instructions or policies, as long as the agent acted with an intent to benefit the corporation. *See*, *Philip Morris USA, Inc.*, 2006 US Dist LEXIS 118375 (collecting cases).

Defendants' argument misconstrues the allegations in the FAC and ignores the well-pleaded facts establishing an agency relationship between Vidino and GWU, as well as POE. Contrary to Defendants' assertion, the FAC does not rely on "mere association" but instead alleges facts that plausibly support vicarious liability, including the assertion that Vidino acted as an employee, director, or agent of GWU and POE during the relevant period. *See*, e.g., FAC ¶ 16. Additionally, the FAC implicitly alleges agency in multiple paragraphs by detailing how Vidino's actions furthered the goals and objectives of GWU and POE. It is not in dispute – and the moving Defendants did not even attempt to challenge it – that Vidino is an employee of GWU and POE.

Indeed, Vidino is the Director of the POE at GWU. *See*, FAC ¶ 27.[1] As a director and employee at GWU and POE, Vidino performs research work focused on the dynamics of jihadist networks and the activities of Muslim Brotherhood-inspired organizations in the West, publishing academic articles and reports on those issues, among other things. Vidino's research projects bear the name, logo, and information of GWU and POE, and in some instances, GWU'S POE is even claimed to be the copyright holder of those reports.[2] As Plaintiff sufficiently alleged in his FAC, and as evidenced by the mentioned publicly available information and material, Vidino acted within the scope of his employment and under GWU and POE's control when issuing misleading or false reports, articles, and testimonies tying Dr. Hafez with the Muslim Brotherhood, including those created in conjunction with Alp. Moving Defendants' reference to FAC's assertion that "Vidino possessed the power and authority to control the contents" of GWU and POE's materials bears no relevance and does not, as a matter of law, negate GWU and POE's oversight or ability to exercise control over its employee's conduct. Vidino is the Director of POE, has decades-long extensive research experience in these matters, and established a strong reputation in the field. Consequently, it is reasonable to infer that he possesses some "power and authority" over the contents he realizes – yet sponsored and published by, within the scope of his employment with, and under the general control of GWU and POE. It is simply disingenuous to argue, as GWU and POE do, that their control over the academic articles and reports published bearing their logo and name and copyright and posted on their website and held in their archives does not constitute "control" of those publications or their preparation. In fact, all of Vidino's research works, articles, reports, media

---

[1] For further reference, Vidino's webpage on POE's website is available at https://extremism.gwu.edu/lorenzo-vidino.
[2] *See*, e.g., *Verbatim: What European Security Services Say About the Muslim Brotherhood in Europe*, POE, October 2023, available at https://extremism.gwu.edu/sites/g/files/zaxdzs5746/files/2023-09/verbatim-final_0.pdf.

engagements, books, and testimonies, are listed and accessible on the website of GWU's POE within Vidino's webpage and are held in their archives.[3]

What is more, "Corporations are liable for the collective knowledge of all employees and agents within (and acting on behalf of) the corporation." *Philip Morris USA, Inc.*, 2006 US Dist LEXIS 118375 (citing *United States v. Bank of New England, N.A.*, 821 F.2d 844, 855-56 (1st Cir. 1987). Agent's knowledge of misconduct would be imputed to the principal even where there was no evidence of actual knowledge on part of principal. *See*, *Eitel v. Schmidlapp*, 459 F.2d 609, 615 (4th Cir. 1972) ("the principal cannot claim the fruits of the agent's acts and still repudiate what the agent knew"). Moreover, a principal is held responsible for the knowledge acquired by its agent even in the extreme scenario where the information is never communicated to it. *See*, e.g., *N.Y. Univ. v. First Fin. Ins. Co.*, 322 F.3d 750, n.2 (2d Cir. 2003). Thus, the applicable case law makes clear that the knowledge, conduct, and statements of Defendants' agents and employees may be attributed to Defendants as corporate-principals. Furthermore, it is both appropriate, equitable, and consistent with public policy to conclude that a company's fraudulent intent may be inferred from all of the circumstantial evidence including the company's collective knowledge. *See*, *Philip Morris USA, Inc.*, 2006 US Dist LEXIS 118375; *see also*, *Saba v. Compagnie Nationale Air France*, 78 F.3d 664, 668 (D.C. Cir. 1996) ("the actor's intent may be inferred from indirect evidence and the reckless nature of his acts"); *Dana Corp. v. Blue Cross & Blue Shield Mutual of Northern Ohio*, 900 F.2d 882, 886 n.2 (6th Cir. 1990); *United States v. L.B.S. Bank-New York, Inc.*, 757 F.Supp. 496, 501 n.7 (E.D. Pa. 1990). Here, while Plaintiff does not concede that GWU and POE had direct knowledge of the facts alleged in the FAC, and in fact argues to the contrary,

---

[3] *See*, supra, note 1. "Taking judicial notice of the existence of these articles is entirely proper." *See*, *Washington Post v. Robinson*, 935 F.2d 282, 291 (D.C. Cir. 1991) (a "court may take judicial notice of the existence of newspaper articles in the Washington, D.C., area that publicized" certain facts).

the applicable law supports the argument that Vidino's knowledge in acting in furtherance of the enterprise's goals in conjunction with the other Defendants is attributable to GWU and POE. In fact, Vidino's knowledge is GWU and POE's knowledge. *See*, *Philip Morris USA, Inc.*, 2006 US Dist LEXIS 118375 (citing *Apex Oil Co. v. United States*, 530 F.2d 1291, 1295 [8th Cir. 1976]).

Furthermore, the FAC describes how Vidino used his role as Director of POE at GWU as a platform for the perpetrated misconduct, including his consultancy work for Alp and the dissemination of fraudulent and misleading statements under the guise of academic reports. This allegation highlights the interconnectedness between Vidino's activities and his institutional role, plausibly asserting that GWU and POE enabled and benefited from his actions, whether directly or indirectly. *See*, FAC ¶ 37. The notion that Vidino operated completely independently of GWU and POE in his work in conjunction with Alp and the other Defendants disregards the FAC's allegations and invites factual disputes inappropriate for resolution at the pleading stage. Relevantly, the agreement between Alp and Vidino itself includes a signature line bearing the name of GWU as a signatory, further illustrating the GWU's direct involvement in and oversight of Vidino's work. *See*, **EXHIBIT D**.[4]

Alternatively, GWU and POE may still be held liable under the agency theory of apparent authority. "A 'principal is liable for an agent's fraud though the agent acts to benefit himself, if the agent acts with apparent authority.'" *Fullwood v IDS Fin. Corp.*, 1989 US Dist LEXIS 12010, at *9-10 (Oct. 5, 1989, Civil Action No. 88-3279-OG) (quoting *American Soc. of Mechanical Engineers v. Hydrolevel Corp.*, 456 U.S. 556, 566 [1982]; citing Restatement [Second] of Agency § 262 [1958]). The principle of apparent authority holds a principal, such as GWU and POE, liable for the unauthorized acts of its agent, such as Vidino, when, as here, the principal places its agent

---

[4] The references to exhibits included herein are intended to remand to the exhibits annexed to Dr. Hafez's Declaration in support of Plaintiff's Oppositions to Defendants' Motions to Dismiss Plaintiff's FAC.

in a position which causes any third parties to *reasonably believe* that the principal has consented to the exercise of authority which the agent purports to hold out. This principle holds an employer liable even for acts of the employee which are outside the scope of employment when third parties reasonably rely on the appearance of authority. *Id.* (citing *Wilson v. Good Humor,* 757 F.2d 1293, 1302-03 [D.C. Cir. 1985]; *Insurance Management of Washington v. Eno & Howard Plumbing Corp.,* 348 A.2d 310, 312 [D.C. App. 1975]; Restatement [Second] of Agency §§ 8, 27, 265 [1958]). In this case, not only third parties reasonably believed that GWU and POE consented to the exercise of authority which Vidino purports to hold out, but they actually relied on such authority and Vidino's role within GWU and POE and the institutional prestige and the veneer of academic objectivity and scholarship such role might add to the fraudulent and misleading statements to be disseminated to further Defendants' enterprise's goals and objectives.

Moreover, Plaintiff alleges that GWU and POE had the ability to supervise and prevent Vidino's actions, and their failure to do so constitutes complicity. This is reinforced by the claim that Vidino's work with Alp and the other Defendants utilized resources, credibility, and infrastructure associated with GWU and POE, suggesting not only an opportunity for intervention but an implicit endorsement of his activities. GWU and POE benefited from the reports and correspondences generated under Vidino's directorship and academic activities, further connecting the misconduct to the GWU and POE's domain. Therefore, it is reasonable to conclude that GWU and POE "knew or should have known its employees behaved in a dangerous or otherwise incompetent manner and that the employer, armed with that actual or constructive knowledge, failed to adequately supervise the employee." *Giles v. Shell Oil Corp.*, 487 A.2d 610, 613 (D.C. 1985). Finally, Plaintiff plausibly alleges that GWU and POE aided and abetted Vidino's unlawful conduct. By allowing their institutional resources and reputation to be leveraged for the

dissemination of false or misleading information, they actively facilitated the misconduct. Whether through action or omission, this involvement transcends mere association, establishing a basis for liability.

These allegations constitute overarching themes in the FAC – alleging that Vidino's misconduct was intertwined with and attributable to GWU and POE – and apply broadly to all claims and all of Vidino's misconduct. GWU and POE's roles in facilitating and endorsing Vidino's activities is a recurrent theme that underscores their liability across the FAC.

As to the application of this theory to the instant action, several Circuits, including the District of Columbia's, apply the theory of respondeat superior in RICO cases and find the defendant entities liable for the acts of their agents where, as here, those entities do not constitute the RICO enterprise itself. *See*, *Philip Morris USA, Inc.*, 2006 US Dist LEXIS 118375 (collecting cases). Furthermore, there are strong public policy grounds supporting this approach. "Applying respondeat superior 'will encourage employers to monitor more closely the activities of their employees and agents to ensure that these agents are not involved in racketeering activities. Thus, respondeat superior and agency liability furthers both the compensatory and deterrent goals of the RICO statute.'" *Id.* (quoting *Brady v. Dairy Fresh Products Co.*, 974 F.2d 1149, 1155 [9th Cir. 1992]). In this vein, the Supreme Court has recognized that there is "no good reason why corporations may not be held responsible for and charged with the knowledge and purposes of their agents, acting within the authority conferred upon them. . . . If it were not so, many offenses might go unpunished and acts be committed in violation of the law, where [as here] the statute requires all persons, corporate or private, to refrain from certain practices forbidden in the interest of public policy." *New York Central*, 212 U.S. at 495.[5] Moreover, while it is undisputed that the

---

[5] Such a rule would also be manifestly contrary to the intent of Congress. *See*, *Davis v. Mutual Life Ins. Co. of New York*, 6 F.3d 367, 379 (6th Cir. 1993) (holding that, if existed, a prohibition against imposing liability vicariously

theory of vicarious liability applies to tort claims,[6] it also applies to fraud claims and Plaintiff's allegations claiming that GWU and POE disseminated fraudulent representations through their agent and representative Vidino are sufficient under Rule 9(b). *See*, *Mobile Satellite Communs., Inc. v Intelsat USA Sales Corp.*, 646 F Supp 2d 124, 131-132 (DDC 2009); *see also*, *McWilliams Ballard, inc. v. Broadway Mgmt. Co.*, 2009 U.S. Dist. LEXIS 58020, at *10 (holding that "[p]laintiff may base its fraud claims against [defendant corporations] on their vicarious liability for the alleged false statements and omissions made by their agents or officers").

## III.    THE FAC COMPLIES WITH RULE 8

The FAC fully satisfies Rule 8's requirements, providing GWU, POE, and all other Defendants with fair notice of the claims asserted against them and the grounds upon which those claims rest, which is all he is required to do at this stage. Contrary to Defendants' assertions, the FAC does not rely on vague or conclusory allegations. Moreover, it specifically identifies Vidino's role and alleged conduct, and pleads that Vidino acted as an agent or employee of GWU and POE, for which they are vicariously liable.[7]

Defendants' contention that the allegations lack specificity is unfounded. Right at the outset, it is clear that the allegations in Plaintiff's FAC – which specify at length infringing acts and conduct ascribable to each of the Defendants, including GWU and POE – are more than sufficient to readily meet the minimum required pleading standard under Rule 8, enabling those Defendants to identify their involvement in the alleged misconduct. In doing so, Plaintiff's FAC provides "the basic factual notice to Defendants that is required under Rule 8." *Lefkowitz v.*

---

"would prevent corporate 'persons' from ever being found liable under RICO, since corporate principals may only act through their agents.").

[6] *See*, e.g., *Hechinger v. Johnson*, 761 A.2d 15, 24 (D.C. Sup. Ct. 2000); *see also*, *Weinberg v. Johnson*, 518 A.2d 985, 988 (D.C. 1986) (citing *Jordan v. Medley*, 711 F.2d 211, 214 [1983]) (other citation omitted) ("If the employee acts in part to serve his employer's interest, the employer will be held liable for the intentional tort of his employee even if prompted partially by personal motives, such as *revenge*"); FAC ¶ 58.

[7] *See*, supra, Section II.

*McGraw-Hill Glob. Educ. Holdings, LLC*, 23 F. Supp. 3d 344, 354 (S.D.N.Y. 2014). The assertion that GWU is left to "pure guesswork" is baseless, as the complaint outlines GWU and POE's connection to Vidino's conduct, which lies at the heart of Plaintiff's claims. Defendants' reliance on paragraph incorporation, a standard practice in pleading, has no bearing on Rule 8 considerations and does not obscure the nature of the claims or the factual allegations supporting them. In any event, Rule 8 does not demand that a complaint be a model of clarity or exhaustively detail the facts alleged so long as it provides "fair notice of what the plaintiff's claim is and the ground upon which it rests." *Twombly*, 550 U.S. at 555; *see also*, *Aktieselskabet AF 21 November 2001 v Fame Jeans Inc.*, 525 F3d 8, 16-17 (2008). Indeed, what bears relevance here is that Plaintiff referenced the Defendants collectively because, for the most part, each of them participated in the same misconduct, as outlined in detail within the FAC. In short, Plaintiff contends that Defendants engaged in joint activities and, as a principle, an exhaustive delineation of each Defendant's actions is not necessarily required to comply with Rule 8. *See*, *Lefkowitz*, 23 F. Supp. 3d at 354-55. In any event, while Plaintiff's FAC may not always meticulously distinguish every action undertaken by each Defendant – which is not required – it still unmistakably identifies their relevant involvement in the fraudulent misconduct and/or in the facilitation of fraudulent activities by other Defendants. Therefore, at the very least, the FAC provides all Defendants with adequate notice of the claims asserted against them.

Finally, any reference to past amendments of the complaint is misplaced and irrelevant. In fact, contrary to Defendants' meritless assertions, the amendment of the Original Complaint was only done to comply with Local Civil Rule ("LCvR") 5.1(c) and consisted in (i) adding names and full residence addresses of each party and (ii) using a correct civil cover sheet. *See*, Notice of New Case Error, dated March 27, 2024, on ECF. Such amendment did not affect the substance of the

claims alleged in the FAC. Dismissal under Rule 8 is unwarranted because the FAC provides a clear and actionable framework for Plaintiff's claims against all defendants, including GWU and POE. Accordingly, Defendants' motion to dismiss should be denied.

## IV.    THE FAC STATES A RICO CLAIM AGAINST GWU AND THE POE

Dr. Hafez's FAC sufficiently alleges and state claims for substantive RICO violations against Vidino, GWU, POE, Alp, Diligence, Brero, Cavin, Badal, Ariaf, and the other yet unidentified Defendants under 18 U.S.C. §1962(c). Under Section 1962(c), a plaintiff must allege "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985). Here, Plaintiff plausibly pleads all the requirements the law foresees and sufficiently alleges that the UAE, Alp, Diligence, Brero, Cavin, Badal, Ariaf, their employees, and a broad network of co-conspirators – including Vidino, GWU, the POE, and others – knowingly formed an association-in-fact enterprise. That enterprise conducted offensive viral communications campaigns against dozens of victims to destroy perceived rivals of the UAE. The enterprise had a distinct modus operandi, publishing fraudulent statements to banks, compliance monitors, business partners, the media, and others falsely linking its victims to terrorism. The enterprise carried out this pattern of racketeering activity for years, and its own documents indicate that the conspiracy is ongoing. As a proximate result of the enterprise's unlawful conduct, Dr. Hafez suffered "domestic" injury to his "business or property," as properly plead in the FAC and further argued herein.

## A. DR. HAFEZ HAS STANDING TO BRING A CIVIL RICO SUIT

Contrary to the moving Defendants' claims, the FAC specifically pleads that Dr. Hafez suffered a "domestic injury to business or property" proximately caused by the enterprise's racketeering activity. The allegations are neither sparse nor speculative; they describe with

specificity the coordinated actions and unlawful conduct of the enterprise – including Vidino, GWU, and the POE's roles and activities. As such, Dr. Hafez's RICO claims against GWU and the POE are properly pleaded and should not be dismissed.

### i. The FAC Sufficiently Alleges Domestic Injury to Business Or Property

Dr. Hafez has adequately alleged a concrete and specific financial loss to his business or property, as required to establish RICO standing. "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992); *National Organization of Women v. Scheidler*, 510 U.S. 249, 256 (1994) (finding RICO standing adequately pleaded where complaint alleged conspiracy "injured the business and/or property interests of the [petitioners]").

Contrary to the moving Defendants' assertions, Plaintiff has alleged substantial financial harm resulting directly from Defendants' actions, including those associated with and proximately causing Operation Luxor. These injuries include lost income from canceled speaking engagements and professional opportunities, as well as significant reputational damage that led to the withdrawal of numerous invitations to academic and professional forums, domestically and abroad. *See*, **EXHIBITS F, G, H**. This exclusion curtailed Plaintiff's ability to engage with peers, secure professional collaborations, and maintain his standing in his field, all of which inflicted concrete harm on his business and career prospects. The freezing of Plaintiff's bank accounts and assets further exacerbated these injuries, creating immediate and significant financial strain. The inability to access funds disrupted Plaintiff's ability to meet ongoing financial obligations, including mortgage payments, and significantly hindered his economic stability. Additionally, Plaintiff incurred substantial relocation expenses as he was compelled to move to the United States, due to Defendants' unlawful scheme and GWU, POE, and Vidino's misleading reports, articles,

and testimonies. Moreover, the raid connected with Operation Luxor resulted in significant material harm, including property damage to Plaintiff's house's entrance door, window, and alarm system, inter alia. Plaintiff also incurred financial costs associated with repairing this damage. These losses are distinct from emotional or psychological harm and constitute injuries to property cognizable under RICO. These costs, among others, represent tangible and compensable injuries under RICO. Defendants' reliance on cases rejecting reputational harm as a basis for RICO standing is misplaced. Here, the reputational harm alleged directly caused financial and professional injuries, such as the loss of speaking engagements, canceled academic collaborations, and professional exclusions. These losses represent concrete economic harm, not merely intangible reputational damage. *See*, generally, Pl. Decl.

Additionally, the FAC sufficiently pleads "domestic injury," as several injuries developed or manifested within the United States, including the financial and professional disruptions linked to Dr. Hafez's relocation and professional activities in this jurisdiction. While some of the injuries Dr. Hafez suffered originated or developed abroad, several significant injuries were developed, reflected, or otherwise occurred on U.S. soil, making them cognizable under the domestic-injury requirement of RICO. While it may be true, in some sense, that Dr. Hafez has felt his economic injury abroad, focusing solely on that fact would miss central features of the alleged injury. *See*, *Yegiazaryan v. Smagin*, 599 U.S. 533, 545 (2023); *see also*, *Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639, 649 (2008). Here, it is clear from Plaintiff's pleading and declaration in support of this opposition that the "circumstances surrounding the alleged injury" indicate that it "arose in the United States." *Yegiazaryan*, 599 U.S. at 543–44. Vidino himself, a U.S. citizen, resides in Washington, D.C., where he is employed by an American academic institution – GWU – and serves as the director of one of its programs – the POE. Vidino has even admitted that a U.S.-based

private entity linked to the United Arab Emirates may have been involved as a client in his work for the enterprise, underscoring the domestic nexus of his activities. Moreover, evidence in the public domain demonstrates that the UAE is leveraging American platforms, including GWU's POE and Vidino, to shape narratives about Islam in the West.[8] This includes collaborations between Vidino and UAE officials, such as the UAE Minister of Foreign Affairs and UAE Ambassador to the United States, Yousef Al Otaiba. These efforts escalated into a coordinated campaign of "offensive viral communication" targeting U.S. platforms. For instance, the campaign manipulated results on U.S.-based search engines like Google, Yahoo!, and Bing, fabricated negative Wikipedia pages through U.S.-based companies, and aimed to publish disparaging articles in English-speaking media outlets, including Daily Kos and the San Francisco-based blogging platform Medium. Internal documents further reveal that Vidino contributed to these efforts by drafting an "overview of key MB individuals/organisations/companies in the USA," as detailed in a March 2018 Alp communication plan and an April 2018 to-do list labeled "Arnica." The goal of these documents was to showcase capabilities by acquiring updated information in the United States, aligning directly with the campaign's emphasis on disseminating negative information in the U.S. and UK media. These actions not only demonstrate Vidino's active role in a U.S.-focused enterprise but also highlight the misuse of American institutions, such as GWU's POE, to project foreign agendas under the guise of independent scholarship, enriching participants in the process while concealing their roles as foreign agents. Defendants, including Vidino, GWU, and POE, purposefully directed their fraudulent statements to the United States – including by publishing their fraudulent blog posts, reports, and articles on U.S. websites – for the express

---

[8] *See*, Pl. Decl., p. 4 n. 2; *see also*, Elham Fakhro. The Abraham Accords: The Gulf States, Israel, and the Limits of Normalization (New York City: Columbia University Press, 2024).

purpose of influencing U.S. audiences and destroying Dr. Hafez. These actions caused the intended harm on Dr. Hafez, both abroad and in the United States.

GWU and POE's attempts to downplay these injuries ignore the specific and detailed allegations in the FAC, which describe the economic impact of their unlawful enterprise on Plaintiff's business and property. Accordingly, the injuries alleged are substantial, cognizable under RICO, and directly attributable to Defendants' conduct.[9]

### ii.        The FAC Plausibly Alleges Proximate Causation

GWU and POE's argument that the FAC fails to plausibly allege proximate causation lacks merit and misrepresents the nature and scope of the allegations. Plaintiff plausibly alleges that Defendants' offensive viral communications campaign against him was the direct and proximate cause of his injuries. More broadly, the FAC clearly alleges that all the activities carried out by the enterprise – including Vidino, GWU, and POE's contributions – proximately caused Dr. Hafez's reputational, financial, and other injuries. Although proximate cause in the RICO context requires that the plaintiff's injury be directly caused by the defendant's scheme, "a plaintiff [may be] directly injured by a fraudulent misrepresentation . . . even though it was a third party, and not the plaintiff, who relied on the defendant's misrepresentation." *Bridge*, 553 U.S. at 656. "The D.C. Court of Appeals has made clear that "the intervening actions of a third party do not by themselves defeat proximate cause if those intervening actions were reasonably foreseeable to the defendant.'" *United States v Sutton*, 2022 US Dist LEXIS 216313, at *16 (DDC Nov. 30, 2022, No. 21-0598 (PLF)) (quoting *Fleming v United States*, 224 A3d 213, 226 [DC 2020]).

---

[9] Dr. Hafez herein incorporates and fully adopts the arguments set forth in the separate Opposition to Vidino's Motion to Dismiss Plaintiff's FAC as to sufficient pleading of domestic injury to business and property. *See*, Sections III (A) and (B). Furthermore, Dr. Hafez reiterates that Vidino's unlawful conduct is attributable to GWU and POE. *See*, supra, Section II.

That is what Plaintiff precisely alleges here. Defendants, including Vidino, GWU, and POE, knowingly made fraudulent statements to third parties, intending to interfere with those parties' relationships with Plaintiff and deter them from continuing to engage with Plaintiff. Specifically, following Vidino, GWU, and POE's 2017 report, Vidino also gave testimony to Austrian officials reiterating that Dr. Hafez was an operator for the Muslim Brotherhood and closely tied to the organization. Both the report and the testimonies predated the raid on Dr. Hafez's home in Austria and directly contributed to the injuries and damages suffered by Dr. Hafez. The scores of reports, articles, testimonies to government officials, and blog posts that member of the enterprise – not independent journalists and scholars – published and spread in the public arena, also caused several other institutions, banks, and counterparties to stop dealing with Plaintiff.

These injuries to Plaintiff were not just a foreseeable and natural consequence of Defendants' offensive viral communications campaign; they were the express objectives of the enterprise and they were proximately caused by said campaign. The campaign was specifically aimed at destroying Plaintiff' business and reputable career. Defendants' own internal documents expressly confirm that they sought to "seriously damage, if not destroy the reputation and viability' of key MB European groups through our confidential offensive viral communication." *See*, generally, FAC and Pl. Decl.

GWU and POE primarily argue that there is no proximate causation because Plaintiff's injuries depended on the "intervening actions" of third parties, attenuating the causal relationship between Defendants' conduct and Plaintiff's injuries. Defendants' argument here fails. The mere "presence of intermediaries" does not "destroy[] proximate causation," *In re Avandia Mktg., Sales Pracs. & Prod. Liab. Litig.,* 804 F.3d 633, 645 (3d Cir. 2015), particularly where those intermediaries acted in reliance on Defendants' fraudulent statements in the manner that

Defendants expected and intended, *cf. Exxon Mobil Corp. v. Corporacion CIMEX, S.A.*, 111 F.4th 12, 33 (D.C. Cir. 2024). *See also*, supra, *Bridge*, 553 U.S. at 656; *Sutton*, 2022 US Dist LEXIS 216313, at *16 (quoting *Fleming*, 224 A3d at 226). The Supreme Court's holding in *Bridge* makes that clear. In *Bridge*, a RICO plaintiff's commercial competitor submitted fraudulent attestations to a county government to secure benefits at a property auction. *Bridge*, 553 U.S. at 644–45. The Court held that the county government's decision, which was influenced by the defendant's fraudulent attestations, to let the defendant participate in the auction deprived the plaintiff of financial benefits and did not break the causal chain. *Id.* In *Companhia Brasileira Carbureto de Calcio-CBCC v. Applied Industrial Materials Corp.*, 887 F. Supp. 2d 9, 13 (D.D.C. 2012), this District similarly held that an intervening decision by the International Trade Commission did not destroy proximate causation.

In support of their proximate causation arguments, GWU and its POE also rely on *Hemi Group, LLC v. City of New York*, 559 U.S. 1, 8–9 (2010). But that case does not support their position. In *Hemi*, the Supreme Court concluded there was no proximate causation because the relationship between the racketeering activity and injury was significantly more attenuated than the relationship Plaintiff alleges here. There, an out-of-state cigarette seller failed to file reports with its home state, as required by law, and New York City lost tax revenue as a result. *Hemi Group, LLC*, 559 U.S. at 8–9. The Court found proximate cause lacking because "the conduct directly responsible for the City's harm was the customers' failure to pay their taxes. And the conduct constituting the alleged fraud was Hemi's failure to file Jenkins Act reports. Thus, ... the conduct directly causing the harm was distinct from the conduct giving rise to the fraud." *Id*. at 11. Not so here. Defendants' emails, blog posts, articles, Wikipedia entries, and reports, including and mainly Vidino, GWU, and POE's reports and testimonies, constituted the fraudulent conduct that

19

proximately caused Plaintiff's injuries. And to be specific, every conduct carried out by Vidino as Director of GWU's POE and as part of the enterprise is directly tied to the injuries suffered by Dr. Hafez.[10]

## B.  GWU AND THE POE AGREED TO COMMIT OR FURTHER RICO OFFENSES AND ARE PART OF THE RICO CONSPIRACY

In addition to his substantive RICO claims, Plaintiff adequately alleges a RICO conspiracy claim under 18 U.S.C. § 1962(d) against GWU and POE by demonstrating that GWU and POE were aware of and knowingly agreed – including through Vidino – to further the unlawful objectives of the enterprise, which included their viral communication campaign against Dr. Hafez. To state a RICO conspiracy claim, a plaintiff need only establish that the defendant "intend[ed] to further an endeavor which, if completed, would satisfy all of the elements of a substantive criminal offense." *Salinas v. United States*, 522 U.S. 52, 65 (1997). "To establish sufficient knowledge, it is only required that the defendant 'know the general nature of the conspiracy and that the conspiracy extends beyond his individual role.'" *United States v Philip Morris USA, Inc.*, 2006 US Dist LEXIS 118375 at *2474 (DDC Aug. 17, 2006, Civil Action No. 99-2496 (GK)) (quoting *United States v. Rastelli*, 870 F.2d 822, 828 [2d Cir. 1989] [collecting cases]).[11] A defendant need not commit any predicate acts itself as long as it agreed to further the conspiracy with knowledge that another member of the conspiracy would engage in predicate acts. In other words, conspiracy liability only requires a knowing agreement to "facilitate the commission of a RICO offense by another conspirator." *United States v. Philip Morris Inc.*, 130 F. Supp. 2d 96, 98–99 (D.D.C. 2001)

---

[10] Dr. Hafez herein incorporates and fully adopts the arguments set forth in the separate Opposition to Vidino's Motion to Dismiss Plaintiff's FAC as to sufficient pleading of proximate causation. *See*, Section III (F). Furthermore, Dr. Hafez reiterates that Vidino's unlawful conduct is attributable to GWU and POE. *See*, supra, Section II.

[11] Dr. Hafez herein incorporates and fully adopts the arguments set forth in the separate Opposition to Vidino's Motion to Dismiss Plaintiff's FAC as to sufficient pleading of a RICO conspiracy. *See*, Section III (G). Furthermore, Dr. Hafez reiterates that Vidino's unlawful conduct is attributable to GWU and POE. *See*, supra, Section II, especially as to the argument that Vidino's *knowledge* is imputable to GWU and POE.

(quotation marks omitted); *see also*, *United States v Philip Morris USA, Inc.*, 2006 US Dist LEXIS

118375 at *2465 (collecting cases); *Fuji Photo Film U.S.A., Inc. v. McNulty*, 640 F. Supp. 2d 300,

314, 321 (S.D.N.Y. 2009) (RICO conspiracy may consist of an individual at the enterprise's

"heart" and a "collection of outside vendors" who "were aware of the general scope and nature of

the conspiracy"). A plaintiff "need show only 'slight evidence' that a particular person was a

member of the conspiracy," and "a party to a conspiracy need not know the identity, or even the

number, of his confederates." *United States v. Elliott*, 571 F.2d 880, 903 (5th Cir. 1978). It follows

that "a conspiracy can be inferred from a combination of close relationships or knowing presence

and other supporting circumstantial evidence." *United States v. Brito*, 136 F.3d 397, 409 (5th Cir.

1998); *Gagan v. Am. Cablevision, Inc.*, 77 F.3d 951, 961 (7th Cir. 1996) ("[A] 'RICO conspiracy,

like all conspiracies, does not require direct evidence of agreement; an agreement can be inferred

from the circumstances.'"); *Youming Jin v. Ministry of State Sec.*, 335 F. Supp. 2d 72, 83 (D.D.C.

2004) (defendant's close relationship to Chinese government was evidence of participation in

conspiracy). The allegations here meet that standard.

GWU and POE argue that they had no knowledge of Vidino's alleged activities. However,

the FAC includes sufficient circumstantial evidence which, along with publicly available

information the Court might take judicial notice of, supports the contention that GWU and POE

were aware of Vidino's fraudulent activities and participation in the enterprise described in the

FAC. Vidino is the director of GWU's POE and most – if not all – the articles and reports he

publishes on Muslim Brotherhood-related issues bear GWU's POE logo, name, and information.

The fact that several of Vidino's employees at GWU's POE resigned after Vidino's role in the

scheme became public, with one calling his conduct an "egregious ethical breach," factually

supports this contention. The close relationship between GWU and POE on one hand and Vidino

on the other is not only demonstrated by abundant publicly available information, but it has been sufficiently pleaded in the FAC.[12] Moreover, it is hard to believe that GWU and POE were not aware of Vidino's consulting agreement entered into with Alp and the agreed-upon "mandate" when GWU is directly mentioned in the agreement's signature line. *See*, **EXHIBIT D.** "In addition, even if one conspirator did not participate in, or was unaware of, acts undertaken by co-conspirators in furtherance of the conspiracy, it is nevertheless liable for such acts, including those that occur prior to its joining the conspiracy." *Philip Morris USA, Inc.*, 2006 US Dist LEXIS 118375 at *2467 (collecting cases). Furthermore, Plaintiff alleges that GWU and POE benefitted from UAE funding, which, while not conclusively linking them to Alp's smearing scheme, raises questions about their relationship to the conspiracy, at a minimum.[13] At the motion-to-dismiss stage the Court cannot credit GWU and POE knowledge of Vidino's activities as lacking or irrelevant. Rather, it must accept all allegations in the FAC and draw all reasonable inferences in Plaintiff's favor. *Narce*, 2023 US Dist LEXIS 193795, at *9. Moreover, Plaintiff alleges that Vidino entered into an agreement with Alp to act as a consultant, providing "interesting leads/rumors" and lists of alleged Muslim Brotherhood members, which the enterprise used to support its defamatory campaigns. That agreement bears GWU as a signatory in the signature line. *See*, **EXHIBIT D**.

GWU and POE rely on *RSM Production Corp. v. Freshfields Bruckhaus Deringer U.S. LLP*, 682 F.3d 1043 (D.C. Cir. 2012). There, the court dismissed RICO conspiracy claims against a law firm representing Grenada. *Id.* at 1046. The plaintiff's only evidence of the firm's intent to further Granada's illicit aims was a conclusory allegation that Grenada "had a reputation for

---

[12] *See*, *supra*, Section II; Section II, n. 1-3.
[13] Compensation may evidence a co-conspirator's knowledge of a scheme. *See*, *Salinas*, 522 U.S. at 66 (defendant's receipt of "a pair of designer watches and a pickup truck" was evidence of participation in RICO conspiracy).

corruption and bribery," and allegations that another law firm had declined to represent Grenada, and the defendant-firm accepted payment from a third-party. *Id.* at 1046–48. The plaintiff in *RSM Production Corp.* failed to allege that Grenada intentionally used the defendant-firm to carry out or conceal its racketeering acts. The sparse evidence of agreement in *RSM Production Corp.* stands in sharp contrast to the robust evidence of Vidino's witting participation in the enterprise. These allegations give rise to a plausible inference that Vidino knowingly furthered the enterprise's objectives, and, by extension, that GWU and POE may be held liable for his actions.

## C. THE FAC PLAUSIBLY ALLEGES RICO PREDICATE OFFENSES COMMITTED BY GWU AND POE

Defendants' assertion that Plaintiff's claims fail to allege actionable RICO predicate acts and are merely an attempt to reframe a defamation claim is unfounded. Racketeering activity is broadly defined as any of the predicate offenses specifically enumerated in Section 1961 of the RICO Act. 18 U.S.C. §1961(1)(B). This list of predicate acts includes wire fraud, mail fraud, and bank fraud—the racketeering activities alleged here. To satisfy RICO, a plaintiff need only allege two related predicate acts over a ten-year period. 18 U.S.C. §1961(5). Plaintiff easily clears this low bar. The FAC alleges multiple predicate acts of wire fraud, mail fraud, and bank fraud under 18 U.S.C. § 1961(1)(B), all of which go beyond defamation and establish a broader scheme of misconduct designed to harm Dr. Hafez financially and professionally. Contrary to Defendants' claims, the alleged actions, including the dissemination of misleading reports targeting Plaintiff's professional standing, satisfy the requirements for RICO predicate offenses.[14]

---

[14] Dr. Hafez herein incorporates and fully adopts the arguments set forth in the separate Opposition to Vidino's Motion to Dismiss Plaintiff's FAC as to sufficient pleading of the commission of predicate acts. *See*, Section III (C). Furthermore, Dr. Hafez reiterates that Vidino's unlawful conduct is attributable to GWU and POE. *See*, supra, Section II.

Wire fraud and bank fraud involve schemes to defraud and deprive victims of money or property through deceitful conduct, not merely defamatory statements. *See*, *United States v. Lemire*, 720 F.2d 1327, 1334–35 (D.C. Cir. 1983); *United States v. Porat*, 76 F.4th 213, 218 (3d Cir. 2023). In particular, a plaintiff "alleging mail and wire fraud must establish two essential elements: (1) a scheme to defraud; and (2) use of the mails or wires for the purpose of executing the scheme." *Bates v. Nw. Human Servs., Inc.*, 466 F. Supp. 2d 69, 89 (D.D.C. 2006) (citations omitted).[15] A "scheme to defraud" broadly encompasses any scheme to deprive someone of money or property through false statements of material fact. *Carpenter v. United States,* 484 U.S. 19, 27 (1987) ("'[T]o defraud' ... [has] the common understanding of wrongdoing one in his property rights by dishonest methods or schemes."); *Jericho Baptist Church Ministries, Inc. (D.C.) v. Jericho Baptist Church Ministries, Inc. (Md.)*, 223 F. Supp. 3d 1, 8 (D.D.C. 2016) (the term defraud "signif[ies] the deprivation of something of value by trick, deceit, chicane or overreaching"). Here, Defendants' actions were not incidental; they were deliberately orchestrated to deprive Plaintiff of financial resources and professional opportunities. For example, Defendants used U.S. wires to spread false accusations linking Plaintiff to terrorism, resulting in reputational and financial harm, and provided fabricated information to financial institutions, inducing them to restrict Plaintiff's access to funds.

Defendants' attempt to dismiss these allegations as defamation misconstrues the Complaint. While false and misleading statements form part of the narrative, they are components of a broader scheme that includes fraudulent acts targeting Plaintiff's livelihood and financial stability. The mere presence of alleged defamatory statements does not convert Plaintiff's claims

---

[15] "The requisite elements of 'scheme to defraud' under the wire fraud statute … and the mail fraud statute … are identical. Thus, cases construing mail fraud apply to the wire fraud statute as well." *United States v Philip Morris, Inc.*, 304 F Supp 2d 60, 69, n. 5 [DDC 2004]) (quoting *Lemire*, 720 F.2d at 1335, n.6).

into defamation, as the legal and factual context transcends such characterization. As a matter of fact, the same statement can give rise to claims for defamation and wire fraud. *See*, *Conwood Co. v. U.S. Tobacco Co.*, 290 F.3d 768, 783–84 (6th Cir. 2002). Both involve false statements of fact. What sets wire fraud apart is the intent to deprive the victim of money or property. The victim's loss of money or property cannot be "only an incidental byproduct of the scheme"; it must be "an 'object of the fraud.'" *United States v. Porat*, 76 F.4th 213, 218 (3d Cir. 2023). The perpetrator need not "end[] up with the victim's property or money." *Feld Ent., Inc. v. Am. Soc'y for the Prevention of Cruelty to Animals*, 873 F. Supp. 2d 288, 318 (D.D.C. 2012).

The FAC's well-pleaded allegations of predicate acts are sufficient to state a RICO claim. Here, Defendants, including Vidino, GWU, and its POE, intended to (and did) deprive Plaintiffs of money and property, as confirmed by Defendants' own internal documents. For example, in a February 2018 Action Plan, Alp acknowledged that it would "[A]lert compliance databases and watchdogs, which are used by banks and multinationals, about … links to terrorism." "[D]iscreetly notify banks of MB … [associates] … links to terrorism and Political Exposed Persons (PEPs), the objective being to block their bank accounts and business." (AC ¶11) Alp added: "Should you give us the green light, we believe that we could seriously damage, if not destroy, the reputation and viability of key MB European groups through our confidential offensive viral communication." (AC ¶12). Alp would also alert banks and bank compliance monitors to the false claims Alp manufactured to get banks to stop lending to Alp's targets, including Dr. Hafez, isolating them financially. Dr. Hafez also allege with particularity that Defendants, including Vidino, GWU, and POE, sent numerous emails and published numerous articles, reports, and blog posts, making the false claims that Plaintiff was linked to the Muslim Brotherhood and terrorism. Vidino, along with GWU and POE, penned and published the relevant report on the Muslim Brotherhood in Austria,

making it available online worldwide, including in the United States. *See*, **EXHIBIT E**. These statements were communicated using interstate wires. *United States v. Ring*, 628 F. Supp. 2d 195, 217 (D.D.C. 2009). That use of interstate wires was not only foreseeable, but it was also and foremost an essential element of Defendants' scheme that allowed them to disseminate their fraudulent statements to specific audiences around the globe, including in the United States, and to do so pseudonymously.[16]

Plaintiffs also allege predicate acts of bank fraud. The bank fraud statute makes it unlawful to participate in a "scheme ... to defraud a financial institution." 18 U.S.C. §1344(1). Under Section 1344(1), the defendant need not actually deprive the financial institution of anything of value, or even intend to do so—the scheme itself is sufficient for liability. *Shaw v. United States*, 580 U.S. 63, 67 (2016) ("[T]he statute ... demands neither a showing of ultimate financial loss nor a showing of intent to cause financial loss."). Here, Defendants, including Vidino, GWU, and POE, made statements falsely accusing Plaintiff of having links to the Muslim Brotherhood and terrorism directed at banks and bank compliance monitors to fraudulently induce banks to stop dealing with and providing access to funds to Plaintiff. That is exactly what Defendants intended to happen, and that is exactly what several financial institutions did. Defendants do not seriously contest that Plaintiffs adequately pleaded predicate acts of bank fraud. However, in *United States v. Crisci*, 273 F.3d 235 (2d Cir. 2001), the court *affirmed* an indictment charging the defendant with bank fraud, noting that "'[t]he bank need not be the immediate victim of the fraudulent scheme' and need not have suffered actual loss." 273 F.3d at 240. And even though *Crisci* can be read to suggest

---

[16] "In the RICO context, it is well-accepted that 'the scope of fraud under [the wire and mail fraud] statutes is broader than common law fraud'" *Regency Communs., Inc. v Cleartel Communs., Inc.*, 160 F Supp 2d 36, 43-44 (DDC 2001) (quoting *McEvoy Travel Bureau, Inc. v. Heritage Travel, Inc.*, 904 F.2d 786 [1st Cir. 1990]); *see also*, *Neder v. United States,* 527 U.S. 1, 24-25 (1999) ("common-law requirements of 'justifiable reliance' and 'damages,' for example, plainly have no place in the federal fraud statutes"); *United States v. Stewart*, 872 F.2d 957, 960 (10th Cir. 1989) ("an offense under [the mail fraud statute], unlike common law fraud, does not require the successful completion of the scheme to defraud").

that the fraudulent scheme must be "designed to deceive" a bank "into releasing property," this is not the law following the Supreme Court's subsequent decision in *Shaw*, which expressly held that bank fraud does *not* require intent to harm a bank – knowledge that a bank would likely suffer harm to a property interest is sufficient. *Shaw*, 580 U.S. at 64; *see also In re Search of Multiple Email Accts. Pursuant to 18 U.S.C. §2703*, 585 F. Supp. 3d 1, 15 (D.D.C. 2022) ("[A] §1344(1) violation does not require that a defendant intended to cause financial harm . . . to a financial institution"). Regardless, here Defendants, including Vidino, GWU, and POE *did* intend to induce banks to stop lending and providing funds to Plaintiff. For example, in *Jericho Baptist Church*, this District denied a motion to dismiss RICO claims premised on predicate acts of mail, wire, and bank fraud asserted by a church, not a financial institution. F. Supp. 3d at 8; *see also*, *Hill v. Opus Corp.*, 841 F. Supp. 2d 1070, 1098 (C.D. Cal. 2011). If a plaintiff suffers injury to money or property, that plaintiff has standing to assert predicate acts of bank fraud.

Therefore, Defendants' effort to reduce Plaintiff's claims to defamation ignores the specific allegations of fraudulent and coordinated misconduct aimed at destroying Dr. Hafez's reputation, limiting his financial autonomy, and curtailing his professional opportunities, which clearly meet the elements of RICO predicate acts, including wire fraud, mail fraud, and bank fraud.[17]

## V.  DR. HAFEZ'S STATE LAW CLAIMS ARE TIMELY AND MERITORIOUS

### A.  THE COMMON LAW FRAUD CLAIM IS PROPER

GWU and POE's arguments against Plaintiff's fraud claim are misplaced and misconstrue the allegations in the FAC. While GWU and POE attempt to compartmentalize Plaintiff's claims and dismiss their significance, the allegations – read holistically, accepting all factual allegations

---

[17] The failure of Defendants GWU and POE to present any argument challenging the existence of an enterprise or a pattern of racketeering activity under RICO – unlike Vidino in his motion to dismiss – not only weakens their position regarding Plaintiff's RICO claims but also constitutes a waiver of such arguments. Any broad and cursory incorporation of Vidino's arguments does not cure this deficiency.

in the complaint as true, and construing all reasonable inferences in Plaintiff's favor – plausibly support each element of common-law fraud.

The essential elements of common law fraud are: (1) a false representation, (2) in reference to a material fact, (3) made with knowledge of its falsity, (4) with intent to deceive, and (5) on which reliance is placed. *See*, *Hughes v Abell*, 867 F Supp 2d 76, 92 (DDC 2012) (citing *Virginia Acad. of Clinical Psychologists v. Group Hospitalization & Med. Servs., Inc.*, 878 A.2d 1226, 1233 [D.C. 2005]; *D'Ambrosio v. Colonnade Council of Unit Owners*, 717 A.2d 356, 360-61 [D.C. 1998]).

First, Plaintiff alleges specific false representations made with knowledge of their falsity, including statements published in the August 2017 report, "The Muslim Brotherhood in Austria," which bore GWU and POE's names on the cover, was disseminated through its official website, and is still held available online and in their archives. The report's funding, coordination, and publication were directly tied to GWU and POE, underscoring their involvement. Notably, this report was later shared with Alp and other Defendants involved in the scheme, was followed by Vidino's directly related testimonies to public officials and state authorities, and served as foundational groundwork for Operation Luxor. The fact that the report predates the formal agreement between Alp and Vidino bears little relevance; the FAC plausibly alleges that Defendants' coordinated efforts to harm Plaintiff were well underway and that GWU and POE's resources and veneer of legitimacy and credibility enabled these actions.

Second, Defendants' assertion that Plaintiff fails to meet the heightened pleading standards of Rule 9(b) is meritless. *See Bates v. Nw. Human Servs., Inc.*, 466 F. Supp. 2d 69, 88-89 (D.D.C. 2006) (quoting *Fink v. Nat'l Sav. & Trust Co.*, 772 F.2d 951, 963 (D.C. Cir. 1985)). Typically, compliance with Rule 9 pleading requirements means "stat[ing] the time, place and content of the

false misrepresentations, the fact misrepresented[,] and what was retained or given up as a consequence of the fraud." *Bates v. Nw. Human Servs., Inc.*, 466 F. Supp. 2d 69, 88-89 (D.D.C. 2006) (quoting *U.S. ex rel. Williams v. Martin-Baker Aircraft Co.*, 389 F.3d 1251, 1256 [D.C. Cir. 2004]). Plaintiff identifies the "time, place, and content" of the fraudulent statements and misrepresentations with sufficient specificity. The August 2017 report, along with subsequent editorial articles and directly related testimonies to government officials sufficiently outlined in the FAC, falsely implied Plaintiff's association with the Muslim Brotherhood while omitting critical contextual information about his role as a voice against Islamophobia and in favor of religious tolerance.[18] These misrepresentations were deliberately crafted to manipulate perceptions among third parties, including Plaintiff's professional contacts and Austrian authorities, and to directly harm Plaintiff's reputation and career. The report's dissemination through institutional channels and its use in Operation Luxor underscore the calculated and far-reaching nature of the fraudulent scheme.

Third, Defendants misinterpret the reliance element of Plaintiff's fraud claim. While the alleged misrepresentations were directed at third parties, Plaintiff sufficiently alleges that they were deliberately designed to produce detrimental consequences for him. Courts recognize that reliance can encompass scenarios where false statements made to third parties foreseeably harm the plaintiff. Plaintiff explicitly alleges that Defendants' misrepresentations caused significant harm, including reputational damage, professional setbacks, and personal hardship. The argument that harm does not equate to detrimental reliance is unpersuasive; the FAC details how Defendants' fraudulent conduct foreseeably induced third parties, including Austrian authorities, to act to

---

[18] "A false representation may be either 'an affirmative misrepresentation or a failure to disclose a material fact when a duty to disclose that fact has arisen.'" *Sundberg v. TTR Realty, LLC*, 109 **A**.3d 1123, 1131 (D.C. 2015) (quoting *Saucier v. Countrywide Home Loans*, 64 A.3d 428, 438 [D.C. 2013]); see also, *Jericho Baptist Church Ministries, Inc. (D.C.)*, F. Supp. 3d at 8.

Plaintiff's detriment. Moreover, Dr. Hafez did rely on Defendants' fraudulent misrepresentations, as shown, for instance, by the facts that he undertook legal action to protect his rights and that he relocated to the United States based on the effect of those fraudulent statements. *See*, generally, Pl. Decl.

Fourth, Defendants' claim that Plaintiff fails to allege intent to deceive is unfounded.[19] Evidence establishing reckless disregard for the truth or falsity of a statement, as well as *willful blindness*, satisfies the intent standard. *United States v. Munoz*, 233 F.3d 1117, 1136 (9th Cir. 2000) ("reckless indifference to the truth or falsity of a statement satisfies the specific intent requirement in a mail fraud case"); *In re Korean Airlines Disaster of September 1*, 1983, 704 F. Supp. 1135, 1136 (D.D.C. 1988), aff'd in relevant part, 932 F.2d 1475 (D.C. Cir. 1991); *United States v. Prows*, 118 F.3d 686, 692 (10th Cir. 1997); *United States v. Coyle*, 63 F.3d 1239, 1243 (3rd Cir. 1995). In addition, "[f]raudulent intent may be inferred from the modus operandi of the scheme." *United States v. Reid*, 533 F.2d 1255, 1264 (D.C. Cir. 1976). Fraudulent intent may also be proven by inference from the totality of the circumstances, including by indirect or circumstantial evidence. *See*, e.g., *United States v. Alston*, 609 F.2d 531, 538 (D.C. Cir. 1979) (totality of the circumstances); *United States v. Sawyer*, 85 F.3d 713, 733 (1st Cir. 1996) (indirect and circumstantial evidence).[20]

In this case, evidence of the existence and methods of the Enterprise's overall scheme to defraud and Defendants' individual roles in that Enterprise – including each Defendant's purposeful

---

[19] "The question of fraudulent intent is a question of fact that is rarely appropriate for [stages of the litigation preceding trial]." *United States v. Philip Morris USA, Inc.*, 337 F Supp 2d at 24 (citing *Citizens Bank of Clearwater v. Hunt*, 927 F.2d 707, 711 (2d Cir. 1991); *ABB Daimler-Benz Transport. (N. Amer.), Inc. v. Nat'l RR Passenger Corp.*, 14 F. Supp. 2d 75, 86 (D.D.C. 1998).

[20] Dr. Hafez herein incorporates and fully adopts the arguments set forth in the separate Opposition to Vidino's Motion to Dismiss Plaintiff's FAC as to sufficient pleading of common law fraud. *See*, Section IV (B). Furthermore, Dr. Hafez reiterates that Vidino's unlawful conduct is attributable to GWU and POE. *See*, supra, Section II, especially as to the argument that Vidino's *knowledge* is imputable to GWU and POE and may corroborate intent.

and conscious actions taken in light of its collective knowledge – reveals a cumulative pattern of decisions, actions, and inaction that is powerful circumstantial evidence of specific fraudulent intent. The FAC provides specific allegations of Defendants' intent, including their deliberate efforts to disseminate false statements and their coordination in crafting and promoting the August 2017 report. The inclusion of the University's name on the report and the agreement between Alp and Vidino – bearing GWU as a signatory – further reinforces the institutional Defendants' involvement and intent to legitimize and amplify these falsehoods. Plaintiff alleges that the Defendants, acting with the requisite knowledge and intent, orchestrated a scheme designed to damage his reputation and professional standing. For these reasons, Plaintiff's fraud claim is adequately pled, and Defendants' arguments for dismissal should be rejected.[21]

## B.  THE UNFAIR TRADE PRACTICES/CPPA CLAIM IS PROPER

The District of Columbia Consumer Protection Procedures Act ("CPPA") makes it unlawful "for any person to engage in an unfair or deceptive trade practice, whether or not any consumer is in fact misled, deceived, or damaged thereby." D.C. Code § 28-3904. The statute non-exhaustively defines unfair or deceptive trade practices to include, among other things, misrepresenting or failing to state a material fact which has a tendency to mislead. *Id.* The statute likewise defines "goods and services" broadly to include "any and all parts of the economic output of society, at any stage or related or necessary point in the economic process, and includes consumer credit, franchises, business opportunities, real estate transactions, and consumer services of all types." Id. § 28-3901(a)(7). Because the "purpose of the CPPA is to protect consumers from a broad spectrum of unscrupulous practices by merchants," the statute "should be read broadly to

---

[21] Assuming arguendo that the Court were inclined to grant GWU and POE's motion to dismiss the common law fraud claim, it should be noted that "dismissal of the plaintiffs' fraud claim does not require the dismissal of the plaintiffs' RICO claims." *Regency Communs., Inc.*, 160 F Supp 2d at 43-44 (DDC 2001).

assure that the purposes are carried out." *Qureshi v Am. Univ.*, 2023 US Dist LEXIS 38041, at *7-8 [DDC Mar. 7, 2023, No. 20-cv-1141 (CRC)]) (quoting *Mod. Mgmt. Co. v. Wilson*, 997 A.2d 37, 62 [D.C. 2010]).

Defendants' arguments against Plaintiff's claim under the CPPA mischaracterize both the statute's scope and Plaintiff's allegations. While Defendants narrowly asserts that the CPPA applies only to consumer-merchant relationships, this restrictive interpretation overlooks the statute's broader intent to prevent deceptive and unfair practices that harm individuals and the public.

Plaintiff's FAC sufficiently alleges that Defendants engaged in coordinated efforts to disseminate false information, which harmed Plaintiff's reputation and professional opportunities. Although Defendants may not provide traditional consumer goods or services, their actions – directly tied to the dissemination of a report published on university-affiliated platforms and shared with other Defendants – constitute deceptive practices that align with the CPPA's goals of addressing misconduct impacting individuals and communities. Relevantly, "a 'plaintiff does not [even] have to establish intentional misrepresentation in order to make out a claim' under the CPPA's misrepresentation provisions." *Qureshi*, 2023 US Dist LEXIS 38041, at *25-28 (quoting *E.M. v. Shady Grove Reprod. Sci. Ctr. P.C.*, 496 F. Supp. 3d 338, 411 [D.D.C. 2020]).

Furthermore, Defendants' assertion that Plaintiff failed to allege an "unlawful trade practice" ignores the specificity of the FAC's claims. Plaintiff has detailed how Defendant's actions – publishing and promoting misleading reports and coordinating with others to perpetuate falsehoods – meet the criteria for deceptive practices under D.C. Code § 28-3904. These allegations are neither abstract nor conclusory; they provide sufficient detail to give Defendants notice of the wrongful conduct alleged and its connection to Plaintiff's harm, in contrast with

Defendants' argument that Plaintiff's allegations are vague. The CPPA's purpose embraces addressing the type of coordinated deceptive conduct alleged here, regardless of whether it arises from a traditional consumer-merchant relationship. Plaintiff's claims are supported by allegations of deliberate, harmful actions that undermine the statute's purpose of safeguarding individuals from unfair practices.

For these reasons, Plaintiff's CPPA claim is neither defective nor improperly pleaded. Defendant's arguments to dismiss the claim lack merit and should be rejected.[22]

## C. THE TORTIOUS-INTERFERENCE CLAIM IS PROPER

Defendants' arguments for dismissing Plaintiff's tortious interference claims overlook the detailed and specific allegations in the FAC, which – along with Plaintiff's supporting declaration and accompanying exhibits – adequately establish the required elements for these claims. Plaintiff pleads with specificity the existence of multiple business relationships that were disrupted by Defendants' intentional and coordinated conduct, causing actual harm.

"To state claims for tortious interference under District of Columbia law, a plaintiff must allege the existence of a contract or business expectancy, the defendant's knowledge of the contract or business expectancy, intentional interference causing the breach of the contract or termination of the business expectancy, and damages." *Banneker Ventures, LLC v Graham*, 798 F3d 1119, 1134 (2015) (citing *Sturdza v. United Arab Emirates*, 281 F.3d 1287, 1305 [D.C. Cir. 2002]; *Bennett Enters., Inc. v. Domino's Pizza, Inc.*, 45 F.3d 493, 499 [D.C. Cir. 1995]); *see also*, Restatement § 766B (1989) (defining tortious interference with prospective business advantage to include interference consisting of "inducing . . . a third person not to enter into or continue the

---

[22] Dr. Hafez herein incorporates and fully adopts the arguments set forth in the separate Opposition to Vidino's Motion to Dismiss Plaintiff's FAC as to sufficient pleading of unfair trade practices. *See*, Section IV (C). Furthermore, Dr. Hafez reiterates that Vidino's unlawful conduct is attributable to GWU and POE. *See*, supra, Section II.

prospective relation").[23] "[I]nducement may be any conduct conveying to the third person the actor's desire to influence him not to deal with the other." Restatement § 766 cmt. k. Such conduct may include "intimidation," but it also includes "persuasion," such as the persuasion coupled with financial influence alleged here. *Id.* § 766 cmt. h. *See*, *Banneker Ventures, LLC*, 798 F3d at 1136.

Contrary to Defendants' contention that Plaintiff identifies only his relationship with the University of Salzburg, the FAC and Plaintiff's declaration outline with specificity several examples of existing and prospective business relationships that were disrupted due to Defendants' conduct. These include, but are not limited to, Plaintiff's roles as a visiting professor, guest speaker, and collaborator with various academic and professional institutions, as well as speaking engagements and publishing opportunities. *See*, Pl. Decl.; *see also*, **EXHIBITS F, G, H**. These disrupted relationships go well beyond Plaintiff's affiliation with the University of Salzburg. Plaintiff's declaration details how Defendants' deliberate actions – especially those of Vidino, GWU, and POE – caused these disruptions.[24] Plaintiff articulates an "actual loss of business, time, or money" through examples of severed or impaired professional relationships, including engagements at international institutions, that were affected by the false and misleading information disseminated by Defendants. While not all of the disrupted relationships were grounded on contractual agreements, at a minimum the outlined relationships constituted those business expectancies commercially reasonable to anticipate that the theory of tortious interference protects.

---

[23] This theory of tortious interference protects "business expectancies, not grounded on present contractual relationships but which are commercially reasonable to anticipate, . . . from unjustified interference." *Carr v. Brown*, 395 A.2d 79, 84 (D.C. 1978). *See*, *Banneker Ventures, LLC*, 798 F3d at 1134 (quoting *Browning v. Clinton*, 292 F.3d 235, 242 [D.C. Cir. 2002]) ("A business expectancy 'must be commercially reasonable to anticipate' before its loss may be actionable").

[24] Dr. Hafez herein incorporates and fully adopts the arguments set forth in the separate Opposition to Vidino's Motion to Dismiss Plaintiff's FAC as to sufficient pleading of tortious interference. *See*, Section IV (D). Furthermore, Dr. Hafez reiterates that Vidino's unlawful conduct is attributable to GWU and POE. *See*, supra, Section II.

Defendants' claim that Plaintiff fails to allege affirmative acts of interference is unfounded. Plaintiff specifically identifies Vidino's publication of the 2017 report and his subsequent directly-related misleading editorial articles and institutional testimonies as affirmative acts intended to interfere with Plaintiff's relationships. These actions were further amplified by GWU and POE, whose funding, publication, and promotion of the report constitute independent affirmative acts that reinforced and furthered the intended goals of the broader scheme. Moreover, under the doctrine of vicarious liability, Vidino's conduct – such as the 2017 report and directly-related misleading editorial articles and institutional testimonies – is attributable to GWU and POE. Their close association and support for Vidino's actions demonstrate their involvement in the dissemination of false and defamatory statements, making them jointly liable for the harm caused.

Plaintiff's allegations clearly establish the harm caused by Defendants' intentional interference. In addition to outlining disrupted relationships with multiple academic and professional entities, the FAC – along with Plaintiff's supporting declaration and accompanying exhibits – provide specific examples of professional opportunities lost, including speaking engagements, collaborations, and publishing prospects. These losses resulted directly from the coordinated dissemination of false information and were compounded by reputational harm that undermined Plaintiff's ability to maintain and develop further relationships. Plaintiff's articulation of these disruptions and losses demonstrates "actual loss of business, time, or money" caused by Defendants' actions, satisfying the requirement for damages under tortious interference claims. The harm is not speculative or incidental; it is the foreseeable and intended outcome of Defendants' actions.

Defendants' arguments fail to address the detailed allegations in the FAC, which – along with Plaintiff's supporting declaration and accompanying exhibits – clearly establish the requisite

35

elements for tortious interference. Plaintiff has demonstrated with specificity the existence of disrupted business relationships, the intentional nature of Defendants' interference, and the actual harm caused. These claims are supported by well-pleaded facts and should not be dismissed.

### D. THE PRIMA FACIE TORT CLAIM IS PROPER

Defendants' argument that prima facie tort is not recognized under D.C. law overlooks the FAC's clear and specific allegations of intentional harm. While the label "prima facie tort" may not be expressly embraced in D.C., the principles underlying such claims – intentional infliction of harm without justification – are well-recognized under general tort law. *See*, e.g., *Taylor v Dist. of Columbia Water & Sewer Auth.*, 957 A2d 45, 50 (DC 2008).

> Section 870 of the RESTATEMENT (SECOND) OF TORTS describes a prima facie tort, in part: 'One who intentionally causes injury to another is subject to liability to the other for that injury, if his conduct is generally culpable and not justifiable under the circumstances.' And, Comment a explains that this tort 'is intended to serve as a guide for determining when liability should be imposed for harm that was intentionally inflicted, even though the conduct does not come within the requirements of one of the well established and named intentional torts.'

*Taylor*, 957 A2d at 50 (citing *Pulaski Constr. Co. v. Air Frame Hangars, Inc.,* 950 A.2d 868, 870 [N.J. 2008]) ("Assuming, without deciding, that our common law may admit of a cause of action for prima facie tort, it is solely a gap-filler. That is, the availability of the prima facie tort doctrine is limited exclusively to those instances of intentional and culpable conduct unjustified under the circumstances that, as a threshold matter, do not fall within a traditional tort cause of action").

The FAC demonstrates that Defendants engaged in a deliberate and coordinated campaign to harm Plaintiff. Their actions, including the dissemination of false and defamatory information, were calculated to disrupt Plaintiff's professional opportunities, destroy his reputation, and cause significant economic harm. These allegations sufficiently describe broader malicious conduct aimed at undermining Plaintiff's livelihood. Plaintiff details substantial harm resulting from

Defendants' actions, including relocation costs, disrupted career prospects, lost business relationships, and emotional damage. Defendants' argument that these claims are insufficiently precise mischaracterizes the nature of the allegations. The FAC clearly establishes that the harm was intentional, unjustified, and directly tied to Defendants' conduct.

Even if labeled differently, the intentional and malicious conduct alleged in the FAC is sufficient to support the claim. Defendants' dismissal of this claim is unwarranted, as the allegations provide a clear basis for the intentional infliction of harm and justify its continuation at this stage.[25]

### E. THE STATE LAW CLAIMS ARE TIMELY

The contention that Plaintiff's claims are time-barred is incorrect and ignores both the continuing tort doctrine and the full scope of the allegations in the FAC. Under D.C. law, a claim usually accrues at the time the alleged injury occurs. . . . However, "where the relationship between the fact of injury and the alleged tortious conduct is obscure when the injury occurs," D.C. courts apply the more forgiving discovery rule. *See*, *Bussineau v. President & Directors of Georgetown Coll.*, 518 A.2d 423, 425 (D.C. 1986).[26] Moreover, the Supreme Court has held that, in certain situations, continuous violations extending over a period of time can be considered a single unlawful act or practice for limitations purposes, provided that some of the claims brought are timely. *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 117 (2002); *see also*. *Lively v. Flexible Packaging Ass'n*, 830 A.2d 874, 890 (D.C. Cir. 2003). Under this "continuous violation exception," isolated acts that fall outside of the limitations period can be grouped with acts that

---

[25] Dr. Hafez herein incorporates and fully adopts the arguments set forth in the separate Opposition to Vidino's Motion to Dismiss Plaintiff's FAC as to sufficient pleading of prima facie tort. *See*, Section (E). Furthermore, Dr. Hafez reiterates that Vidino's unlawful conduct is attributable to GWU and POE. *See*, supra, Section II.

[26] Courts in D.C. recognize that when accrual actually occurred in a particular case is a question of fact, so it cannot make that determination at this stage unless no reasonable fact-finder could find otherwise. *See*, *Diamond v Davis*, 680 A2d 364, 370 (DC 1996) (citing *Ehrenhaft v. Malcolm Price, Inc.*, 483 A.2d 1192, 1204 [D.C. 1984]).

fall within it to render the claim timely, even if there are "significant gaps in the occurrence of acts

. . . that take place 'over a series of days or perhaps years.'" *Lively*, 830 A.2d at 890

(citing *Morgan*, 536 U.S. at 117). *See*, *Moonblatt v District of Columbia*, 572 F Supp 2d 15, 29-

30 (DDC 2008).

Contrary to Defendants' assertions, the August 2017 publication of the report is not an

isolated event that would trigger the statute of limitations for Plaintiff's claims. Rather, the FAC

details a series of actions that constitute a continuing pattern of tortious conduct, including the

provision of the report to Alp, its ongoing availability on Defendants' website, and its retention in

their archives during the relevant time period and to this day. This series of actions demonstrates

that the alleged harm was not confined to a single moment in time but was perpetuated through a

deliberate and ongoing scheme to harm Plaintiff. The continuing tort doctrine applies in this

context, as the harmful conduct spanned a significant period and was not limited to the initial

publication of the report. Moreover, this continued availability and dissemination of the report

reinforce the timeliness of Plaintiff's claims, as each instance of publication or use contributes to

the harm and resets the limitations period.

### i. Alternatively Equitable Tolling Should Apply

"When applying the statute of limitations to an action including fraud claims, such as the

present case, we apply the doctrine of equitable tolling. The statute of limitations is suspended

until the plaintiff discovers, or should have discovered through the exercise of reasonable

diligence, the fraudulent activity in question." *Cross v Price Waterhouse & Co.*, 1983 US Dist

LEXIS 17895, at *12 (Apr. 7, 1983, No. 80-410) (citing *Fitzgerald v. Seamans*, 553 F.2d 220, 228

[D.C.Cir. 1978]). The *Fitzgerald* formulation of the equitable tolling doctrine reiterated a standard

long applied in federal courts. *See*, e. g., *Cook v. Avien, Inc.*, 573 F.2d 685, 695 (1st Cir. 1978);

*Berry Petroleum Co. v. Adams & Peck*, 518 F.2d 402, 410 (2d Cir. 1975); *Klein v. Bower*, 421 F.2d 338, 343 (D.C. Cir. 1970). "Equitable tolling is appropriate only in rare instances where – due to circumstances external to the party's own conduct – it would be unconscionable to enforce the limitation period against the party and gross injustice would result." *Robinson v. Dep't of Homeland Sec. Off. of Inspector Gen.*, 71 F.4th 51, 58 (D.C. Cir. 2023) (cleaned up). "Fraudulent concealment . . . tolls the running of the statute of limitations." *Firestone v. Firestone*, 76 F.3d 1205, 1209 (D.C. Cir. 1996); *see also*, *Doe v. Exxon Mobil Corp.*, 573 F. Supp. 2d 16, 34 (D.D.C. 2008). (establishing the "lulling doctrine," which applies when the defendant has done something that amounted to an affirmative inducement to plaintiffs to delay bringing action); *Bailey v. Greenberg*, 516 A.2d 934, 937 (D.C. 1986); *Kiwanuka v Bakilana*, 844 F Supp 2d 107, 119 (DDC 2012). Any statement, word, or act, however, which tends to suppress the truth may constitute fraudulent concealment. *William J. Davis, Inc. v. Young*, 412 A.2d 1187, 1192 (D.C. 1980).

Defendants' attempt to frame the claims as time-barred under the one-year statute of limitations applicable to defamation fails to address the nature of the claims, which include intentional misconduct that extends beyond mere defamation.[27] The FAC establishes a pattern of conduct intended to harm Plaintiff's reputation, professional relationships, and opportunities, making clear that these actions were neither incidental nor time-barred. Accordingly, Defendants' statute of limitations argument is unfounded, and Plaintiff's claims should proceed.[28] [29]

---

[27] The statute of limitations for Plaintiff's state law claims of fraud is three years. The same three-year statute of limitations applies to tort claims. *See,* D.C. Code § 12-301.

[28] "The D.C. Court of Appeals has plainly stated that '[i]f there is any reasonable doubt in a statute of limitations problem, the Court will resolve the question in favor of the complaint standing and against the challenge.' That directive guides the Court's decision here." *Moonblatt*, 572 F Supp 2d at 30 (quoting *Simpson v Dist. of Columbia Off. of Human Rights*, 597 A2d 392, 401 [DC 1991]).

[29] Dr. Hafez herein incorporates and fully adopts the arguments set forth in the separate Opposition to Vidino's Motion to Dismiss Plaintiff's FAC as to the timeliness of his state law claims. *See*, Section IV (A). Furthermore, Dr. Hafez reiterates that Vidino's unlawful conduct is attributable to GWU and POE. *See*, supra, Section II.

## VI.    THE POE IS A LEGAL ENTITY CAPABLE OF BEING SUED

Defendant's argument that the POE lacks the capacity to be sued is without merit. Rule 9(a)(1) clearly provides that "a pleading need not allege a party's capacity to sue or be sued; a party's authority to sue or be sued in a representative capacity; or the legal existence of an organized association of persons that is made a party." While Rule 12(b) sets forth seven grounds for a pre-answer motion to dismiss, none permits a party to seek dismissal for failure to state a claim based on that party's alleged lack of capacity to be sued. Instead, lack of capacity is generally treated as an affirmative defense, *Wiwa v. Royal Dutch Petroleum Co.,* Nos. 96 Civ. 8386, 01 Civ. 1909, 02 Civ. 7618, 2009 WL 464946, at \*4 (S.D.N.Y. Feb. 25, 2009), and must be raised "by a specific denial," Fed. R. Civ. P. 9(a)(2). *See*, *Jacques Krijn En Zoon v. Schrijver*, 151 F. Supp. 955, 957 (S.D.N.Y. 1957) (denying motion to dismiss for lack of capacity and noting that "[i]f defendant wishes to controvert plaintiff's legal existence and capacity to sue . . . he may do so in his answer as provided by Rule 9(a) of the Federal Rules of Civil Procedure"). Moreover, Federal Rules of Civil Procedure are clear in recognizing an exception establishing that a partnership or other unincorporated association, which has no such capacity by the law of such state, may sue or be sued in its common name for the purpose of enforcing for or against it a substantive right existing under the Constitution or laws of the United States. Fed. R. Civ. P. 17(b)(3)(A).

Contrary to Defendants' assertion, POE is not merely an internal unit of GWU but operates as an independent entity with its own distinct mission, personnel, and operations. The FAC demonstrates that the POE functions autonomously, with activities and objectives that extend beyond the direct control of GWU. It conducts research, produces reports, and engages in activities aimed at influencing public discourse and policy, all of which are distinct from GWU's general academic mission. It is also hard to believe that an entity allegedly not capable of being sued is

instead capable of holding intellectual property rights.[30] At this stage and giving Plaintiff all the inferences he is entitled to, this autonomy establishes that POE operates as an unincorporated association under D.C. law. Furthermore, while POE may be affiliated with GWU, its actions are not shielded by its corporate charter. POE's publication of the report, ongoing maintenance of its website, and external collaborations suggest a level of operational independence that defeats Defendant's argument that it is merely a division of GWU.[31] This independent operation establishes its capacity to be sued under Rule 17(b) as either an unincorporated association or a de facto entity with sufficient separateness from GWU.

For these reasons, GWU and POE's argument should be rejected, and the motion to dismiss the POE as a party to this lawsuit should be denied. The FAC is facially sufficient and the argument that POE should be dismissed for lack of legal existence is premature. At a minimum, Dr. Hafez has pled sufficient facts to entitle it to take discovery regarding the current legal existence of POE.

## CONCLUSION

For the reasons set forth, the FAC sufficiently alleges that Defendants, including GWU and its POE, engaged in a deliberate and malicious campaign designed to harm Plaintiff's reputation, professional relationships, and economic standing. Contrary to Defendants' assertions, the FAC details actionable conduct, including significant RICO violations, intentional interference with specific business relationships, fraudulent misrepresentations, and coordinated efforts to undermine Plaintiff's professional standing. The allegations demonstrate a clear and proximate connection between Defendants' actions and Plaintiff's injuries, establishing plausible claims

---

[30] *See*, e.g., *supra*, note 2.
[31] For further reference, the Mission Statement of POE, identifying it as an entity of its own – "a leading research center on all forms of extremism" capable of engaging in partnerships and performing substantive empirical work on certain subject matters – and sufficiently distinguishing it from GWU and its general activities, is available online at: https://extremism.gwu.edu/about.

under both federal and state law. Accordingly, Plaintiff respectfully requests that the Court deny

Defendants GWU and the POE's Motion to Dismiss and award such other and further relief as it

deems just and proper.[32] Pursuant to LCvR 7(f), Plaintiff respectfully requests an oral hearing on

Defendants' Motion to Dismiss.

Dated: January 13, 2025
      New York, New York

                                              Respectfully submitted,


                                              **AIDALA, BERTUNA & KAMINS, P.C.**


                                              /s/ David M. Schwartz_____
                                              David M. Schwartz, Esq. (DC #208813)
                                              Arthur L. Aidala, Esq.
                                              (*Pro Hac Vice Admission Forthcoming*)
                                              Imran H. Ansari, Esq.
                                              (*Pro Hac Vice Admission Forthcoming*)
                                              546 Fifth Avenue, 6th Floor
                                              New York, New York 10036
                                              (212) 486-0011
                                              david@davidschwartzesq.com
                                              aidalaesq@aidalalaw.com
                                              iansari@aidalalaw.com


                                              *Attorneys for Plaintiff Farid Hafez*

---

[32] Plaintiff contends that his FAC is facially sufficient as is. However, assuming arguendo that the Court were inclined to grant GWU and POE's motion, Plaintiff respectfully requests the Court to provide him with an opportunity to amend the FAC, or that the eventual dismissal be without prejudice, and allow Plaintiff fair opportunity to file a new complaint. This is particularly applicable when the complaint asserts a claim that is on its face nonfrivolous. *See*, e.g., *Simmons v Abruzzo*, 49 F3d 83, 86-87 (2d Cir 1995). In fact, contrary to Defendants' meritless assertions, the amendment of the Original Complaint was only done to comply with Local Civil Rule ("LCvR") 5.1(c) and consisted in (i) adding names and full residence addresses of each party and (ii) using a correct civil cover sheet. *See*, Notice of New Case Error, dated March 27, 2024, on ECF. Therefore, any future amendment would not be futile, but rather warranted at this stage of the litigation, where parties have not even engaged in discovery yet.