# APPENDIX B

**13893/AB**
**vom 27.04.2023 zu 14351/J (XXVII. GP)**

🇦🇹 **Bundesministerium**
Justiz

bmj.gv.at

Dr.in **Alma Zadić, LL.M.**
Bundesministerin für Justiz

Herrn
Mag. Wolfgang Sobotka
Präsident des Nationalrats
Parlament
1017 Wien

Geschäftszahl: 2023-0.160.274

Ihr Zeichen: BKA - PDion (PDion)14351/J-NR/2023

Wien, am 27. April 2023

Sehr geehrter Herr Präsident,

die Abgeordneten zum Nationalrat Dr. Stephanie Krisper, Kolleginnen und Kollegen haben am 27. Februar 2023 unter der Nr. **14351/J-NR/2023** an mich eine schriftliche parlamentarische Anfrage betreffend „Ermittlungen zu Luxor wurden zu Rechtsstaatsdebakel" gerichtet.

Diese Anfrage beantworte ich nach den mir vorliegenden Informationen wie folgt:

Es wird um Verständnis ersucht, dass eine umfassende Beantwortung der Fragen aufgrund der Grenzen des parlamentarischen Interpellationsrechts, der verfassungsrechtlichen Verpflichtung zur Wahrung der Amtsverschwiegenheit und des Datenschutzes sowie im Hinblick auf die Bestimmungen der StPO über die Akteneinsicht nicht möglich ist. Die Fragen betreffen überwiegend Inhalte eines anhängigen, nicht öffentlichen (§ 12 StPO) Ermittlungsverfahrens, weshalb von einer detaillierteren Beantwortung der Fragen Abstand genommen werden muss.

**Zu den Fragen 1 bis 7:**
- *1. Das sog. "Luxor"-Verfahren 16 St 52/19t wurde laut Verfügung im AB-Bogen vom 30. August 2019 trotz Zusammenhang mit dem Verfahren 16 St 14/15y nicht mit*

*diesem gemeinsam geführt. Welche StA ist/war für das Verfahren 16 St 14/15y zuständig?*

- *2. In welchem Verfahrensstand befindet sich dieses Verfahren zum Zeitpunkt der Anfrage und zum Zeitpunkt der Beantwortung?*
- *3. Welche StA ist für das sog. Luxor-Verfahren zuständig?*
  - *a. Gibt es mehrere mehrere Verfahrensstränge zum Luxor-Verfahren?*
    - *i. Wenn ja, welche?*
    - *ii. Wenn ja, welche StA ist für welchen Verfahrensstrang zuständig (bitte um genaue Auflistung)?*
- *4. In welchem Verfahrensstand befindet sich dieses Verfahren zum Zeitpunkt der Anfrage und zum Zeitpunkt der Beantwortung?*
- *5. Falls eine unterschiedliche Zuständigkeit bei diesen beiden Verfahren besteht: warum?*
- *6. In welchem inhaltlichen Zusammenhang steht das Verfahren 16 St 52/19t mit dem Verfahren 16 St 14/15y?*
- *7. Auf Basis welcher Verdachtslage bzgl. welcher Strafdelikte wurde im Verfahren 16 St 14/15y gegen wen ermittelt (Bitte um Antwort in datenschutzkonformer Weise)?*

Die hier interessierenden Verfahren 16 St 52/19t und 16 St 14/15y werden beide von der Staatsanwaltschaft Graz geführt. Das Verfahren 16 St 52/19t befindet sich im Ermittlungsstadium, das Verfahren 16 St 14/15y endete mit Anklageerhebungen sowie Einstellungen. Die Ermittlungen im Verfahren 16 St 14/15y wurden vorwiegend wegen des Verdachts gemäß §§ 246 Abs. 1 und Abs. 2, 278a, 278b Abs. 2 StGB geführt.

Der im Anordnungs- und Bewilligungsbogen des Verfahrens 16 St 52/19t angeführte „inhaltliche Zusammenhang" ist nicht identisch mit dem Begriff des Zusammenhangs im Sinne des § 26 StPO, sondern beruhte lediglich darauf, dass der Verdacht bestand, dass Beschuldigte bzw. den Beschuldigten nahestehende Personen aus dem vormaligen Ermittlungsverfahren 16 St 14/15y gemeinsam mit Aktivisten der Muslimbruderschaft auftraten.

**Zu den Fragen 8 bis 11:**

- *8. Im AB-Bogen auf S.1 des Verfahrens 16 St 52/19t wurde im wesentlichen nur auf das Gutachten der Universität Wien und der George Washington-University von Lorenzo Vidino verwiesen. Gab es abseits dieses Gutachtens weitere Verdachtsmomente, die die Trennung notwendig machten?*
- *9. Auf welchem Wege kam das Gutachten zur StA Wien bzw. StA Graz?*

- *10. Wie kam es im Verfahren 16 St 52/19t zu der Zuständigkeit der StA Graz (bitte um genaue chronologische Auflistung?*
- *11. Wie genau kam es zur Zuständigkeit des fallführenden Staatsanwalts im Luxor-Verfahren (bitte um genaue chronologische Auflistung)?*
    - *a. Fiel das Ermittlungsverfahren zufällig an den fallführenden Staatsanwalt?*
        - *i. Wenn ja, nach welchem Modus?*
        - *ii. Wenn nein, warum wurde er konkret damit befasst?*
            - *1. Von wem und wann?*

Das Ermittlungsverfahren gegen (mutmaßliche) Vertreter der Muslimbruderschaft wurde aufgrund zweier Anlassberichte des Landesamtes für Verfassungsschutz und Terrorismusbekämpfung (LVT) Steiermark eingeleitet, nachdem die Studie von Lorenzo VIDINO ein umfassendes Bild der Tätigkeit der Muslimbruderschaft in Österreich bot.

Die Studie wurde in den Ermittlungsakt 16 St 14/15y übernommen. Auch weil zunächst eine Zusammenarbeit der dort als Beschuldigten geführten Personen mit (mutmaßlichen) Vertretern der Muslimbruderschaft nahelag (siehe Beantwortung der Fragen 1. – 7.), sich jedoch durch die weitergehenden Ermittlungen nicht erhärtete.

Nach Einlangen des ersten und zweiten Anlassberichtes des LVT Steiermark wurde sodann das Ermittlungsverfahren 16 St 52/19t eingeleitet und die erwähnte Studie dort zum Akt genommen.

Die (örtliche) Zuständigkeit der Staatsanwaltschaft Graz für das Ermittlungsverfahren gegen (mutmaßliche) Vertreter der Muslimbruderschaft ergab sich insoweit, als die Muslimbruderschaft auch in Graz etablierte Verbände betreibt und Personen, die nach der Verdachtslage der Muslimbruderschaft zuzuordnen sind, in Graz Tätigkeiten für die Muslimbruderschaft entfalteten.

Die Zuständigkeit des die Ermittlungen führenden Staatsanwalts im Verfahren 16 St 52/19t ergibt sich aus der Geschäftsverteilung der Staatsanwaltschaft Graz.

**Zur Frage 12:**
- *Gab es im Luxor-Verfahren Weisungen der OStA oder des BMJ?*
    - *a. Wenn ja, welche?*
    - *b. Wenn ja, wann?*
    - *c. Wenn ja, mit welchem Inhalt?*

> *d. Wenn ja, von wem?*
> *e. Wenn ja, gab es Anzeigen dazu?*
> > *i. Wenn ja, gibt es dazu ein Ermittlungsverfahren?*

Nein.

**Zur Frage 13:**

- *Hat der fallführende Staatsanwalt zuvor schon Ermittlungsverfahren iZm Verdachtslagen zu religiös motivierten Delikten geleitet bzw. bei diesen mitgearbeitet?*
    - *a. Wenn ja, welche?*
    - *b. Wenn ja, mit welchem Ausgang?*

Seit dem Jahr 2011 arbeitet der fallführende Referent der Staatsanwaltschaft Graz in einem Referat mit Schwerpunkt Verfassungsschutzsachen; insoweit hat er bereits zahlreiche Ermittlungsverfahren im Zusammenhang mit §§ 278b ff StGB geführt.

**Zur Frage 14:**

- *Gab es jemals ein Disziplinarverfahren gegen den zuständigen Staatsanwalt iZm diskriminierenden/rassistischen Äußerungen?*
    - *a. Wenn ja, wie viele?*
    - *b. Wenn ja, wann?*
    - *c. Wenn ja, mit welchem Ausgang?*

Nein.

**Zur Frage 15:**

- *Wie viele Ermittlungsmaßnahmen wurden in dem sog. Luxor-Verfahren letztendlich vom OLG Graz als rechtswidrig befunden?*
    - *a. Welche konkreten gegen wen gesetzten, durch wen beantragten sowie durch wen genehmigten Ermittlungsmaßnahmen wurden wann durch welches Gericht als rechtswidrig befunden (bitte um genaue Auflistung aller rechtswidrigen Ermittlungsmaßnahmen)?*
    - *b. Wie viele Ressourcen wurden jeweils konkret für diese rechtswidrigen Ermittlungsmaßnahmen eingesetzt?*

Insgesamt wurden rund 30 der durch die Staatsanwaltschaft Graz nach dem achten Hauptstück der StPO angeordneten und durch das Landesgericht für Strafsachen Graz

gerichtlich bewilligten Anordnungen in weiterer Folge durch das Oberlandesgericht Graz als rechtswidrig bzw. das Gesetz verletzend beurteilt.

**Zur Frage 16:**

• *Ist es richtig, dass wegen des hohen Ressourcenaufwands in der Operation Luxor andere Ermittlungsmaßnahmen, aber auch Maßnahmen nach dem SPG verschoben bzw. abgesagt werden mussten?*
    *a. Wenn ja, welche waren dies?*

Diese Frage betrifft nicht den Vollziehungsbereich des Bundesministeriums für Justiz, sondern jenen des Bundesministeriums für Inneres.

**Zur Frage 17:**

• *Aus welchem Grund wurden vom OLG Graz die Gutachter/Sachverständigen vom Luxor-Verfahren enthoben?*
    *a. Wurden die Sachverständigen durch die polizeilichen Ermittlungsbehörden aktiv vorgeschlagen oder erfolgte die Auswahl iZm der ursprünglichen staatsanwaltlichen Bestellung allein durch die StA Graz?*
    *b. Wurden Honorare an die Sachverständigen ausbezahlt und wenn ja, in welcher Höhe?*
        *i. Wurden allfällige Honorare anlässlich der Enthebung der Sachverständigen vollständig (und erfolgreich) zurückgefordert?*
            *1. Wenn nein, warum nicht?*
    *c. Ist es aus Sicht des Bundesministeriums für Justiz rechtlich zulässig, dass sich von der Justiz bestellte Sachverständige außerhalb des Verfahrens, gegenüber Dritten bzw öffentlich zu ihrer Tätigkeit im Ermittlungsverfahren äußern?*
    *d. Erfolgten die öffentlichen Statements der Sachverständigen zu ihrer Tätigkeit im Ermittlungsverfahren im Einvernehmen mit der StA Graz bzw nach gerichtlicher Bestellung im Einvernehmen mit dem LG Graz?*

Das Oberlandesgericht Graz enthob aufgrund der Beschwerde eines Beschuldigten mit Beschluss vom 14. Juni 2022 die vom Landesgericht für Strafsachen Graz mit Beschluss vom 23. September 2021 bestellten Sachverständigen und trug dem Landesgericht für Strafsachen Graz auf, eine:n neue:n Sachverständige:n zu bestellen. Als Begründung für die Enthebung führte das Oberlandesgericht Graz aus, dass das Auftreten von einem der Sachverständigen in einer Fernsehsendung etwa zwei Jahre vor Einleitung des Ermittlungsverfahrens den „äußeren Anschein von Befangenheit" begründe.

Die Honorare der vom Landesgericht für Strafsachen Graz bestellten Sachverständigen wurden entsprechend der erbrachten Leistung bezahlt. Eine Rückforderung von Honoraren ist im GebAG nicht vorgesehen.

**Zu den Fragen 18 bis 21:**
- *18. Gegen wie viele Personen (juristische und natürliche) wurden Ermittlungen im Luxor-Verfahren gestartet?*
- *19. Gegen wie viele Personen (juristische und natürliche) wurden die Ermittlungen im Luxor-Verfahren jeweils wann bereits eingestellt?*
- *20. Gegen wie viele dieser Personen wurden welche Maßnahmen gesetzt (eingefrorene Bankkonten, Beschlagnahme von Liegenschaften, Berufsverbot,...)?*
- *21. Gegen wie viele Personen (juristische und natürliche) werden die Ermittlungen im Luxor-Verfahren weitergeführt?*

Es wurde gegen mehr als 70 natürliche Personen und 22 juristische Personen ermittelt. Bislang wurden zu etwa 35 Beschuldigten Verfahrenseinstellungen vorgenommen.  Im Ermittlungsverfahren 16 St 52/19t wurden mehr als 300 Anordnungen nach dem achten Hauptstück der Strafprozessordnung getroffen. Derzeit wird das Ermittlungsverfahren 16 St 52/19t gegen mehr als 60 bekannte natürliche und juristische Personen sowie eine:n unbekannte:n Täter:in geführt.

**Zur Frage 22:**
- *Gegen wie viele dieser Personen bestehen noch welche aufrechte Maßnahmen (eingefrorene Bankkonten, Beschlagnahme von Liegenschaften, Berufsverbot,...)?*

Es sind noch Beschlagnahmen von Liegenschaften, Sicherstellungen zu Bankkonten und Sicherstellungen von Gegenständen und Bargeld aufrecht.

**Zur Frage 23:**
- *Gegen wie viele Personen (juristische und natürliche) wird auch abseits des Luxor-Verfahrens ermittelt?*

Es gibt in diesem Zusammenhang nur das Ermittlungsverfahren 16 St 52/19t. Es wird daher auf die Beantwortung der Fragen 18 bis 21 verwiesen.

**Zur Frage 24:**

- *Sind die Staatsanwält:innen, die an der "Operation Luxor" oder den dazugehörigen Ermittlungsverfahren beteiligt sind/waren, weiterhin für die genannten Verfahren zuständig oder kam es bei ihnen zu einer beruflichen Veränderung?*
    *a. Falls es zu einer beruflichen Veränderung kam: wohin haben die Staatsanwält:innen gewechselt?*

Das Ermittlungsverfahren wird seit Beginn des Verfahrens durch den gleichen staatsanwaltschaftlichen Referenten bearbeitet.

**Zur Frage 25:**

- *Sind die Polizist:innen, die leitend an der "Operation Luxor" oder an den dazugehörigen Ermittlungsverfahren beteiligt waren, weiterhin in ihrer leitenden Funktion tätig oder haben sie sich beruflich verändert?*
    *a. Falls es zu einer beruflichen Veränderung kam: wohin haben die leitetenden Polizist:innen gewechselt (mit der Bitte um Nennung der Organisationseinheit, sowie die Bekanntgabe einer allfälligen höheren Verwendungsgruppe/Dienstgrad)?*

Diese Frage betrifft nicht den Vollziehungsbereich des Bundesministeriums für Justiz, sondern jenen des Bundesministeriums für Inneres.

**Zu den Fragen 26 und 27:**

- *26. Bestand seitens der StA Graz Einvernehmen im Hinblick auf Zeitpunkt, Ablauf und Inhalt der Pressekonferenz der polizeilichen Ermittlungsbehörden am 09.11.2020 (https://www.youtube.com/watch?v=KlI_DM-rlP4)?*
- *27. Besteht aus Sicht des Bundesministeriums für Justiz Handlungsbedarf im Hinblick auf den Rechtsschutz von Personen, die durch die Medienarbeit der Strafverfolgungsbehörden in ihren Rechten, insbesondere im Hinblick in ihrem Menschenrecht der Unschuldsvermutung verletzt werden? Der OGH erblickte hier zuletzt eine Grundrechtsschutzlücke (15 Os 32/22b; 11 Os 109/21w, Rz 30).*
    *a. Wenn nein: Welches – im Sinne der Rechtsprechung des EGMR – effektive Rechtsmittel steht Betroffenen gegen die Medienarbeit der Strafverfolgungsbehörden bei Verletzungen des Menschenrechts der Unschuldsvermutung zur Verfügung?*

Die interessierende Pressekonferenz war mit der Staatsanwaltschaft Graz nicht abgesprochen. Die Staatsanwaltschaft Graz war daher über deren Inhalt nicht vorab informiert.

Darüber hinaus ist festzuhalten, dass die Medienarbeit der Strafverfolgungsbehörden im Zuständigkeitsbereich des BMJ klar geregelt ist und der Persönlichkeitsschutz ein gewichtiger Faktor bei allen Abwägungen ist.

Daher werden die gesetzlichen Rechtschutzmöglichkeiten (primär der Schadenersatzanspruch nach dem Amtshaftungsgesetz) betreffend die Medienarbeit der Strafverfolgungsbehörden im Zuständigkeitsbereich des BMJ grundsätzlich als für ausreichend erachtet.

Dr.in Alma Zadić, LL.M.

| | Datum/Zeit | 2023-04-27T15:40:29+02:00 |
|---|---|---|
| REPUBLIK ÖSTERREICH BMJ SIGNATUR | Hinweis | Dieses Dokument wurde elektronisch signiert. Auch ein Ausdruck dieses Dokuments hat die Beweiskraft einer öffentlichen Urkunde. |
| | Prüfinformation | Informationen zur Prüfung des elektronischen Siegels bzw. der elektronischen Signatur finden Sie unter: www.signaturpruefung.gv.at Informationen zur Prüfung des Ausdrucks finden Sie unter: www.justiz.gv.at/amtssignatur |

| | Unterzeichner | Parlamentsdirektion |
|---|---|---|
| REPUBLIK ÖSTERREICH Parlamentsdirektion SIEGEL | Datum/Zeit-UTC | 2023-04-27T15:43:25+02:00 |
| Prüfinformation | Dieses Dokument wurde elektronisch besiegelt. Informationen zur Prüfung des elektronischen Siegels und des Ausdrucks finden Sie unter: https://www.parlament.gv.at/siegel | |