## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

FARID HAFEZ, individually and on behalf of
all others similarly situated,

        *Plaintiff*,

    *v.*

LORENZO VIDINO, *et al.*,

        *Defendants*.

Case No. 1:24-cv-00873-AHA

## REPLY IN SUPPORT OF DEFENDANT LORENZO VIDINO'S MOTION TO DISMISS

Matthew D. McGill (D.C. Bar #481430)
Jeffrey Liu (D.C. Bar #1672057)
M. Christian Talley (D.C. Bar #1735656)
GIBSON, DUNN & CRUTCHER LLP
1700 M Street, N.W.
Washington, D.C. 20036
T: (202) 887-3680
F: (202) 530-9662
mmcgill@gibsondunn.com
jyliu@gibsondunn.com
ctalley@gibsondunn.com

*Counsel for Lorenzo Vidino*

# **TABLE OF CONTENTS**

INTRODUCTION ......................................................................................................................... 1

ARGUMENT ............................................................................................................................... 2

I.    The First Amendment Bars Hafez's Claims.......................................................... 2

    A.  Hafez Cannot Overcome The Free Speech Clause's Protection. ........................... 2

    B.  The Petition Clause And *Noerr-Pennington* Doctrine Independently Preclude Liability. ............................................................................................................... 6

II.    The Complaint Fails To State A RICO Claim (Counts 1-5) Against Dr. Vidino. ......... 9

    A.  Hafez Suffered No Injury To "Business Or Property." ........................................... 9

    B.  Hafez's Purported Injuries Are Not "Domestic." ...................................................11

    C.  The Complaint Fails To Plausibly Allege Any RICO Predicate Offense. ............ 13

    D.  The Complaint Fails To Plausibly Allege A "Pattern" Of Racketeering Activity. 14

    E.  The Complaint Fails To Plausibly Allege A RICO "Enterprise." ......................... 16

    F.  The Complaint Fails To Plausibly Allege That Dr. Vidino Proximately Caused Hafez's Purported Injuries. .................................................................................. 17

    G.  The Complaint Fails To Plausibly Allege A Conspiracy To Commit At Least Two Predicate Acts.................................................................................................... 18

III.    Hafez's State-Law Claims (Counts 6-10) Are Untimely And Meritless.................... 20

    A.  No Exception To The One-Year Limitations Period Can Save Hafez's Stale State-Law Claims. ......................................................................................................... 20

    B.  The Common-Law Fraud Claim (Count 6) Fails................................................... 22

    C.  The Unfair Trade Practices Claim (Count 7) Fails. .............................................. 23

    D.  The Tortious-Interference Claims (Counts 8 & 9) Fail.......................................... 24

    E.  The Prima Facie Tort Claim (Count 10) Is Not Recognized In The District And Would Fail Anyway............................................................................................. 25

CONCLUSION........................................................................................................................... 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abbas v. Foreign Pol'y Grp., LLC*,
  975 F. Supp. 2d 1 (D.D.C. 2013) ............................................................................5

*\*Aktieselskabet AF 21. Nov. 2001 v. Fame Jeans Inc.*,
  525 F.3d 8 (D.C. Cir. 2008) .............................................................................22, 23

*Allied Tube & Conduit Corp. v. Indian Head, Inc.*,
  486 U.S. 492 (1988) ............................................................................................7

*Amobi v. D.C. Dep't of Corr.*,
  755 F.3d 980 (D.C. Cir. 2014) ............................................................................21

*Amphastar Pharms. Inc. v. Momenta Pharms., Inc.*,
  850 F.3d 52 (1st Cir. 2017) ..................................................................................7

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ............................................................................................1

*Associated Press v. All Headline News Corp.*,
  608 F. Supp. 2d 454 (S.D.N.Y. 2009) ..................................................................6

*Beard v. Edmondson & Gallagher*,
  790 A.2d 541 (2002) ..........................................................................................21

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ..........................................................................................10

*Boomer Dev., LLC v. Nat'l Ass'n of Home Builders of U.S.*,
  325 F.R.D. 6 (D.D.C. 2018) ...............................................................................22

*Bridge v. Phoenix Bond & Indemnity Co.*,
  553 U.S. 639 (2008) ..........................................................................................18

*Brown v. Ent. Merchants Ass'n*,
  564 U.S. 786 (2011) ............................................................................................4

*Browning v. Clinton*,
  292 F.3d 235 (D.C. Cir. 2002) ............................................................................20

*Buckley v. Littell*,
  539 F.2d 882 (2d Cir. 1976) .................................................................................4

*Cal. Motor Transp. Co. v. Trucking Unlimited*,
    404 U.S. 508 (1972)................................................................................................7, 8

*Carpenter v. King*,
    792 F. Supp. 2d 29 (D.D.C. 2011) ......................................................................4

*Cheng v. Neumann*,
    51 F.4th 438 (1st Cir. 2022)................................................................................4

*Citizens Against Rent Control/Coal. for Fair Hous. v. City of Berkeley*,
    454 U.S. 290 (1981)..............................................................................................9

*Cobb v. Time, Inc.*,
    278 F.3d 629 (6th Cir. 2002) ..............................................................................6

*Conley v. Gibson*,
    355 U.S. 41 (1957)................................................................................................1

*Couch v. Verizon Commc'ns Inc.*,
    105 F.4th 425 (D.C. Cir. 2024)......................................................................5, 6

*Ctr. for Immigr. Stud. v. Cohen*,
    410 F. Supp. 3d 183 (D.D.C. 2019) ..........................................................13, 18

*Danielsen v. Burnside-Ott Aviation Training Ctr. Inc.*,
    941 F.2d 1220 (D.C. Cir. 1991) ........................................................................18

*Dist. Telecomms. Dev. Corp. v. Dist. Cablevision, Inc.*,
    638 F. Supp. 418 (D.D.C. 1985) ......................................................................16

*E. R.R. Presidents Conference v. Noerr Motor Freight, Inc.*,
    365 U.S. 127 (1961)................................................................................................8

*Edmondson & Gallagher v. Alban Towers Tenants Ass'n*,
    48 F.3d 1260 (D.C. Cir. 1995) ..........................................................................15

*EEOC v. St. Francis Xavier Parochial Sch.*,
    117 F.3d 621 (D.C. Cir. 1997)......................................................................1, 11

*Elec. Priv. Info. Ctr. v. IRS*,
    575 F. Supp. 3d 84 (D.D.C. 2021) ....................................................................11

*Ellis v. Jackson*,
    319 F. Supp. 3d 23 (D.D.C. 2018)....................................................................24

*Fed. Prescription Serv., Inc. v. American Pharm. Ass'n*,
    663 F.2d 253 (D.C. Cir. 1981) ............................................................................8

*Feld Ent. Inc. v. Am. Soc'y for the Prevention of Cruelty to Animals,
   873 F. Supp. 2d 288 (D.D.C. 2012) ...................................................................7, 8

Fidrych v. Marriott Int'l, Inc.,
   952 F.3d 124 (4th Cir. 2020) ...............................................................................13

Firestone v. Firestone,
   76 F.3d 1164 (D.C. Cir. 1996) .............................................................................22

*Hemi Grp., LLC v. City of New York,
   559 U.S. 1 (2010) ...........................................................................................17, 18

Hendel v. World Plan Exec. Council,
   705 A.2d 656 (D.C. 1997) ...................................................................................21

Int'l Bhd. of Teamsters v. Philip Morris Inc.,
   196 F.3d 818 (7th Cir. 1999) ..................................................................................7

In re Interbank Funding Corp. Sec. Litig.,
   629 F.3d 213 (D.C. Cir. 2010) .............................................................................25

Kelly v. United States,
   590 U.S. 391 (2020) .......................................................................................14, 18

Kennedy v. Bremerton Sch. Dist.,
   597 U.S. 507 (2022) ...............................................................................................9

Kingman Park Civic Ass'n v. Gray,
   27 F. Supp. 3d 142 (D.D.C. 2014) .......................................................................11

Maupin v. Haylock,
   931 A.2d 1039 (D.C. 2007) .................................................................................22

McClanahan v. Anti-Defamation League,
   2023 WL 8704258 (W.D. Mo. Dec. 15, 2023) ......................................................4

McDonald v. Smith,
   472 U.S. 479 (1985) ...............................................................................................9

Mitchell v. Yates,
   402 F. Supp. 2d 222 (D.D.C. 2005) .....................................................................24

Mullin v. Wash. Free Weekly, Inc.,
   785 A.2d 296 (D.C. 2001) ...............................................................................20, 22

Nat'l Rifle Ass'n v. Cuomo,
   350 F. Supp. 3d 94 (N.D.N.Y. 2018) .....................................................................4

*National Organization for Women, Inc. v. Scheidler*,
   510 U.S. 249 (1994)..............................................................................3, 10

*New W., L.P. v. City of Joliet*,
   491 F.3d 717 (7th Cir. 2007) ...................................................................8

*United States ex rel. O'Connor v. U.S. Cellular Corp.*,
   2022 WL 971290 (D.D.C. Mar. 31, 2022)..............................................15

*Octane Fitness, LLC v. ICON Health & Fitness, Inc.*,
   572 U.S. 545 (2014)..................................................................................6

*Pyles v. HSBC Bank USA*,
   172 A.3d 903 (D.C. 2017) ......................................................................22

*Qureshi v. Am. Univ.*,
   2023 WL 2387811 (D.D.C. Mar. 7, 2023)..............................................23

*\*RJR Nabisco v. Eur. Cmty*,
   579 U.S. 325 (2016)..........................................................................11, 14

*Rosenblatt v. Fenty*,
   734 F. Supp. 2d 21 (D.D.C. 2010) .........................................................24

*RSM Prod. Corp. v. Freshfields Bruckhaus Deringer U.S. LLP*,
   682 F.3d 1043 (D.C. Cir. 2012) .............................................................10

*In re S.S.*,
   821 A.2d 353 (D.C. 2003) ......................................................................24

*Savage v. D.C.*,
   2019 WL 6701409 (D.D.C. Dec. 9, 2019)..............................................25

*Sayyad v. Fawzi*,
   674 A.2d 905 (D.C. 1996) ......................................................................22

*Shaw v. United States*,
   580 U.S. 63 (2016)............................................................................14, 19

*Solomon v. Dechert LLP*,
   2023 WL 6065025 (D.D.C. Sept. 18, 2023) ..........................................13

*Son Ly v. Solin, Inc.*,
   910 F. Supp. 2d 22 (D.D.C. 2012) .........................................................15

*Sosa v. DIRECTV, Inc.*,
   437 F.3d 923 (9th Cir. 2006) ...................................................................7

*Taylor v. D.C. Water & Sewer Auth.*,
    957 A.2d 45 (D.C. 2008) ...........................................................................25

*Thomas v. News World Comm'n*,
    681 F. Supp. 55 (D.D.C. 1988) ..................................................................20

*United States v. Alvarez*,
    567 U.S. 709 (2012) .................................................................................3, 4

*United States v. Philip Morris USA Inc.*,
    566 F.3d 1095 (D.C. Cir. 2009) ...................................................................8

*United States v. Stevens*,
    559 U.S. 460 (2010) .................................................................................3, 4

*United States v. Turkette*,
    452 U.S. 576 (1981) ..................................................................................16

*Wallace v. Skadden, Arps, Slate, Meagher & Flom*,
    715 A.2d 873 (D.C. 1998) .........................................................................21

*Whelan v. Abell*,
    48 F.3d 1247 (D.C. Cir. 1995) .....................................................................8

*United States ex rel. Williams v. Martin-Baker Aircraft Co.*,
    389 F.3d 1251 (D.C. Cir. 2004) .................................................................13

*Wolf v. Menh*,
    810 F. App'x 10 (D.C. Cir. 2020)..............................................................20

*Woytowicz v. George Washington Univ.*,
    327 F. Supp. 3d 105 (D.D.C. 2018) .......................................................1, 24

*\*Yegiazaryan v. Smagin*,
    599 U.S. 533 (2023).............................................................................11, 12

## Constitutional Provisions

U.S. Const. amend. I ...........................................................................................7

## Statutes

18 U.S.C. § 1961 ..............................................................................................15

18 U.S.C. § 1962 ........................................................................................14, 16

18 U.S.C. § 1964 ..........................................................................................9, 10

## INTRODUCTION

Plaintiff Farid Hafez's Complaint rests on a remarkable premise—that by publishing constitutionally protected opinions about Hafez, his longtime academic rival, Dr. Lorenzo Vidino, thereby became a racketeer enveloped in a transnational conspiracy inflicting millions of dollars in damages. Confronted with Dr. Vidino's motion to dismiss, however, Hafez hardly defends *the Complaint's* fanciful allegations.

Hafez has instead responded with a filing no less remarkable than his underlying theory, attaching reams of new exhibits (many in untranslated German) and declarations attempting to remedy the Complaint's deficiencies. His opposition brief flouts basic pleading rules—openly and repeatedly. It is blackletter law that complaints must plead "sufficient factual matter" to render the claims "'plausible,'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); that "a plaintiff cannot amend its complaint by the briefs in opposition to a motion to dismiss," *Woytowicz v. George Washington Univ.*, 327 F. Supp. 3d 105, 121 (D.D.C. 2018); and that courts ruling on a motion to dismiss "may consider only the facts alleged in the complaint," *EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997). Hafez's opposition violates each of these principles. It seeks to dilute Hafez's burden by reviving (Opp. 2–3, 11) the long-overruled "[any] set of facts" pleading standard from *Conley v. Gibson*, 355 U.S. 41, 45–46 (1957). It barely cites the Complaint, offering only *six* pinpoint citations to the Complaint across a forty-five-page brief. And it repeatedly attempts to conjure new facts through attorney argument alone. *See* Opp. 18, 22–23. Hafez's entreaties to ignore his own Complaint in favor of newfangled theories and newly submitted evidence are an open admission that the pleading Hafez actually filed cannot survive.

Hafez's opposition fails to rehabilitate the Complaint's fundamental flaws. *First*, the First Amendment bars all of Hafez's claims. Hafez fails to show that Dr. Vidino's absolutely protected

statements of opinion—statements Hafez himself labels "opinions," Compl. ¶ 48—are really statements of fact. He cannot show that Dr. Vidino published those statements with actual malice, even if they were factual. And he offers no serious response to the *Noerr-Pennington* doctrine's independent protections for First Amendment petitioning activity.

*Second*, Hafez's RICO claims fail many times over. His evolving theories of injury to business or property rest on brand-new allegations found nowhere in the Complaint and that self-evidently occurred abroad—further undermining Hafez's assertions of "domestic" injury. His overhauled RICO predicate offenses (which have dropped from forty, Compl. ¶ 126, to three, Opp. 16) lack any foundation in the Complaint or in law, did not occur pursuant to a "pattern" of racketeering perpetrated by an "enterprise," and did not proximately cause any of Hafez's purported injuries. And Dr. Vidino's alleged agreement to provide a few "interesting leads," Compl. ¶ 38, plainly does not constitute knowing participation in any such conspiracy.

*Finally*, Hafez's state-law claims are time-barred and either are not recognized under D.C. law or fail to satisfy its basic requirements. The Court should dismiss with prejudice.

<u>**ARGUMENT**</u>

I.    **The First Amendment Bars Hafez's Claims.**

The First Amendment's Free Speech Clause and the Petition Clause/*Noerr-Pennington* doctrine doubly bar Hafez's claims. Hafez's efforts to prove otherwise are meritless.

A.    **Hafez Cannot Overcome The Free Speech Clause's Protection.**

As Hafez has acknowledged, "you cannot sue [Dr. Vidino] for libel, because he does not actually say you are a member of the Muslim Brotherhood." Compl. ¶ 38. Rather, Dr. Vidino's statements that Hafez is a "known Islamist acto[r] and supporte[r]" and "a close MB operator" are "opinions," to which he has "a complete right." *Id.* ¶¶ 48, 90 n.24. Hafez does not dispute that

these are the only two allegedly actionable statements identified by the Complaint, Mot. 10 n.3, but neither statement has a provably false factual connotation, *id.* at 10–14. The statements thus merit absolute First Amendment protection. And even if those statements were factual, they would still merit protection under the actual-malice standard—a standard Hafez cannot begin to satisfy.

**1.** Hafez attempts two end-runs around the Speech Clause's protections, but neither works. *First*, Hafez contends (Opp. 4) that the First Amendment does "not extend to conduct involving the intentional dissemination of false statements that further racketeering activities." But the Supreme Court unanimously rejected the proposition that "intentional dissemination of false statements" is unprotected speech in *United States v. Alvarez*, 567 U.S. 709 (2012). *See id.* at 722; *id.* at 734–36 (Breyer, J., concurring in the judgment); *id.* at 749–50 (Alito, J., dissenting). And courts have routinely applied the First Amendment's protections to RICO claims. Mot. 9.

Hafez battles those blackletter rules armed only with a *cf.* citation to *National Organization for Women, Inc. v. Scheidler* ("*NOW*"), 510 U.S. 249 (1994). But nothing in *NOW* remotely suggests that First Amendment protections are inapplicable to RICO. The *NOW* Court "*decline*[*d*] to address the First Amendment question" because the parties did not raise it, 510 U.S. at 262 n.6 (emphasis added), and Justice Souter's concurrence confirmed—with no disagreement registered by any Justice—that "free-speech claims may be raised" in "RICO cases," *id.* at 264 (Souter, J., concurring). Outside of "a few" "historic and traditional categories" of expression, *United States v. Stevens*, 559 U.S. 460, 468 (2010), the First Amendment protects against *all* state action imposing liability for speech, regardless of the underlying cause of action, Mot. 9.

*Second*, Hafez attempts to invoke such a "historic and traditional categor[y]" by analogizing his RICO claims to fraud. *Stevens*, 559 U.S. at 468. But courts cannot reason by loose analogy from historically unprotected speech to strip *other* expression of First Amendment

3

protection.  The Supreme Court has repeatedly admonished that the "First Amendment stands against any 'freewheeling authority to declare new categories of speech outside the scope of the First Amendment.'" *Alvarez*, 567 U.S. at 722 (quoting *Stevens*, 559 U.S. at 473); *see Brown v. Ent. Merchs. Ass'n*, 564 U.S. 786, 792 (2011).  In any event, Hafez offers no plausible common law fraud claim, *see infra* pp. 22–23, and even Hafez admits (Opp. 5) that fraud concerns a "different factual context."

**2.**  Because the First Amendment applies to Hafez's claims, he must plausibly allege that (1) his claims target statements of fact and (2) Dr. Vidino acted with actual malice.  He does neither.

**a.**  Hafez ignores the mountain of case law cited in Dr. Vidino's opening brief (Mot. 12) showing that courts routinely find labels of extremism or association, like those at issue here, to qualify as "subjective judgments that lack verifiable truth" and thus constitute protected "opinion." *McClanahan v. Anti-Defamation League*, 2023 WL 8704258, at *5 (W.D. Mo. Dec. 15, 2023); *see* Mot. 12 (collecting cases).  Hafez counters only (Opp. 6) that Dr. Vidino's "statements were disseminated through public platforms … aimed at identifying terrorist organizations' supporters and operators, where readers and listeners would interpret them as factual."  But he cites nothing to support the proposition that a statement's dissemination "through public platforms" alone renders the statement factual.  Opinion, of course, is routinely expressed that way.  *See, e.g.*, *Cheng v. Neumann*, 51 F.4th 438, 446 (1st Cir. 2022) (online newspaper and online media outlet); *Nat'l Rifle Ass'n v. Cuomo*, 350 F. Supp. 3d 94, 131 (N.D.N.Y. 2018) ("public pronouncements"); *Carpenter v. King*, 792 F. Supp. 2d 29, 31 (D.D.C. 2011) (*Washington Post*); *Buckley v. Littell*, 539 F.2d 882, 884 (2d Cir. 1976) (book).

To the extent Hafez attempts a broader appeal to context, context cuts against him.  As Dr. Vidino's opening brief demonstrated (and Hafez fails to refute), the context behind the only two

allegedly actionable statements identified in the Complaint strongly suggests that they express opinions. *See* Mot. 12–14. One of the statements was published in the "Arguments" section of *Foreign Policy*, where "readers expect to find analytical and opinionated pieces that reflect a particular viewpoint," *Abbas v. Foreign Pol'y Grp., LLC*, 975 F. Supp. 2d 1, 17 (D.D.C. 2013)— making it particularly unlikely that readers would interpret his statement as factual. The other was provided *to Alp*, not publicly disseminated, and the Complaint never alleges that Alp disseminated it to the government, published it in the media, or did anything with it at all. Compl. ¶ 41.

Ultimately, Hafez is left to lament his candor in conceding that "'you cannot sue'" Dr. Vidino "'for libel, because he does not actually say you are a member of the Muslim Brotherhood,'" and that Dr. Vidino has a "complete right to" his "own opinions" about who "might . . . have some association with the Brotherhood." Compl. ¶¶ 38, 48. Hafez undoubtedly "never intended to immunize" Dr. Vidino's statements, Opp. 6, but he made those concessions nonetheless. And Hafez was right: Dr. Vidino's statements are opinions absolutely protected by the First Amendment.

**b.** Even if the relevant statements could be construed as factual, Hafez cannot plausibly allege actual malice. Hafez offers no response to Dr. Vidino's showing that the actual-malice standard applies, both because Hafez is a limited-purpose public figure and because he seeks punitive damages. *See* Mot. 18–19. Hafez must therefore "allege facts that, if proven, would show that [Dr. Vidino] either knew [his] statements were false, had high awareness that the statements were probably false, or had serious doubts about the accuracy of the statements." *Couch v. Verizon Commc'ns Inc.*, 105 F.4th 425, 432 (D.C. Cir. 2024).

Hafez identifies no such facts in the Complaint. He simply asserts (Opp. 8) without citation that "[t]he FAC alleges with specificity that Vidino's statements were made with actual malice." Such "[c]onclusory assertions in a memorandum of law are not a substitute for plausible

allegations in a complaint." *Associated Press v. All Headline News Corp.*, 608 F. Supp. 2d 454, 464 (S.D.N.Y. 2009).

Hafez next asserts—again without citation—that Vidino's "dissemination of false information, coupled with the absence of credible materials supporting his positions, evidences his intent to harm." Opp. 8. But "intent to harm" is irrelevant to actual malice, which concerns knowing or reckless falsity. *See Couch*, 105 F.4th at 432; *Cobb v. Time, Inc.*, 278 F.3d 629, 637 (6th Cir. 2002) ("The actual malice standard does not refer to a showing of ill will or malice in the ordinary sense."). Regardless, the Complaint plausibly alleges neither an intent to harm nor that Dr. Vidino's positions lacked credible supporting material. Rather, the Complaint alleges that Dr. Vidino acted primarily for pecuniary and expressive reasons. Compl. ¶ 4 ("kee[p]" the "gravy train rolling"); *id.* ¶ 38 (describing Dr. Vidino's personal research interest in extremism). And Dr. Vidino's opinions *were* based on "credible materials," Opp. 8: his experience as "the director of the Program on Extremism at the George Washington University," "meetings with German intel," and "twenty-five years" of "researching the Muslim Brotherhood in Europe," Compl. ¶ 38.

Accordingly, the First Amendment's Speech Clause bars Hafez's claims across the board.

**B.    The Petition Clause And *Noerr-Pennington* Doctrine Independently Preclude Liability.**

Hafez's efforts to perforate *Noerr-Pennington*'s protections for petitioning activity also fail. Hafez does not dispute that each aspect of Dr. Vidino's alleged speech targeted by the Complaint involved efforts "aimed at influencing decisionmaking by the government." *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 556 (2014); *see* Mot. 22. To the contrary, Hafez affirmatively *concedes* (Opp. 9) that "Defendants' statements were made with the primary purpose of influencing … governmental officials." They are therefore protected petitioning.

6

Hafez rejoins (Opp. 8) only that the *Noerr-Pennington* doctrine "does not apply" here, but none of his arguments tracks. Citing no cases, Hafez first insists (Opp. 8) that "[c]ourts have consistently rejected attempts to extend *Noerr-Pennington* protections to activities constituting racketeering." The opposite is true: Courts have consistently *applied Noerr-Pennington* to RICO claims. *See, e.g.*, *Int'l Bhd. of Teamsters v. Philip Morris Inc.*, 196 F.3d 818, 826 (7th Cir. 1999) ("the *Noerr–Pennington* doctrine ... is equally applicable to RICO suits"); *Sosa v. DIRECTV, Inc.*, 437 F.3d 923, 931 (9th Cir. 2006) (similar); *Feld Ent. Inc. v. Am. Soc'y for the Prevention of Cruelty to Animals*, 873 F. Supp. 2d 288, 307–08 (D.D.C. 2012) (similar).

Hafez next asserts (again, citing nothing) that "[o]nly statements made directly to legislative bodies merit *Noerr-Pennington* immunity." Opp. 9. Wrong again. The *Noerr-Pennington* doctrine protects "'indirect' petitioning" such as "publicity campaign[s]," as well as speech "incidental to a valid effort to influence governmental action." *Allied Tube & Conduit Corp. v. Indian Head, Inc.*, 486 U.S. 492, 502–03 (1988). And neither the petition right itself nor the *Noerr-Pennington* doctrine is limited to efforts to influence *legislative* bodies; they "exten[d] to all departments of the Government." *Cal. Motor Transp. Co. v. Trucking Unlimited*, 404 U.S. 508, 510 (1972); *see* U.S. Const. amend. I (protecting the right "to petition the Government").

Finally, Hafez contends (Opp. 9) that the *Noerr-Pennington* doctrine does not apply to "deliberately false or misleading statements." But the Complaint does not plausibly allege that Dr. Vidino's statements were untrue or misleading, much less "deliberately" so. *See* Mot. 20. And even courts that recognize that so-called fraud exception have limited it to misrepresentations made "in the administrative and adjudicatory contexts," *Amphastar Pharms. Inc. v. Momenta Pharms., Inc.*, 850 F.3d 52, 56 (1st Cir. 2017), because "[m]isrepresentations, condoned in the political arena, are not immunized when used in the adjudicatory process," *Cal. Motor Transp. Co.*, 404 U.S. at

511. *See, e.g.*, *Fed. Prescription Serv., Inc. v. Am. Pharm. Ass'n*, 663 F.2d 253, 263 (D.C. Cir. 1981) (misrepresentation "in the adjudicatory process" is "beyond the protection of *Noerr*"). In *Noerr* itself, the defendants' speech involved "'deception of the public, manufacture of bogus sources of reference, (and) distortion of public sources of information,'" but the Supreme Court nonetheless deemed the conduct immune from antitrust liability because "a publicity campaign to influence governmental action" is protected petitioning activity. *E. R.R. Presidents Conf. v. Noerr Motor Freight, Inc.*, 365 U.S. 127, 140–41 (1961); *see New W., L.P. v. City of Joliet*, 491 F.3d 717, 722 (7th Cir. 2007) (Easterbrook, J.) (reasoning that "lie[s]" are protected by the *Noerr-Pennington* doctrine, because "the holding of *Noerr* is that lobbying is protected whether or not the lobbyist used deceit"). Here, Dr. Vidino's statements were not made in court filings or an administrative or adjudicatory context.[1]

With no response on the law, Hafez purports to identify (Opp. 10) an "inherent contradiction" in characterizing Dr. Vidino's statements both as "opinions or general speech" *and* "simultaneously … as specific petitioning efforts to demand or influence government action." But there is plainly no contradiction in characterizing a statement both as protected speech and petitioning. That describes most political speech. A letter to the President, for example, deriding a candidate for U.S. Attorney as "unfit" for office both expresses an opinion and petitions the

---

[1] To be sure, the D.C. Circuit's decision in *United States v. Philip Morris USA Inc.*, 566 F.3d 1095, 1123 (D.C. Cir. 2009) (per curiam), appeared to apply the fraud exception in a non-adjudicatory context, but the D.C. Circuit did so without acknowledging that it was in any way extending the exception. That drive-by rationale does not abrogate the D.C. Circuit's prior statements that only misrepresentation "in the adjudicatory process" is "beyond the protection of *Noerr*." *Fed. Prescription Serv., Inc.*, 663 F.2d at 263; *see also Whelan v. Abell,* 48 F.3d 1247, 1255 (D.C. Cir. 1995) (tracing fraud exception to the Supreme Court's statement in *California Motor* distinguishing misrepresentations "in the adjudicatory process" from statements "in the political arena"). District courts have continued to recognize that limit. *E.g.*, *Feld*, 873 F. Supp. 2d at 307 (only "deliberately false statements in adjudicative proceedings" fall outside *Noerr*'s ambit).

President to pick a different candidate. *Cf. McDonald v. Smith*, 472 U.S. 479 (1985). It is well established that the First Amendment's protections "overlap and blend," *Citizens Against Rent Control/Coal. for Fair Hous. v. City of Berkeley*, 454 U.S. 290, 300 (1981), and there is no contradiction in deeming Dr. Vidino's speech "doubly" protected, *Kennedy v. Bremerton Sch. Dist.*, 597 U.S. 507, 523 (2022).

## II.    The Complaint Fails To State A RICO Claim (Counts 1-5) Against Dr. Vidino.

Hafez's RICO claims fail on their own terms. Hafez cannot plausibly plead *any* of the statutory elements, much less all of them: injury to business or property, domestic injury, a predicate offense, a pattern of racketeering activity, a continuing enterprise, and proximate causation. And his RICO conspiracy claim independently fails because Hafez cannot plausibly plead that Dr. Vidino knowingly joined a conspiracy to commit two or more predicate offenses.

### A.    Hafez Suffered No Injury To "Business Or Property."

RICO's private right of action extends only to injuries to "business or property." 18 U.S.C. § 1964(c). Damages to *reputation* are not injuries to business or property, *see* Mot. 23, and injuries to business or property require the plaintiff to plausibly plead "'concrete financial loss'"—that is, "present, actual damages," rather than merely "speculative" harm, *id.* at 23–24 (citing cases). The operative Complaint openly disregards those requirements, focusing almost exclusively on Hafez's purported reputational injuries from Dr. Vidino's statements. *See, e.g.*, Compl. ¶¶ 21, 52, 78; Mot. 24. And any non-reputational injuries mentioned in the Complaint either have no "readily ascertainable" value (*e.g.*, loss of "standing," "seniority," or "opportunities," Compl. ¶¶ 59, 201–03), or have a theoretically ascertainable value (*e.g.*, relocation expenses, *id.* ¶ 203(b)) that Hafez made no attempt to quantify through plausible factual allegations. *See* Mot. 24–25.

Implicitly recognizing the Complaint's deficiencies, Hafez seeks to water down the legal standard: Hafez asserts that it would suffice to state a claim for him to plead generally (without more) that he was "injured [in his] business and/or property interests." Opp. 11 (quoting *NOW*, 510 U.S. at 256). But the Supreme Court's 1994 decision in *NOW* applied the discarded *Conley* "any set of facts" standard—which that Court overruled in *Twombly* and *Iqbal*. *Compare NOW*, 510 U.S. at 256 (reciting "'any set of facts'" standard), *with Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 562–63 (2007) (rejecting *Conley*'s "'no set of facts' language"). The D.C. Circuit has unsurprisingly confirmed that the plausibility standard governs RICO claims. *See RSM Prod. Corp. v. Freshfields Bruckhaus Deringer U.S. LLP*, 682 F.3d 1043, 1048 (D.C. Cir. 2012).

On the merits, Hafez offers nothing to show that the Complaint meets the plausibility standard. He renews his claims that "reputational damage," lost "standing," and "withdraw[n] … invitations" suffice under RICO, Opp. 11, but cites no precedent deeming such injuries losses to "business or property," 18 U.S.C. § 1964(c); *see* Mot. 23–25. Precedent is clear that those defamation-based theories do not suffice under RICO. *See* Mot. 29. Hafez also renews his claim that he lost income, suffered relocation expenses, and that his bank accounts were frozen, Opp. 11, but the Complaint includes no facts establishing "readily ascertainable" and "concrete" damages from those alleged injuries, Mot. 23, 25. And Hafez cannot plausibly allege that his relocation expenses resulted *from Dr. Vidino's conduct*, as opposed to his voluntary move to the United States to assume his distinguished professorship at Williams College. *See Twombly*, 550 U.S. at 567 ("obvious alternative explanation" renders claim implausible).

Given the Complaint's glaring omissions, Hafez pivots to extra-complaint material. He offers three new *exhibits* attached to his opposition to substantiate his injuries, Opp. 11—two of which are in German and all of which are irrelevant on a motion to dismiss. *See St. Francis Xavier*

*Parochial Sch.*, 117 F.3d at 624 ("we may consider only the facts alleged in the complaint"); *Elec. Priv. Info. Ctr. v. IRS*, 575 F. Supp. 3d 84, 88 (D.D.C. 2021). And he recites brand-new theories of injury found nowhere in the Complaint: that the alleged raid in Austria inflicted "damage to the entrance door, window, and alarm system," that Hafez had to "repai[r] this damage," and that he suffered visa delays. Opp. 12. "Such allegations, included for the first time in an opposition to a motion to dismiss, cannot save [Hafez's] claims." *Kingman Park Civic Ass'n v. Gray*, 27 F. Supp. 3d 142, 168 (D.D.C. 2014).

### B.    Hafez's Purported Injuries Are Not "Domestic."

RICO's private right of action applies only to "*domestic* injury," and thus "does not allow recovery for foreign injuries." *RJR Nabisco v. Eur. Cmty*, 579 U.S. 325, 354 (2016) (emphasis added). Moreover, it must be "*clear*" that the "injury arose domestically," *Yegiazaryan v. Smagin*, 599 U.S. 533, 545 (2023) (emphasis added)—particularly given the foreign-relations concerns that arise from extending civil liability to acts committed in a foreign jurisdiction, *see* Mot. 26–27. Yet Hafez's Complaint pleads an entirely foreign conspiracy: The conspiracy supposedly was initiated by a foreign country (the UAE), recruited a foreign intelligence firm (from Switzerland), held meetings in Abu Dhabi, Geneva, and Zurich, allegedly targeted an Austrian professor living in Austria, involved communications with the Austrian and German governments, and paid participants in foreign currency. *Id.* at 27–29. Hafez's new-and-improved theories of injury (alleged damage to his door *in Austria* and visa issues he experienced *in Austria*) only underscore the point. Opp. 12. A more thoroughly foreign scheme with foreign injuries would be difficult to imagine.

Hafez responds by invoking the Supreme Court's decision in *Yegiazaryan*, but his reliance is misplaced. Opp. 13–14. Hafez claims that *Yegiazaryan* establishes that "the loss of an expected

benefit in the United States *is* a cognizable domestic injury," *id.* at 13, but he never explains what "expected benefit" he lost in the United States. If anything, he *gained* a distinguished professorship here—and his claims are nothing like *Yegiazaryan*. There, the "central purpose" of the racketeering scheme was to frustrate collection of a $92 million judgment in California court, and "[m]uch of the alleged racketeering activity that caused the injury occurred in the United States," including the creation of U.S. shell companies, fraud on the California court, and intimidation of U.S. witnesses. 599 U.S. at 545–46. Thus, the "aim" and "injurious effects" of the conspiracy overwhelmingly were directed at the United States. *Id.* at 546. Here, by contrast, virtually all of the relevant conduct and alleged injuries occurred abroad. *See supra* p. 11. And Hafez certainly comes nowhere close to showing "that it is *clear* the injury arose domestically." *Yegiazaryan*, 599 U.S. at 545 (emphasis added).

Hafez throws out a few asserted U.S. connections to resist that conclusion—including, for instance, Dr. Vidino's purported U.S. residence, Dr. Vidino's musing "that a U.S.-based private entity" may have been the research client, the claim that statements appeared on U.S.-based platforms (like Google), and the scheme's supposed targeting of "U.S. journalists and bank compliance monitors." Opp. 14–15. None of that suffices. While Dr. Vidino allegedly lives in the United States and works for a U.S. university, Compl. ¶ 36, the Complaint does not allege even that Dr. Vidino authored the offending writings in the United States, instead waxing about his exploits in Europe, *see, e.g.*, *id.* ¶ 38. Likewise, Dr. Vidino's supposition that a "U.S.-based private entity" requested the research was wrong even according to Hafez, who claims *the UAE* was the ultimate client, and is thus irrelevant. *Id.* ¶ 77. Hafez's new claim that the alleged scheme targeted specifically "*U.S.* journalists and bank compliance monitors" appears nowhere in the Complaint and must be disregarded. And that information was accessible in "English" or "available online

worldwide" through search engines merely *hosted* in the United States (Opp. 15, 19) does not show that the scheme *targeted* or was *based in* the United States—much less that Hafez was injured here. *See Fidrych v. Marriott Int'l, Inc.*, 952 F.3d 124, 141 (4th Cir. 2020) ("[T]he mere fact that the website is accessible in a given state does not mean that [a party] is targeting its activities at that state.").

**C.    The Complaint Fails To Plausibly Allege Any RICO Predicate Offense.**

Despite alleging scores of predicate offenses in his Complaint, *see* Compl. ¶ 126, Hafez's opposition abandons all but three: "wire fraud, mail fraud, and bank fraud," Opp. 16. These narrowed theories all fail.

To begin with, Hafez has not discharged his Rule 9 duty to plead fraud "with particularity." He purports to have done so merely by citing unidentified "reports, articles, and blog posts" and the Austria Report, Opp. 19, but he identifies no allegations in the Complaint describing the particular "content of the false misrepresentations" made by Dr. Vidino. *United States ex rel. Williams v. Martin-Baker Aircraft Co.*, 389 F.3d 1251, 1256 (D.C. Cir. 2004). To the extent Hafez does isolate any of Dr. Vidino's statements, they plainly constitute Dr. Vidino's *opinions*, *see supra* pp. 4–5, which cannot support fraud claims. *See, e.g.*, *Solomon v. Dechert LLP*, 2023 WL 6065025, at *1, *13 (D.D.C. Sept. 18, 2023) ("an expression of opinion … cannot form the basis of a wire-fraud claim"); *Ctr. for Immigr. Stud. v. Cohen*, 410 F. Supp. 3d 183, 190 (D.D.C. 2019) (deeming plaintiff a "hate group" was at most "a flawed opinion," not wire fraud).

Hafez's wire and mail fraud claims independently fail because the Complaint does not plausibly allege that Dr. Vidino engaged in a fraudulent scheme *to obtain Hafez's property*. The wire and mail fraud statutes "bar only schemes for obtaining property," and thus do not encompass "incidental (even if foreseen)" harms to property incurred by a scheme with a different purpose.

*Kelly v. United States*, 590 U.S. 391, 403–04 (2020).  The Complaint perfectly illustrates how to flunk those requirements.  Defendants purportedly "spread false accusations" about Hafez, "*resulting in* reputational and financial harm," to include the "freezing" of Hafez's funds.  Opp. 16–17 (emphasis added).  But nowhere does the Complaint allege that Defendants did this *to obtain* Hafez's money.  Thus, even if Hafez's supposed financial harms were "natural and foreseeable consequences," *id.* at 13, they constitute the merely "incidental" effects the Supreme Court has deemed irrelevant, *Kelly*, 590 U.S. at 403.

The same problem afflicts Hafez's bank fraud claim:  The Complaint never alleges that the purpose of the scheme was to deprive *a bank* of its property.  Hafez cites *Shaw v. United States*, 580 U.S. 63, 67 (2016), for the proposition that "the defendant need not actually deprive the financial institution of anything of value, or even intend to do so," Opp. 20, but *Shaw* holds the opposite: "[T]he scheme must be one to deceive the bank *and* deprive it of something of value." 580 U.S. at 72.  Thus, even if a defendant knows a bank is fully insured and will suffer no *loss* in absolute terms, *id.* at 68, the defendant still must intend to obtain a bank's property through deception, *id.* at 67.  Here, the Complaint nowhere alleges that the supposed scheme intended to, or did, deprive *a bank* of its property.  Again, the Complaint says the opposite: Hafez's money was frozen *at the bank*, leaving Hafez unable to access the funds.  Compl. ¶ 52; Opp. 16.  Accordingly, Hafez cannot plausibly plead a RICO predicate offense.

### D.    The Complaint Fails To Plausibly Allege A "Pattern" Of Racketeering Activity.

RICO claims require a "pattern" of RICO predicate violations, 18 U.S.C. § 1962(a)–(c), "that together demonstrate the existence or threat of continued criminal activity," *RJR Nabisco*, 579 U.S. at 330.  *See* Mot. 30–31.  Thus, it is "virtually impossible" to state a RICO claim when the alleged scheme pursued a "single discrete goal."  *Edmondson & Gallagher v. Alban Towers*

14

*Tenants Ass'n*, 48 F.3d 1260, 1265 (D.C. Cir. 1995). Nonetheless, the Complaint expressly pleads a single "overarching scheme" with a single goal: damaging the "reputation and viability of key MB European groups." Compl. ¶¶ 2, 12. And while the Complaint alleges that the scheme victimized "dozens of other targets," *id.* ¶¶ 19, 136, it never plausibly pleads how the scheme's alleged conduct regarding any of those unidentified targets independently constituted a RICO predicate offense, as RICO requires, *see* 18 U.S.C. § 1961(5).

Hafez offers no substantive response. He simply repeats the Complaint's conclusory assertions: that the alleged scheme "impacted other victims," affected "other individuals and entities" and "multiple individuals and organizations," and had "dozens of other targets." Opp. 22–23. But the Complaint never identifies these "dozens" of other alleged victims. And nowhere does it enumerate which RICO predicate offenses Hafez believes the scheme perpetrated against *those* unnamed individuals, much less plausibly plead supporting facts. *See, e.g.*, *Son Ly v. Solin, Inc.*, 910 F. Supp. 2d 22, 27 (D.D.C. 2012) ("Plaintiffs have alleged only one predicate act, though the statute requires at least two.").

Hafez attempts the bare minimum of "two" predicate acts (*id.*) by pointing to the pending suit in *Nada v. United Arab Emirates*, No. 24-cv-00206-ABJ (D.D.C.), which purportedly involves "substantially identical claims" and "other schemes" against Hazim Nada, and which Hafez touts as "independent corroboration … of the enterprise's conduct." Opp. 23. But "Federal Rule of Civil Procedure 10(c) bars the court from considering pleadings incorporated by reference from other cases," *United States ex rel. O'Connor v. U.S. Cellular Corp.*, 2022 WL 971290, at *1, *6 (D.D.C. Mar. 31, 2022), and Hafez never plausibly pleaded in his own Complaint that Nada suffered any RICO predicate violation. In any event, Nada recently amended his complaint to try to cure pleading defects in response to a court order, and multiple motions to dismiss are pending,

*see* Dkts. 76, 80, 81, 84, 85, *Nada*, No. 24-cv-00206-ABJ (D.D.C.)—hardly "corroboration" of Hafez's claims.

### E.    The Complaint Fails To Plausibly Allege A RICO "Enterprise."

Hafez's claims also fail because he alleges no RICO "enterprise."  18 U.S.C. § 1962(a)–(c).  "The existence of an enterprise at all times remains a separate element" from the "pattern of racketeering activity" that Hafez must independently plead; the enterprise must be an "ongoing" entity that exists "separate and apart from the pattern of activity in which it engages."  *United States v. Turkette*, 452 U.S. 576, 583 (1981).  There is no "enterprise" when the "common denominator" among defendants "is their involvement in the particular transaction which is the subject of th[e] suit."  *Dist. Telecomms. Dev. Corp. v. Dist. Cablevision, Inc.*, 638 F. Supp. 418, 421 (D.D.C. 1985).  While grasping at an association-in-fact "enterprise," the Complaint unites the various Defendants only through their alleged participation in the "smear campaign," Compl. ¶ 52—the very same "particular transaction which is the subject of th[e] suit," *Dist. Telecomms. Dev. Corp.*, 638 F. Supp. at 421.  Thus, the "enterprise" has no existence apart from the alleged defamation scheme itself.

Hafez's opposition essentially admits this defect.  He claims that all the purported co-conspirators were unified in their "common purpose of destroying the UAE's rivals" through, *inter alia*, "false Wikipedia entries," Opp. 26, which is the same conduct he asserts constituted the "pattern" of racketeering activity, *id.* at 22–23.  And he never explains what the alleged scheme did *other* than spreading "offensive … communications."  *Id.* at 11.  Hafez thus fails to identify any relevant difference between the "pattern" of racketeering activity he alleges and the purported "enterprise."  That bars the necessary finding of a separate "enterprise."  *Turkette*, 452 U.S. at 583.

**F.     The Complaint Fails To Plausibly Allege That Dr. Vidino Proximately Caused Hafez's Purported Injuries.**

Hafez cannot plausibly plead proximate causation.  To do so, Hafez had "to show that *a RICO predicate offense*"—not conduct *outside* of the alleged racketeering scheme—was "not only … a 'but for' cause of his injury, but was the proximate cause as well." *Hemi Grp., LLC v. City of New York*, 559 U.S. 1, 9 (2010) (emphasis added).  Here, Hafez contends only that Dr. Vidino's alleged "testimony to Austrian officials," delivered pursuant to his 2017 Austria Report, caused Hafez's injuries.  Opp. 27.  But the Austria Report was penned months *before* Dr. Vidino even entered into the supposed "scheme."  *See* Compl. ¶ 38.  The Complaint does not allege that Dr. Vidino delivered testimony to Austrian authorities *pursuant to* the alleged scheme, or that his testimony had anything to do with Alp.  *See* Mot. 34.  Thus, Hafez failed to plead that Dr. Vidino's testimony even constituted a RICO predicate offense, much less an offense that *caused* Hafez's injuries.  And even if Hafez had shown but-for causation, *all* his alleged injuries trace to the intervening actions of Hafez's employers, banks, or the Austrian government, defeating proximate causation.  *Id.* at 33–34.

Rather than deny that reality, Hafez seeks to dilute RICO's proximate cause standard by citing cases from the District of Columbia Court of Appeals—not, as Hafez mistakenly supposes, the D.C. Circuit—that purportedly equate RICO's proximate cause requirement with a mere reasonable-foreseeability test.  Opp. 27.  But those cases are not even RICO cases.  The Supreme Court's instruction is unmistakable:  "RICO's proximate cause requirement" does not "turn on foreseeability," but requires a "'direct relationship'" between the asserted predicate act and harm. *Hemi Grp, LLC*, 559 U.S. at 12.  Thus, "theor[ies] of liability" under RICO may not rest on harms resulting from "separate actions carried out by separate parties."  *Id.* at 11 (emphasis deleted).

Hafez asserts that *Bridge v. Phoenix Bond & Indemnity Co.*, 553 U.S. 639 (2008), "makes … clear" that the intervening actions of third parties do not defeat proximate causation. Opp. 28. But *Bridge* says nothing of the sort. In *Bridge*, there were "no independent factors that account[ed] for [the plaintiff's] injury." 553 U.S. at 658. The Supreme Court's later decision in *Hemi* distinguished *Bridge* on those very grounds: "[I]n contrast to *Bridge*," the Court explained, "[m]ultiple steps," including the actions of "separate parties," "separate[d] the alleged fraud from the asserted injury." 559 U.S. at 11, 15 (emphasis deleted). So too here. *See* Mot. 33–34. Hafez therefore cannot plausibly plead proximate causation.

### G.    The Complaint Fails To Plausibly Allege A Conspiracy To Commit At Least Two Predicate Acts.

Finally, Hafez's conspiracy claim (Count 2) should be dismissed for multiple reasons. For starters, conspiracy requires a predicate RICO offense. *See* Mot. 34. But Hafez did not plausibly plead one, *see supra* pp. 13–14, and his conspiracy claim must therefore be dismissed as well, *Danielsen v. Burnside-Ott Aviation Training Ctr. Inc.*, 941 F.2d 1220, 1224 (D.C. Cir. 1991).

Hafez cannot plausibly plead the elements of a RICO conspiracy anyway. "To state a claim for a RICO conspiracy, 'the complaint must allege that (1) two or more people agreed to commit a subsection (c) offense'"—that is, a RICO predicate offense—"'and (2) a defendant agreed to further that endeavor.'" *Ctr. for Immigr. Stud.*, 410 F. Supp. 3d at 188. Hafez does not dispute— and in fact repeatedly agrees (Opp. 29)—that a RICO conspiracy requires a "knowing agreement" to commit a RICO predicate offense.

Yet the Complaint does not allege that Dr. Vidino agreed to commit any such RICO predicate offense. The RICO predicate offenses on which Hafez has finally settled are, as noted, wire fraud, mail fraud, and bank fraud. *See supra* pp. 13–14. Those statutes have property as their "'object.'" *Kelly*, 590 U.S. at 399. They "bar only schemes for obtaining property," *id.* at 404,

whether from Hafez or a bank, *see Shaw*, 580 U.S. at 72.  But the Complaint does not allege that Dr. Vidino agreed *to target Hafez*, much less to target him with the intent of obtaining property. The Complaint's "smoking gun" evidence of Dr. Vidino's purported involvement in the supposed conspiracy is a news article simply stating that Dr. Vidino met with an Alp representative in Switzerland, where that representative requested "a short unnamed memo on the MB in Europe." Compl. ¶ 38.  Dr. Vidino allegedly later signed an agreement for "'interesting leads/rumours' about the Muslim Brotherhood."  *Id.*  Alp did not even tell Dr. Vidino who the client for the research was—falsely stating that the client was "a 'London-based law firm,'" *id.* ¶ 80—and it would not have "really matter[ed]" to Dr. Vidino anyway, who always does "the same research" and is a self-described "one-trick pony," *id.* ¶ 38.  Plainly missing from this loosely described "conspiracy" is any mention of a bank's property, Hafez's property, or even Hafez himself.

Hafez's remaining arguments are makeweights.  He asserts that a GWU employee resigned and accused Dr. Vidino of an "ethical breach"—an allegation found nowhere in the Complaint, and in any event, entirely irrelevant to the requirement of a knowing agreement to obtain property. Opp. 31.  He repeatedly invokes (Opp. 32–33) a new declaration that may not be considered on a motion to dismiss.  And he cites (Opp. 32) the supposed "volume and frequency" of the "meetings" and "WhatsApp messages" between Dr. Vidino and Alp.  But the Complaint mentions a communication that Dr. Vidino sent over WhatsApp precisely once, Compl. ¶ 38, and a meeting with Alp precisely once (the "thousand-dollar dinner," *id.*).  None of that shows that Dr. Vidino entered a "knowing agreement" to deprive Hafez or a bank of their property.  Accordingly, the Complaint does not plausibly allege a knowing agreement to commit a RICO predicate offense.

**III.     Hafez's State-Law Claims (Counts 6-10) Are Untimely And Meritless.**

**A.     No Exception To The One-Year Limitations Period Can Save Hafez's Stale State-Law Claims.**

Hafez's state-law claims are untimely under D.C.'s one-year limitations period for defamation. *See* Mot. 36–38. Hafez attempts to enlarge the limitations period to D.C.'s three-year "catch all" by noting that this case involves "intentional misconduct that extends beyond mere defamation." Opp. 36 & n.10. But he ignores longstanding precedent applying the defamation statute to other claims when those claims are "intertwined" with or "based on" allegedly false statements inflicting reputational injury. Mot. 36 (collecting cases). Indeed, the next sentence of Hafez's brief describes the crux of his claims as "harm [to] Plaintiff's *reputation*, professional relationships, and opportunities"—a concession that his claims sound in defamation. Opp. 36 (emphasis added). Courts applying D.C. law have routinely rejected attempts to evade defamation's one-year limitations period by pleading other claims "based on the same underlying facts." *Wolf v. Menh*, 810 F. App'x 10, 11 (D.C. Cir. 2020) (per curiam) (quoting *Browning v. Clinton*, 292 F.3d 235, 244 (D.C. Cir. 2002)); *see Thomas v. News World Commc'ns*, 681 F. Supp. 55, 73 (D.D.C. 1988); *Mullin v. Wash. Free Weekly, Inc.*, 785 A.2d 296, 298 n.3 (D.C. 2001).

Those holdings render Hafez's state-law claims a non-starter. Because Hafez filed suit on March 27, 2024, Dkt. 1, his state-law claims are timely only if premised on Dr. Vidino's conduct *after* March 27, 2023. But the Complaint pleads statements well before that date—whether Dr. Vidino's testimony to Austrian officials (December 2022), the *Foreign Policy* editorial (November 2020), Germany Report (February 2022), or Austria Report (2017).[2]

---

[2]  Hafez never even alleged that the Germany Report was disclosed to anyone beyond Alp, and that report thus cannot possibly be the basis of his supposed damages. Hafez also now refers in a footnote to a 2023 publication by Dr. Vidino, Opp. 35 n.9, but that allegation appears nowhere in the Complaint and thus may not be considered.

Unable to escape D.C.'s one-year limitations period, Hafez proposes two exceptions: (1) the "continuing tort doctrine," and (2) equitable tolling based on "fraudulent concealment." Opp. 34, 36.  D.C. law forecloses both arguments.  "[U]nder D.C. law, continuous defamatory statements do not toll the statute of limitations." *Amobi v. D.C. Dep't of Corr.*, 755 F.3d 980, 994 (D.C. Cir. 2014).  That is true even when the plaintiff alleges that a series of defamatory statements constituted "a single continuing course of conduct," like several negative performance reviews designed to drive a plaintiff from employment.  *Wallace v. Skadden, Arps, Slate, Meagher & Flom*, 715 A.2d 873, 882 (D.C. 1998).  Rather, each statement "constitute[s] 'a new assault on the plaintiff's reputation,'" and the running of the limitations period therefore cannot "be prevented by repetitions of the [defamation]."  *Id.* (citations omitted; second alteration in original).  Just so here.  A handful of statements over a five-year period is not a "continuing" tort.

In any event, the continuing tort doctrine does not apply on its own terms.  It requires "at least one injurious act … within the limitation[s] period," *Beard v. Edmondson & Gallagher*, 790 A.2d 541, 548 (D.C. 2002), but Hafez pleaded *none*.  And the doctrine is inapt "[w]hen the plaintiff is or should be aware that he or she is being injured by a continuing tort," at which point "the statute of limitations begins to run."  *Id.*  Hafez pleaded that Dr. Vidino's 2017 Austria Report "had an immediate effect on [his] reputation," allegedly leading to a negative press release by the Austrian government and a lecture disinvitation in September 2018.  Compl. ¶ 59.  With "notice of an injury and [Dr. Vidino's] role" in it as early as 2018, Hafez cannot now plausibly assert that he lacked notice.  *Hendel v. World Plan Exec. Council*, 705 A.2d 656, 667 (D.C. 1997).

Hafez's alternative request for equitable tolling given Dr. Vidino's supposed "concealment" of his conduct, Opp. 36, fails for the same reasons.  District of Columbia courts mandate "strict adherence to statutes of limitations" and have denied equitable tolling in circumstances far more

compelling than Hafez's.  *Sayyad v. Fawzi*, 674 A.2d 905, 906 (D.C. 1996); *see, e.g.*, *Maupin v. Haylock*, 931 A.2d 1039, 1043 (D.C. 2007) (no tolling where defamation claim was filed one day late).  Defamation claims accrue "on publication," and D.C. courts have thus rejected "the so-called discovery rule in defamation claims," at least when statements were publicly and widely disseminated.  *Mullin*, 785 A.2d at 298.  To invoke tolling, moreover, Hafez was required to "plead with particularity" why he lacked "actual or constructive notice" of Dr. Vidino's publications.  *Firestone v. Firestone*, 76 F.3d 1205, 1210–11 (D.C. Cir. 1996).  Instead, he repeatedly emphasized that Dr. Vidino's statements were made online or in editorials for "society at large" to see, Compl. ¶ 52—eviscerating his "concealment" theory.

### B.  The Common-Law Fraud Claim (Count 6) Fails.

Hafez's fraud claim fails because he cannot plausibly allege reliance, intent to deceive, falsity, or knowledge of falsity.  *See Pyles v. HSBC Bank USA*, 172 A.3d 903, 907 (D.C. 2017).

Hafez cannot establish reliance.  "A plaintiff may recover for a defendant's fraudulent statement only if *the plaintiff* took some action in reliance on that statement."  Mot. 38 (quoting *Aktieselskabet AF 21. Nov. 2001 v. Fame Jeans Inc.*, 525 F.3d 8, 22 (D.C. Cir. 2008)).  Hafez baldly asserts (Opp. 37) that courts recognize reliance by third parties when falsehoods "foreseeably harm the plaintiff," but he cites nothing—and outright ignores *Aktieselskabet*, 525 F.3d at 22.[3]

---

[3] Courts have articulated a third-party rule applicable where "the plaintiff did not personally hear the defendant's utterances" but instead heard them repeated by someone else.  *Boomer Dev., LLC v. Nat'l Ass'n of Home Builders of U.S.*, 325 F.R.D. 6, 14 (D.D.C. 2018).  In such instances, the plaintiff can sue, but only if he "falls within an identifiable class of persons that the defendant intended to influence."  *Id.*  This rule does not apply here: The *Foreign Policy* statement was "public," Compl. ¶¶ 3, 5, 59, so Hafez heard it himself.  And Hafez does not allege that he was "within an identifiable class of persons that" Dr. Vidino "intended to influence" with his statements, *Boomer*, 325 F.R.D. at 14—which would be absurd, given that the statements were *about Hafez*.  Instead, Hafez concedes (Opp. 9) that the statements were intended to influence "Dr. Hafez's business counterparties, academic and financial institutions."

Hafez insists that he *does* allege his own reliance because he "undertook legal action to protect his rights" and "relocated to the United States based on the effect of those fraudulent statements." Opp. 38. But fraud requires "reliance on [the fraudulent] *statement*." *Aktieselskabet*, 525 F.3d at 22 (emphasis added). Suing over an allegedly false statement is not reliance on *that statement*. Indeed, if suing were sufficient, then anyone suing for fraud would *ipso facto* establish reliance. For the same reason, Hafez's decision to move and teach at Williams College is not cognizable reliance. Even if that decision is in some attenuated sense "the effect" of Dr. Vidino's statements, Opp. 38, it does not establish Hafez's reliance *on the statements*.

Finally, Hafez cites nothing showing that Dr. Vidino intended to deceive Hafez or any case showing that an intent to deceive someone other than the plaintiff is sufficient. Hafez asserts (Opp. 39) that "[t]he FAC provides substantive facts showing [Dr.] Vidino's awareness of the falsity of [his] statements," but, again, he offers no citation or elaboration.

In sum, Hafez fails to plead any of the required elements for fraud.

### C.    The Unfair Trade Practices Claim (Count 7) Fails.

Hafez similarly cannot show that he plausibly alleged an unfair trade practices claim. In his words, the "purpose of the [Consumer Protection Procedures Act] is to protect *consumers* from a broad spectrum of unscrupulous practices *by merchants*." Opp. 39–40 (quoting *Qureshi v. Am. Univ.*, 2023 WL 2387811, at *2 (D.D.C. Mar. 7, 2023)) (emphases added). But Hafez does not allege that he is a "consumer," that Dr. Vidino is a "merchant," or even that their relationship (as academics at different institutions) resembles a consumer-merchant relationship. *See* Mot. 39–40.

Instead, Hafez contends that the statute's prohibition on "deceptive *trade* practice[s]" in fact bars *all* "deceptive practice[s]" given the statute's purported "broader intent" to protect "the public." Opp. 39–40. Hafez's naked assertion that the *Consumer* Protection Procedures Act's "intent" is to protect *non-consumers* is obviously implausible. But more to the point, Hafez offers

23

no response to the CPPA's text, which plainly requires a consumer-merchant relationship.  Mot. 39–40.  Here, as elsewhere, when "the language of a statute is clear and unambiguous, the court must apply its plain meaning."  *In re S.S.*, 821 A.2d 353, 358 (D.C. 2003).

### D.    The Tortious-Interference Claims (Counts 8 & 9) Fail.

Hafez's tortious interference claims also fail.  He cannot establish an expectancy, the defendant's knowledge of that expectancy, intent to interfere, or causation.  *See* Mot. 40.

*First*, Hafez does not dispute, and therefore concedes, that the Complaint fails to plausibly allege Dr. Vidino's "knowledge of the relationship or expectancy" with which Dr. Vidino allegedly interfered.  *Bennett Enters., Inc. v. Domino's Pizza, Inc.*, 45 F.3d 493, 499 (D.C. Cir. 1995).  That alone is fatal.  *See Rosenblatt v. Fenty*, 734 F. Supp. 2d 21, 22 (D.D.C. 2010) ("[A]n argument in a dispositive motion that the opponent fails to address in an opposition may be deemed conceded.").

*Second*, as to the required intent to interfere, Hafez simply asserts—again, without citation—that "Plaintiff has demonstrated with specificity … the intentional nature of [Dr.] Vidino's interference."  Opp. 42–43.  But Hafez's say-so does not establish plausibly pleaded allegations, and the only allegations in the Complaint are conclusory.  *See* Mot. 42.

*Finally*, Hafez does not dispute that the Complaint fails to allege that Dr. Vidino *caused* interference with the only economic relationship specifically alleged in the Complaint—his professorship at the University of Salzburg.  Hafez denies neither that any connection between Dr. Vidino's statements and the Austrian raid is too attenuated to support liability (Mot. 41), nor that it was his decision ultimately to leave the University, which is a classic "self-inflicted" injury, "sever[ing]" any "causal nexus" to Dr. Vidino.  *Ellis v. Jackson*, 319 F. Supp. 3d 23, 32 (D.D.C. 2018).  As to the additional relationships Hafez seeks to establish through new exhibits and declarations, a plaintiff of course "cannot amend its complaint by the briefs in opposition to a motion to dismiss."  *Woytowicz*, 327 F. Supp. 3d at 121; *see Mitchell v. Yates*, 402 F. Supp. 2d 222,

233 n.8 (D.D.C. 2005) (similar). Regardless, there is no indication in these materials that Dr. Vidino knew about these relationships, intended to interfere with them, or caused the interference.

### E.    The Prima Facie Tort Claim (Count 10) Is Not Recognized In The District And Would Fail Anyway.

Finally, Hafez's prima facie tort claim is frivolous. His concession (Opp. 43) that "the label 'prima facie tort'" is "not … embraced in D.C." is fatal. But even if the tort were recognized in D.C., Hafez does not even *attempt* to show that its elements are met here. *See* Mot. 42–44.

Hafez responds that "the principles underlying" prima facie tort claims "are well-recognized under general tort law." Opp. 43. To the extent Hafez argues that the Court should look through the "the label 'prima facie tort'" to the gravamen of the Complaint, *cf. Taylor v. D.C. Water & Sewer Auth.*, 957 A.2d 45, 50 (D.C. 2008), the Complaint sounds in defamation—as Hafez concedes (Opp. 43) by describing its crux as "the dissemination of false and defamatory information." But Hafez brought no defamation claims for good reason: He has publicly acknowledged that "you cannot sue [Dr. Vidino] for libel," Compl. ¶ 38, because Dr. Vidino's statements are not false. And as explained, the First Amendment and statute of limitations would bar such claims anyway.[4]

### CONCLUSION

The Court should dismiss the Complaint with prejudice.

---

[4] Hafez's request for leave to amend is meritless. *See* Mot. 45. Hafez has already amended his complaint twice. While the first amendment was clerical, Opp. 44 n.15, the second was not: Hafez added entirely new allegations on damages. *Compare* Dkt. 5 ¶¶ 52, 90 n.24, *with* Dkt. 3-1 ¶¶ 52, 89. In any event, amendment would be futile. *See In re Interbank Funding Corp. Sec. Litig.*, 629 F.3d 213, 215 (D.C. Cir. 2010). Hafez's state-law claims are untimely, and no amendment could turn back the clock. *Savage v. District of Columbia*, 2019 WL 6701409, at *2 (D.D.C. Dec. 9, 2019). And Hafez's case amounts to a repackaged defamation claim bottomed on constitutionally protected opinions. No new allegations could transform the fundamental nature of these statements.

Dated:  February 10, 2025     Respectfully submitted,

             */s/ Matthew D. McGill*
             Matthew D. McGill (D.C. Bar #481430)
             Jeffrey Liu (D.C. Bar #1672057)
             M. Christian Talley (D.C. Bar #1735656)
             GIBSON, DUNN & CRUTCHER LLP
             1700 M Street, N.W.
             Washington, D.C. 20036
             T: (202) 887-3680
             F: (202) 530-9662
             mmcgill@gibsondunn.com
             jyliu@gibsondunn.com
             ctalley@gibsondunn.com

             *Counsel for Lorenzo Vidino*