**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| FARID HAFEZ, individually and on behalf of all others similarly situated,<br><br>       Plaintiff,<br><br>      v.<br><br>LORENZO VIDINO, individually and in his respective corporate capacities, GEORGE WASHINGTON UNIVERSITY, PROGRAM FOR EXTREMISM AT THE GEORGE WASHINGTON UNIVERSITY, ALP SERVICES SA, DILIGENCE SARL, MARIO BRERO, MURIEL CAVIN, LIONEL BADAL, ARIAF STUDIES AND RESEARCH LLC, and DOES 1 through 25,<br><br>       Defendants. | Case No. 1:24-cv-00873-AHA |

**REPLY IN SUPPORT OF MOTION TO DISMISS**
**OF GEORGE WASHINGTON UNIVERSITY AND THE PROGRAM**
**ON EXTREMISM AT THE GEORGE WASHINGTON UNIVERSITY**

Tracy A. Roman (DC #443718)
Scott L. Winkelman (DC #416747)
Rachael Padgett (DC # 1616574)
**CROWELL & MORING LLP**
1001 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
troman@crowell.com
swinkelman@crowell.com
rpadgett@crowell.com
Telephone: (202) 624-2500

Counsel for Defendants
George Washington University and the
Program on Extremism at the George
Washington University

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ...................................................................................................................1

ARGUMENT .........................................................................................................................2

I.    PLAINTIFF'S OPPOSITION IMPERMISSIBLY SEEKS TO AMEND HIS COMPLAINT THROUGH BRIEFING................................................................2

    A.    Plaintiff's declarations are procedurally improper. ....................................2

    B.    Plaintiff's declarations are substantively improper.....................................4

II.    PLAINTIFF ACKNOWLEDGES THE NON-SPECIFICITY OF HIS ALLEGATIONS AGAINST THE UNIVERSITY. ....................................................5

III.    PLAINTIFF'S THEORY OF VICARIOUS LIABILITY DOES NOT SALVAGE HIS CLAIM AGAINST THE UNIVERSITY. ...........................................7

IV.    PLAINTIFF'S RICO CLAIMS FAIL DESPITE HIS ATTEMPT TO PLUG HOLES WITH HIS NEW ALLEGATIONS. ...............................................12

    A.    Plaintiff cannot not point to any properly pleaded facts that establish RICO standing. ....................................................................12

    B.    Plaintiff cannot point to any facts showing the University's participation in a RICO conspiracy......................................................16

    C.    Plaintiff points to no facts showing that the University (or any defendant) committed RICO predicate acts........................................18

V.    PLAINTIFF CANNOT SALVAGE HIS STATE LAW CLAIMS. ..............................19

    A.    Plaintiff's allegations fall far short of fraud.........................................19

    B.    Plaintiff fails to explain how the DCCPPA applies. ...........................................21

    C.    Plaintiff's last-ditch effort to save his tortious interference claims fails....................................................................22

    D.    Plaintiff cites no support for his prima facie tort claim. ....................................22

    E.    The discovery rule does not save plaintiff's untimely claims............................23

VI.    THE PROGRAM IS NOT A LEGAL ENTITY THAT CAN BE SUED. ....................24

VII.    THE COURT SHOULD NOT PERMIT PLAINTIFF TO AMEND. ...........................25

CONCLUSION.....................................................................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Accuracy in Media v. U.S. Dep't of Def.*,
　No. CV 14-1589, 2022 WL 17250196 (D.D.C. Nov. 28, 2022)................................................1

* *Acosta Orellana v. CropLife Int'l*,
　711 F. Supp. 2d 81 (D.D.C. 2010) ...............................................................10, 12, 19

*Adams v. Crystal City Marriott Hotel*,
　No. 02 Civ. 10258, 2004 WL 744489 (S.D.N.Y. Apr. 6, 2004)................................3

*Andrews v. Washington Metro. Area Transit Auth.*,
　819 F. Supp. 2d 7 (D.D.C. 2011)................................................................................10

*Arbitraje Casa de Cambio, S.A. de C.V. v. U.S. Postal Serv.*,
　297 F. Supp. 2d 165 (D.D.C. 2003) ...........................................................................2

*Art–Metal–U.S.A., Inc. v. United States*,
　577 F. Supp. 182 (D.D.C. 1983) ................................................................................22

* *Associated Producers, LTD v. Vanderbilt Univ.*,
　76 F. Supp. 3d 154 (D.D.C. 2014) ..............................................................................9

*Aston v. Johnson & Johnson*,
　248 F. Supp. 3d 43 (D.D.C. 2017) .............................................................................13

*In re Avandia Mktg., Sales Pracs. & Prod. Liab. Litig.*,
　804 F.3d 633 (3d Cir. 2015)........................................................................................15

*Banneker Ventures, LLC v. Graham*,
　798 F.3d 1119 (D.C. Cir. 2015) ...................................................................................8

* *Barlow v. McLeod*,
　666 F. Supp. 222 (D.D.C. 1986) ...........................................................................17, 21

*Bell Atl. Corp. v. Twombly*,
　550 U.S. 544 (2007).................................................................................................5, 18

*Bradley v. Nat'l Collegiate Athletic Ass'n*,
　249 F. Supp. 3d 149 (D.D.C. 2017)...........................................................................20

*Bridge v. Phoenix Bond & Indem. Co.*,
　553 U.S. 639 (2008)....................................................................................................15

*Burkhart v. Washington Metro. Area Transit Auth.*,
  112 F.3d 1207 (D.C. Cir. 1997) .............................................................5

*Cheeks v. Fort Myer Constr. Corp.*,
  216 F. Supp. 3d 146 (D.D.C. 2016) ...............................................16, 25

*Command Consulting Grp., LLC v. Neuraliq, Inc.*,
  623 F. Supp. 2d 49 (D.D.C. 2009) .......................................................22

*Companhia Brasileira Carbureto de Calcio-CBCC v. Applied Indus. Materials Corp.*,
  887 F. Supp. 2d 9 (D.D.C. 2012) .........................................................15

*Conley v. Gibson*,
  355 U.S. 41 (1957) ................................................................................5

*Ctr. for Immigr. Studs. v. Cohen*,
  410 F. Supp. 3d 183 (D.D.C. 2019) .....................................................15

*Dana Corp. v. Blue Cross & Blue Shield Mut. of N. Ohio*,
  900 F.2d 882 (6th Cir. 1990) ...............................................................11

*In re Domestic Airline Travel Antitrust Litig.*,
  221 F. Supp. 3d 46 (D.D.C. 2016) .........................................................4

*E. Savings Bank, FSB v. Papageorge*,
  629 Fed. Appx. 1 (D.C. Cir. 2015) ................................................20, 25

*Exxon Mobil Corp. v. Corporacion CIMEX, S.A*,
  111 F.4th 12 (D.C. Cir. 2024) ..............................................................14

*Fuji Photo Film U.S.A., Inc. v. McNulty*,
  640 F. Supp. 2d 300 (S.D.N.Y. 2009) .................................................17

*Giles v. Shell Oil Corp.*,
  487 A.2d 610 (D.C. 1985) ...................................................................11

*Gustave-Schmidt v. Chao*,
  226 F. Supp. 2d 191 (D.D.C. 2002) .......................................................8

*United States ex rel. Hawkins v. ManTech Int'l Corp.*,
  No. 15-2105, 2023 WL 12004444 (D.D.C. June 20, 2023), *reconsideration denied*, No. 15-2105, 2024 WL 4332117 (D.D.C. Sept. 27, 2024) ........................................16

*Hawkins v. Washington Metro. Area Transit Auth.*,
  311 F. Supp. 3d 94 (D.D.C. 2018) .........................................................2

\* *Hemi Grp., LLC v. City of New York*,
   559 U.S. 1 (2010) ................................................................................13, 14

*Hinton v. Corr. Corp. of Am.*,
   624 F. Supp. 2d 45 (D.D.C. 2009) .................................................................3

*Holmes v. Sec. Inv. Protection Corp.*,
   503 U.S. 258 (1992) ......................................................................................14

*Horn v. Med. Marijuana, Inc.*,
   80 F.4th 130 (2d Cir. 2023), *cert. granted*, 144 S. Ct. 1454 (2024) .......................13

*Husayn v. Austin*,
   No. CV 08-1360, 2023 WL 3723044 (D.D.C. May 30, 2023) ..................................4

\* *Jia Di Feng v. See-Lee Lim*,
   786 F. Supp. 2d 96 (D.D.C. 2011) ............................................................7, 11

*Jianqing Wu v. Special Couns., Inc.*,
   54 F. Supp. 3d 48 (D.D.C. 2014) ..................................................................3

*Jiggetts v. D.C.*,
   319 F.R.D. 408 (D.D.C. 2017), *aff'd sub nom. Cooper v. D.C.*, No. 17-7021,
   2017 WL 5664737 (D.C. Cir. Nov. 1, 2017) ...................................................6

*Johnson v. Comm'n on Presidential Debates*,
   202 F. Supp. 3d 159 (D.D.C. 2016), *aff'd*, 869 F.3d 976 (D.C. Cir. 2017) ...........................13

*Kamen v. Am. Tel. & Tel. Co.*,
   791 F.2d 1006 (2d Cir. 1986) ........................................................................4

*Kaupthing ehf. v. Bricklayers and Trowel Trades Int'l Pension Fund Liquidation
   Portfolio*, 291 F. Supp. 3d 21 (D.D.C. 2017) ..............................................25

*Kennedy v. Berkel & Co. Contractors, Inc.*,
   319 F. Supp. 3d 236 (D.D.C. 2018) ...............................................................3

*In re Korean Airlines Disaster of September 1, 1983*,
   704 F. Supp. 1135 (D.D.C. 1988) .................................................................21

*Kreuzer v. George Washington Univ.*,
   896 A.2d 238 (D.C. 2006) ...........................................................................24

*La Botz v. Fed. Election Comm'n*,
   889 F. Supp. 2d 51 (D.D.C. 2012) .................................................................4

*Lefkowitz v. McGraw-Hill Glob. Educ. Holdings, LLC*,
   23 F. Supp. 3d 344 (S.D.N.Y. 2014) ..............................................................6

*Lively v. Flexible Packaging Ass'n,*
830 A.2d 874 (D.C. 2003) ...........................................................................................24

*Marble Voip Partners LLC v. Zoom Video Commc'ns, Inc.,*
670 F. Supp. 3d 1213 (D. Kan. 2023) ............................................................................5

*United States ex rel. Morsell v. Symantec Corp.,*
No. CV 12-800, 2020 WL 1508904 (D.D.C. Mar. 30, 2020).........................................5

*Muttitt v. U.S. Cent. Command,*
813 F. Supp. 2d 221 (D.D.C. 2011) ...............................................................................3

*N.Y. Univ. v. First Fin. Ins. Co.,*
322 F.3d 750 (2d Cir. 2003)............................................................................................9

*Navegar, Inc. v. U.S.,*
986 F. Supp. 650 (D.D.C 1997) ....................................................................................25

*New York Cent. & H.R.R. Co. v. United States,*
212 U.S. 481 (1909)......................................................................................................11

*Nguyen v. Versacom,*
LLC, No. 3:13-CV-4689-D, 2015 WL 1400564 (N.D. Tex. Mar. 27, 2015) ..........................4

*Ocean Semiconductor LLC v. Analog Devices, Inc.,*
664 F. Supp. 3d 195 (D. Mass. 2023) .............................................................................4

*Patton Boggs, LLP v. Chevron Corp.,*
791 F. Supp. 13 (D.D.C. 2011) .....................................................................................25

*Pencheng Si v. Laogai Rsch. Found.,*
No. 09-2388, 2013 WL 4478953 (D.D.C. Aug. 21, 2013) ..............................................6

*Pyatt v. Raymond,*
462 F. App'x 22 (2d Cir. 2012), *as amended* (Feb. 9, 2012).......................................4

*Quereshi v. Am. Univ.,*
No. 20-cv-1141, 2023 U.S. Dist. LEXIS 38041 (D.D.C. Mar. 7, 2023) .................21, 22

*RJR Nabisco, Inc. v. Eur. Cmty.,*
579 U.S. 325 (2016)......................................................................................................16

*Rodriguez v. Lab'y Corp. of AmericaHoldings,*
13 F. Supp. 3d 121 (D.D.C. 2014) ..........................................................................19, 20

* *RSM Prod. Corp. v. Freshfields Bruckhaus Deringer U.S. LLP,*
682 F.3d 1043 (D.C. Cir. 2012).................................................................................17, 18

*Saba v. Compagnie Nationale Air France*,
    78 F.3d 664 (D.C. Cir. 1996) ................................................................11

*Salinas v. United States*,
    522 U.S. 52 (1997) ................................................................................17

*Samuel v. Wells Fargo & Co.*,
    311 F. Supp. 3d 10 (D.D.C. 2018) ......................................................5, 21

*Sharpe v. Am. Acad. of Actuaries*,
    285 F. Supp. 3d 285 (D.D.C. 2018) ......................................................22

*Sheller-Paire v. Gray*,
    888 F. Supp. 2d 34 (D.D.C. 2012) ..........................................................3

* *Solomon v. Dechert LLP*,
    No. 22-cv-3137, 2023 WL 6065025 (D.D.C. Sept. 18, 2023) ................14

*Tang Cap. Partners, LP. v. BRC Inc.*,
    661 F. Supp. 3d 48 (S.D.N.Y. 2023) ......................................................4

*Taylor v. District of Columbia Water & Sewer Auth.*,
    957 A.2d 45 (D.C. 2008) ......................................................................23

*Toumazou v. Turkish Republic of N. Cyprus*,
    71 F. Supp. 3d 7 (D.D.C. 2014) ..............................................................6

*United States v. Coyle*,
    63 F.3d 1239 (3rd Cir. 1995) ................................................................21

*United States v. Elliott*,
    571 F.2d 880 (5th Cir. 1978) ................................................................17

*United States v. LBS Bank-New York, Inc.*
    757 F. Supp. 496 (E.D. Pa. 1990) ........................................................11

*United States v. Munoz*,
    233 F.3d 1117 (9th Cir. 2000) ..............................................................21

*United States v. Philip Morris USA, Inc.*,
    2006 U.S. Dist. LEXIS 118375 (D.D.C. Aug. 17, 2006) ................11, 17

*United States v. Phillip Morris USA, Inc.*,
    130 F. Supp. 2d 96 (D.D.C. 2001) ........................................................17

*United States v. Prows*,
    118 F.3d 686 (10th Cir. 1997) ..............................................................21

*United States v. Sutton*,
   2022 U.S. Dist. LEXIS 216313 (D.D.C. Nov. 30, 2022) .......................................................14

*Wade Park Land Holdings, LLC v. Kalikow*,
   No. 21-CV-1657, 2023 WL 2614243 (S.D.N.Y. Mar. 23, 2023), *aff'd sub*
   *nom. In re Wade Park Land Holdings, LLC*, No. 23-591, 2024 WL 3024648
   (2d Cir. June 17, 2024) ...........................................................................................................3

## Other Authorities

Fed. R. Civ. P. 8 ..............................................................................................................................5, 6

Fed. R. Civ. P. 9 ............................................................................................................................19, 24

Fed. R. Civ. P. 12 .............................................................................................................................3

Fed. R. Civ. P. 15 .............................................................................................................................25

## INTRODUCTION

Plaintiff Farid Hafez's Opposition confirms that defendants George Washington University (the "University") and the Program on Extremism at the George Washington University (the "Program") (collectively "the University") do not belong in this lawsuit. The University's motion to dismiss ("Mot.") (ECF No. 30) showed that plaintiff's Amended Complaint asserts no plausible claim against it for the simple reason that the University *has done literally nothing*, much less anything wrong, with respect to plaintiff. It then fell to plaintiff to point the Court to where his Amended Complaint plausibly shows otherwise, for it is *only the complaint* that matters on a motion to dismiss. He did not. Instead, plaintiff's Opposition impermissibly attempts to fill holes in his claims through bald and incorrect assertions of law[1] and newly pled "facts" without citation; offers generalized discourse on the law without linking that discourse to this case; argues that employment (specifically, the University's employment of defendant Dr. Vidino) is alone tortious and actionable, which, if true, would radically reform agency, employment, and tort law; suggests that knowledge of an employee's actions (something he did not plead) alone gives rise to a fraud claim against an employer, another reinvention of law; and seeks to invent a "prime facie tort" claim that DC law does not recognize.

Indeed, plaintiff effectively concedes that his Amended Complaint contains no cognizable claims against the University by sidestepping it: he provides the Court with more than 400 pages of declarations, retained "expert opinion," and documents and documentary fragments that do not appear in the Amended Complaint. The Court should disregard this extraneous material under well-settled jurisprudence. But even if the Court were to consider it, it would change nothing. Plaintiff included the University in this case not because it allegedly did anything wrong, but

---

[1] The Court should reject all legal propositions stated in the Opposition that lack citations to authority. *See Accuracy in Media v. U.S. Dep't of Def.*, No. CV 14-1589, 2022 WL 17250196, at *9 n.2 (D.D.C. Nov. 28, 2022).

because plaintiff, for some undisclosed reason, wants it here. That is not sufficient, and not how our judicial system works.

Plaintiff's claims should be dismissed with prejudice and without leave to amend.[2]

## ARGUMENT

## I.    PLAINTIFF'S OPPOSITION IMPERMISSIBLY SEEKS TO AMEND HIS COMPLAINT THROUGH BRIEFING.

Out of nowhere and in plain contravention of the rules, Plaintiff attaches to his Opposition: (1) plaintiff's 54-paragraph declaration of new "facts" (ECF No. 38-2) ("Pl. Decl."); (2) a declaration of Aaron Rock-Singer (ECF No. 38-12) ("Rock-Singer Decl."), a purported expert on Islamism; and (3) a declaration of plaintiff's counsel David M. Schwartz (ECF No. 38-1) ("Attorney Decl."). Plaintiff also provides 16 supporting exhibits not attached to the Amended Complaint, including several untranslated German documents that are entirely unhelpful to the Court or plaintiff's case. This is impermissible amendment by briefing, compounded by injection of new supposed "facts" without authority and without seeking judicial notice. The Court should not consider any of this inappropriate material. But even if it does, plaintiff's claims fail for the multiple reasons explained below.

### A.    Plaintiff's declarations are procedurally improper.

"It is axiomatic that a complaint may not be amended by the briefs in opposition to a motion to dismiss." *Arbitraje Casa de Cambio, S.A. de C.V. v. U.S. Postal Serv.*, 297 F. Supp. 2d 165, 170 (D.D.C. 2003) (citation omitted); *see also Hawkins v. Washington Metro. Area Transit Auth.*, 311

---

[2] The University expressly incorporates by reference the arguments set forth in the replies of defendants Alp Services SA, Diligence SARL, Mario Brero, Muriel Cavin, Lionel Badal (collectively, "Alp defendants"), and Lorenzo Vidino. The University also notes that, if the Court credits plaintiff's unsupported argument that the University waived any of its co-defendants' arguments incorporated into its brief (*see* Opp. at 27 n.17)—which the University did for purposes of judicial economy—then it should similarly find that plaintiff waived any argument not specifically asserted in each of his Oppositions and instead incorporated by reference. *See* Opp. at 3-4, 17 n.9, 20 n.10-11, 23 n.14, 30 n.20, 33 n.22, 34 n.24, 37 n.25, 39 n.29.

F. Supp. 3d 94, 109 (D.D.C. 2018) ("The plaintiffs cannot overcome a 12(b)(6) motion by adding new information . . . in a brief."). A plaintiff cannot simply assert new "facts" into an opposition brief or declaration that he failed to plead in his complaint. *See Sheller-Paire v. Gray*, 888 F. Supp. 2d 34, 39 n.3 (D.D.C. 2012) ("[T]he Court need not accept additional allegations inserted in a document, such as an opposition memorandum, that is not a complaint or amendment to the complaint."). Indeed, "in deciding a motion brought under Rule 12(b)(6), a court is *restricted* from considering matters 'outside' the pleadings." *Hinton v. Corr. Corp. of Am.*, 624 F. Supp. 2d 45, 46 (D.D.C. 2009) (emphasis added). This includes declarations and supporting exhibits attached for the first time to an opposition. *See, e.g.*, *Kennedy v. Berkel & Co. Contractors, Inc.*, 319 F. Supp. 3d 236, 251 n.2 (D.D.C. 2018) (declining to consider plaintiff's declaration attached to opposition to motion to dismiss); *Muttitt v. U.S. Cent. Command*, 813 F. Supp. 2d 221, 231 n.8 (D.D.C. 2011) (same); *Jianqing Wu v. Special Couns., Inc.*, 54 F. Supp. 3d 48, 51 (D.D.C. 2014) (same).[3]

Plaintiff does exactly this by inserting new facts into his Opposition alleged nowhere in his Amended Complaint to fill the gaps in his legal claims. For instance, to make up for his failure to plead a RICO conspiracy claim against the University, plaintiff asserts that the University was aware of Dr. Vidino's alleged conduct because "the articles and reports he publishes on the Muslim Brotherhood-related issues bear GWU's POE logo, name, and information." Opp. at 21. That allegation does not appear in the Amended Complaint. Likewise, for the first time, plaintiff alleges "that GWU and POE benefitted from UAE funding." *Id.* at 22. If plaintiff believed these allegations

---

[3] *See also Adams v. Crystal City Marriott Hotel*, No. 02 Civ. 10258, 2004 WL 744489, at *3 (S.D.N.Y. Apr. 6, 2004) (refusing to consider "Certification" which "resembles a declaration or affidavit" attached to opposition to motion to dismiss) *accord Wade Park Land Holdings, LLC v. Kalikow*, No. 21-CV-1657, 2023 WL 2614243, at *10 (S.D.N.Y. Mar. 23, 2023), *aff'd sub nom. In re Wade Park Land Holdings, LLC*, No. 23-591, 2024 WL 3024648 (2d Cir. June 17, 2024) ("A plaintiff who has eschewed attaching a document upon which it relies as an exhibit to the complaint . . . . is not ordinarily permitted—when it suddenly becomes expedient—to rely upon the document by attaching it to a declaration submitted in response to a motion to dismiss.")

were significant, he should have alleged them in his complaint.[4] Because he did not, they are not properly before the Court and should be disregarded.[5]

### B.    Plaintiff's declarations are substantively improper.

A declarant cannot offer legal conclusions or otherwise "declare" things about which he does not have personal knowledge and to which he could not testify. *See, e.g.*, *La Botz v. Fed. Election Comm'n*, 889 F. Supp. 2d 51, 61 (D.D.C. 2012) ("Ordinarily, a witness' testimony must meet a basic threshold: it must be based on personal knowledge."); *Nguyen v. Versacom*, LLC, No. 3:13-CV-4689-D, 2015 WL 1400564, at *4 (N.D. Tex. Mar. 27, 2015) ("[T]he contents of affidavits and declarations . . . must be based on the personal knowledge of the affiant or declarant."); *cf. Kamen v. Am. Tel. & Tel. Co.*, 791 F.2d 1006, 1011 (2d Cir. 1986) (finding affidavit not based on personal knowledge insufficient).

Plaintiff violates this principle by including in his declaration assertions and legal conclusions outside his personal knowledge, including about the exchange of information between certain nations' national security institutions, *see* Pl. Decl. ¶ 44, the business motivations of "various" unnamed "financial institutions," *id.* ¶ 15, "proximate" cause, *id.* ¶ 54, and "association-in-fact enterprise[s]." *Id.* ¶ 3.

As for the declaration offered by purported expert Rock-Singer, not only are retained expert opinions out of bounds when considering a motion to dismiss,[6] but an expert cannot opine on legal

---

[4] Examples of plaintiff's new "facts" are too numerous to list; the University includes these two examples to illustrate plaintiff's broader effort to amend the Amended Complaint and bolster its claims against the University through briefing.

[5] If plaintiff wanted the Court to consider such materials, he should have asked the Court to take judicial notice of each of them and provided authority allowing the Court to do so. *See In re Domestic Airline Travel Antitrust Litig.*, 221 F. Supp. 3d 46, 72 (D.D.C. 2016); *Husayn v. Austin*, No. CV 08-1360, 2023 WL 3723044, at *1 (D.D.C. May 30, 2023). In most instances, he fails to do so. *See, e.g.*, Opp. at 14, 15, 16 n.8, 21. And in most if not all instances, judicial notice could not properly be taken.

[6] *See, e.g.*, *Tang Cap. Partners, LP. v. BRC Inc.*, 661 F. Supp. 3d 48, 60 (S.D.N.Y. 2023); *Ocean Semiconductor LLC v. Analog Devices, Inc.*, 664 F. Supp. 3d 195, 201 (D. Mass. 2023); *Pyatt v. Raymond*, 462 F. App'x 22, 24 (2d Cir.

conclusions or the plausibility of alleged facts at any stage of litigation. *See Burkhart v. Washington Metro. Area Transit Auth.*, 112 F.3d 1207, 1212–13 (D.C. Cir. 1997). But this is precisely what plaintiff's "expert" declaration purports to do. *See, e.g.*, Rock-Singer Decl. ¶¶ 29-46 (opining that the Dr. Vidino's "consulting activities" and 2017 "Muslim Brotherhood in Austria" report "proximately result[ed] in professional, reputational, and financial disruption for the Muslim academics and intellectuals who are inaccurately categorized as Islamist"); *id.* ¶ 47 ("Dr. Vidino's methodology and approach . . .. is likely to cause unwarranted harm to individuals targeted based on this methodology."). "Stat[ing] what result should be reached" and answering "the questions directly posed" by a complaint is improper expert opinion. *United States ex rel. Morsell v. Symantec Corp.*, No. CV 12-800, 2020 WL 1508904, at *6 (D.D.C. Mar. 30, 2020).

## II.    PLAINTIFF ACKNOWLEDGES THE NON-SPECIFICITY OF HIS ALLEGATIONS AGAINST THE UNIVERSITY.

Rule 8 requires that a complaint give defendants fair notice of the claims against them by stating more than collectively and cursory allegations of misconduct. *See* Mot. at 6-7; *Samuel v. Wells Fargo & Co.*, 311 F. Supp. 3d 10, 17 (D.D.C. 2018). The Amended Complaint does not provide the University with the required notice.

As a threshold matter, plaintiff defends the Amended Complaint by saying it satisfies the notice pleading standards of *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). *See* Opp. at 2-3. But *Conley* is no longer the law, having been overruled nearly 20 years ago by *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007). Wrong standard aside, plaintiff does not point to a single allegation in the Amended Complaint that would provide the University the required notice. Indeed, plaintiff admits that the Amended Complaint "reference[s] the Defendants collectively because, for the

---

2012), *as amended* (Feb. 9, 2012); *Marble Voip Partners LLC v. Zoom Video Commc'ns, Inc.*, 670 F. Supp. 3d 1213, 1221–22 (D. Kan. 2023).

most part, each of them participated in the same misconduct[.]" Opp. at 12. In other words, plaintiff puts the burden on the University to figure out which allegations in his 69-page, 204-paragraph Amended Complaint target the University. Making matters worse, the Opposition continues to obscure the basis for plaintiff's allegations against the University by repeatedly lumping the defendants together. *See, e.g.*, Opp. at 17 ("Plaintiff plausibly alleges that *Defendants'* offensive viral communications campaign against him was the direct and proximate cause of his injuries."); *id.* at 18 ("*Defendants'* own internal documents expressly confirm that they sought to 'seriously damage, if not destroy the reputation and viability' of key MB European groups through our confidential offensive viral communication.'") (emphasis added). Plaintiff is wrong when he says that Rule 8 does not require a complaint to "delineate" what each defendant is alleged to have done.[7] *See, e.g.*, *Toumazou v. Turkish Republic of N. Cyprus*, 71 F. Supp. 3d 7, 21 (D.D.C. 2014) ("Generally, a plaintiff cannot satisfy the minimum pleading requirements under [Rule 8] by 'lumping all the defendants together in each claim and providing no factual basis to distinguish their conduct.'") (citation omitted).

Plaintiff also incorrectly asserts that incorporation by reference "has no bearing on Rule 8 considerations[.]" Opp. at 12. *See, e.g., Jiggetts v. D.C.*, 319 F.R.D. 408, 416 (D.D.C. 2017), *aff'd sub nom. Cooper v. D.C.*, No. 17-7021, 2017 WL 5664737 (D.C. Cir. Nov. 1, 2017) (complaint failed to meet Rule 8 in part because incorporation by reference of all preceding counts resulted in "fail[ure] to give any indication of the particular allegations that correspond to the legal theories and claims that are alleged in the count at issue"); *Pencheng Si v. Laogai Rsch. Found.*, No. 09-2388, 2013 WL 4478953, at *1 (D.D.C. Aug. 21, 2013) (complaint failed Rule 8 where "[e]ach

---

[7] Plaintiff cites *Lefkowitz v. McGraw-Hill Glob. Educ. Holdings, LLC*, 23 F. Supp. 3d 344 (S.D.N.Y. 2014) (*see* Opp. at 11-12), but that case has nothing to do with distinguishing between defendants' respective conduct or providing fair notice under Rule 8.

count reallege[d] and incorporate[d] by reference all sixty-three pages of factual background" without "indication of the specific facts pertaining to each claim.")

## III.    PLAINTIFF'S THEORY OF VICARIOUS LIABILITY DOES NOT SALVAGE HIS CLAIM AGAINST THE UNIVERSITY.

With no plausibly pleaded facts showing that the University has independent liability, plaintiff resorts to a theory of agency—specifically, that "GWU and POE are liable for the acts of their employee, director, and agent Vidino." Opp. at 4. To attribute Dr. Vidino's actions and knowledge to the University, the Opposition recites various general principles of vicarious liability in the abstract, including *respondeat superior*, imputed knowledge, apparent authority, and aiding and abetting. *See* Opp. at 4-8. Each argument fails.

***Not within scope***. First, plaintiff appears to argue that employment alone, without more, is sufficient to attribute Dr. Vidino's alleged actions to the University. *See* Opp. at 4-5. But as plaintiff himself does not dispute, the doctrine of *respondeat superior* applies only when an employee is acting within the scope of his employment (Opp. at 4-5; *see, e.g.*, *Jia Di Feng v. See-Lee Lim*, 786 F. Supp. 2d 96, 104 (D.D.C. 2011)), and plaintiff does not allege that Dr. Vidino's supposed misconduct occurred within the scope of Dr. Vidino's employment with the University. He alleges something nearer to the opposite. *See* Mot. at 16-17; Am. Compl. ¶¶ 27, 36 (alleging that Alp defendants hired and consulted with Dr. Vidino "as a *contractor* to provide leads on new targets, research, and analysis on the Muslim Brotherhood[.]") (emphasis added). There is no assertion or inference that Dr. Vidino's alleged contracted work as "a hired gun" (Am. Compl. ¶ 44) was performed on the University's behalf, and that is because it was not. *See Jia Di Feng*, 786 F. Supp. 2d at 104 (rejecting *respondeat superior* theory where plaintiff did not plausibly allege he was acting in scope of his employment or that his employer was "in the business of" the type of work giving rise to plaintiff's liability).

Plaintiff's related assertions that the University's "name, logo, and information" (Opp. at 6) were affiliated with Dr. Vidino's Program publications fail because, again, the Amended Complaint does not allege that Dr. Vidino's work in support of the supposed scheme was performed within the scope of Dr. Vidino's employment with the University.

To attempt to plug this hole, plaintiff attaches as an exhibit to his Opposition a "snapshot" of Dr. Vidino's contract with Alp, which he describes as showing that the University is a "signatory" to the contract, "further illustrating the [sic] GWU's direct involvement in and oversight of Vidino's work." Opp. at 8 citing Pl. Decl. Ex. D; *see also* Opp. at 22 ("That agreement bears GWU as a signatory in the signature line."). By failing to include the full seven-paragraph contract—which plainly shows that the contract was entered into between only two parties—*Dr. Vidino and Alp* (and not the University) and explicitly describes Dr. Vidino as a "Consultant," not a University employee —plaintiff misleads the Court. *See* Exhibit 1, Jan. 29, 2018 Contractual Agreement:[8]

This contractual agreement is between:

ALP SERVICES SA, rue de Montchoisy 36, 1207 Genève, Switzerland          ("The Company")
And

LORENZO VIDINO, George Washington University, 2000 Pennsylvania Avenue, NW #2210, Washington, DC 20052, United States of America          ("Consultant")

A review of the full contract also reveals no provision indicating that any work performed under the contract would fall within the scope of his employment with the University. Indeed, plaintiff *cannot* plausibly allege (and his Amended Complaint does not allege) that the University

---

[8] A contract specifically referenced in a complaint is incorporated by reference into the complaint and the Court may consider it at the motion to dismiss stage. *See, e.g.*, *Gustave-Schmidt v. Chao*, 226 F. Supp. 2d 191, 196 (D.D.C. 2002) (court may consider "documents attached as exhibits or incorporated by reference in the complaint" in deciding motion to dismiss); *Banneker Ventures, LLC v. Graham*, 798 F.3d 1119, 1133 (D.C. Cir. 2015) ("A pleading's reference to even a part of a fully integrated and authentic contract thus incorporates the contract as a whole into the complaint.").

even knew about Dr. Vidino's work for Alp, as the contract expressly forbade Dr. Vidino from

disclosing his work for Alp:

1. All information, documents, reports, etc., which the Consultant provides to the Company will not be revealed to, provided to, published or discussed in any way with persons or organizations not approved expressly by the Company. This material includes any confidential information or reporting which Consultant develops researches or produces as a result of tasking provided by the Company. Furthermore, to ensure working in a strictly confidential manner, the Consultant will abstain from disclosing the Company's name, as the Company will abstain from revealing the Consultant's name.

2. All information related to the identities and activities of the Company's clients, business associates and approved subcontractors is strictly private and confidential and the property of the Company. No such information is to be discussed with anyone or any organization outside of the Company without The Company's prior approval. This information includes the identities of clients and the nature of projects for which the Company is working on behalf of clients.

Ex. 1, ¶¶ 1-2. Plaintiff's omission of the complete context of this key document is telling. What's

more, a court in this district, also on a motion to dismiss, rejected plaintiff's exact theory that

inclusion of a university's name next to a professor's name is enough to hold the university

accountable for the professor's consulting. *See Associated Producers, LTD v. Vanderbilt Univ.*, 76

F. Supp. 3d 154, 166-67 (D.D.C. 2014) (allegations that Vanderbilt University employee needed

and obtained university's approval to enter into consulting relationship and "'believed it necessary'

to place the University's name in her signature on her personal emails do[] not establish that

Defendant Vanderbilt actually 'authorize[d] another to act on [its] behalf.'"). And, as explained

above, plaintiff here does not allege, as did the plaintiff in *Vanderbilt*, that the University required

its approval before Dr. Vidino entered into the contract with Alp, let alone that the University was

*aware* that he had done so.

**Knowledge alone is not actionable**. Plaintiff makes the impossibly broad assertion that an

employee's knowledge equals an employer's knowledge. *See* Opp. at 7. This is not the law.

Plaintiff's own cases confirm that an employee's knowledge may be imputed to a corporation *only*

where the employee is acting as an agent of the corporation within the scope of his agency. *N.Y.*

*Univ. v. First Fin. Ins. Co.*, 322 F.3d 750, 753 n.2 (2d Cir. 2003) ("[t]he general rule is that

knowledge acquired by an agent *acting within the scope of his agency* is imputed to his principal and the latter is bound by such knowledge although the information is never actually communicated to it[.]") (alteration in original) (emphasis added) (citation omitted).

***No aiding or abetting.*** Plaintiff says the University can be held responsible because it "aided and abetted" Dr. Vidino's conduct. Opp. at 9-10. An "aiding and abetting" theory requires "(1) a wrongful act causing an injury by a party aided by the defendant; (2) the defendant's knowledge of his role as part of an overall illegal or tortious activity at the time that he provided assistance; and (3) the defendant's knowing and substantial assistance in the principal violation." *Acosta Orellana v. CropLife Int'l*, 711 F. Supp. 2d 81, 108 (D.D.C. 2010) (citation omitted). This theory fails here because there are zero allegations in the Amended Complaint that the University had any knowledge of Dr. Vidino's involvement in the alleged "smear campaign" or knowingly helped carry it out. *See* Section IV.B; *Acosta Orellana*, 711 F. Supp. 2d at 109-10.

***No apparent authority***. Plaintiff also asserts an "apparent authority" theory. *See* Opp. at 8-9. To withstand a motion to dismiss, a claim based on apparent authority must allege facts plausibly showing that "a third party 'reasonably relied upon conduct of the principal (including acquiescence) or conduct of the agent for which the principal is responsible'" and that "the reliance was to the third-party's detriment." *See Andrews v. Washington Metro. Area Transit Auth.*, 819 F. Supp. 2d 7, 12 (D.D.C. 2011) (citation omitted). There are no facts alleged in the Amended Complaint that meet these requirements, nor does plaintiff identify in his Opposition which third party supposedly relied on Dr. Vidino's conduct or why the reliance was reasonable. Instead, plaintiff declares that unnamed "third parties reasonably believed that [the University] consented to the exercise of authority which Vidino purports to hold out[.]" Opp. at 9 (no citation in original).

The Court need not accept as true plaintiff's conclusory allegations, particularly those stated for the first time in an Opposition.

**_"Complicity" and "benefit" are not elements or germane_**. As for plaintiff's allegations regarding the University's "complicity," (Opp. at 9), there is no "complicity" component of vicarious liability doctrine. _Giles v. Shell Oil Corp._, the only case that plaintiff relies on for this theory (Opp. at 9), is about _respondeat superior_ and negligent hiring. _See_ 487 A.2d 610, 611 (D.C. 1985). To similar effect is plaintiff's notion that an employee's actions attach to his or her employer so long as they benefit the employer. _See_ Opp. at 5. This "benefit" theory, offered without authority, finds no support in law and defies the law there is. "The doctrine of _respondeat superior_ 'makes an employer liable for those torts of his employees committed within the scope of their employment.'" _Jia Di Feng_, 786 F. Supp. 2d at 104 (citation omitted). It does not encompass actions outside this scope that may benefit the employer.

**_Public policy doctrine does not aid plaintiff_**. Plaintiff's "public policy" theory (Opp. at 7, 10) is belied by the cases he cites, most of which involved employees or agents acting within the scope of their employment or agency. _See Saba v. Compagnie Nationale Air France_, 78 F.3d 664, 665, 670 (D.C. Cir. 1996); _Dana Corp. v. Blue Cross & Blue Shield Mut. of N. Ohio_, 900 F.2d 882, 886, 886 n.2 (6th Cir. 1990); _New York Cent. & H.R.R. Co. v. United States_, 212 U.S. 481, 494 (1909) ("the act of the agent**,** _while exercising the authority delegated to him_ . . ., may be controlled, in the interest of public policy, by imputing his act to his employer . . .") (emphasis added); _United States v. Philip Morris USA, Inc._, 2006 U.S. Dist. LEXIS 118375, at *2444-55 (D.D.C. Aug. 17, 2006).[9]

---

[9] Others are distinguishable for other reasons. For example, _United States v. LBS Bank-New York, Inc._ 757 F. Supp. 496, 501 n.7 (E.D. Pa. 1990), holds only that a corporate defendant's general intent may be shown by "the collective knowledge of its employees" in a criminal case. And the public policy grounds discussed in _Philip Morris_ for applying _respondeat superior_ and imputed knowledge to "encourage employers to monitor more closely the activities of their

In sum, the Amended Complaint states no plausible inferences (let alone well-pleaded allegations) salvaging plaintiff's eleventh-hour theory of vicarious liability.[10]

## IV.    PLAINTIFF'S RICO CLAIMS FAIL DESPITE HIS ATTEMPT TO PLUG HOLES WITH HIS NEW ALLEGATIONS.

### A.    Plaintiff cannot not point to any properly pleaded facts that establish RICO standing.

Treating his brief like a pleading, plaintiff improperly asserts in his Opposition and supporting declaration various newly articulated injuries that do not appear in his Amended Complaint, including visa-related delays (Pl. Decl. ¶¶ 20, 32), "invasive surveillance" (*id.* ¶ 23), property damage to his home following the Austrian government's "Operation Luxor" raid (*id.* ¶ 28), disinvitations from speaking and teaching engagements (*id.* ¶¶ 30-32, 34-36), and damage to professional relationships resulting in lost job opportunities and funding (*id.* ¶¶ 33-34, 37). By contrast, the Amended Complaint does not allege economic losses constituting a RICO "injury." *See* Mot. at 10-11. Even if the Court considers plaintiff's newly alleged injuries, plaintiff still has failed to allege RICO standing for multiple reasons.

First, most of the new "injuries" plaintiff describes for the first time in his Opposition and declaration suffer from the same defect as those alleged in his Amended Complaint—they articulate financial losses allegedly *derived from* personal injuries to plaintiff's reputation and credibility, which do not confer RICO standing. *See* Mot. at 11 (citing cases). For example,

---

[10] employees and agents" and to hold corporations liable for the actions of its agents "when the totality of circumstances demonstrate that such corporation knew what it was doing or saying was false" do not apply here, where Dr. Vidino is alleged to have been performing confidential, independent contracting work over which plaintiff does not allege the University had direct control.

[10] In any event, none of plaintiff's theories of vicarious liability "give[] rise to an independent cause of action; rather, liability under each is reliant upon derivative tortious activity and therefore must be premised on some underlying tort." *Acosta Orellana*, 711 F. Supp. 2d at 106. Because plaintiff has not stated any actionable underlying tort against the University *or* Dr. Vidino, *see* Section V, ECF No. 49 at p. 20-25, any attempt to amend his allegations to state a vicarious liability theory would be futile.

plaintiff claims that because of the alleged "smear campaign," he "lost income from canceled speaking engagements and professional opportunities, as well as significant reputational damages that led to the withdrawal of numerous invitations to academic and professional forums." Opp. at 14. Plaintiff does not provide any legal authority[11] disputing the principle that personal injuries, including reputational injuries, and "pecuniary losses derivative of personal injuries," are not cognizable under this Circuit's RICO jurisprudence. *See* Opp. at 14-15; *Aston v. Johnson & Johnson*, 248 F. Supp. 3d 43, 50 (D.D.C. 2017) (rejecting argument that "loss of earnings" resulting from personal injuries to plaintiffs conferred RICO standing because this merely constituted "pecuniary losses derivative of personal injuries"). [12] His new allegations of reputation-based injuries are thus futile.

Second, to the extent plaintiff alleges any economic injuries independent of his purported reputational damage, they are too attenuated from the alleged RICO predicate acts to plead proximate causation because they are "distinct from the conduct giving rise to the [offense]." *Hemi Grp., LLC v. City of New York*, 559 U.S. 1, 11 (2010). Plaintiff now says that he suffered "injuries to business or property" because of "[t]he freezing of [his] bank accounts and assets" and other disruptions to his "ability to meet ongoing financial obligations," the costs associated with relocating to the U.S., and property damage to his home following "the raid connected with Operation Luxor" and "financial costs associating with repairing this damage[.]" Opp. at 13-18.

---

[11] "It is well understood in this Circuit that when a plaintiff files an opposition to a dispositive motion and addresses only certain arguments raised by the defendant, a court may treat those arguments that the plaintiff failed to address as conceded." *Johnson v. Comm'n on Presidential Debates*, 202 F. Supp. 3d 159, 177 (D.D.C. 2016), *aff'd*, 869 F.3d 976 (D.C. Cir. 2017).

[12] This district follows "the majority position"—along with the Sixth, Seventh, and Eleventh Circuits—and holds that "pecuniary losses derivative of personal injuries are [not] injuries to 'business or property' cognizable under RICO." *See Aston*, 248 F. Supp. 3d at 50 & n.4. The Supreme Court has granted *certiorari* on this point. *See Horn v. Med. Marijuana, Inc.*, 80 F.4th 130 (2d Cir. 2023), *cert. granted*, 144 S. Ct. 1454 (2024).

Each of these alleged injuries impermissibly asks the Court to "extend liability" to situations in which "multiple steps separate the alleged fraud from the asserted injury" and the "theory of liability rests on the independent actions of third and even fourth parties." *Hemi Grp.* 559 U.S. at 3, 15.

To support his brand-new allegations of injuries arising from the freezing of his bank accounts, plaintiff alleges that defendants collectively published or provided false reports and testimony to third parties (including various media publications, news outlets, and government officials), which in turn caused banks (fourth parties) to restrict access to his funds. *See* Opp. at 18. Similarly, with respect to the Operation Luxor raid, plaintiff argues that Dr. Vidino published a report in 2017 that falsely tied plaintiff to the Muslim Brotherhood and provided fraudulent testimony to "Austrian officials" (third parties), which plaintiff claims contributed to the Austrian government's decision to raid his home (another step removed). *See id.* He then claims that the raid resulted in his need to relocate to the U.S. (yet another step removed). *See id.* at 14. The relationship between the alleged fraud—publication of false reports and testimony—to the alleged harm is too attenuated and indirect to establish the "direct relationship" required for RICO proximate causation. *See Holmes v. Sec. Inv. Protection Corp.*, 503 U.S. 258, 269 (1992); *Solomon v. Dechert LLP*, No. 22-cv-3137, 2023 WL 6065025, at *9-10 (D.D.C. Sept. 18, 2023).

Plaintiff acknowledges that "proximate cause in the RICO context requires that the plaintiff's injury be directly caused by the defendant's scheme"[13] but argues that fraud directed to third parties can directly injure RICO plaintiffs. *See* Opp. at 17-19. Again, while this principle may be true in the abstract, it is not true when applied to the facts plaintiff alleges. And the cases plaintiff

---

[13] Plaintiff argues for an incorrect standard for proximate causation by relying on *United States v. Sutton*, 2022 U.S. Dist. LEXIS 216313, at *16 (D.D.C. Nov. 30, 2022), and *Exxon Mobil Corp. v. Corporacion CIMEX, S.A*, 111 F.4th 12, 33 (D.C. Cir. 2024). Opp. at 18-19. These cases are not RICO cases and did not involve allegations of RICO injury.

cites involved alleged fraud on third parties based on the *same conduct* that caused the plaintiffs' injuries. *See Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639, 643-44 (2008) (finding RICO proximate cause where defendants allegedly conspired to submit fraudulent affidavits to obtain a disproportionate share of tax liens on properties, resulting in plaintiffs, who were other lien bidders, to be "deprived … of their fair share of liens and the attendant financial benefits"); *In re Avandia Mktg., Sales Pracs. & Prod. Liab. Litig.*, 804 F.3d 633, 644 (3d Cir. 2015) (finding RICO injury stemming from alleged overpayment for drugs because of defendant's illegal or deceptive marketing practices where "[t]he conduct that allegedly caused plaintiffs' injuries is the same conduct forming the basis of the RICO scheme alleged in the complaint—the misrepresentation of the heart-related risks of taking [the drug] that caused TPPs and PBMs to place [the drug] in the formulary"); *Companhia Brasileira Carbureto de Calcio-CBCC v. Applied Indus. Materials Corp.*, 887 F. Supp. 2d 9, 22-23 (D.D.C. 2012) (finding RICO injury where plaintiff alleged that steel industry conspired to file fraudulent antidumping petitions with the ITC and such filings caused the ITC to impose strict import duties on plaintiffs, resulting in their withdrawal from the market).

Here, by contrast, plaintiff's alleged theory is that defendants collectively schemed to publish articles and reports that associated him with the Muslim Brotherhood, to damage his reputation; this is entirely separate from the independent conduct of third parties he alleges caused his injuries (the Austrian government raiding his home, banks freezing his accounts, and academic institutions revoking his claimed business opportunities). Again, plaintiff "'cannot end-run the requirements for a defamation claim' by pleading it as RICO violation." *Ctr. for Immigr. Studs. v. Cohen*, 410 F. Supp. 3d 183, 191 (D.D.C. 2019).

Finally, plaintiff does not allege RICO injury in the United States, as he must. *See RJR Nabisco, Inc. v. Eur. Cmty.*, 579 U.S. 325, 354 (2016). It does not matter, as plaintiff now curiously emphasizes, that Dr. Vidino reportedly resides and works in the United States and allegedly performed work for Alp in the United States. *See* Opp. at 15. Nor does it matter that the alleged scheme was "leveraging" and "targeting U.S. platforms[,]" or that defendants allegedly "directed their fraudulent statements to the United States." *Id.* at 16. What matters is that plaintiff has articulated no injury to him that occurred in the United States. *See United States ex rel. Hawkins v. ManTech Int'l Corp.*, No. 15-2105, 2023 WL 12004444, at *22 (D.D.C. June 20, 2023), *reconsideration denied*, No. 15-2105, 2024 WL 4332117 (D.D.C. Sept. 27, 2024) (noting the "general consensus among the courts … that the location of a RICO injury depends on where the plaintiff 'suffered the injury' – not where the injurious conduct took place") (citation omitted).

### B.    Plaintiff cannot point to any facts showing the University's participation in a RICO conspiracy.

As plaintiff concedes, the Amended Complaint does not contain any direct allegations supporting a plausible inference that the University agreed to or even knew about the alleged "viral communication campaign against" plaintiff or otherwise had knowledge of Dr. Vidino's purported "fraudulent activities and participation in the enterprise."[14] *See* Opp. at 20-21. This is fatal to his RICO conspiracy claim.

"To plead a RICO conspiracy, plaintiffs must allege agreements—agreements to commit RICO offenses and agreements to further the endeavor to commit RICO offenses." *Cheeks v. Fort Myer Constr. Corp.*, 216 F. Supp. 3d 146, 162 (D.D.C. 2016). While one need not directly participate in a RICO scheme or commit a predicate act to be a co-conspirator, one must at a

---

[14] Plaintiff instead argues that there is "sufficient circumstantial evidence which, along with publicly available information the Court might take judicial notice of" (Opp. at 21), without asking the Court to take judicial notice of any such information.

minimum have known about the conspiracy and "adopt[ed] the goal of furthering or facilitating the criminal endeavor." *See RSM Prod. Corp. v. Freshfields Bruckhaus Deringer U.S. LLP*, 682 F.3d 1043, 1048 (D.C. Cir. 2012) (quoting *Salinas v. United States*, 522 U.S. 52, 65 (1997)).[15] There is no plausibly pleaded allegation here of knowledge or adoption. *See Barlow v. McLeod*, 666 F. Supp. 222, 225 (D.D.C. 1986) (finding no RICO conspiracy where the "complaint detail[ed] no specific acts by [defendant] other than a generalized claim that he was part of a fraudulent scheme[,]" failed to plead that defendant assented to conspiracy, and made "no reference at all to any acts by [defendant] that supported or furthered the alleged fraud").

Lacking allegations of University knowledge of the purported scheme to smear him, plaintiff is left to rest his conspiracy claim on imputing Dr. Vidino's knowledge to the University, which he cannot do for the reasons described above in Section III, and to claim that "circumstantial evidence" demonstrates the University's knowledge of the alleged enterprise. *Id.* at 20-22. Plaintiff argues that because Dr. Vidino is the director of the Program, "most—if not all—[of] the articles and reports he publishes on Muslim Brotherhood-related issues bear GWU's POE logo, name, and information." *Id.* at 21. This is not circumstantial of anything. The University's affiliation with Program publications does nothing to indicate knowledge of an alleged scheme to discredit

---

[15] Each case cited by plaintiff illustrates the point by referencing allegations or evidence that the conspirator(s) knew about and intended to further the purpose of the alleged schemes. *See Salinas v. United States*, 522 U.S. 52, 65 (1997) (evidence demonstrated that defendant "knew about and agreed to facilitate [bribery] scheme"); *United States v. Phillip Morris USA, Inc.*, 130 F. Supp. 2d 96, 100 (D.D.C. 2001) (a "prima facie showing of conspiracy" requires *both* "(1) that two or more people agreed to commit a substantive RICO offense and (2) that the *defendant knew of and agreed to the overall objective* of the RICO offense.") (citation omitted) (emphasis added)); *Fuji Photo Film U.S.A., Inc. v. McNulty*, 640 F. Supp. 2d 300, 321 (S.D.N.Y. 2009) (noting allegations "that the defendants were aware of the general scope and nature of the conspiracy" and "were aware that the conspiracy extended beyond their individual roles"); *United States v. Elliott*, 571 F.2d 880, 903 (5th Cir. 1978) (explaining that RICO conspiracy is not meant to "punish mere association with conspirators or knowledge of illegal activity . . . [t]o be convicted as a member of an enterprise conspiracy, an individual, by his words or actions, must have objectively manifested an agreement to participate, directly or indirectly, in the affairs of an enterprise through the commission of two or more predicate crimes."); *Philip Morris*, 2006 U.S. Dist. LEXIS 118375, at *2471-72 (noting evidence that defendants "knew the goals of the Enterprise, the general nature of the conspiracy, and that other members of the conspiracy would commit at least two Racketeering Acts in furtherance of the Enterprise's scheme to defraud").

plaintiff. *See RSM Prod. Corp.*, 682 F.3d at 1051 (finding complaint's allegation that defendant "participated in and benefitted from a racketeering enterprise" did not give rise to a plausible inference that defendant's actions were "intended to further the criminal endeavor" when it was more plausible that the defendant's participation was "explained by . . . its normal business practice"). There are no plausible allegations tying the University to any of the "smear campaign" activities alleged in the Amended Complaint.

Finally, plaintiff doubles down on his vague allegation that the University "benefitted from" unspecified funding from the UAE, while at the same time effectively admitting that the funding's connection to the alleged enterprise is pure speculation: "Plaintiff alleges that GWU and POE benefitted from UAE funding, which, *while not conclusively linking them to Alp's smearing scheme*, raises questions about their relationship to the conspiracy, at a minimum." *See* Opp. at 22 (emphasis added). "Raising questions" about a defendant's proximity to a conspiracy does not amount to a plausible inference and does not satisfy *Twombly*.

## C. Plaintiff points to no facts showing that the University (or any defendant) committed RICO predicate acts.

For the sake of brevity, the University incorporates here Dr. Vidino's and the Alp defendants' arguments related to plaintiff's failure to allege an underlying RICO claim, including RICO predicate acts. *See, e.g.*, ECF No. 49 at p. 9-19. The University emphasizes that plaintiff's Opposition does not point to a single action in furtherance of any predicate act that the University allegedly committed or had any knowledge of; instead, it exclusively refers to "defendants" collectively. *See* Opp. at 23-27. The Opposition also backtracks from the Amended Complaint's insinuations that the University somehow committed tax evasion or violated FARA through receipt of funding from the UAE (*see* Am. Compl. ¶¶ 43, 49), neither of which are RICO predicate acts. Plaintiff's abandonment of these allegations confirms that they are merely an attempt to cast

aspersions on the University and that they, and the University's presence is this case, have no legal relevance to plaintiff's claims.

## V.     PLAINTIFF CANNOT SALVAGE HIS STATE LAW CLAIMS.

### A.     Plaintiff's allegations fall far short of fraud.

Plaintiff does not dispute that the Amended Complaint fails to distinguish between each defendant's conduct, nor does he meaningfully respond to the University's argument that a complaint cannot "fail[] to adequately identify with specificity the defendants responsible for allegedly fraudulently misrepresenti[ons]" without running afoul of Rule 9(b). *See, e.g.*, *Acosta Orellana*, 711 F. Supp. 2d at 96-97. Instead, plaintiff makes a weak attempt to justify his imprecise pleading. *See, e.g.*, Opp. at 30-31 (citing "evidence of the existence and methods of the Enterprise's *overall scheme* to defraud and Defendants' individual roles in that Enterprise—including each Defendant's purposeful and conscious actions take in light of its *collective knowledge* . . .") (emphasis added).

Plaintiff also fails to provide legal authority supporting the viability of a fraud claim that does not plead detrimental reliance *by plaintiff* on any misrepresentations. Instead, the Opposition baldly states that "[c]ourts recognize that reliance can encompass scenarios where false statements made to third parties foreseeably harmed the plaintiff" (Opp. at 29), ignoring that the D.C. "Court of Appeals has rejected the argument that a third party's reliance satisfies the reliance element of common law fraud." *Rodriguez v. Lab'y Corp. of AmericaHoldings*, 13 F. Supp. 3d 121, 129 (D.D.C. 2014) (citing *Aktieselskabet AF 21. November 2001 v. Fame Jeans Inc.,* 525 F.3d 8, 23 (D.C. Cir. 2008) ("A plaintiff may recover for a defendant's fraudulent statement only if the

plaintiff took some action in reliance on that statement.")). Plaintiff's fraud claim can be dismissed based on these concessions alone.[16]

In a further attempt to save plaintiff's fraud claim, the Opposition relies on Dr. Vidino's August 2017 report "The Muslim Brotherhood in Austria"—the only publication cited in the Amended Complaint that has any affiliation with the University—claiming that although it was published months before Dr. Vidino contracted with Alp in January 2018, it served "as [the] foundational groundwork for Operation Luxor" in 2020. Opp. at 28. But merely pointing to the report and saying it was "misleading" is not enough. To plead fraud, the Amended Complaint must allege a false representation — "an assertion that is not in accord with the facts[,]" *Rodriguez*, 13 F. Supp. 3d at 129—and "facts that demonstrate *how* the [defendant's] representations [were] allegedly false, [and] were 'made with knowledge of its falsity [or] with the intent to deceive.'" *Bradley v. Nat'l Collegiate Athletic Ass'n*, 249 F. Supp. 3d 149, 171 (D.D.C. 2017) (citation omitted) (emphasis added). Plaintiff cannot do so, as the 50-page report mentions him a total of two times—referring to him as "once a key leader of the [Muslim-Jugend Österreichs] and currently a prominent Islamophobia expert at the University of Salzburg," and citing one of his articles. Pl. Decl. Ex. E, p. 34, p. 18 n.40.

Plaintiff also cannot dispute that the Amended Complaint does not plausibly allege that the University's knowledge rose anywhere close to the level of fraudulent intent required to state a fraud claim. The Opposition's cited cases each involved allegations or evidence of "reckless

---

[16] Plaintiff's attempt to amend the pleadings through his Opposition by declaring that he "relied" on defendants' fraudulent misrepresentations because "he undertook legal action to protect his rights and . . . relocated to the United States" (Opp. at 30) should be disregarded for the reasons stated in Section I. Even if the Court were to consider these statements, they are insufficient to state a fraud claim because they merely describe the "harm" plaintiff alleges he suffered, not acts of "reliance." *See E. Savings Bank, FSB v. Papageorge*, 629 Fed. Appx. 1, 2 (D.C. Cir. 2015) ("Put simply, detrimental reliance is not the same as harm; rather, 'reliance' is defined as '[d]ependence or trust by a person, [especially] when combined with action based on that dependence or trust.'") (quoting Black's Law Dictionary (10th ed. 2014)).

indifference" or "willful blindness" lacking here. *See United States v. Munoz*, 233 F.3d 1117, 1129 (9th Cir. 2000) (defendant told someone he believed corporation was operating Ponzi scheme); *In re Korean Airlines Disaster of September 1, 1983*, 704 F. Supp. 1135, 1137-38 (D.D.C. 1988) (plaintiff claimed flight crew navigated flight "in clear contravention of established procedures" and consciously failed to take corrective action); *United States v. Prows*, 118 F.3d 686, 692-93 (10th Cir. 1997) (defendant "made statements . . . knowing them to be false or, at the very least, without regard to their truthfulness" and "attempted to conceal his activities"); *United States v. Coyle*, 63 F.3d 1239, 1243 (3rd Cir. 1995) (defendant prepared or directed preparation of fraudulent reports). Here, the most the Amended Complaint alleges is that the University *should have* "prevent[ed]" or "cause[d] . . . to be corrected" the allegedly false reports, *see* Am. Compl. ¶ 17, which falls far short of fraud. *See* Mot. at 19.

### B.     Plaintiff fails to explain how the DCCPPA applies.

Plaintiff does not dispute that the Amended Complaint fails to allege that plaintiff is a "consumer," that the University is a "merchant," or that his claims against the University arose out of a "consumer-merchant" relationship; he also ignores DC law establishing that the DCCPPA "applies only to consumer-merchant relationships." *Samuel v. Wells Fargo & Co.*, 311 F. Supp. 3d 10, 19 (D.D.C. 2018) (quoting *Busby v. Cap. One, N.A.*, 772 F. Supp. 2d 268, 279 (D.D.C. 2011)); *see also Barlow v. McLeod*, 666 F. Supp. 222, 228 (D.D.C. 1986); Motion at 21-22.

Instead, he argues that the DCCPPA should be read broadly. Opp. at 31. But the case he cites for this proposition, *Quereshi v. Am. Univ.*, No. 20-cv-1141, 2023 U.S. Dist. LEXIS 38041 (D.D.C. Mar. 7, 2023), has no application to this case. There, the court was addressing whether students could state a DCCPPA claim against their university based on its alleged promise to provide in-person education and services, which it allegedly breached when it transitioned to remote instruction in the face of the COVID-19 pandemic, and specifically whether the university

fell within a carve-out for actions brought against nonprofit organizations. *Id.* at *6-8. There is no parallel to be drawn between that case and this one, where plaintiff alleges zero connection to the University that might make him a "consumer" of the University's "goods and services."

**C.    Plaintiff's last-ditch effort to save his tortious interference claims fails.**

Having pleaded only barebones allegations of alleged lost business opportunities, plaintiff's declaration describes additional engagements and relationships he claims to have lost because of defendants' collective activities. *See* Pl. Decl. ¶¶ 30-37. This last-ditch effort does not save his tortious interference claims.

First, nothing plaintiff alleges, either in the Amended Complaint or his Opposition, describes with the required specificity why the purported "lost" relationships were likely to occur and commercially reasonable to expect absent the University's alleged interference. *See* Mot. at 23-24; *Sharpe v. Am. Acad. of Actuaries*, 285 F. Supp. 3d 285, 292 (D.D.C. 2018); *Command Consulting Grp., LLC v. Neuraliq, Inc.*, 623 F. Supp. 2d 49, 53 (D.D.C. 2009) (identifying "broad categories of relationships that may have been affected" by defendant's conduct is not enough).

Second, the Amended Complaint is devoid of any facts showing that the University knew about any of these alleged prospective relationships or intended to interfere with them. At most, plaintiff again relies on improper collective allegations against the defendants. *See, e.g.*, Opp. at 35 ("[The University and Program's] close association and support for Vidino's actions demonstrate their involvement in the dissemination of false and defamatory statements, making them jointly liable for the harm caused.").

**D.    Plaintiff cites no support for his prima facie tort claim.**

Having been informed that the District of Columbia does not recognize his "prima facie tort" claim (*Art–Metal–U.S.A., Inc. v. United States,* 577 F. Supp. 182, 184 (D.D.C. 1983) ("District of Columbia courts have not embraced a form of generic tort like the *prima*

*facie* tort recognized by New York courts . . . .")), plaintiff points to the Restatement of Torts. *See* Opp. at 36. The Restatement is not law unless a jurisdiction has adopted it as such, which the District has not done in this instance. *Taylor v. District of Columbia Water & Sewer Auth.*, 957 A.2d 45 (D.C. 2008), cited by plaintiff (Opp. at 36), is not to the contrary. There, the claim in substance stated an underlying "established cause of action" for failure to provide a safe workplace—a claim that did not constitute an intentional tort. *Id.* at 50.   Unlike *Taylor*, the Amended Complaint here alleges no "recognized cause of action"; it does the opposite, by asserting a claim based on "intentional and culpable conduct" that at least one court in this District says does not exist.

### E.      The discovery rule does not save plaintiff's untimely claims.

Plaintiff does not dispute the University's contention that the one-year statute of limitations applicable to defamation claims applies because his state-law claims are "intertwined" with allegedly false statements about plaintiff. *See* Mot. at 26. Instead, he argues that the "discovery rule" applies. Opp. at 37. This argument fails, particularly with respect to the allegedly false statements made in Dr. Vidino's 2017 report "The Muslim Brotherhood in Austria," the only University-affiliated publication the Amended Complaint mentions. *See* Am. Compl. ¶ 59. This is because the discovery rule does not toll such claims where plaintiff was aware of the statement when made or the statement was made publicly. *See* Mot. at 38; Am. Compl. ¶ 52 (emphasizing that Dr. Vidino's statements were directed to "society at large"). Plaintiff cannot plausibly allege that Dr. Vidino's 2017 report was not "public" or that he was unaware of it. Indeed, he asserts the opposite, insisting that it was the very reason for the Austrian government's raid on his home. Pl. Decl. ¶ 25; Am. Compl. ¶ 59 (alleging that 2017 report "had an *immediate effect* on [plaintiff's] reputation") (emphasis added).

Plaintiff's continuing tort and equitable tolling theories fail as well. The Supreme Court and D.C. Court of Appeals have applied a "continuing violation" theory in specific circumstances where the legal claims alleged—unlawful employment practices and hostile work environments— were "'comprised of a series of separate acts that collectively constitute 'one unlawful employment practice[.]'" *Lively v. Flexible Packaging Ass'n*, 830 A.2d 874, 890 (D.C. 2003) (quoting *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 117 (2002)). Plaintiff cites no authority applying this doctrine outside of the discriminatory conduct context to the kind of tort claims alleged here. *See Kreuzer v. George Washington Univ.*, 896 A.2d 238, 245-46 (D.C. 2006) (declining to apply "continuing tort theory" to claims against University and noting that plaintiff's reliance on *Lively* was "questionable" because "[t]he statute of limitations issue in *Lively* was shaped by the unique nature of the violation alleged there, *i.e.*, creation of a sexually hostile work environment"). Nor does plaintiff cite any authority or point to any allegations in the Amended Complaint to support his assertion that this is the "rare instance[] where . . . it would be unconscionable to enforce the limitation period against [him] and gross injustice would result." Opp. at 39 (quoting *Robinson v. Dep't of Homeland Sec. Off. of Inspector Gen.*, 71 F.4th 51, 58 (D.C. Cir. 2023)). Mere allegations of intentional misconduct do not automatically trigger equitable tolling.

## VI.    THE PROGRAM IS NOT A LEGAL ENTITY THAT CAN BE SUED.

Plaintiff comes up with no legal authority to dispute that the Program, as an internal unit within the University, is an unincorporated division of a larger, chartered corporate entity—the University—and thus lacks status as an independent entity capable of being sued under DC law. *See* Mot. at 27. While Rule 9 provides that "a pleading *need not* allege a party's capacity to sue or be sued" Fed. R. Civ. P. 9(a)(1)(A) (emphasis added), courts of this Circuit have made such determinations on motions to dismiss where lack of capacity is clear from the face of the complaint. *See Kaupthing ehf. v. Bricklayers and Trowel Trades Int'l Pension Fund Liquidation Portfolio*,

291 F. Supp. 3d 21, 27-30 (D.D.C. 2017) (citing cases). Plaintiff's citations to out-of-circuit cases do not overcome this precedent. *See* Opp. at 40.

## VII.    THE COURT SHOULD NOT PERMIT PLAINTIFF TO AMEND.

Courts deny permission to amend a complaint if the proposed amended complaint would not survive a motion to dismiss. *See* Fed. R. Civ. P. 15(a)(2); *Patton Boggs, LLP v. Chevron Corp.*, 791 F. Supp. 13, 21 (D.D.C. 2011). Here, plaintiff already has substantively amended his complaint once,[17] and the Court has the unusual benefit of knowing what plaintiff's further amendment would say, since his Opposition materials are that "amendment." If plaintiff added every new "fact" that appears in his Opposition and declarations, his claims against the University would still fail. *See Cheeks*, 216 F. Supp. 3d at 155 ("amendment . . . would be futile because plaintiffs have failed to sufficiently state claims for relief, and nothing indicates that they would be able to state claims for relief if allowed to amend in the future"); *E. Savings Bank, FSB*, 31 F. Supp. 3d at 22 (dismissing complaint with prejudice where there were no allegations "that could give rise to legal liability under any of the theories advanced by the plaintiff").

### CONCLUSION

Respectfully, the Court should dismiss plaintiff's claims against the University and the Program with prejudice and without leave to amend.

---

[17] Plaintiff is wrong when he claims he has not previously substantively amended his Complaint. Opp. at 12-13. While plaintiff correctly states that he filed an errata to correct the initial Complaint's noncompliance with the local rules on March 27, 2024 (ECF No. 3), he filed a First Amended Complaint on April 16, 2024, which added a number of allegations and modified others (for example, by adding a vague reference to the University's purported "funds" received from the UAE and describing plaintiff's alleged "damages"). *See* Exhibit 2, Amended Complaint Redline Comparison at ¶¶ 22, 52. To the extent plaintiff asserts he may amend his pleading as a matter of course, this is incorrect. The Court has discretion to deny leave to amend and should do so. *See* Fed. R. Civ. P. 15(2); *Navegar, Inc. v. U.S.*, 986 F. Supp. 650 at 652-53 (D.D.C. 1997).

February 10, 2025

Respectfully submitted,

*/s/ Tracy A. Roman*

Tracy A. Roman (DC #443718)
Scott L. Winkelman (DC #416747)
Rachael Padgett (DC #1616574)
**CROWELL & MORING LLP**
1001 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
troman@crowell.com
swinkelman@crowell.com
rpadgett@crowell.com
Telephone: (202) 624-2500

*Counsel for Defendants George Washington University and the Program on Extremism at the George Washington University*