# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

DR. FARID HAFEZ.,

      *Plaintiff,*

  *v.*

DR. LORENZO VIDINO, *et al.*,

      *Defendants.*

No. 1:24-cv-00873(AHA)

**DEFENDANTS ALP SERVICES SA, DILIGENCE SARL,
MARIO BRERO, LIONEL BADAL, AND MURIEL CAVIN'S
REPLY IN SUPPORT OF THEIR MOTION TO DISMISS**

## <u>TABLE OF CONTENTS</u>

REPLY BRIEF......................................................................................................... 1

I.  PLAINTIFF CANNOT DEMONSTRATE PERSONAL JURISDICTION
    OVER THE EUROPEAN DEFENDANTS. ........................................................ 1

II. PLAINTIFF FAILS TO STATE A CLAIM. ....................................................... 4

    A.  Plaintiff's First, Second, Third, Fourth, and Fifth Claims Under the
        RICO Act Should Be Dismissed................................................................ 5

        1.  *Plaintiff Fails to Plead an Underlying RICO Claim (First
            Claim).* ........................................................................................... 5

            a.   Plaintiff Fails to Plausibly Plead a Predicate Act. ............ 5

            (1)  Plaintiff Fails to Plead Mail Fraud..................................... 5

            (2)  Plaintiff Fails to Plausibly Plead Wire Fraud. ................... 6

            (3)  Plaintiff Fails to Plead Bank Fraud.................................... 7

            (4)  Plaintiff's Defamation Allegations Are Not
                 Predicate Acts of Any Kind of Fraud. ............................... 8

            b.   Plaintiff Fails to Allege an Enterprise.............................. 11

        2.  *Plaintiff Concedes that His Remaining RICO Claims
            (Second, Third, Fourth, and Fifth Claims) Should Be
            Dismissed If He Fails to Plausibly Plead an Underlying
            RICO Claim (First Claim).* ............................................................ 13

        3.  *The Intracorporate Conspiracy Doctrine Precludes
            Plaintiff's Second RICO Conspiracy Claim.* .............................. 14

        4.  *Plaintiff Concedes that 18 U.S.C. §§ 1961(4)-(5) Are Not
            Causes of Action.* ......................................................................... 14

        5.  *Plaintiff Fails to Plead the Requisite Damages*.......................... 14

        6.  *Plaintiff's Injuries Are Not Domestic.* ........................................ 15

        7.  *Plaintiff Fails to Plead Proximate Cause.* ................................... 18

    B.  Plaintiff's State Law Claims Should Be Dismissed................................. 20

        1.  *Plaintiff's Common Law Fraud Claim Should Be Dismissed*...... 20

        2.  *Plaintiff's Unfair or Deceptive Trade Practices Claim
            Should Be Dismissed*..................................................................... 21

        3.  *Plaintiff's Tortious Interference with Existing and
            Prospective Business Relations Claims Should be
            Dismissed.* ..................................................................................... 22

        4.  *Plaintiff's Prima Facie Tort Claim Should Be Dismissed.*.......... 23

III.    PLAINTIFF'S ATTEMPT TO AMEND HIS COMPLAIN IS
        IMPROPER...................................................................................................... 24

IV.    PLAINTIFF'S CLASS ACTION ALLEGATIONS SHOULD BE
        DISMISSED OR STRICKEN. ........................................................................ 25

CONCLUSION................................................................................................................... 25

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**CASES**

*AGS Int'l Servs. S.A. v. Newmont USA Ltd.*,
  346 F. Supp. 2d 64 (D.D.C. 2004) ................................................................................4

*Aktieselskabet AF 21. November 2001 v. Fame Jeans Inc.*,
  525 F.3d 8 (D.C. Cir. 2008) .......................................................................................21

*Ali v. D.C. Ct. Servs.*,
  538 F. Supp. 2d 157 (D.D.C. 2008) ...................................................................5, 6, 14

*All. For Env't Renewal, Inc. v. Pyramid Crossgates Co.*,
  436 F.3d 82 (2d Cir. 2006)..........................................................................................18

*Ambellu v. Re'ese Adbarat Debre Selam Kidist Mariam*,
  387 F. Supp. 3d 71 (D.D.C. 2019) ................................................................................6

*Arbitraje Casa de Cambio, S.A. de C.V. v. U.S. Postal Serv.*,
  297 F. Supp. 2d 165 (D.D.C. 2003) ............................................................................24

*Art–Metal–U.S.A., Inc. v. United States*,
  577 F. Supp. 182 (D.D.C. 1983) .................................................................................23

*Artis v. Yellen*,
  307 F.R.D. 13 (D.D.C. 2014).......................................................................................25

*Asahi Metal Indus. Co. v. Superior Ct. of Cal.*,
  480 U.S. 102 (1987).......................................................................................................3

*Avianca, Inc. v. Corriea*,
  705 F. Supp. 666 (D.D.C. 1989) ...................................................................................4

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007).......................................................................................................5

*Bernhardt v. Islamic Republic of Iran*,
  47 F.4th 856 (D.C. Cir. 2022).......................................................................................3

*Beydoun v. Wataniya Rest. Holding, Q.S.C.*,
  768 F.3d 499 (6th Cir. 2014) .......................................................................................25

*Boyle v. United States*,
  556 U.S. 938 (2009)...............................................................................................11, 12

*Bridge v. Phoenix Bond & Indem. Co.*,
  553 U.S. 639 (2008).....................................................................................................18

*Brink v. Cont'l Ins. Co.*,
  787 F.3d 1120 (D.C. Cir. 2015) ..................................................................5

*Brock on Behalf of Williams v. Peabody Coal Co.*,
  822 F.2d 1134 (D.C. Cir. 1987) ................................................................22

*Brown v. Carr*,
  503 A.2d 1241 (D.C. 1986) ......................................................................22

*Brunson v. Kalil Co., Inc.*,
  404 F. Supp. 2d 221 (D.D.C. 2005) ...........................................................3

*by Estate of Klieman v. Palestinian Auth.*,
  82 F. Supp. 3d 237 (D.D.C. 2015) .............................................................4

*Calder v. Jones*,
  465 U.S. 783 (1984) ...................................................................................2

*Cedric Kushner Promotions, Ltd. v. King*,
  533 U.S. 158 (2001) .................................................................................11

*Center for Immigration Studies v. Cohen*,
  410 F. Supp. 3d 183 (D.D.C. 2019) ...........................................................9

*Ciminelli v. United States*,
  598 U.S. 306 (2023) .................................................................................10

*Coll. Sports Council v. GAO*,
  421 F. Supp. 2d 59 (D.D.C. 2006) ...........................................................24

*Companhia Brasileira Carbureto de Calcio-CBCC v. Applied Industrial Materials Corp.*,
  887 F. Supp. 2d 9 (D.D.C. 2012) .............................................................19

*Conley v. Gibson*,
  355 U.S. 41 (1957) .....................................................................................5

*Danping Li v. Gelormino*,
  No. 3:18-CV-442 (MPS), 2019 WL 1957539 (D. Conn. May 2, 2019) ...................7

*DC2NY, Inc. v. Acad. Bus, LLC*,
  No. 18-cv-2127, 2019 WL 3779571 (D.D.C. Aug. 12, 2019) ................................23

*Elsevier, Inc. v. Grossman*,
  199 F. Supp. 3d 768 (S.D.N.Y. 2016) ..................................................4, 16

*Fay v. Humane Soc'y of United States*,
  No. 20-CV-1893 (RCL), 2021 WL 184396 (D.D.C. Jan. 19, 2021) .......................8

*Fink v. Nat'l Sav. & Tr. Co.*,
  772 F.2d 951 (D.C. Cir. 1985) ................................................................. 6

*Ford Motor Co. v. Mont. Eighth Judicial Dist. Court*,
  592 U.S. 351 (2021) ....................................................................... 3, 4

*Fuji Photo Film U.S.A., Inc. v. McNulty*,
  640 F. Supp. 2d 300 (S.D.N.Y. 2009) .......................................................... 14

*GTE New Media Servs. Inc. v. BellSouth Corp.*,
  199 F.3d 1343 (D.C. Cir. 2000) ............................................................... 1

*Hemi Grp., LLC v. City of New York, N.Y.*,
  559 U.S. 1 (2010) .......................................................................... 18

*Hourani v. Mirtchev*,
  943 F. Supp. 2d 159 (D.D.C. 2013) ........................................................... 16

*Humphrey v. GlaxoSmithKline PLC*,
  905 F.3d 694 (3d Cir. 2018) ................................................................. 17

*In re Avandia Marketing, Sales Practices & Prod. Liability Litig.*,
  804 F.3d 633 (3d Cir. 2015) ................................................................. 19

*Karem v. Trump*,
  404 F. Supp. 3d 203 (D.D.C. 2019) ............................................................ 9

*Kelly v. Palmer, Reifler & Assocs., P.A.*,
  681 F. Supp. 2d 1356 (S.D. Fla. 2010) ........................................................ 13

*Kimberlin v. National Bloggers Club*,
  No. GJH–13–3059, 2015 WL 1242763 (D. Md. Mar. 17, 2015) ...................................... 9

*Kimm v. Lee*,
  No. 04-cv-5724, 2005 WL 89386 (S.D.N.Y. Jan. 13, 2005) .................................... 9, 10

*Londrigan v. FBI*,
  670 F.2d 1164 (D.C. Cir. 1981) .............................................................. 25

*Marks v. City of Seattle*,
  No. 03-cv-1701, 2003 WL 23024522 (W.D. Wash. Oct. 16, 2003) ................................. 8

*Martinez v. JPMorgan Chase Bank, N.A.*,
  178 F. Supp. 3d 184 (S.D.N.Y. 2016) ......................................................... 13

*Middlebrooks v. Godwin Corp.*,
  722 F. Supp. 2d 82 (D.D.C. 2010) ............................................................ 24

*MiMedx Group Inc. v. DBW Partners LLC,*
   No. 17-cv-1925, 2018 WL 4681005 (D.D.C. Sept. 28, 2018)...............................................22

*Modern Mgmt. Co. v. Wilson,*
   997 A.2d 37 (D.C. 2010) .....................................................................................................21

*Mullin v. Wash. Free Weekly, Inc.,*
   785 A.2d 296 (D.C. 2001) ...................................................................................................24

*Mwani v. bin Laden,*
   417 F.3d 1, 11 (D.C. Cir. 2005) ............................................................................................1

*Nat'l Family Plan. and Reprod. Health Ass'n, Inc. v. Gonzales,*
   468 F.3d 826 (D.C. Cir. 2006) .............................................................................................17

*Onyeoziri v. Spivok,*
   44 A.3d 279 (D.C. 2012) .....................................................................................................22

*Potter v. Toei Animation Inc.,*
   839 F. Supp. 2d 49 (D.D.C. 2012) ................................................................................5, 6, 14

*Ritchie v. Sempra Energy,*
   No. 10-cv-1513, 2013 WL 12171757 (S.D. Cal. Oct. 15, 2013).......................................9, 10

*RJR Nabisco, Inc. v. Eur. Cmty.,*
   579 U.S. 325 (2016)......................................................................................................15, 16

*Rodriguez v. Lab. Corp. of Am. Holdings,*
   13 F. Supp. 3d 121 (D.D.C. 2014) .......................................................................................21

*Taylor v. Dist. of Columbia Water & Sewer Auth.,*
   957 A.2d 45 (D.C. 2008) ................................................................................................23, 24

*U.S. Dominion, Inc. v. MyPillow, Inc.,*
   No. 1:21-cv-0445 (CJN), 2022 WL 1597420 (D.D.C. May 19, 2022)...................................13

*U.S. ex rel. Williams v. Martin-Baker Aircraft Co.,*
   389 F.3d 1251 (D.C. Cir. 2004) .............................................................................................6

*United States v. Porat,*
   76 F.4th 213 (3d Cir. 2023) .................................................................................................10

*Va. Acad. of Clinical Psych. v. Grp. Hospitalization & Med Servs., Inc.,*
   878 A.2d 1226 (D.C. 2005) .................................................................................................21

*Whitt v. Am. Prop. Constr., P.C.,*
   157 A.3d 196 (D.C. 2017) ...................................................................................................22

*Williams v. Fed. Nat'l Mortg. Ass'n*,
    2006 WL 1774252 (D.D.C. June 26, 2006)..................................................................23

*Yegiazaryan v. Smagin*,
    599 U.S. 533 (2023)......................................................................................................16

*Ziglar v. Abbasi*,
    582 U.S. 120 (2017)......................................................................................................14

**STATUTES**

18 U.S.C. § 1343.............................................................................................................7

18 U.S.C. § 1965..................................................................................................... *passim*

D.C. Code § 13–423..........................................................................................................4

D.C. Code § 28-3905(k)(1)(A).......................................................................................21

**RULES**

Fed. R. Civ. P. 8..............................................................................................................5

Fed. R. Civ. P. 9...................................................................................................5, 6, 8, 9

Fed. R. Civ. P. 4(k)(1)(C).................................................................................................4

Fed. R. Civ. P. 4(k)(2).......................................................................................................3

**REPLY BRIEF**

Plaintiff's Opposition (ECF No. 37, "Opp.") asks this Court to ignore binding case law and improperly introduces new factual allegations outside the pleadings to hide the Amended Complaint's fatal deficiencies. This effort is unavailing. If the Opposition demonstrates anything, it is that Plaintiff cannot conjure up the factual allegations necessary to plead his claims because they do not exist. Put simply, Plaintiff has no cognizable claims as a matter of law.[1] As such, the Court should dismiss the Amended Complaint with prejudice.

## I. PLAINTIFF CANNOT DEMONSTRATE PERSONAL JURISDICTION OVER THE EUROPEAN DEFENDANTS.

The Opposition does nothing to demonstrate that the European Defendants—who allegedly targeted a professor residing in Austria to advance another foreign sovereign's interests—are subject to the jurisdiction of a U.S. court. Plaintiff does not allege that the Court has general personal jurisdiction over the European Defendants, and the alleged connections between the European Defendants and the United States are too attenuated to confer jurisdiction. *Mwani v. bin Laden*, 417 F.3d 1, 11 (D.C. Cir. 2005).

*First*, Plaintiff argues that the European Defendants published false and defamatory statements about him on "U.S.-hosted platforms, including WordPress, Medium, and Wikipedia" by "manipulat[ing] U.S.-based search engines, including Google and Bing." Opp. 6. But as the European Defendants have already explained, the ability of U.S. residents to access online publications from the United States, or discover the writings through U.S. search engines, does not amount to purposefully directing activities at the United States. *See* ECF No. 29-1 ("Mot.") at 11-13; *see also GTE New Media Servs. Inc. v. BellSouth Corp.*, 199 F.3d 1343, 1349 (D.C. Cir. 2000)

---

[1] The European Defendants incorporate Defendants George Washington University, Program for Extremism at the George Washington University, and Dr. Lorenzo Vidino's arguments, as set forth in their reply briefs in response to Plaintiff's oppositions to Defendants' motions to dismiss.

("personal jurisdiction surely cannot be based solely on the ability of District residents to access the defendants' websites").

Plaintiff argues that sufficient contact with the United States can nevertheless be shown under *Calder v. Jones*, 465 U.S. 783 (1984), because (he asserts) the European Defendants deliberately targeted him, and he is now a visiting professor at a U.S. academic institution. Opp. 6-7. *Calder*'s effect test, however, "focuses on the relationship among *the defendant*, the forum, and the litigation." 465 U.S. at 788 (internal quotation marks and citations omitted) (emphasis added). Under *Calder*, the jurisdictional analysis is focused on the European Defendants, not Plaintiff. The Supreme Court made that clear in *Walden v. Fiore*: "*a plaintiff's* contacts with the forum State *cannot* be decisive in determining whether the defendant's due process rights are violated." 571 U.S. 277, 279 (2014) (internal quotation marks and citation omitted) (emphasis added); *see also id.* at 286 ("[A] defendant's relationship with a plaintiff or third party, standing alone, is an insufficient basis for jurisdiction."). Here, the European Defendants' attenuated connection with the United States is nowhere near the same "strength" as in *Calder*, where the defendants intentionally "created" "various contacts . . . with California (and not just with the plaintiff)," and "the defendants' intentional tort actually occurred in California." *Id.* at 287-88 (citation omitted).

The Amended Complaint alleges that the European Defendants targeted Plaintiff while he was residing in Austria. *See* Mot. 4 (citing Am. Compl. ¶¶ 56-59). In fact, Plaintiff alleges that it was *as a consequence* of the European Defendants' conduct that he left Austria and moved to the United States. Am. Compl. ¶ 188; Mot. 12. That is radically different from *Calder*, where "'California [wa]s the focal point . . . of the harm suffered.'" *Walden*, 571 U.S. at 287 (quoting *Calder*, 465 U.S. at 789). Here, Plaintiff is the alleged focal point. The fact that Plaintiff now resides in the United States—*after* the alleged conduct occurred—is simply immaterial.

*Second*, Plaintiff argues there is jurisdiction under Federal Rule of Civil Procedure 4(k)(2) because the European Defendants allegedly have sufficient contacts with the United States as a whole.  Opp. 8-9.  But beyond conclusory allegations that the European Defendants "target[ed]" the United States by using common internet websites in furtherance of the alleged RICO enterprise, *see* Opp. 9, Plaintiff does not allege that such activity specifically harmed him.  Thus, he fails to "show that the foreign defendant has purposefully directed his activities at residents of the forum, *and that the alleged injuries arise out of or relate to those activities*."  *Bernhardt v. Islamic Republic of Iran*, 47 F.4th 856, 864 (D.C. Cir. 2022) (internal quotation marks and citations omitted) (emphasis added).  Moreover, the alleged contact is too isolated and brief to overcome the "significant weight" that must be given to "[t]he unique burdens placed upon one who must defend oneself in a foreign legal system . . . in assessing the reasonableness of stretching the long arm of personal jurisdiction over national borders."  *Asahi Metal Indus. Co. v. Superior Ct. of Cal.*, 480 U.S. 102, 114 (1987); *see also Brunson v. Kalil Co., Inc.*, 404 F. Supp. 2d 221, 233 (D.D.C. 2005) (no specific jurisdiction where contact with District of Columbia "was isolated and brief").

Plaintiff attempts to shore up his jurisdictional argument by asserting that the United States has "'legitimate interest[s]'" in this lawsuit.  Opp. 10 (quoting *Ford Motor Co. v. Mont. Eighth Judicial Dist. Court*, 592 U.S. 351, 360 (2021)).  But in *Ford*, the Supreme Court upheld exercise of specific jurisdiction because "Ford had systematically served a market in Montana and Minnesota for the very vehicles that the plaintiffs allege malfunctioned and injured them in those States."  *Id.* at 365.  On those facts, the Court recognized "a strong 'relationship among the defendants, the forum, and the litigation'—the 'essential foundation' of specific jurisdiction."  *Id.* (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984)).  And the Supreme Court observed that "[t]he law of specific jurisdiction . . . seeks to ensure that States with

'little legitimate interest' in a suit do not encroach on States more affected by the controversy." *Id.* at 360 (citation omitted). Here, Europe is the area "more affected by the controversy" because this lawsuit concerns actions taken in Europe allegedly to influence European authorities and academic circles. The United States is not the proper place to settle this dispute.

*Third*, Plaintiff argues that Federal Rule of Civil Procedure 4(k)(1)(C)—which authorizes personal jurisdiction over a defendant when a federal statute permits personal jurisdiction upon service of summons—in conjunction with Section 1965 of RICO, 18 U.S.C. § 1965, allows jurisdiction over the European Defendants. Opp. 10-11. But courts do not automatically assume jurisdiction over foreign defendants simply because a plaintiff alleges that they are a part of a RICO conspiracy. Although Section 1965 "authorizes nationwide service of process, . . . it does not provide for service of process in a foreign country. [That] authority . . . must be found, if at all, in the District of Columbia long arm statute." *Avianca, Inc. v. Corriea*, 705 F. Supp. 666, 684 (D.D.C. 1989) (citations omitted), *aff'd sub nom. Avianca, Inc. v. Harrison*, 70 F.3d 637 (D.C. Cir. 1995). Thus, Section 1965 requires *both* "(1) that at least one defendant have minimum contacts with the District of Columbia and (2) that *any additional foreign defendants must be served with process pursuant to the District's long arm statute*, D.C. Code § 13–423." *AGS Int'l Servs. S.A. v. Newmont USA Ltd.*, 346 F. Supp. 2d 64, 87 (D.D.C. 2004) (citation omitted) (emphasis added), *abrogation on other grounds recognized by Estate of Klieman v. Palestinian Auth.*, 82 F. Supp. 3d 237, 242 (D.D.C. 2015). In fact, *Elsevier, Inc. v. Grossman* rejected application of Section 1965 over two defendants even though it was conceded that the third defendant was "subject to the Court's jurisdiction." 77 F. Supp. 3d 331, 342-43 (S.D.N.Y. 2015).

## II.    PLAINTIFF FAILS TO STATE A CLAIM.

Even if this Court has personal jurisdiction over the European Defendants (it does not), Plaintiff fails to plead adequately a single claim under the RICO Act or state law.

**A.    Plaintiff's First, Second, Third, Fourth, and Fifth Claims Under the RICO Act Should Be Dismissed.**

**1.    *Plaintiff Fails to Plead an Underlying RICO Claim (First Claim).***

**a.    Plaintiff Fails to Plausibly Plead a Predicate Act.**

The Opposition discusses mail fraud, wire fraud, and bank fraud as RICO predicate acts.[2] Opp. 14, 16-17.  Plaintiff fails to plead adequately any predicate act, as detailed below.

**(1)    Plaintiff Fails to Plead Mail Fraud.**

Plaintiff insists that he has properly pleaded mail fraud.  Opp. 15.  But beyond boilerplate assertions that the European Defendants "employ[ed] federal mails" or "prepar[ed] and disseminat[ed] via mail . . . materially false and misleading information," Plaintiff does not allege a single fact concerning the mail nor any fraudulent statement disseminated using the mail.  Am. Compl. ¶¶ 34, 130.  Plaintiff's mail fraud pleading is both conclusory and implausible, and thus insufficient under either Rule 8[3] or Rule 9.  *See Brink v. Cont'l Ins. Co.*, 787 F.3d 1120, 1127 (D.C. Cir. 2015) (affirming dismissal of RICO claims because "[n]either appellants' mail nor wire fraud claims contain any reference to 'specific fraudulent statements, who made the statements, what

---

[2] The Amended Complaint lists nine pages of RICO predicate acts, entirely unsupported by factual allegations, which constitutes improper conclusory pleading under Fed. R. Civ. P. 8.  *See* Mot. 14-16.  Plaintiff offers no response, effectively conceding the Court should not give any weight to this undifferentiated litany of possible RICO predicate acts.  *See Ali v. D.C. Ct. Servs.*, 538 F. Supp. 2d 157, 161 (D.D.C. 2008) ("[i]f a plaintiff . . . files an opposition to a motion to dismiss addressing only certain arguments raised by the defendant, a court may treat those arguments that the plaintiff failed to address as conceded."); *Potter v. Toei Animation Inc.*, 839 F. Supp. 2d 49, 53 (D.D.C. 2012) ("an argument in a dispositive motion that the opponent fails to address in an opposition may be deemed conceded"), *aff'd,* No. 12-5084, 2012 WL 3055990 (D.C. Cir. July 18, 2012).  The Court should similarly disregard Plaintiff's bizarre and vague theory of tax evasion—also unaddressed in his Opposition.  *See* Mot. 16 n.6.

[3] Plaintiff invokes the "no set of facts" standard of *Conley v. Gibson*, 355 U.S. 41 (1957), in describing Rule 8's pleading standard.  Opp. 11.  But the Supreme Court has expressly abrogated that standard in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 562-63 (2007) ("*Conley*'s 'no set of facts' language has been questioned, criticized, and explained away long enough [and] is best forgotten as an incomplete, negative gloss on an accepted pleading standard").

was said, when or where these statements were made, and how or why the alleged statements were fraudulent,' [and] '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice'") (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).[4] As a result, Plaintiff fails to plead mail fraud as a predicate act.

### (2)    Plaintiff Fails to Plausibly Plead Wire Fraud.

Plaintiff argues that he has properly pleaded wire fraud because he "specifically" describes how the European Defendants allegedly targeted Plaintiff with a disinformation campaign.  Opp. 15-16.  Plaintiff misunderstands Rule 9's heightened pleading standard.[5]  Plaintiff is obligated to specifically identify a false statement of material fact attributable to the alleged RICO enterprise. *See* Mot. 17-18.  Yet, Plaintiff fails to identify any allegations establishing "the time, place and content of the false misrepresentations, the fact misrepresented and what was retained or given up as a consequence of the fraud."  *U.S. ex rel. Williams v. Martin-Baker Aircraft Co.*, 389 F.3d 1251, 1256 (D.C. Cir. 2004) (internal quotation marks and citations omitted).  Plaintiff's insufficient allegations deprive the European Defendants of "fair notice . . . [to] frame their answers and defenses"—precisely what Rule 9 requires.  *Fink v. Nat'l Sav. & Tr. Co.*, 772 F.2d 951, 963 (D.C. Cir. 1985) (Scalia, J. concurring in part and dissenting in part) (internal quotation marks and citation omitted).

Plaintiff otherwise ignores the European Defendants' arguments that certain alleged statements purportedly made by Defendant Vidino regarding Plaintiff cannot be the basis for wire

---

[4] *See also Ambellu v. Re'ese Adbarat Debre Selam Kidist Mariam*, 387 F. Supp. 3d 71, 85 (D.D.C. 2019) (dismissing RICO claim based on mail and wire fraud because "allegations identify no false statements or misrepresentations . . . made through use of the radio or the Postal Service [and] 'mere conclusory statements' are 'not entitled to the assumption of truth'").

[5] As the European Defendants noted, Rule 9's heightened pleading standard applies with respect to the predicate acts Plaintiff puts forth that sound in fraud.  Mot. 13-14.  Plaintiff does not address this point, effectively conceding it.  *See Ali*, 538 F. Supp. 2d at 161; *Potter*, 839 F. Supp. 2d at 53.

fraud against the European Defendants.  *See* Mot. 18 & n.8.  Plaintiff's attempt to supplement his

deficient allegations changes nothing.  For instance, Plaintiff offers two transcripts (in German)

with interviews between Austrian intelligence and Vidino.  Decl. of Aaron Rock-Singer in Supp.

of Pl.'s Opp'n to Defs.' Mot. to Dismiss (ECF No. 37-12), Apps. F-G (ECF Nos. 37-18, 37-19).

But none of the statements in the transcript can be the basis for wire fraud because the statements

were not transmitted by interstate wire, let alone by wire at all.  *See* 18 U.S.C. § 1343 (requiring

"transmi[ssion] by means of wire, radio, or television communication"); *Danping Li v. Gelormino*,

No. 3:18-CV-442 (MPS), 2019 WL 1957539, at *9 (D. Conn. May 2, 2019) ("[Plaintiff] does not

allege that the scheme involved the use of wires or the mail, and thus he has not stated a claim for

. . . wire fraud.").  Therefore, Plaintiff fails to plead wire fraud as a predicate act.

### (3)  Plaintiff Fails to Plead Bank Fraud.

As the European Defendants demonstrated, Plaintiff failed to plead bank fraud as a

predicate act because the Amended Complaint did not allege any interaction between the European

Defendants and a bank as related to Plaintiff.  Mot. 15.[6]  Conceding that deficiency, Plaintiff now

asserts that the European Defendants "made statements . . . directly to banks and bank compliance

monitors to fraudulently induce banks to stop dealing with Plaintiff."  Opp. 17.[7]  But even if the

---

[6] Plaintiff contends the law does not require him to allege that the European Defendants "obtained any money . . . deceived the banks into releasing any property . . . or intended to harm the banks." Opp. 17-18 (citing Mot. 15).  But Plaintiff misses the forest for the trees.  For Plaintiff to plead bank fraud as a RICO predicate act, Plaintiff is required to (but did not) allege at least *some interaction* between the European Defendants and a bank.  This is evidenced by the very next sentence that Plaintiff tellingly omits from his quotation:  "In other words, Plaintiff fails to plead even a single interaction between Defendants and a bank related to the instant dispute."  Mot. 15. Plaintiff's new attempt to amend the Amended Complaint *de facto* (even if considered by the Court) cannot remedy this deficiency, since the alleged interactions are implausible.

[7] Plaintiff also asserts that the European Defendants harmed certain banks by inducing them to "stop lending to Plaintiff, depriving the banks of revenue from longstanding customer relationships, and in two cases, *costing the banks millions that they had to recover through bankruptcy proceedings*."  Opp. 18 (emphasis added).  This assertion—untethered to any

Court considers Plaintiff's improper and novel allegations in his Opposition, Plaintiff still fails to plead bank fraud in accordance with Rule 9's heightened pleading standard. He does not identify which European Defendant said what, to which bank, the time of the misrepresentation, the fact misrepresented, and what was gained as a result. *See Fay v. Humane Soc'y of United States*, No. 20-CV-1893 (RCL), 2021 WL 184396, at *11 (D.D.C. Jan. 19, 2021) ("easily dismiss[ing] as insufficient" plaintiff's bank fraud and mail fraud claims because plaintiff failed to allege "time, place, and content of the false misrepresentations, as well as the fact misrepresented, and what was gained as a result of the fraud") (internal quotation marks and citation omitted). After three attempts, Plaintiff still cannot identify any alleged misrepresentation the European Defendants made to the banks. As such, Plaintiff fails to plead bank fraud as a predicate act.

### (4)    Plaintiff's Defamation Allegations Are Not Predicate Acts of Any Kind of Fraud.

Plaintiff cannot shoehorn defamation claims into a RICO framework. *See* Mot. 18-20; *see also Marks v. City of Seattle*, No. 03-cv-1701, 2003 WL 23024522, at *3, *6 (W.D. Wash. Oct. 16, 2003) ("defamation or false light" is not equivalent to "false statements in the sense of fraudulent misrepresentation"). And Plaintiff has already acknowledged that the alleged statements at issue are defamation. *See* Am. Compl. ¶ 38 ("Vidino is like a fox . . . . 'They have some kind of a relationship to people who are related to the Muslim Brotherhood,' so ***you cannot sue him for libel*** because he does not actually say you are a member of the Muslim Brotherhood!") (emphasis added). Plaintiff offers two arguments to the contrary in the Opposition, but neither succeeds.

---

allegation in the Amended Complaint—appears to be copied from a filing in a separate litigation pending in this District, from which Plaintiff seems to have borrowed several allegations. *See* Pls.' Omnibus Mem. of P. & A. in Opp'n to Defs.' Mots. to Dismiss, *Nada v. United Arab Emirates*, No. 1:24-cv-00206-ABJ, ECF No. 87 (Oct. 7, 2024).

*First*, Plaintiff mischaracterizes persuasive authority the European Defendants invoked. Opp. 16.  Plaintiff argues that *Center for Immigration Studies v. Cohen*, 410 F. Supp. 3d 183 (D.D.C. 2019), dismissed a plaintiff's RICO claim because the plaintiff did not allege that the statements at issue were false.  Opp. 16.  While this was *one* of the reasons for dismissal, the court also ruled that the plaintiff had "clearly tried to shoehorn a defamation claim into the RICO framework."  *Ctr. for Immigration Studies*, 410 F. Supp. 3d at 191.  Likewise, Plaintiff argues that the court in *Kimberlin v. National Bloggers Club*, No. GJH–13–3059, 2015 WL 1242763 (D. Md. Mar. 17, 2015), dismissed a plaintiff's RICO claim because the plaintiff failed to meet Rule 9's heightened pleading standard in alleging fraud-based predicate acts.  Opp. 16.  But Plaintiff neglects to mention that the court expressly noted that the plaintiff was "attempt[ing] to spin an alleged scheme to harm his reputation" into a RICO claim, something courts are "universally hostile to," and stressed that "it is firmly established that defamation and many other similar allegations do not provide the requisite predicate for RICO violations."  *Kimberlin*, 2015 WL 1242763, at *9 (internal quotation marks and citations omitted).  While these courts gave several reasons for dismissing the RICO claims, one of those reasons was that that plaintiffs may not transform garden-variety defamation allegations into RICO claims.  And "it is well-established that an alternative holding is not dicta."  *Karem v. Trump*, 404 F. Supp. 3d 203, 211-12 (D.D.C. 2019), *aff'd as modified* 960 F.3d 656 (D.C. Cir. 2020) (collecting cases).

*Second*, Plaintiff argues that the asserted claims go beyond defamation because the European Defendants intended to deprive him of money and property.  Opp. 16.  Plaintiff does not adduce any authority supporting that assertion.  Instead, Plaintiff refers to *Ritchie v. Sempra Energy*, No. 10-cv-1513, 2013 WL 12171757 (S.D. Cal. Oct. 15, 2013), and *Kimm v. Lee*, No. 04-cv-5724, 2005 WL 89386 (S.D.N.Y. Jan. 13, 2005)—two cases cited in the European Defendants'

motion that expressly rejected attempts to mischaracterize defamation claims as RICO predicate acts based in fraud.  Opp. 16; Mot. 19.  Plaintiff argues that those courts dismissed the RICO claims because the misrepresentations at issue were designed to harm goodwill and reputations instead of depriving the plaintiffs of money or property.  Opp. 16.  Not so.  The court in *Ritchie* did not discuss in any way a distinction between a defamatory statement and a statement designed to deprive money or property.  The court noted however, that the alleged "smear campaign . . . would [support] a claim for defamation.  [But] [d]efamation is not an enumerated predicate RICO offense."  *Ritchie*, 2013 WL 12171757, at *4.  And while the court in *Kimm* briefly noted that fraud statutes refer to property or something of value, the court rejected the classification of reputation as property under RICO:  "[I]f one's reputation-standing alone—could be construed as property, then any ordinary defamation action could be brought under the mail fraud statute—a startling proposition."  2005 WL 89386, at *5 (internal quotation marks and citation omitted).  The court likened the smear campaign at issue with "an effort to construct a treble damage suit from what, at best, is a civil wrong, something that was never the intention of those who drafted the [RICO] statute."  *Id.*  Ultimately, the allegations in *Ritchie* and *Kimm* to plead RICO claims are no different than those here: an alleged smear campaign designed to injure goodwill and business reputations.  *See* Mot. 19.  This Court should similarly reject Plaintiff's attempt to shoehorn his defamation allegations into the RICO framework.

But even if Plaintiff is correct that an intention to deprive a target of money and property is what separates fraud from defamation, the federal fraud statutes focus on "protec[ting] property rights only," not also those derived therefrom.  *Ciminelli v. United States*, 598 U.S. 306, 312 (2023) (internal quotation marks and citation omitted).  The victim's loss of money or property cannot be "only an incidental byproduct of the scheme"; it must be "an object of the fraud."  *United States*

*v. Porat*, 76 F.4th 213, 218 (3d Cir. 2023) (internal quotation marks and citations omitted).  But Plaintiff's allegations, including the new improperly asserted facts, make clear that the intended goal of the alleged enterprise was not the deprivation of Plaintiff's money or property, but damage to his reputation.  *See*, *e.g.*, Opp. 12 (referring to the alleged enterprise's actions as a "smear campaign"); *id*. 15 (noting the alleged enterprise's actions "were intentionally designed to harm Plaintiff's *reputation and professional standing*") (emphasis added); Am. Compl. ¶¶ 21 (referring to "the enterprise's objectives of destroying the reputations of their targets (including Dr. Hafez)").

Try as Plaintiff may, his defamation allegations simply do not fit into the RICO framework.  Therefore, Plaintiff fails to allege a single predicate act.

### b.    Plaintiff Fails to Allege an Enterprise.

Plaintiff fails to allege the third element of an enterprise because the European Defendants are alleged to be agents of the UAE.  Mot. 20-23.  And so, the UAE was not wholly separate and apart from the alleged enterprise and related pattern of racketeering.  *Id*; *Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 158 (2001) ("[O]ne must allege and prove the existence of two distinct entities: (1) a 'person'; and (2) an 'enterprise' that is not simply the same 'person' referred to by a different name.").

Plaintiff nevertheless contends that he has alleged an association-in-fact enterprise, and therefore does not have to address the European Defendants' argument.  Opp. 19-20.[8]  Not so.  Association-in-fact allegations, which detail an enterprise's organization and structure, go to the first element of an enterprise (a continuing organization).  *See Boyle v. United States*, 556 U.S.

---

[8] Plaintiff also argues that he adequately alleged that the enterprise engaged in a continuous pattern of racketeering activity.  Opp. 21-25.  This argument is beside the point.  Aside from pointing out that Plaintiff failed to allege any predicate acts, the European Defendants did not argue that Plaintiff had failed to allege a continuous pattern of racketeering activity.

938, 948 (2009) ("[A]n association-in-fact enterprise is simply a continuing unit that functions with a common purpose."); *see also id.* at 946 ("an association-in-fact enterprise is 'a group of persons associated together for a common purpose of engaging in a course of conduct'") (quoting *United States v. Turkette*, 452 U.S. 576, 583 (1981)). Association-in-fact allegations do not go to the third element (a distinction between the organization and the enterprises alleged racketeering acts). The two elements are not the same, and so Plaintiff's argument about the expansive nature of an association-in-fact enterprise, *see, e.g.*, Opp. 20, is beside the point.

Plaintiff also insists that the alleged enterprise had multiple distinct persons, including the European Defendants, acting independently of the UAE's interests, but in furtherance of the alleged enterprise. Opp. 20. Plaintiff's own allegations, however, show the contrary. The entirety of the complaint acts stems from the European Defendants' service as the UAE's alleged agents. For instance, Plaintiff contends that the alleged smear campaign was distinct from the European Defendants' typical activities and independent of the UAE. *Id.* But, in Plaintiff's own words, "the United Arab Emirates . . . and some of its top officials managed, directed, and bankrolled a years-long 'dark' public relations campaign through the [the European Defendants]." Am. Compl. ¶ 1. And as part of their services, the European Defendants allegedly investigated targets of interest on the UAE's behalf, as (Plaintiff claims) "the UAE provided the funding [(*i.e.* paid for the European Defendants' services)], strategic guidance, and ultimate approval for the enterprise's operations." Opp. 21. Plaintiff even concedes that the ultimate goal of the alleged enterprise was to "destroy[] the UAE's rivals." *Id.* It therefore defies reason to argue that—taking Plaintiff's allegations on their face—the European Defendants acted independently of their relationship with the UAE.

Plaintiff does not meaningfully engage with the European Defendants' argument that the UAE and the European Defendants are not two distinct persons under RICO, but rather a single

entity by virtue of the alleged agency relationship between the UAE and the European Defendants. *See* Mot. 21-23. And since an enterprise cannot consist of only one entity, Plaintiff fails to allege an enterprise altogether. *See U.S. Dominion, Inc. v. MyPillow, Inc.*, No. 1:21-cv-0445 (CJN), 2022 WL 1597420, at *5 (D.D.C. May 19, 2022). Contrary to Plaintiff's description, the alleged enterprise in *U.S. Dominion* did not consist of "merely a rebranding of the defendant corporation." Opp. 20. The alleged enterprise consisted of a defendant corporation and two of its agents, a public relations firm, and a law firm. *U.S. Dominion*, 2022 WL 1597420, at *5. As part of their agency relationship, the firms acted in accordance with their principal's (the defendant corporation's) interest. *Id.* That is the same as the European Defendants working as a firm on behalf of their alleged principal, the UAE, to advance the UAE's interests.[9] Plaintiff otherwise ignores the European Defendants' persuasive authority. *See Kelly v. Palmer, Reifler & Assocs., P.A.*, 681 F. Supp. 2d 1356, 1382–83 (S.D. Fla. 2010) (finding no RICO enterprise between lawyers and clients because lawyers "were agents of the . . . clients who provided legal and other services"); *Martinez v. JPMorgan Chase Bank, N.A.*, 178 F. Supp. 3d 184, 191 (S.D.N.Y. 2016) (dismissing claim where complaint "merely state[d] that JPM Chase provided banking services to BNP Paribas or Cuban entities, which is insufficient to constitute a RICO enterprise"); *see also* Mot. 20-23.

In sum, Plaintiff fails to plead an enterprise, and so his RICO claim should be dismissed.

### 2. *Plaintiff Concedes that His Remaining RICO Claims (Second, Third, Fourth, and Fifth Claims) Should Be Dismissed If He Fails to Plausibly Plead an Underlying RICO Claim (First Claim).*

Plaintiff does not oppose the European Defendants' argument that his second, third, fourth, and fifth causes of action should be dismissed if his underlying RICO claim (first cause of action)

---

[9] For avoidance of doubt, the European Defendants do not concede that they were the UAE's agents. The European Defendants are simply accepting as true for the sake of its Motion the allegations in Plaintiff's Amended Complaint.

is dismissed.  *See* Mot. 23.  Thus, he concedes this point.  *See Ali*, 538 F. Supp. 2d at 161; *Potter*, 839 F. Supp. 2d at 53.

### 3. *The Intracorporate Conspiracy Doctrine Precludes Plaintiff's Second RICO Conspiracy Claim.*

Plaintiff's RICO conspiracy claim is barred by the intracorporate conspiracy doctrine. Mot. 23-25.  As an alleged agent, acting on behalf of the UAE (the alleged principal), is not an independent entity but merely an extension of the UAE.  "[I]t then follows that there has not been an agreement between two or more separate people" necessary for a conspiracy because a principal cannot enter into an agreement with itself."  *Ziglar v. Abbasi*, 582 U.S. 120, 153 (2017).

Plaintiff argues that the doctrine does not apply to association-in-fact enterprises where multiple actors "each act[] in concert to achieve the unlawful goals of the conspiracy."  Opp. 25 (citing *Fuji Photo Film U.S.A., Inc. v. McNulty*, 640 F. Supp. 2d 300, 321 (S.D.N.Y. 2009)).  But *Fuji Photo Film* does not discuss the intracorporate conspiracy doctrine at all.  And the RICO conspiracy claim there was dismissed as to one defendant because the plaintiff failed to plead an underlying RICO violation and sustained as to the other defendants because they were aware that the conspiracy extended beyond their immediate roles.  *Fuji Photo Film*, 640 F. Supp. 2d at 321.

### 4. *Plaintiff Concedes that 18 U.S.C. §§ 1961(4)-(5) Are Not Causes of Action.*

Plaintiff does not oppose the European Defendants' argument that his Fourth and Fifth claims are not causes of action, and therefore should be dismissed.  *See* Mot. 26-27.  Thus, Plaintiff concedes this point.  *See Ali*, 538 F. Supp. 2d at 161; *Potter*, 839 F. Supp. 2d at 53.

### 5. *Plaintiff Fails to Plead the Requisite Damages*

RICO damages are limited to property and business injuries.  *See* Mot. at 25-26.  Plaintiff ignores this well-settled law by doubling down on his purported reputational injuries to his

professional standing. Opp. 22-23. But he cites no supporting authority to qualify those purported injuries as recognized RICO damages.

Plaintiff attempts to supplement his deficient allegations with a claim of damage to his home as a result of the Operation Luxor raid by the Austrian intelligence. Opp. 27; ECF No. 37-2 ("Hafez Decl.") ¶ 49. But these purported injuries are improper for several reasons. *First*, these injuries were sustained in Austria and are therefore not domestic injuries. *See* Sec. II.A.6 *infra*; *see also RJR Nabisco, Inc. v. Eur. Cmty.*, 579 U.S. 325, 327 (2016) ("A private RICO plaintiff [] must allege and prove a domestic injury.") *Second*, the European Defendants' alleged actions are not the proximate cause; instead, these injuries were caused by third-party actors. *See* Sec. II.A.7 *infra*. *Third*, the allegation of these injuries through the Opposition is improper. *See* Sec. III *infra*.

In sum, Plaintiff fails to allege the necessary damages to bring a RICO claim. The Court should dismiss his RICO claim.

### 6.    *Plaintiff's Injuries Are Not Domestic.*

Plaintiff concedes that "some of the injuries Dr. Hafez suffered originated or developed abroad." Opp. 28. Indeed, Plaintiff alleges the European Defendants—a *Swiss* private investigation agency—investigated Plaintiff's activities in *Europe*; an *Italian* scholar associated with that agency agreed to be interviewed by *Austrian* intelligence regarding Plaintiff's activities as they related to the security risks in *Austria* and *Europe at large*; *Austrian* intelligence later raided Plaintiff's home in *Austria*; and Plaintiff subsequently suffered professional and reputational harm in *European* academic circles. *See* Mot. 27-30.[10] The alleged conduct is plainly extraterritorial. *RJR Nabisco*, 579 U.S. at 327.

---

[10] Aside from Plaintiff's latest assertion that his home was damaged as part of Operation Luxor, the other injuries Plaintiff allegedly suffered are not relevant under RICO, as they do not directly involve Plaintiff's business or property.

Plaintiff argues that because the European Defendants allegedly utilized everyday websites hosted in the U.S., such as Google and Wikipedia, Plaintiff's resulting injuries arose in the United States.  Opp. 29; Am. Compl. ¶ 85.  In essence, Plaintiff's theory would extend RICO laws without limitation anytime the most popular search engine is involved.  That is decidedly not what the RICO Act intends to capture.  *See RJR Nabisco*, 579 U.S. at 354 (RICO "does not allow recovery for foreign injuries").  There is no support for such a broad-sweeping application of U.S. laws to conduct that occurs abroad, and Plaintiff cites none.

Plaintiff's reliance on *Yegiazaryan v. Smagin*, 599 U.S. 533, 546 (2023), is unavailing.  There, a foreign creditor properly alleged a domestic RICO injury when he alleged that a U.S. debtor transferred to a U.S. bank the U.S. debtor's funds, to prevent the creditor from enforcing and collecting on an arbitration award the creditor obtained in a U.S. court.  *Id.* at 546.  The Supreme Court held that the creditor had alleged a domestic injury under the RICO statute because the creditor's right to collect stemmed from a judgment issued by a U.S. court, and the debtor acted to avoid that judgment while residing in the United States.  *Id.*  By contrast, at the time of the alleged racketeering, Plaintiff lived in Austria; the relevant Defendants resided (and continue to reside) in Europe and/or were European entities (they still are); and the racketeering as alleged occurred through a variety of media, controlled by European and/or international entities.  *See Hourani v. Mirtchev*, 943 F. Supp. 2d 159, 161-62, 164-68 (D.D.C. 2013), *aff'd*, 796 F.3d 1 (D.C. Cir. 2015) (no domestic RICO injury where plaintiffs fled Kazakhstan following defamation campaign against them because injuries, including government police raids and lost assets, were suffered in Kazakhstan, notwithstanding defendants' principal place of business in the District of Columbia); *Elsevier, Inc. v. Grossman*, 199 F. Supp. 3d 768, 774-75, 778-89 (S.D.N.Y. 2016) (no domestic RICO injury where Brazilian defendant defrauded plaintiff of property initially located

in Netherlands because injury was suffered in the Netherlands, even if defendant established and utilized a New York corporation and bank account to further fraud).[11]

In his Opposition and supporting declaration, Plaintiff asserts for the first time new injuries he allegedly suffered in the United States. Hafez Decl. ¶ 20 (delayed visa application to enter the United States, resulting in delay in teaching at Williams College and corresponding salary); *id.* ¶ 33 (disrupted relationship with the Brookings Institution); *id.* ¶ 34 (lost revenue from potential book talks in the United States). But none of these new improperly alleged facts moves the needle. *First*, all are ultimately derivative of purported damage to Plaintiff's reputation. And RICO damages do not include reputational damages or those derived therefrom. Mot. 25-26. *Second*, the alleged enterprise's acts are not the proximate cause of these purported injuries. *See* Sec. II.A.7 *infra*. Indeed, according to his own allegations, Plaintiff's grievances with respect to his U.S. visa and subsequent residency is at least in part due to his own decision to delay his initial July 2020 start at Williams College "due to the global pandemic." Opp. 27. And critically, Plaintiff voluntarily decided to move to the United States, *after Operation Luxor* when his reputation was allegedly harmed. Plaintiff cannot willfully create his own injuries in the United States and then use those injuries as a basis to avail himself of U.S. laws. *See Nat'l Family Plan. and Reprod. Health Ass'n, Inc. v. Gonzales*, 468 F.3d 826, 831 (D.C. Cir. 2006) (self-inflicted harm insufficient for standing, as pleaded injuries must be "fairly traceable" to defendants' unlawful conduct). Permitting this maneuver would open the floodgates to a form of forum shopping.

Plaintiff asks this Court to overlook these deficiencies, insisting that "[a]t the pleading stage, general allegations of injury are sufficient to establish standing." Opp. 29 (citing *Lujan v.*

---

[11] Plaintiff's assertion that "[t]he European Defendants' reliance on . . . *Humphrey v. GlaxoSmithKline PLC*, 905 F.3d 694 (3d Cir. 2018), is misplaced," Opp. 29, is puzzling. The European Defendants' motion did not cite *Humphrey*.

*Defs. of Wildlife*, 504 U.S. 555, 561 (1992); *Nat'l Org. for Women, Inc. v. Scheidler*, 510 U.S. 249, 256 (1994)).  Plaintiff, however, conflates the domestic injury element (*i.e.* statutory standing) for a RICO claim with the required showing of injury to establish Article III standing.  The two are distinct legal concepts.  *See*, *e.g.*, *All. For Env't Renewal, Inc. v. Pyramid Crossgates Co.*, 436 F.3d 82, 87-88 & n.6 (2d Cir. 2006).  Even if Plaintiff's meager allegations suffice to meet the injury prong of Article III standing, they are insufficient to establish statutory standing under RICO.

In sum, Plaintiff fails to allege a qualifying domestic injury.  His RICO claims should be dismissed.

### 7.    *Plaintiff Fails to Plead Proximate Cause.*

Plaintiff fails to plead adequately that the alleged enterprise's acts were the proximate cause of his injuries; rather, each of Plaintiff's injuries stemmed from a third-party exercising judgment independent of the enterprise's alleged acts.  Mot. 30-32.  The Opposition entirely ignores the European Defendants' argument and supporting legal authority.  Plaintiff instead argues that the alleged enterprise's acts specifically targeted the third parties who directly injured Plaintiff, and that a direct relation between Defendants' acts and Plaintiff's injury is unnecessary.  Opp. 30-31. Plaintiff has the law wrong.  The Supreme Court expressly held that proximate cause in the RICO context requires a "'direct relation between the injury asserted and the injurious conduct alleged.'" *Hemi Grp., LLC v. City of New York, N.Y.*, 559 U.S. 1, 9 (2010) (citation omitted).  Plaintiff's legal authority is inapposite.  For instance, *Bridge v. Phoenix Bond & Indemnity Co.*, 553 U.S. 639 (2008), only held that first-party reliance on a defendant's misrepresentation was unnecessary for a plaintiff to plead RICO predicated on mail fraud.  *Id*. at 642, 659.  To the extent it did opine on a third party's reliance, the Supreme Court noted that a third party's independent decision making "would    constitute    an    intervening    cause    breaking    the    chain    of    causation    between  .  .  . misrepresentations and . . . injury." *Id*. at 659.

Plaintiff's other authorities fare no better.  *Companhia Brasileira Carbureto de Calcio-CBCC v. Applied Industrial Materials Corp.*, 887 F. Supp. 2d 9 (D.D.C. 2012), does not address proximate cause at all.[12]  Regardless, the defendants there were accused of directly submitting a fraudulent petition with the third party International Trade Commission in an effort to remove plaintiffs as competitors in the market.  *Id.* at 14-16.  In contrast, aside from Plaintiff's conclusory and unspecific allegations that the European Defendants allegedly targeted third parties who then injured Plaintiff, Plaintiff does not identify who those third parties are, or how the European Defendants interacted with them.  The connection between the European Defendants' alleged actions and Plaintiff's purported harms is too attenuated to establish proximate cause.

Plaintiffs also invokes *In re Avandia Marketing, Sales Practices & Product Liability Litigation*, 804 F.3d 633, 645 (3d Cir. 2015), for the proposition that the existence of an intermediary third party does not preclude proximate causation.  Opp. 31.  But that is not what the European Defendants argue.  Mot. 30-31.  The European Defendants emphasized (and Plaintiff ignores) that "a RICO predicate that merely facilitates an injurious act taken by a third party *who acts out of her own interests and in her own judgment* does not proximately cause the injury."  Mot. 30 (citing *Solomon v. Dechert LLP*, No. 22-cv-3137 (JEB), 2023 WL 6065025, at *10 (D.D.C. Sept. 18, 2023)) (emphasis added).  Plaintiff otherwise has no response to the European Defendants' observation that the academic institutions that allegedly rejected Plaintiff and the Austrian intelligence that executed Operation Luxor acted based on their own motivation, and exercised their own independent judgment.  *See* Mot. 31.  Likewise, in regards to Plaintiff's newest

---

[12] *Compnahia* does discuss the causation necessary to satisfy the antitrust standing requirement. *Id.* at 21.  But, this is wholly irrelevant to the clams at issue.

(and improper) allegations, the U.S. Citizenship and Immigration Services—a federal agency—assuredly had its own national security considerations in scrutinizing Plaintiff's visa.

For the foregoing reason, Plaintiff fails to plead proximate causation, and his RICO claims should be dismissed.

## B.    Plaintiff's State Law Claims Should Be Dismissed

### 1.    *Plaintiff's Common Law Fraud Claim Should Be Dismissed*

Plaintiff contends that he has sufficiently alleged false representations based solely on statements Dr. Vidino allegedly made about Plaintiff in an August 2017 report. Opp. 32. Plaintiff, however, acknowledges that the August 2017 report "predates the formal agreement between [European Defendants] and Dr. Vidino." Opp. 32. Plaintiff nonetheless contends that the Amended Complaint alleges that the European Defendants' efforts to harm Plaintiff were well underway at the time of this report. But there is no allegation in the Amended Complaint to support this new claim that the European Defendants were working with Vidino in August 2017.

In fact, the Amended Complaint supports the opposite inference. The Amended Complaint alleges that the European Defendants had dinner with Vidino on January 12, 2018 to make him a "proposal" to work as a consultant for them. Am Compl. ¶ 38. It further states that "two weeks after the dinner, Vidino signed an initial contract" with the European Defendants. *Id*. Therefore, based on Plaintiff's own allegations, the European Defendants could not have been involved in any alleged false statements made in the August 2017 report because they did not begin allegedly working with Vidino until 2018. Thus, Plaintiff has not alleged any false statements made by, or at the behest of, the European Defendants about him.

Moreover, Plaintiff does not claim he relied on any alleged false statement. Plaintiff argues that he satisfies the reliance element despite conceding that the alleged misrepresentations were directed at third parties. Opp. 33. But a third-party's reliance is insufficient to establish the

reliance element of common law fraud. *Va. Acad. of Clinical Psych. v. Grp. Hospitalization & Med Servs., Inc.*, 878 A.2d 1226, 1237-38 (D.C. 2005). Ignoring this binding case law, Plaintiff contends that since he alleges significant harm, he has sufficiently alleged the element of reliance. Opp. 33. Plaintiff cites to no supporting case law for this novel idea. Nor can he because common law fraud claims are limited. "A plaintiff may recover for a defendant's fraudulent statement *only if* the plaintiff took some action in reliance on that statement." *Aktieselskabet AF 21. November 2001 v. Fame Jeans Inc.*, 525 F.3d 8, 22 (D.C. Cir. 2008) (emphasis added). Without any allegation that he relied on the false statements made, his claim must be dismissed. *Id; see also Rodriguez v. Lab. Corp. of Am. Holdings*, 13 F. Supp. 3d 121, 129 (D.D.C. 2014).

### 2. *Plaintiff's Unfair or Deceptive Trade Practices Claim Should Be Dismissed.*

Plaintiff concedes that there is no consumer-merchant relationship between him and the European Defendants, a required element for an unfair or deceptive trade practice claim under the Columbia Consumer Protection Procedures Act ("CPPA"). Opp. 36. He also concedes that he does not sell consumer goods or services. Nevertheless, he argues, with no supporting case law, that the CPPA is applicable to him because he has alleged that the European Defendants engaged in conduct that interfered with his professional and personal affairs through deceptive means, and this application "aligns with the CPPA's purpose of preventing such misconduct." Opp. 36-37. This is not the CCPA's purpose. Rather, the "purpose of the CPPA is to protect *consumers* from a broad spectrum of unscrupulous practices by *merchants*." *Modern Mgmt. Co. v. Wilson*, 997 A.2d 37, 62 (D.C. 2010) (emphasis added). The CPPA's focus is on consumers. The CPPA provides that "a *consumer* may bring an action seeking relief from the use of a *trade practice* in violation of a law of the District." D.C. Code § 28-3905(k)(1)(A) (emphasis added). This Court

should not expand a statute outside of its plain meaning. *Brock on Behalf of Williams v. Peabody Coal Co.*, 822 F.2d 1134, 1144 (D.C. Cir. 1987).

     **3.**     ***Plaintiff's Tortious Interference with Existing and Prospective Business Relations Claims Should be Dismissed.***

Plaintiff's tortious interference claims require him to plausibly allege that the European Defendants intentionally interfered with actual contracts or relationships. *Whitt v. Am. Prop. Constr., P.C.*, 157 A.3d 196, 2020 (D.C. 2017). The Opposition nevertheless makes no attempt to identify *any* contracts or specific business relationships alleged in the Complaint that was interfered with by the European Defendants.

Courts of this District have consistently held that a plaintiff must identify specific relationships at issue. *MiMedx Group Inc. v. DBW Partners LLC*, No. 17-cv-1925, 2018 WL 4681005 (D.D.C. Sept. 28, 2018), for example, dismissed tortious interference claims where plaintiff's "allegations of tortious interference fail[ed] to allege a sufficient factual basis" by "us[ing] labels of 'customers, investors, and creditors' to describe hypothetical categories of business relationships with which [defendant] could have interfered but indicat[ing] no specific business relationship affected by the alleged interference." *Id.* at *8. Plaintiff has similarly failed to allege specific contracts or relationships.

Additionally, Plaintiff fails to allege that the European Defendants intentionally interfered with any business relationship or expectancy. *See Onyeoziri v. Spivok*, 44 A.3d 279, 286 (D.C. 2012) (the elements of intentional interference with business relations include the existence of a valid contract or business relationship, knowledge of the contract or relationship, intentional interference with the contract or relationship, and damages caused by the interference); *Brown v. Carr*, 503 A.2d 1241, 1247 (D.C. 1986) (the elements for intentional interference with a prospective business advantage "runs 'parallel'") (citation omitted). The Amended Complaint

does not contain (1) factual allegations from which the Court can plausibly infer that the European Defendants intentionally interfered with the Plaintiff's business or business expectancy, or (2) allegations identifying the specific contracts or expectancies that the Plaintiff claims were interfered with. *See Williams v. Fed. Nat'l Mortg. Ass'n*, 2006 WL 1774252, *8-9 (D.D.C. June 26, 2006) (dismissing plaintiff's claim for tortious interference with reasonable expectation of prospective economic advantage as to unidentified "lenders and customers" and unidentified "consultants, brokers, lenders and customers," while permitting the claim to continue only with respect to the one specifically-identified entity).

Plaintiff generically alleges interference "with the business relationships between the Plaintiff and The University of Salzburg and others."  Am. Comp. ¶ 192.  As to the University of Salzburg, Plaintiff does not list any specific contracts he allegedly lost as a result of the European Defendants' conduct.  His allegation that the European Defendants interfered with his business relationships with "others" is likewise too generic and unspecific.  *See DC2NY, Inc. v. Acad. Bus, LLC*, No. 18-cv-2127, 2019 WL 3779571, at *8 (D.D.C. Aug. 12, 2019).  The law requires tortious interference plaintiffs to identify some contractual obligation purportedly disrupted by a defendant. Plaintiff has not done so and, therefore, has failed to state a claim upon which relief can be granted.

### 4.    *Plaintiff's Prima Facie Tort Claim Should Be Dismissed.*

Plaintiff concedes that "prima facie tort" is not expressly recognized in this District."  Opp. 41; *see also Taylor v. Dist. of Columbia Water & Sewer Auth.*, 957 A.2d 45, 50 (D.C. 2008); *Art–Metal–U.S.A., Inc. v. United States*, 577 F. Supp. 182, 184 (D.D.C. 1983).  Plaintiff argues, however, that this Court should recognize his claim because "the principles underlying such claims—intentional infliction of harm without justification—are well-recognized under general tort law."  Opp. 41 (citing *Taylor*, 957 A.2d at 50).

*Taylor* does not rescue Plaintiff's claim.  In *Taylor*, the D.C. Court of Appeal acknowledged that the plaintiff's *prima facie* tort claim (not recognized in the District) was actually asserting a common law claim for breach of duty to provide a safe workplace.  957 A.2d at 50.  Since that common law claim is recognized in the District, the court allowed it to proceed.  Here, by contrast, Plaintiff's *prima facie* allegation is a thinly veiled defamation claim.  *See* Opp. 41 (describing allegation as "the dissemination of false and defamatory information").  This Court should therefore dismiss Plaintiff's *prima facie* tort claim.[13]

## III.    PLAINTIFF'S ATTEMPT TO AMEND HIS COMPLAIN IS IMPROPER.

Plaintiff attempts to remedy the deficient allegations in his Amended Complaint through new assertions in the Opposition itself or his accompanying personal declaration.  This eleventh-hour tactic is improper.  "It is axiomatic that a complaint may not be amended by the briefs in opposition to a motion to dismiss."  *Arbitraje Casa de Cambio, S.A. de C.V. v. U.S. Postal Serv.*, 297 F. Supp. 2d 165, 170 (D.D.C. 2003) (internal quotation marks and citations omitted); *Middlebrooks v. Godwin Corp.*, 722 F. Supp. 2d 82, 87 n.4 (D.D.C. 2010), *aff'd,* 424 F. App'x 10 (D.C. Cir. 2011) ("plaintiff may not amend [its] complaint by the briefs in opposition to a motion to dismiss") (citing cases); *Coll. Sports Council v. GAO*, 421 F. Supp. 2d 59, 71 n.16 (D.D.C. 2006) ("the plaintiff cannot amend its complaint *de facto* to survive a motion to dismiss by asserting new claims for relief in its responsive pleadings") (citation omitted).  In fact, the attempt to introduce these improper new "allegations" is an implicit concession that the Amended Complaint is fatally deficient.

---

[13] The one-year statute of limitations has passed on a defamation claim because the Vidino Report was publicized in August 2017.  *See Mullin v. Wash. Free Weekly, Inc.*, 785 A.2d 296, 298 (D.C. 2001) ("Defamation occurs on publication, and the statute of limitations runs from the date of publication.") (internal quotation marks and citation omitted).  Plaintiff cannot use the *prima facie* tort (not recognized in the District) to circumvent the otherwise applicable statute of limitations for defamation.

Moreover, Plaintiff's declaration improperly speculates on matters as to which he has no personal knowledge. *See*, *e.g.*, Hafez Decl. ¶¶ 26-27 (speculating without foundation as to interactions between the European Defendants and Defendant Vidino). "An affidavit based merely on information and belief is unacceptable," *Londrigan v. FBI*, 670 F.2d 1164, 1174 (D.C. Cir. 1981), and courts have refused to rely on declarations not based on personal knowledge. *Beydoun v. Wataniya Rest. Holding, Q.S.C.*, 768 F.3d 499, 506 (6th Cir. 2014).

This Court should reject Plaintiff's back-door attempt to amend his allegations. Regardless, for reasons stated above, even with these improper additions, the Amended Complaint cannot state adequately a plausible claim for relief.

## IV.    PLAINTIFF'S CLASS ACTION ALLEGATIONS SHOULD BE DISMISSED OR STRICKEN.

Plaintiff contends that it is premature to dismiss his class action allegations. Opp. 42. While courts generally require discovery prior to addressing the merits of a class allegation claim, it is evident on the face of Plaintiff's claims that individualized inquiries will be necessary. On that ground alone, his class action demand should be stricken. *See Artis v. Yellen*, 307 F.R.D. 13, 24 (D.D.C. 2014). In any event, if any of Plaintiff's claims survive (which they should not), the European Defendants will respond appropriately to Plaintiff's class action claims.

## CONCLUSION

This Court should dismiss the Amended Complaint against the European Defendants with prejudice.

Dated:  February 10, 2025

By:    */s/ Igor V. Timofeyev*

Igor V. Timofeyev (D.C. Bar No. 998291)
Vanessa Omoroghomwan (D.C. Bar No. 1644765)
PAUL HASTINGS LLP
2050 M Street NW
Washington, DC 20036
Telephone: (202) 551-1700
igortimofeyev@paulhastings.com
vanessaomoroghomwan@paulhastings.com

Adam Fee (*pro hac vice*)
PAUL HASTINGS LLP
1999 Avenue of The Stars, 27th Floor
Los Angeles, California 90067
Telephone: (310) 620-5700
adamfee@paulhastings.com

D. Scott Carlton (*pro hac vice*)
PAUL HASTINGS LLP
515 South Flower Street, 25th Floor
Los Angeles, California 90071
Telephone: (212) 683-6000
scottcarlton@paulhastings.com

*Attorneys for Defendants ALP Services SA,*
*Diligence SARL, Mario Brero, Lionel Badal, and*
*Muriel Cavin*