APPEAL,CLOSED,JURY,TYPE–E

# U.S. District Court
## District of Columbia (Washington, DC)
## CIVIL DOCKET FOR CASE #: <u>1:24–cv–00873–AHA</u>
### *Internal Use Only*

HAFEZ v. VIDINO et al

Assigned to: Judge Amir H. Ali

Demand: $10,000,000

Cause: 18:1961 Racketeering (RICO) Act

Date Filed: 03/27/2024

Date Terminated: 10/03/2025

Jury Demand: Plaintiff

Nature of Suit: 470 Racketeer/Corrupt Organization

Jurisdiction: Federal Question

**<u>Plaintiff</u>**

**FARID HAFEZ**
*Dr., Individually and On Behalf of All Others Similarly Situated*

represented by **Arthur L. Aidala**
Aidala, Bertuna & Kamins, P.C.
546 Fifth Avenue
6th Floor
New York, NY 10036
(212) 486–0011
Email: aidalaesq@aidalalaw.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Imran H. Ansari**
AIDALA BERTUNA & KAMINS PC
546 Fifth Avenue
Sute 6th Floor
New York, NY 10036
(212) 486–0011
Fax: (212) 750–8297
Email: iansari@aidalalaw.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**David M. Schwartz**
DAVID M. SCHWARTZ, ESQ.
546 Fifth Avenue
6th FL
New York, NY 10036
212–641–0499
Email: david@davidschwartzesq.com
*ATTORNEY TO BE NOTICED*

V.

**<u>Defendant</u>**

1

**LORENZO VIDINO**
*Dr., individually and in his respective corporate capacities*

represented by **Jacob T. Spencer**
GIBSON, DUNN & CRUTCHER LLP
1700 M Street, N.W.
Washington, DC 20036–4504
617–921–2105
Email: jspencer@gibsondunn.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Matthew D. McGill**
KING & SPALDING LLP
1700 Pennsylvania Avenue, NW
Suite 900
Washington D.C., DC 20006
202–737–0500
Email: matthew.mcgill@kslaw.com
*TERMINATED: 09/19/2025*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jeffrey Liu**
GIBSON, DUNN & CRUTCHER LLP
1700 M Street, N.W.
Washington, DC 20036–4504
202–955–8285
Email: jyliu@gibsondunn.com
*ATTORNEY TO BE NOTICED*

**Mark Christian Talley**
GIBSON DUNN & CRUTCHER
1700 M Street, N.W.
Washington, DC 20036
202–809–3016
Email: ctalley@gibsondunn.com
*ATTORNEY TO BE NOTICED*

**Defendant**

**GEORGE WASHINGTON UNIVERSITY**

represented by **Scott L. Winkelman**
CROWELL & MORING LLP
1001 Pennsylvania Ave NW
Washington, DC 20004
202–624–2972
Fax: 202–628–5116
Email: swinkelman@crowell.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Tracy Ann Roman**
CROWELL & MORING, L.L.P.
1001 Pennsylvania Avenue NW
1001 Pennsylvania Avenue, NW
12th Floor

2

Washington, DC 20004–2595
202–624–2500
Email: troman@crowell.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Rachael Padgett**
CROWELL & MORING LLP
1001 Pennsylvania Ave NW
Washington, DC 20004
202–688–3441
Email: rpadgett@crowell.com
*ATTORNEY TO BE NOTICED*

**Defendant**

| | | |
|---|---|---|
| **PROGRAM FOR EXTREMISM AT THE GEORGE WASHINGTON UNIVERSITY** | represented by | **Tracy Ann Roman** |

**Tracy Ann Roman**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Rachael Padgett**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Scott L. Winkelman**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

| | | |
|---|---|---|
| **ALP SERVICES SA** | represented by | **Igor V. Timofeyev** |

**Igor V. Timofeyev**
PAUL HASTINGS LLP
2050 M Street NW
Washington, DC 20036
202–551–1792
Fax: 202–551–0192
Email: igortimofeyev@paulhastings.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Adam Fee**
WEIL, GOTSHAL & MANGES LLP
1999 Avenue of the Stars
Los Angeles, CA 90067
213–667–5125
Email: Adam.fee@weil.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Daniel Scott Carlton**
PAUL HASTINGS LLP
515 S. Flower Street

3

25th Floor
Los Angeles, CA 90071
213–683–6113
Email: scottcarlton@paulhastings.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Vanessa O. Omoroghomwan**
PAUL HASTINGS LLP
2050 M Street NW
Washington, DC 20036
202–551–1932
Email: vanessaomoroghomwan@paulhastings.com
*ATTORNEY TO BE NOTICED*

**Defendant**

**DILIGENCE SARL**                    represented by     **Igor V. Timofeyev**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Adam Fee**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Daniel Scott Carlton**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Vanessa O. Omoroghomwan**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**MARIO BRERO**                    represented by     **Igor V. Timofeyev**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Adam Fee**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Daniel Scott Carlton**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

Vanessa O. Omoroghomwan
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**MURIEL CAVIN**                    represented by    **Igor V. Timofeyev**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Adam Fee**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Daniel Scott Carlton**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Vanessa O. Omoroghomwan**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**LIONEL BADAL**                    represented by    **Igor V. Timofeyev**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Adam Fee**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Daniel Scott Carlton**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Vanessa O. Omoroghomwan**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**ARIAF STUDIES AND RESEARCH
LLC**

**Defendant**

**JOHN DOE**
*Nos. 1–25*

| Date Filed | # | Docket Text |
|---|---|---|
| 03/27/2024 | 1 | COMPLAINT against All Defendants with Jury Demand ( Filing fee $ 405 receipt number ADCDC–10783258) filed by FARID HAFEZ. (Attachments: # 1 Civil Cover Sheet, # 2 Summons, # 3 Summons, # 4 Summons, # 5 Summons, # 6 Summons, # 7 Summons, # 8 Summons, # 9 Summons, # 10 Summons)(Schwartz, David) Modified defendant on 3/28/2024 (znmw). (Entered: 03/27/2024) |
| 03/27/2024 | 2 | NOTICE of Appearance by David M. Schwartz on behalf of FARID HAFEZ (Schwartz, David) (Entered: 03/27/2024) |
| 03/27/2024 | | NOTICE OF NEW CASE ERROR regarding 1 Complaint,. The following error(s) need correction: Noncompliance with LCvR 5.1(c). Please file a Notice of Errata stating the error and attach the corrected initiating pleading to include the name & full residence address of each party and file using the event Errata. Incorrect civil cover sheet. Please file the Civil Cover Sheet (JS44) form at www.dcd.uscourts.gov/new–case–forms & file using the event Civil Cover Sheet. **COMPLIANCE DEADLINE is by close of business today. This case will not proceed any further until all errors are satisfied.** (znmw) (Entered: 03/27/2024) |
| 03/27/2024 | 3 | ERRATA by FARID HAFEZ re Notice of Error– New Case,,. (Attachments: # 1 Corrected Complaint, # 2 Civil Cover Sheet)(Schwartz, David) (Entered: 03/27/2024) |
| 03/28/2024 | | Case Assigned to Judge Amy Berman Jackson. (znmw) (Entered: 03/28/2024) |
| 03/28/2024 | 4 | SUMMONS (9) Issued Electronically as to All Defendants. (Attachments: # 1 Notice and Consent)(znmw) (Entered: 03/28/2024) |
| 04/16/2024 | 5 | AMENDED COMPLAINT against All Defendants with Jury Demand filed by FARID HAFEZ. (Attachments: # 1 Civil Cover Sheet, # 2 Summons, # 3 Summons, # 4 Summons, # 5 Summons, # 6 Summons, # 7 Summons, # 8 Summons, # 9 Summons, # 10 Summons)(Schwartz, David) (Entered: 04/16/2024) |
| 04/17/2024 | 6 | SUMMONS (9) Issued Electronically as to ALP SERVICES SA, ARIAF STUDIES AND RESEARCH LLC, LIONEL BADAL, MARIO BRERO, MURIEL CAVIN, DILIGENCE SARL, GEORGE WASHINGTON UNIVERSITY, PROGRAM FOR EXTREMISM AT THE GEORGE WASHINGTON UNIVERSITY, LORENZO VIDINO. (Attachments: # 1 Notice and Consent)(zdp) (Entered: 04/17/2024) |
| 06/28/2024 | 7 | ADMINISTRATIVE RECORD– Social Security by FARID HAFEZ. (Schwartz, David) (Entered: 06/28/2024) |
| 06/28/2024 | 8 | CERTIFICATE OF SERVICE by FARID HAFEZ re 7 Administrative Record– Social Security, 6 Summons Issued Electronically, 5 Amended Complaint, . (Schwartz, David) (Entered: 06/28/2024) |
| 06/28/2024 | 9 | CERTIFICATE OF SERVICE by FARID HAFEZ re 7 Administrative Record– Social Security, 8 Certificate of Service, 5 Amended Complaint, . (Schwartz, David) (Entered: 06/28/2024) |
| 06/28/2024 | 10 | NOTICE of Appearance by Tracy Ann Roman on behalf of PROGRAM FOR EXTREMISM AT THE GEORGE WASHINGTON UNIVERSITY (Roman, Tracy) |

| | | |
|---|---|---|
| | | (Entered: 06/28/2024) |
| 06/28/2024 | 11 | MOTION for Extension of Time to File Answer *to Amended Complaint* by PROGRAM FOR EXTREMISM AT THE GEORGE WASHINGTON UNIVERSITY. (Attachments: # 1 Text of Proposed Order)(Roman, Tracy) (Entered: 06/28/2024) |
| 06/28/2024 | 12 | NOTICE of Appearance by Scott L. Winkelman on behalf of PROGRAM FOR EXTREMISM AT THE GEORGE WASHINGTON UNIVERSITY (Winkelman, Scott) (Entered: 06/28/2024) |
| 07/01/2024 | | MINUTE ORDER granting 11 Motion for Extension of Time to Answer. Defendant the Program for Extremism at the George Washington University must respond to the amended complaint by July 12, 2024. SO ORDERED.Signed by Judge Amy Berman Jackson on 7/1/2024. (lcabj1) (Entered: 07/01/2024) |
| 07/12/2024 | 13 | NOTICE of Appearance by Tracy Ann Roman on behalf of GEORGE WASHINGTON UNIVERSITY (Roman, Tracy) (Entered: 07/12/2024) |
| 07/12/2024 | 14 | NOTICE of Appearance by Scott L. Winkelman on behalf of GEORGE WASHINGTON UNIVERSITY (Winkelman, Scott) (Entered: 07/12/2024) |
| 07/12/2024 | 15 | STIPULATION *and Agreement to Briefing Schedule* by GEORGE WASHINGTON UNIVERSITY, PROGRAM FOR EXTREMISM AT THE GEORGE WASHINGTON UNIVERSITY. (Roman, Tracy) (Entered: 07/12/2024) |
| 07/17/2024 | | MINUTE ORDER. It is ORDERED that the following schedule will apply: defendants George Washington University and the Program for Extremism at the George Washington University must answer or otherwise respond to the complaint by September 9, 2024; plaintiff's opposition to any motion to dismiss filed by defendants will be due by October 24, 2024; and any reply brief from defendants must be filed by November 14, 2024. SO ORDERED.Signed by Judge Amy Berman Jackson on 7/17/2024. (lcabj1) (Entered: 07/17/2024) |
| 07/23/2024 | 16 | STIPULATION *For Time to Respond* by FARID HAFEZ. (Schwartz, David) (Entered: 07/23/2024) |
| 07/23/2024 | 17 | NOTICE of Appearance by Matthew D. McGill on behalf of LORENZO VIDINO (McGill, Matthew) (Entered: 07/23/2024) |
| 07/23/2024 | 18 | NOTICE of Appearance by Jeffrey Liu on behalf of LORENZO VIDINO (Liu, Jeffrey) (Entered: 07/23/2024) |
| 07/23/2024 | 19 | NOTICE of Appearance by Mark Christian Talley on behalf of LORENZO VIDINO (Talley, Mark) (Entered: 07/23/2024) |
| 07/30/2024 | | MINUTE ORDER. It is ORDERED that the following schedule will apply: defendant Vidino must answer or otherwise respond to the 5 amended complaint by September 9, 2024; plaintiff's opposition to any motion to dismiss filed by defendant will be due by October 24, 2024; and any reply brief from defendant must be filed by November 14, 2024. SO ORDERED. Signed by Judge Amy Berman Jackson on 7/30/2024. (lcabj2) (Entered: 07/30/2024) |
| 07/30/2024 | 20 | NOTICE of Appearance by Igor V. Timofeyev on behalf of ALP SERVICES SA, LIONEL BADAL, MARIO BRERO, MURIEL CAVIN, DILIGENCE SARL (Timofeyev, Igor) (Entered: 07/30/2024) |
| 07/30/2024 | 21 | |

| | | |
|---|---|---|
| | | STIPULATION *Regarding Briefing Schedule* by ALP SERVICES SA, LIONEL BADAL, MARIO BRERO, MURIEL CAVIN, DILIGENCE SARL. (Timofeyev, Igor) (Entered: 07/30/2024) |
| 07/31/2024 | | MINUTE ORDER. It is ORDERED that the following schedule will apply: defendants Alp Services SA, Diligence SARL, Mario Brero, Muriel Cavin, and Lionel Badal must answer or otherwise respond to the 5 amended complaint by October 18, 2024; plaintiff's opposition to any motion to dismiss filed by defendants will be due by December 13, 2024; and any reply brief from defendants must be filed by January 10, 2025. The parties are reminded that pursuant to Fed. R. of Civ. Proc. 7(b)(1), "[a] request for a court order must be made by motion," not by stipulation. SO ORDERED. Signed by Judge Amy Berman Jackson on 7/31/2024. (lcabj2) (Entered: 07/31/2024) |
| 08/01/2024 | | MINUTE ORDER. It is ORDERED that the following schedule will apply: defendants George Washington University, Program for Extremism at the George Washington University, and Vidino must answer or otherwise respond to the 5 amended complaint by October 18, 2024; plaintiff's opposition to any motion to dismiss filed by defendants will be due by December 13, 2024; and any reply brief from defendants must be filed by January 10, 2025. SO ORDERED. Signed by Judge Amy Berman Jackson on 8/1/2024. (lcabj2) (Entered: 08/01/2024) |
| 08/06/2024 | 22 | MOTION for Leave to Appear Pro Hac Vice :Attorney Name– Adam J. Fee, Filing fee $ 100, receipt number ADCDC–11074420. Fee Status: Fee Paid. by ALP SERVICES SA, LIONEL BADAL, MARIO BRERO, MURIEL CAVIN, DILIGENCE SARL. (Attachments: # 1 Declaration, # 2 Certificate of Good Standing, # 3 Text of Proposed Order)(Timofeyev, Igor) (Entered: 08/06/2024) |
| 08/06/2024 | 23 | MOTION for Leave to Appear Pro Hac Vice :Attorney Name– D. Scott Carlton, Filing fee $ 100, receipt number ADCDC–11074574. Fee Status: Fee Paid. by ALP SERVICES SA, LIONEL BADAL, MARIO BRERO, MURIEL CAVIN, DILIGENCE SARL. (Attachments: # 1 Declaration, # 2 Certificate of Good Standing, # 3 Text of Proposed Order)(Timofeyev, Igor) (Entered: 08/06/2024) |
| 08/12/2024 | | MINUTE ORDER granting 22 23 Motions for Leave of Adam J. Fee and D. Scott Carlton to Appear Pro Hac Vice only upon condition that the lawyers admitted, or at least one member of the lawyers' firm, undergo CM/ECF training, obtain a CM/ECF username and password, and agree to file papers electronically. No court papers will be mailed to any lawyer. **Counsel should register for e–filing via PACER and file a notice of appearance pursuant to LCvR 83.6(a)** Click for instructions. Signed by Judge Amy Berman Jackson on 8/12/24. (DMK) (Entered: 08/12/2024) |
| 09/18/2024 | 24 | NOTICE of Change of Address by Matthew D. McGill (McGill, Matthew) (Entered: 09/18/2024) |
| 09/18/2024 | 25 | NOTICE of Change of Address by Jeffrey Liu (Liu, Jeffrey) (Entered: 09/18/2024) |
| 09/18/2024 | 26 | NOTICE of Change of Address by Mark Christian Talley (Talley, Mark) (Entered: 09/18/2024) |
| 10/15/2024 | 27 | NOTICE of Appearance by Rachael Padgett on behalf of GEORGE WASHINGTON UNIVERSITY, PROGRAM FOR EXTREMISM AT THE GEORGE WASHINGTON UNIVERSITY (Padgett, Rachael) (Main Document 27 replaced on 10/15/2024) (zdp). (Entered: 10/15/2024) |
| 10/18/2024 | 28 | |

|  |  | MOTION to Dismiss *Amended Complaint* by LORENZO VIDINO. (Attachments: # 1 Memorandum in Support, # 2 Proposed Order)(McGill, Matthew) (Entered: 10/18/2024) |
|---|---|---|
| 10/18/2024 | 29 | MOTION to Dismiss for Lack of Jurisdiction *and Failure to State a Claim* by ALP SERVICES SA, LIONEL BADAL, MARIO BRERO, MURIEL CAVIN, DILIGENCE SARL. (Attachments: # 1 Memorandum in Support, # 2 Declaration of Mario Brero, # 3 Text of Proposed Order)(Timofeyev, Igor) (Entered: 10/18/2024) |
| 10/18/2024 | 30 | MOTION to Dismiss *for Failure to State a Claim* BY GEORGE WASHINGTON UNIVERSITY, PROGRAM FOR EXTREMISM AT THE GEORGE WASHINGTON UNIVERSITY. (Attachments: # 1 Memorandum in Support, # 2 Text of Proposed Order)(Roman, Tracy) (Entered: 10/18/2024) |
| 10/18/2024 | 31 | LCvR 26.1 CERTIFICATE OF DISCLOSURE of Corporate Affiliations and Financial Interests by GEORGE WASHINGTON UNIVERSITY, PROGRAM FOR EXTREMISM AT THE GEORGE WASHINGTON UNIVERSITY (Roman, Tracy) (Entered: 10/18/2024) |
| 10/20/2024 | 32 | NOTICE of Appearance by Adam Fee on behalf of ALP SERVICES SA, LIONEL BADAL, MARIO BRERO, MURIEL CAVIN, DILIGENCE SARL (Fee, Adam) (Entered: 10/20/2024) |
| 10/20/2024 | 33 | NOTICE of Appearance by Daniel Scott Carlton on behalf of ALP SERVICES SA, LIONEL BADAL, MARIO BRERO, MURIEL CAVIN, DILIGENCE SARL (Carlton, Daniel) (Entered: 10/20/2024) |
| 10/21/2024 | 34 | NOTICE of Appearance by Vanessa O. Omoroghomwan on behalf of ALP SERVICES SA, LIONEL BADAL, MARIO BRERO, MURIEL CAVIN, DILIGENCE SARL (Omoroghomwan, Vanessa) (Entered: 10/21/2024) |
| 11/19/2024 | 35 | Joint MOTION for Order by FARID HAFEZ. (Attachments: # 1 Text of Proposed Order)(Schwartz, David). Added MOTION for Extension of Time to File Response/Reply on 11/20/2024 (zdp). (Entered: 11/19/2024) |
| 11/20/2024 |  | MINUTE ORDER granting 35 Motion for Extension of Time to File Response/Reply. It is ORDERED that plaintiff must respond to the motions to dismiss by January 13, 2025. Defendants' replies will be due February 10, 2025. SO ORDERED. Signed by Judge Amy Berman Jackson on 11/20/2024. (lcabj2) (Entered: 11/20/2024) |
| 11/27/2024 |  | Case directly reassigned to Judge Amir H. Ali. Judge Amy Berman Jackson is no longer assigned to the case. (ztnr) (Entered: 11/27/2024) |
| 01/13/2025 | 36 | Memorandum in opposition to re 28 Motion to Dismiss filed by FARID HAFEZ. (Attachments: # 1 Declaration David M. Schwartz's Declaration, # 2 Declaration Dr. Farid Hafez's Declaration, # 3 Exhibit A, # 4 Exhibit B, # 5 Exhibit C, # 6 Exhibit D, # 7 Exhibit E, # 8 Exhibit F, # 9 Exhibit G, # 10 Exhibit H, # 11 Exhibit I, # 12 Declaration Aaron Rock–Singer's Declaration, # 13 Appendix A, # 14 Appendix B, # 15 Appendix C, # 16 Appendix D, # 17 Appendix E, # 18 Appendix F, # 19 Appendix G, # 20 Text of Proposed Order)(Schwartz, David) (Entered: 01/13/2025) |
| 01/13/2025 | 37 | Memorandum in opposition to re 29 Motion to Dismiss/Lack of Jurisdiction, filed by FARID HAFEZ. (Attachments: # 1 Declaration David M. Schwartz's Declaration, # 2 Declaration Dr. Farid Hafez's Declaration, # 3 Exhibit A, # 4 Exhibit B, # 5 Exhibit C, # 6 Exhibit D, # 7 Exhibit E, # 8 Exhibit F, # 9 Exhibit G, # 10 Exhibit H, # 11 Exhibit I, # 12 Declaration Aaron Rock–Singer's Declaration, # 13 Appendix A, # 14 |

| | | |
|---|---|---|
| | | Appendix B, # <u>15</u> Appendix C, # <u>16</u> Appendix D, # <u>17</u> Appendix E, # <u>18</u> Appendix F, # <u>19</u> Appendix G, # <u>20</u> Text of Proposed Order)(Schwartz, David) (Entered: 01/13/2025) |
| 01/13/2025 | <u>38</u> | Memorandum in opposition to re <u>30</u> Motion to Dismiss filed by FARID HAFEZ. (Attachments: # <u>1</u> Declaration David M. Schwartz's Declaration, # <u>2</u> Declaration Dr. Farid Hafez's Declaration, # <u>3</u> Exhibit A, # <u>4</u> Exhibit B, # <u>5</u> Exhibit C, # <u>6</u> Exhibit D, # <u>7</u> Exhibit E, # <u>8</u> Exhibit F, # <u>9</u> Exhibit G, # <u>10</u> Exhibit H, # <u>11</u> Exhibit I, # <u>12</u> Declaration Aaron Rock–Singer's Declaration, # <u>13</u> Appendix A, # <u>14</u> Appendix B, # <u>15</u> Appendix C, # <u>16</u> Appendix D, # <u>17</u> Appendix E, # <u>18</u> Appendix F, # <u>19</u> Appendix G, # <u>20</u> Text of Proposed Order)(Schwartz, David) (Entered: 01/13/2025) |
| 01/27/2025 | <u>39</u> | MOTION for Leave to Appear Pro Hac Vice :Attorney Name– Arthur L. Aidala, Filing fee $ 100, receipt number ADCDC–11435887. Fee Status: Fee Paid. by FARID HAFEZ. (Attachments: # <u>1</u> Declaration Declaration in Support of Motion, # <u>2</u> Certificate of Service, # <u>3</u> Text of Proposed Order)(Schwartz, David) (Entered: 01/27/2025) |
| 01/27/2025 | <u>40</u> | MOTION for Leave to Appear Pro Hac Vice :Attorney Name– Imran H. Ansari, Filing fee $ 100, receipt number ADCDC–11435923. Fee Status: Fee Paid. by FARID HAFEZ. (Attachments: # <u>1</u> Declaration Declaration in Support of Motion, # <u>2</u> Certificate of Service, # <u>3</u> Text of Proposed Order)(Schwartz, David) (Entered: 01/27/2025) |
| 01/27/2025 | <u>41</u> | SEALED MOTION FOR LEAVE TO FILE DOCUMENT UNDER SEAL filed by FARID HAFEZ (This document is SEALED and only available to authorized persons.) (Attachments: # <u>1</u> Memorandum in Support, # <u>2</u> Exhibit A, # <u>3</u> Exhibit B, # <u>4</u> Exhibit C, # <u>5</u> Exhibit D, # <u>6</u> Exhibit E, # <u>7</u> Exhibit F, # <u>8</u> Text of Proposed Order)(Schwartz, David) (Attachment 5 replaced on 10/8/2025) (znmw). (Attachment 6 replaced on 10/8/2025) (znmw). (Attachment 7 replaced on 10/8/2025) (znmw). (Entered: 01/27/2025) |
| 01/28/2025 | | NOTICE OF ERROR regarding <u>39</u> MOTION for Leave to Appear Pro Hac Vice :Attorney Name– Arthur L. Aidala, Filing fee $ 100, receipt number ADCDC–11435887. Fee Status: Fee Paid., <u>40</u> MOTION for Leave to Appear Pro Hac Vice :Attorney Name– Imran H. Ansari, Filing fee $ 100, receipt number ADCDC–11435923. Fee Status: Fee Paid.. The following error(s) need correction: Pro Hac Vice motion must be accompanied by a Certificate of Good Standing issued within the last 30 days (LCvR 83.2(c)(2)). Please file certificate as an Errata. Declaration must have an original, ink signature. Please refile using the event Declaration. (mg) (Entered: 01/28/2025) |
| 01/28/2025 | <u>42</u> | ERRATA by FARID HAFEZ re <u>39</u> Motion for Leave to Appear Pro Hac Vice,. (Attachments: # <u>1</u> Declaration Declaration of A. Aidala in Support of Motion to Appear Pro Hac Vice)(Schwartz, David) (Entered: 01/28/2025) |
| 01/28/2025 | <u>43</u> | ERRATA by FARID HAFEZ re <u>40</u> Motion for Leave to Appear Pro Hac Vice,. (Attachments: # <u>1</u> Declaration Declaration of I. Ansari in Support of Motion to Appear Pro Hac Vice)(Schwartz, David) (Entered: 01/28/2025) |
| 01/29/2025 | | MINUTE ORDER granting <u>39</u> Motion for Leave to Appear Pro Hac Vice. Attorney Arthur L. Aidala is hereby admitted pro hac vice to appear in this matter. **Counsel should register for e–filing via PACER and file a notice of appearance pursuant to LCvR 83.6(a)** <u>Click for instructions</u>. Signed by Judge Amir H. Ali on 1/29/2025. (lcaha1) (Entered: 01/29/2025) |

| 01/29/2025 | | MINUTE ORDER granting 40 Motion for Leave to Appear Pro Hac Vice. Attorney Imran H. Ansari is hereby admitted pro hac vice to appear in this matter. **Counsel should register for e–filing via PACER and file a notice of appearance pursuant to LCvR 83.6(a)** Click for instructions. Signed by Judge Amir H. Ali on 1/29/2025. (lcaha1) (Entered: 01/29/2025) |
| 01/30/2025 | 44 | ENTERED IN ERROR.....NOTICE of Appearance by David M. Schwartz on behalf of FARID HAFEZ (Schwartz, David) Modified on 1/30/2025 (mg). (Entered: 01/30/2025) |
| 01/30/2025 | 45 | ENTERED IN ERROR.....NOTICE of Appearance by David M. Schwartz on behalf of FARID HAFEZ (Schwartz, David) Modified on 1/30/2025 (mg). (Entered: 01/30/2025) |
| 01/30/2025 | | NOTICE OF ERROR regarding 44 Notice of Appearance, 45 Notice of Appearance. The following error(s) need correction: Signature on document must match PACER login. Please refile. (mg) (Entered: 01/30/2025) |
| 01/30/2025 | 46 | NOTICE of Appearance by Arthur L. Aidala on behalf of All Plaintiffs (Aidala, Arthur) (Entered: 01/30/2025) |
| 01/30/2025 | 47 | NOTICE of Appearance by Imran H. Ansari on behalf of All Plaintiffs (Ansari, Imran) (Entered: 01/30/2025) |
| 02/04/2025 | 48 | STANDING ORDER. The parties are ordered to comply with the directives set forth in the attached standing order. See document for details. This order supersedes any prior standing order applicable to this case and governs this case going forward. The parties need not refile any previously filed pleading or document with the Court based on the issuance of this standing order. Signed by Judge Amir H. Ali on 2/4/2025. (lcaha1) (Entered: 02/04/2025) |
| 02/10/2025 | 49 | REPLY to opposition to motion re 28 Motion to Dismiss filed by LORENZO VIDINO. (McGill, Matthew) (Entered: 02/10/2025) |
| 02/10/2025 | 50 | REPLY to opposition to motion re 30 Motion to Dismiss filed by GEORGE WASHINGTON UNIVERSITY, PROGRAM FOR EXTREMISM AT THE GEORGE WASHINGTON UNIVERSITY. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2)(Roman, Tracy) (Entered: 02/10/2025) |
| 02/10/2025 | 51 | REPLY to opposition to motion re 29 Motion to Dismiss/Lack of Jurisdiction, filed by ALP SERVICES SA, DILIGENCE SARL, MARIO BRERO, MURIEL CAVIN, LIONEL BADAL. (Timofeyev, Igor) (Entered: 02/10/2025) |
| 04/18/2025 | 52 | NOTICE OF SUPPLEMENTAL AUTHORITY by ALP SERVICES SA, LIONEL BADAL, MARIO BRERO, MURIEL CAVIN, DILIGENCE SARL, GEORGE WASHINGTON UNIVERSITY, PROGRAM FOR EXTREMISM AT THE GEORGE WASHINGTON UNIVERSITY, LORENZO VIDINO (Attachments: # 1 Exhibit A)(McGill, Matthew) (Entered: 04/18/2025) |
| 09/12/2025 | 53 | NOTICE of Appearance by Jacob T. Spencer on behalf of LORENZO VIDINO (Spencer, Jacob) (Main Document 53 replaced on 9/16/2025) (mg). (Entered: 09/12/2025) |
| 09/19/2025 | 54 | NOTICE OF WITHDRAWAL OF APPEARANCE as to LORENZO VIDINO. Attorney Matthew D. McGill terminated. (McGill, Matthew) (Entered: 09/19/2025) |

| 09/30/2025 | | MINUTE ORDER. Plaintiff has filed a 41 motion for leave to place Exhibit A, Appendix E, and Appendix F under seal and replace them with redacted copies. The motion is granted. The Court accepts ECF No. 41–5 as a replacement for the documents filed at ECF Nos. 36–3, 37–3, and 38–3; accepts ECF No. 41–6 as a replacement for the documents filed at ECF Nos. 36–17, 37–17, and 38–17; and accepts ECF No. 41–7 as a replacement for the documents filed at ECF Nos. 36–18, 37–18, and 38–18. The Clerk of Court is directed to unseal ECF Nos. 41–5, 41–6, and 41–7. The Clerk of Court shall maintain under seal ECF Nos. 36–3, 36–17, 36–18, 37–3, 37–17, 37–18, 38–3, 38–17, and 38–18. Signed by Judge Amir H. Ali on 9/30/2025. (lcaha2) (Entered: 09/30/2025) |
|---|---|---|
| 09/30/2025 | 55 | MEMORANDUM OPINION. Defendants' 28 29 30 motions to dismiss are granted. See document for details. Signed by Judge Amir H. Ali on 9/30/2025. (lcaha1) (Entered: 09/30/2025) |
| 09/30/2025 | 56 | ORDER. For the reasons stated in the accompanying memorandum opinion, Defendants' 28 29 30 motions to dismiss are granted and this action is dismissed without prejudice. The Clerk of Court is directed to close the case. Signed by Judge Amir H. Ali on 9/30/2025. (lcaha1) (Entered: 09/30/2025) |
| 10/29/2025 | 57 | NOTICE OF APPEAL TO DC CIRCUIT COURT as to 56 Order on Motion to Dismiss,, Order on Motion to Dismiss/Lack of Jurisdiction,,, 55 Memorandum & Opinion by FARID HAFEZ. Filing fee $ 605, receipt number ADCDC–12051259. Fee Status: Fee Paid. Parties have been notified. (Schwartz, David) (Entered: 10/29/2025) |

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| FARID HAFEZ, individually and on behalf of all others similarly situated, | |
| *Plaintiff*, | Civil Action No. 1:24-cv-00873-AHA |
| v. | |
| LORENZO VIDINO, individually and in his respective corporate capacities, GEORGE WASHINGTON UNIVERSITY, PROGRAM FOR EXTREMISM AT THE GEORGE WASHINGTON UNIVERSITY, ALP SERVICES SA, DILIGENCE SARL, MARIO BRERO, MURIEL CAVIN, LIONEL BADAL, ARIAF STUDIES AND RESEARCH LLC, and DOES 1 through 25, | |
| *Defendants*. | |

## NOTICE OF APPEAL

Notice is hereby given this 29th day of October, 2025, that Plaintiff, FAIRD HAFEZ ("Plaintiff"), hereby appeals to the United States Court of Appeals for the District of Columbia Circuit from the Order of this Court entered on the 30th day of September, 2025 in favor of Defendants LORENZO VIDINO, GEORGE WASHINGTON UNIVERSITY, PROGRAM FOR EXTREMISM AT THE GEORGE WASHIGNTON UNIVERSITY, ALP SERVICES SA, DILIGENCE SARL, MARIO BRERO, MURIEL CAVIN, LIONEL BADAL ("Moving Defendants"), against said Plaintiff and granting Moving Defendants' respective motions to dismiss.

1

Dated: October 29, 2025                    Respectfully submitted,

                                           /s/ David M. Schwartz
                                           David M. Schwartz (DC #208813)
                                           AIDALA, BERTUNA & KAMINS, P.C.
                                           546 Fifth Avenue
                                           New York, NY 10036
                                           Telephone: (212) 641-0499
                                           Fax: (917) 261-4832
                                           dschwartz@aidalalaw.com

                                           *Counsel for Plaintiff Farid Hafez*

**CLERK** Please mail copies of the above Notice of Appeal to the following at the addresses indicated:

dschwartz@aidalalaw.com; iansari@aidalalaw.com; aidalaesq@aidalalaw.com; jspencer@gibsondunn.com; jyliu@gibsondunn.com; ctalley@gibsondunn.com; swinkelman@crowell.com; troman@crowell.com; rpadgett@crowell.com; igortimofeyev@paulhastings.com; adam.fee@weil.com; scottcarlton@paulhastings.com; vanessaomoroghomwan@paulhastings.com.

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| |
|---|
| FARID HAFEZ,<br>individually and on behalf of all others<br>similarly situated,<br><br>       *Plaintiff*,<br><br>  v.<br><br>LORENZO VIDINO, *et al.*,<br><br>       *Defendants*. |

Civil Action No. 24-873 (AHA)

## <u>Order</u>

For the reasons stated in the accompanying memorandum opinion, Defendants' motions to dismiss, ECF Nos. 28, 29, and 30, are granted and this action is dismissed without prejudice. The Clerk of Court is directed to close the case.

_____
AMIR H. ALI
United States District Judge

Date:   September 30, 2025

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

FARID HAFEZ,
individually and on behalf of all others
similarly situated,

        *Plaintiff*,

     v.

LORENZO VIDINO, *et al.*,

        *Defendants*.

Civil Action No. 24-00873 (AHA)

<u>**Memorandum Opinion**</u>

    Dr. Farid Hafez sues Dr. Lorenzo Vidino, George Washington University ("GWU"), Swiss companies Alp Services SA and Diligence SARL, and people associated with those companies, alleging violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO") and state law. The defendants all move to dismiss the amended complaint for failure to state a claim, and the foreign defendants move to dismiss the claims against them for lack of personal jurisdiction. The Court grants the motions to dismiss.

**I.    Background[1]**

    According to the amended complaint, Hafez was a Senior Researcher at the University of Salzburg from 2014 to 2021, later relocating to the United States and working as a visiting scholar at Williams College. ECF No. 5 ¶ 15. Hafez's main areas of study include politics and religion,

---

[1]    As required on a motion to dismiss for failure to state a claim, the Court accepts the amended complaint's well-pled allegations as true and draws all reasonable inferences in Hafez's favor. *See Banneker Ventures, LLC v. Graham*, 798 F.3d 1119, 1129 (D.C. Cir. 2015).

including on the topic of Islamophobia, and he has published more than 150 books and academic articles, including 40 in peer-reviewed journals. *Id.*

The amended complaint alleges that in 2017 and as the Director of GWU's Program on Extremism, Vidino wrote a report called "The Muslim Brotherhood in Austria" that identified Hafez as a key leader of a youth organization called the "Muslimische Jugend Österreich" and described that organization as having links to the Muslim Brotherhood. *Id.* ¶¶ 56–58 (citing Dr. Lorenzo Vidino, *The Muslim Brotherhood in Austria* 34 (2017)). In 2020, Hafez's home was raided by Austrian authorities as part of "Operation Luxor," which "targeted the homes of 70 Austrian Muslims" and was "the largest peacetime raid ever conducted by Austrian authorities." *Id.* ¶ 56. Hafez asserts Vidino's 2017 report, which was "mentioned 14 times in the search warrant for Operation Luxor," was a catalyst for the operation. *Id.* Vidino also served as an expert for the case and provided testimony to Austrian intelligence services in January 2020, March 2022, and December 2022. *Id.*

The amended complaint further points to hacked documents and associated media reports that reveal a larger, coordinated campaign against Hafez and others that goes far beyond Vidino's 2017 report. *Id.* ¶ 38. According to a *New Yorker* article excerpted in Hafez's amended complaint, the United Arab Emirates ("UAE") paid Alp, a Swiss private intelligence firm, "millions of dollars to taint perceived enemies." *Id.* The amended complaint alleges that hacked documents "lay out in detail each step" of Alp's plan: "launch massive negative articles on dozens of key [Muslim Brotherhood]" members; "inform selected journalists about our targets, their leadership role within the [Muslim Brotherhood] in Europe and connections with Al Qaeda"; "activate our network of trusted journalists and editors"; "create negative Wikipedia pages for our targets"; "alert compliance databases and watchdogs, which are used by banks and multinationals, about . . . links

2

to terrorism"; "discreetly notify banks of [Muslim Brotherhood associates'] . . . links to terrorism and Political Exposed Persons (PEPs), the objective being to block their bank accounts and business"; "use . . . social media to boost public interest in the articles and viral actions"; and "discreetly lobby decision-makers." *Id.* ¶ 11 (cleaned up). Hafez further alleges that an internal Alp document "outlined a plan for Alp to have 45 articles published about the targets," including U.S.-based articles such as an "'[a]rticle in English' on the San Francisco-based blogging website Medium." *Id.* ¶ 87 (alteration in original). According to the amended complaint, Alp's co-founders Mario Brero and Muriel Cavin also founded Diligence SARL, which was used interchangeably with Alp to conduct operations that furthered the UAE's objectives. *Id.* ¶¶ 9, 26.

After making its deal with the UAE, Alp sought out Vidino to assist. *Id.* ¶ 38. The amended complaint alleges that Brero hired Vidino in 2018 to provide "interesting leads/rumours" about the Muslim Brotherhood and a "list of alleged members . . . in European countries." *Id.* Vidino acknowledges that he has worked for Alp and that he knew Alp was most likely working for the UAE, though he has stated it was not "clear cut" to him who Alp was working for. *Id.* Vidino "delivered to Alp a series of gossipy reports about the Brotherhood's reach," and Brero "persuaded the Emiratis to pay him to go after . . . people on Vidino's roster of suspected Islamists." *Id.* In addition to work focused on Europe, Brero asked Vidino for "interesting elements/rumours on the other side of the Atlantic." *Id.* (quotation marks omitted). As to Hafez specifically, Vidino wrote an article in *Foreign Policy* that "falsely referred to Dr. Hafez as belonging to a group of 'known Islamist actors and supporters.'" *Id.* ¶ 90 n.24. Vidino also provided Alp his report on the Muslim Brotherhood in Austria and a separate report on the Muslim Brotherhood in Germany that linked Hafez to the Muslim Brotherhood. *Id.*

As a result of being targeted by this campaign, Hafez claims to have "suffered significant emotional and psychological damages," in addition to reputational damages "leading to a loss of credibility within his professional community and society at large." *Id.* ¶ 52. Hafez has also suffered financial harms, including having his bank accounts frozen and losing speaking engagements and job opportunities. *Id.* He names as examples being "disinvited" from a lecture at an educational institution in 2017 and being harmed in his "business relationships with The University of Salzburg and others." *Id.* ¶¶ 59, 175. He also claims that "[a]s a direct result of Defendants' actions and statements, including the false statements and insinuations, [he] had to leave Austria and take up permanent residence in the United States." *Id.* ¶ 188.

Hafez filed this suit, asserting seven counts against all of the defendants under RICO and D.C. law. Vidino, GWU, and the foreign defendants each move to dismiss the amended complaint in its entirety. For the reasons below, the Court grants those motions.[2]

## II.    Discussion

The defendants make several arguments in favor of dismissing Hafez's claims. The foreign defendants—Alp Services, Diligence, and the individuals associated with the companies—contest personal jurisdiction over them. They, along with all other defendants, also argue the amended complaint fails to state any claim under RICO or the asserted D.C. laws. The Court starts with personal jurisdiction. *See Kaplan v. Cent. Bank of the Islamic Republic of Iran*, 896 F.3d 501, 510 (D.C. Cir. 2018) ("[W]hen personal jurisdiction is in question, a court must first determine that it possesses personal jurisdiction over the defendants before it can address the merits of a claim.").

---

[2]    Though named in Hafez's suit, Defendant Ariaf Studies and Research LLC has not been served.

**A. The Court Does Not Have Personal Jurisdiction Over The Foreign Defendants**

The defendants state, and the amended complaint acknowledges, that Alp, Diligence, and the related individuals are all citizens of Switzerland, Italy, or Luxembourg. ECF No. 5 ¶¶ 18–21, 25; ECF No. 29-1 at 3; ECF No. 29-2 ¶¶ 2–3. These defendants argue this Court lacks jurisdiction to hale them into U.S. federal court, and the Court agrees.

A plaintiff has the burden to show that the Court has personal jurisdiction over a defendant. *Erwin-Simpson v. AirAsia Berhad*, 985 F.3d 883, 888 (D.C. Cir. 2021). A plaintiff can show either general jurisdiction, which "permits a court to assert jurisdiction over a defendant based on a forum connection unrelated to the underlying suit," or specific jurisdiction, based on "affiliation between the forum and the underlying controversy." *Livnat v. Palestinian Auth.*, 851 F.3d 45, 56 (D.C. Cir. 2017). Hafez does not contend that the foreign defendants are subject to general jurisdiction in the United States. He asserts only specific jurisdiction over these foreign defendants, relying on Federal Rules of Civil Procedure 4(k)(1)(C) and 4(k)(2). ECF No. 37 at 9. But neither rule provides a basis for personal jurisdiction here.

Rule 4(k)(1)(C) states that personal jurisdiction over a defendant can be established by "[s]erving a summons or filing a waiver of service" in certain circumstances, including when "authorized by a federal statute." Fed. R. Civ. P. 4(k)(1)(C). Here, Hafez says personal jurisdiction by service or waiver of service is authorized by the RICO statute, which authorizes personal jurisdiction when "the ends of justice require that other parties residing in any other district be brought before the court." 18 U.S.C. § 1965(b). But even assuming the "ends of justice" provision applies here, the section provides circumstances in which a party can be haled into a district based on process "served in any judicial district of the United States," not abroad. *Id.* Courts have accordingly recognized that § 1965 provides for "nationwide service of process," not foreign service. *FC Inv. Grp. LC v. IFX Mkts., Ltd.*, 529 F.3d 1087, 1099 (D.C. Cir. 2008) (citing *PT*

*United Can Co. v. Crown Cork & Seal Co.*, 138 F.3d 65, 70 (2d Cir. 1998)); *see Soltex Polymer Corp. v. Fortex Indus., Inc.*, 590 F. Supp. 1453, 1460 (E.D.N.Y. 1984) ("Although RICO authorizes nationwide service of process, *see* 18 U.S.C. § 1965, it does not, by its very language, authorize service in a foreign country."); *Avianca, Inc. v. Corriea*, 705 F. Supp. 666, 684 (D.D.C. 1989) (same).

Nor does Rule 4(k)(2) provide a basis for the Court to exercise personal jurisdiction over the foreign defendants. That rule states that, for federal claims, "serving a summons or filing a waiver of service establishes personal jurisdiction over a defendant if: (A) the defendant is not subject to jurisdiction in any state's courts of general jurisdiction; and (B) exercising jurisdiction is consistent with the United States Constitution and laws." Fed. R. Civ. P. 4(k)(2). "With respect to foreign defendants, a plaintiff's complaint must 'make a *prima facie* showing of the pertinent jurisdictional facts.'" *Lewis v. Mutond*, 62 F.4th 587, 592 (D.C. Cir. 2023) (quoting *Livnat*, 851 F.3d at 56–57). "'Conclusory statements' or a 'bare allegation of conspiracy or agency' do not satisfy this burden." *Livnat*, 851 F.3d at 57 (quoting *First Chi. Int'l v. United Exch. Co.*, 836 F.2d 1375, 1378–79 (D.C. Cir. 1988)). Here, the foreign defendants argue that exercising personal jurisdiction over them would be inconsistent with the Constitution.

In analyzing whether jurisdiction is consistent with the Constitution within the meaning of Rule 4(k)(2)(B), the D.C. Circuit has applied the Fifth Amendment due process standard in step with the Fourteenth Amendment standard, asking whether the plaintiff has shown the defendant has sufficient "meaningful 'contacts, ties, or relations'" with the United States and "fair warning that a particular activity may subject [them] to the jurisdiction of a foreign sovereign." *Mwani v. bin Laden*, 417 F.3d 1, 11 (D.C. Cir. 2005) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985)); *see Lewis*, 62 F.4th at 592 (explaining in the context of Rule 4(k)(2) that "the

Fifth and Fourteenth Amendment Due Process inquiries are generally analogous"). The Supreme

Court has recently held that the Fifth Amendment permits "a more flexible jurisdictional inquiry"

than the Fourteenth Amendment, but it did not go on to "delineate the outer bounds of the Federal

Government's power, consistent with due process, to hale foreign defendants into U.S. courts."

*Fuld v. Palestine Liberation Org.*, 606 U.S. 1, 16, 18 (2025). A court in this district has recognized

that although *Fuld* did not specifically involve Rule 4(k)(2), it "theoretically unsettles the D.C.

Circuit's minimum contacts-based" standard. *Cent. Am. Bank for Econ. Integration v. Mossi*, No.

24-cv-2544, 2025 WL 2732731, at *8 (D.D.C. Sept. 25, 2025). *But see Mwani*, 417 F.3d at 10–11

& n.9 (noting that Rule 4(k)(2)'s advisory notes refer to whether a defendant has sufficient

contacts). Here, the Court need not address the bounds of Rule 4(k)(2)(B) under *Fuld* because both

Hafez and the foreign defendants have limited their arguments to whether the defendants have

minimum contacts with the United States and Hafez has not argued that *Fuld* expands personal

jurisdiction in a manner that would be relevant to this case. *See Erwin-Simpson*, 985 F.3d at 889

n.1 (recognizing that personal jurisdiction is properly resolved on the bases advanced).

    The parties agree the Court may properly exercise jurisdiction over a foreign defendant

that "has 'purposefully directed' his activities at residents of the forum"—namely, the United

States—if "the litigation results from alleged injuries that 'arise out of or relate to' those activities."

*Mwani*, 417 F.3d at 12 (quoting *Burger King*, 471 U.S. at 472). Here, Hafez has not plausibly

alleged that these defendants purposefully directed activities at the United States that injured

Hafez. Hafez does allege these defendants took *some* actions directed toward the United States—

they planned to publish articles in publications in the United States, like the Daily Kos and

Medium, create "negative pages on Wikipedia, a U.S.-based company," and manipulate "results

on U.S.-based search engines like Google, Yahoo!, and Bing." ECF No. 5 ¶¶ 85, 87. But assuming

these activities show purposeful direction of activities to the United States, Hafez does not plausibly allege he suffered harms from them—indeed, it does not appear he alleges any specific harm that occurred in the United States. Hafez does not provide details about the articles he refers to, including whether they were actually published, whether they mentioned him, or how they harmed him. The amended complaint references one article that a U.S. defendant, Vidino, published in *Foreign Policy* which "falsely referred to Dr. Hafez as belonging to a group of 'known Islamist actors and supporters.'" *Id.* ¶ 90 n.24. But the amended complaint gives no information about when the article was published, what harm Hafez suffered from this article, or whether he even lived in the United States when it was published. And all of the allegedly injurious publications that mention Hafez appear to have been written while Hafez worked in Austria at the University of Salzburg. *See id.* ¶ 90 & n.24. The Court cannot exercise personal jurisdiction over the foreign defendants without some showing that their actions directed toward the United States harmed Hafez. *See Peters v. Est. of Qadhafi*, No. 21-cv-516, 2024 WL 4603907, at *6 (D.D.C. Aug. 28, 2024) (finding no specific jurisdiction when "all the relevant conduct that Plaintiffs assert gives rise to liability . . . occurred in Libya, not the United States"), *report and recommendation adopted*, No. 21-cv-0516, 2025 WL 833206 (D.D.C. Mar. 17, 2025).

Hafez cites *Calder v. Jones*, 465 U.S. 783 (1984), but that case had what is missing here. There, the Supreme Court held personal jurisdiction could be exercised in California based on an "allegedly libelous story [that] concerned the California activities of a California resident," which "impugned the professionalism of an entertainer whose television career was centered in California" and "was drawn from California sources," and where "the brunt of the harm, in terms both of respondent's emotional distress and the injury to her professional reputation, was suffered in California." *Id.* at 787–89. "In sum, California [was] the focal point both of the story and of the

harm suffered," and "[j]urisdiction over petitioners [was] therefore proper in California based on the 'effects' of their Florida conduct in California." *Id.* at 789 (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297–98 (1980)). Here, by contrast, the amended complaint does not allege any publication concerning Hafez's activities in the United States or any harms he suffered while in the United States.[3]

The Court accordingly does not have personal jurisdiction over the foreign defendants.

## B. The Amended Complaint Does Not State A Claim

Vidino and GWU do not contest personal jurisdiction, but argue the amended complaint fails to state a claim under RICO or state law. The Court agrees.

To survive a motion to dismiss for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The Court "must take all the factual allegations in the complaint as true," though it is "not bound to accept as true a legal conclusion couched as a factual

---

[3]    Consistent with Hafez's decision not to raise *Fuld*, it is doubtful the Supreme Court's decision would compel a different result in this case. Although the Supreme Court did not "delineate the outer bounds" for haling foreign defendants into federal courts, the Court also declined to adopt a theory of "unbounded" jurisdiction and recognized that the Fifth Amendment test may entail an "inquiry into the reasonableness of the assertion of jurisdiction in the particular case." *Fuld*, 606 U.S. at 18–19, 23. Unlike in *Fuld*, there is not a "narrow" and "suitably limited" statute that establishes personal jurisdiction over the foreign defendants in this case. *Id.* at 19–22. To the contrary, as discussed, the RICO statute's personal jurisdiction provision is limited to circumstances that do not apply here. Moreover, the U.S. interest is diminished given the lack of alleged harm in the United States, in contrast to the interest in "holding accountable those who perpetrate an 'act of violence against' U.S. nationals" or providing an adequate forum to vindicate rights of a "U.S. national injured or killed 'by reason of an act of international terrorism.'" *Id.* at 6–7, 15, 21.

allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). The Court may consider "only the facts alleged in the complaint, any documents either attached to or incorporated in the complaint and matters of which [the Court] may take judicial notice." *EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997).

### 1. The Amended Complaint Does Not State A RICO Claim

"RICO authorizes civil suits by 'any person injured in his business or property by reason of a violation of 18 U.S.C § 1962." *Edmondson & Gallagher v. Alban Towers Tenants Ass'n*, 48 F.3d 1260, 1264 (D.C. Cir. 1995) (cleaned up) (quoting 18 U.S.C. § 1964(c)). The amended complaint asserts claims under § 1962(c), which requires a plaintiff to allege "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *W. Assocs. Ltd. P'ship v. Mkt. Square Assocs.*, 235 F.3d 629, 633 (D.C. Cir. 2001) (quoting *Pyramid Sec. Ltd. v. IB Resolution, Inc.*, 924 F.2d 1114, 1117 (D.C. Cir. 1991)). It also asserts claims under § 1962(d), which requires a plaintiff to allege "(1) two or more people agreed to commit a subsection (c) offense, and (2) a defendant agreed to further that endeavor." *RSM Prod. Corp. v. Freshfields Bruckhaus Deringer U.S. LLP*, 682 F.3d 1043, 1048 (D.C. Cir. 2012).

Here, the amended complaint fails to state a RICO claim for a threshold reason: it does not adequately plead Hafez was "injured in his business or property" in the manner required to bring a RICO suit. 18 U.S.C. § 1964(c). The Supreme Court has made clear that "by explicitly permitting recovery for harms to business and property, [RICO] implicitly excludes recovery for harm to one's person." *Med. Marijuana, Inc. v. Horn*, 145 S. Ct. 931, 939 (2025). The Supreme Court has also made clear that this requirement cannot be satisfied through extraterritorial harm; a plaintiff "must allege and prove a *domestic* injury to its business or property." *RJR Nabisco v. Eur. Cmty.*,

10

579 U.S. 325, 346 (2016). To determine whether an injury is domestic—that it "arose in the United States"—courts look to "the circumstances surrounding the alleged injury," including factors like "the nature of the alleged injury, the racketeering activity that directly caused it, and the injurious aims and effects of that activity." *Yegiazaryan v. Smagin*, 599 U.S. 533, 543–44 (2023). This inquiry "turns largely on the particular facts alleged in a complaint." *Id.* at 543.

Here, the core of Hafez's injuries is reputational—that the defendants published false and negative information about him, "leading to a loss of credibility within his professional community and society at large." ECF No. 5 ¶ 52. But that alone is not determinative because, as the Supreme Court recently made clear, "a plaintiff can seek damages for business or property loss regardless of whether the loss resulted from a personal injury." *Horn*, 145 S. Ct. at 939. And here, Hafez alleges that the personal injury to his reputation has caused business injury—namely, harm to his academic business relationships. *See* ECF No. 5 ¶¶ 59, 116, 168, 169, 175, 182, 203.

The problem for Hafez, however, is that even assuming he has adequately alleged business injury, the amended complaint does not allege specific business or property harms that arose in the United States. Hafez alleges that Operation Luxor is "[a]t the center of this case." *Id.* ¶ 55. That operation took place in Austria, was carried out by Austrian authorities, and was allegedly catalyzed by Vidino's report on "The Muslim Brotherhood in Austria." *Id.* And all of the allegedly injurious publications that mention Hafez appear to have been written while Hafez worked in Austria at the University of Salzburg. *See id.* ¶ 90 & n.24.

The amended complaint alleges that these activities "had an immediate effect on Dr. Hafez's reputation and professional opportunities," namely Hafez's "business relationships with The University of Salzburg and others" and speaking engagements, citing as one example being disinvited from a lecture in 2017 while he was a professor at the University of Salzburg. *Id.* ¶¶ 59,

175. Moreover, although Hafez also alleges certain harms to his property, such as having bank accounts frozen, he gives no details about where, when, how, or why the accounts were frozen—including whether his accounts were frozen in the United States. *Id.* ¶ 52. Indeed, the amended complaint alleges that the harm Hafez suffered from the defendants' alleged misconduct precipitated his move to the United States: "[a]s a direct result of Defendants' actions and statements, including the false statements and insinuations, Plaintiff had to leave Austria and take up permanent residence in the United States." *Id.* ¶ 188; *see also id.* ¶ 203(a) (alleging that Hafez's injury includes "loss of funds associated with stigma placed upon Plaintiff as a result of the Austrian raid prompted by Defendants' false report and UAE enemies list including the cost to relocate to the United States"). And these harms arose in Austria even if Hafez is still impacted by them in the United States. *See Abernathy v. Carlyle Grp., Inc.*, No. 22-cv-3603, 2024 WL 5331993, at *8 (D.D.C. Sept. 27, 2024) (finding injury was not domestic when plaintiffs asserted exposure to chemicals that "initially inflicted harm on Plaintiffs in Kuwait continues to cause suffering here in the U.S., and threatens chronic future ill-health, with attendant emotional distress and financial loss, in the U.S."); *id.* (same as to plaintiffs' assertion that income lost in Kuwait "had a profound effect on Plaintiffs and their dependents within the U.S."). By failing to specifically allege harms to his business or property that arose in the United States, Hafez fails to plead domestic injury to business or property.

For similar reasons, the amended complaint falls short of the high standard for alleging a "pattern of racketeering activity" that could form the basis of a RICO violation under § 1962(c) or (d). Pleading a pattern of racketeering activity requires a plaintiff to allege "the commission of at least two predicate racketeering offenses over a ten year period." *W. Assocs.*, 235 F.3d at 633 (citing 18 U.S.C. § 1961(5)). In his briefing, Hafez identifies mail, wire, and bank fraud as the

predicate offenses. ECF No. 36 at 16; *see* 18 U.S.C. § 1961(1)(B) (listing these as "racketeering activity"). Each of these offenses requires a "scheme or artifice to defraud" as an element. 18 U.S.C § 1341 (mail fraud); *id.* § 1343 (wire fraud); *id.* § 1344 (bank fraud). And the Supreme Court has held that the words "to defraud" in the relevant statutes "commonly refer 'to wronging one in his property rights by dishonest methods or schemes,' and 'usually signify the deprivation of something of value by trick, deceit, chicane or overreaching.'" *McNally v. United States*, 483 U.S. 350, 358 (1987) (quoting *Hammerschmidt v. United States*, 265 U.S. 182, 188 (1924)). Indeed, "property must play more than some bit part in a scheme: It must be an 'object of the fraud.'" *Kelly v. United States*, 590 U.S. 391, 402 (2020).

While Hafez alleges that the defendants intentionally published false information that harmed his reputation and professional relationships, that alone does not satisfy the requirement of being defrauded of property. *See Kredietbank, N.V. v. Joyce Morris, Inc.*, No. 84-cv-1903, 1986 WL 5926, at *4 (D.N.J. Jan. 9, 1986) ("Intent to injure is not the equivalent of intent to defraud."), *aff'd*, 808 F.2d 1516 (3d Cir. 1986). And although Hafez comes closer in alleging the defendants' plan included persuading banks to freeze accounts, as mentioned above, the amended complaint does not plead any details, including where those banks were. In addition, while the amended complaint pleads that Alp, one of the foreign defendants over which the Court lacks jurisdiction, planned to knowingly notify banks of false information to block bank accounts, it does not specifically plead Vidino's or GWU's awareness or object of doing so. This is insufficient to satisfy the heightened pleading requirement that applies to fraud claims. *See* Fed. R. Civ. P. 9(b) (requiring a complaint to "state with particularity the circumstances constituting fraud or mistake"); *see also W. Assocs.*, 235 F.3d at 637 (cautioning that "RICO claims premised on mail

or wire fraud must be particularly scrutinized because of the relative ease with which a plaintiff may mold a RICO pattern from allegations that, upon closer scrutiny, do not support it").[4]

### 2. The Amended Complaint Does Not State A Claim Under D.C. Law

The amended complaint also asserts claims under D.C. law for fraud, tortious interference, unfair or deceptive practices, and "prima facie tort." ECF No. 5 ¶¶ 139–54, 165–204. Each claim fails.

First, to establish common law fraud, "a plaintiff must show that the defendant, with the intent to deceive the plaintiff, knowingly made a false representation of a material fact on which plaintiff justifiably and detrimentally relied." *Pyles v. HSBC Bank USA, N.A.*, 172 A.3d 903, 907 (D.C. 2017). A plaintiff "must identify with particularity the 'time . . . of the false misrepresentations,' 'who precisely was involved in the fraudulent activity,' the 'fact misrepresented,' and 'facts that exemplify the purportedly fraudulent scheme.'" *McMullen v. Synchrony Bank*, 164 F. Supp. 3d 77, 95 (D.D.C. 2016) (omission in original) (quoting *United States ex rel. Williams v. Martin-Baker Aircraft Co.*, 389 F.3d 1251, 1256–59 (D.C. Cir. 2004)). "A plaintiff may recover for a defendant's fraudulent statement only if the plaintiff took some action in reliance on that statement." *Aktieselskabet AF 21. Nov. 2001 v. Fame Jeans Inc.*, 525 F.3d 8, 22 (D.C. Cir. 2008).

Hafez says Vidino made false statements in an August 2017 report that was distributed through a GWU-affiliated website. ECF No. 36 at 37; *see* ECF No. 5 ¶ 145 (alleging that the defendants "disseminated reports masquerading as academic, rooted in fact, and with the façade

---

[4]    The Court does not consider the defendants' additional arguments for dismissing Hafez's RICO claims, including that the amended complaint does not plausibly allege a RICO enterprise, proximate causation, or knowledge of or agreement to commit RICO predicate acts. *See generally* ECF Nos. 28-1, 29-1, 30-1.

of independence and scholarly integrity when in fact undisclosed foreign actors funded such").

These alleged misrepresentations include that Hafez "was associated with the Muslim Brotherhood

or by implication some agent of the Muslim Brotherhood." ECF No. 5 ¶ 147. Hafez says he has

been damaged by these misrepresentations because he has been forced to defend himself against

false accusations. *Id.* ¶ 146.

But Hafez does not allege he took any action in reliance on the misrepresentations made

by Vidino or GWU. In his briefing, Hafez argues that he relied on the false statements because he

took legal action to protect his rights and relocated to the United States based on the effect of the

statements. ECF No. 36 at 38. But it cannot be the case that filing a lawsuit after an allegedly false

statement is enough to show the plaintiff "took some action in reliance on that statement."

*Aktieselskabet*, 525 F.3d at 22; *see Stovell v. James*, 810 F. Supp. 2d 237, 245 (D.D.C. 2011)

(holding that plaintiff could not establish reliance based on "expenses he voluntarily decided to

incur to challenge the veracity of the statements made by [a defendant]"); *Busby v. Cap. One, N.A.*,

772 F. Supp. 2d 268, 276 (D.D.C. 2011) (explaining that "it is far from clear that the cost of legal

services can constitute detrimental reliance for purposes of fraud"). Similarly, Hafez's claim that

he moved to the United States as an "effect" of the statements does not show that he *relied* on the

statements. ECF No. 36 at 38. Because he fails to allege reliance, Hafez has not stated a claim for

common law fraud.[5]

---

[5]    Hafez asserts, without citing any case law, that "reliance can encompass scenarios where false
statements made to third parties foreseeably harm the plaintiff" and argues that, here, the
misrepresentations "were deliberately designed to produce detrimental consequences for him."
ECF No. 36 at 37. But the reliance requirement generally is not met where a plaintiff fails to allege
his "own reliance." *See Aktieselskabet*, 525 F.3d at 23 (reliance not adequately alleged where
plaintiff's only action in response to defendant's statement was to oppose application in Patent and
Trademark Office); *Busby*, 772 F. Supp. 2d at 276 (allegations concerning actions taken by third
parties "cannot, standing alone, satisfy the detrimental reliance element required for fraud claims

Second, Hafez's claims for tortious interference with existing and prospective business relationships require him to allege "(1) the existence of a valid business relationship or expectancy, (2) knowledge of the relationship or expectancy on the part of the interferer, (3) intentional interference inducing or causing a breach or termination of the relationship or expectancy, and (4) resultant damage." *Precision Contracting Sols., LP v. ANGI Homeservices, Inc.*, 415 F. Supp. 3d 113, 121–22 (D.D.C. 2019) (quoting *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002)). Here, Hafez alleges that the defendants interfered with his existing and prospective business relationships with the University of Salzburg and other academic institutions. ECF No. 5 ¶¶ 168, 173, 182, 190. According to the amended complaint, the defendants "knew making false allegations as to ties with the Muslim Brotherhood would destroy [Hafez's] career in academia and constrain his ability to speak out against Islamophobia." *Id.* ¶ 169.

The Court need not look beyond the third element because Hafez does not plausibly allege that either defendant intended to interfere with the particular alleged business relationships. The amended complaint alleges, in conclusory terms, that the defendants "interfered with these business relationships and intentionally harmed [Hafez]." *Id.* ¶ 176; *accord id.* ¶ 193. To survive dismissal for a tortious interference claim, however, a plaintiff "must allege far more than a 'general intent to interfere or knowledge that the conduct will injure [its] business dealings.'" *Sabre Int'l Sec. v. Torres Advanced Enter. Sols., Inc.*, 857 F. Supp. 2d 97, 103–04 (D.D.C. 2012) (alteration in original) (citation omitted). The amended complaint's conclusory allegations fall well short of this requirement and fail to provide facts suggesting that Vidino or GWU intended to

---

under D.C. law"); *see also E. Sav. Bank, FSB v. Papageorge*, 629 F. App'x 1, 2 (D.C. Cir. 2015) (noting that "detrimental reliance is not the same as harm"). Having concluded that Hafez did not allege reliance, the Court need not reach Vidino's and GWU's other arguments about the common law fraud claim.

16

interfere with Hafez's existing or prospective business relationships with particular academic institutions. The amended complaint does not provide the kind of specific allegations that are required to state a claim for intentional interference. *See Johnson v. Comm'n on Presidential Debates*, 202 F. Supp. 3d 159, 177 (D.D.C. 2016) (holding that allegations "devoid of specifics" were insufficient to state a claim for intentional interference); *Rodriguez v. Lab'y Corp. of AmericaHoldings*, 13 F. Supp. 3d 121, 134 (D.D.C. 2014) (concluding that "mere awareness that [the plaintiff] could be adversely affected" was not sufficient to allege intent to interfere). Hafez responds that he has "demonstrated with specificity . . . the intentional nature of Defendants' interference." ECF No. 38 at 36. But this conclusory assertion—which does not provide any citation to the amended complaint for support—is not sufficient to satisfy the intent requirement. This deficiency alone is enough to warrant dismissal without considering the additional challenges Vidino and GWU raise as to the tortious interference claims.

Third, Hafez does not state a claim of unfair or deceptive trade practices under the D.C. Consumer Protection Procedures Act ("CPPA"), which "was designed to police trade practices arising only out of consumer-merchant relationships." *Archie v. U.S. Bank, N.A.*, 255 A.3d 1005, 1020 (D.C. 2021) (quoting *Ali v. Tolbert*, 636 F.3d 622, 628 (D.C. Cir. 2011)). The D.C. Court of Appeals has recognized that "the class of persons subject to suit for unfair or deceptive trade practices under the CPPA includes only merchants who supply the goods or services which are or would be the subject matter of a trade practice." *Id.* (quotation marks and citation omitted). The amended complaint does not allege any consumer-merchant relationship between Hafez and Vidino or GWU. Hafez argues this requirement is too "restrictive" because it "overlooks the statute's broader intent to prevent deceptive and unfair practices that harm individuals and the public." ECF No. 36 at 40. But that argument is at odds with the CPPA itself and binding precedent

17

making clear it requires a consumer-merchant relationship. *See, e.g.*, *Baylor v. Mitchell Rubenstein & Assocs., P.C.*, 857 F.3d 939, 948 (D.C. Cir. 2017) ("The CPPA applies only to consumer-merchant relationships.").

Finally, Hafez asserts a prima facie tort claim, alleging that the defendants "intentionally and gratuitously inflicted harm" on him. ECF No. 5 ¶ 200. But, although some jurisdictions recognize this tort, D.C. does not. *See Taylor v. D.C. Water & Sewer Auth.*, 957 A.2d 45, 50 (D.C. 2008) ("[W]e have not recognized this tort in the District."); *Art Metal-U.S.A., Inc. v. United States*, 577 F. Supp. 182, 184 (D.D.C. 1983) (explaining that D.C. courts "have not embraced a form of generic tort like the *prima facie* tort recognized by New York courts"). The Court accordingly must dismiss this claim as well.[6]

## III.    Conclusion

For these reasons, the motions to dismiss are granted and the amended complaint is dismissed without prejudice.

A separate order accompanies this memorandum opinion.

_____

AMIR H. ALI
United States District Judge

Date:    September 30, 2025

---

[6] Because Hafez's state law claims fail on the merits, the Court does not address the defendants' alternative arguments that they are barred on statute-of-limitations and First Amendment grounds.